1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   MICHAEL BURSHTEYN (CA SBN 295320)
    MBurshteyn@mofo.com
3   DANIELLE VALLONE (CA SBN 302497)
    DVallone@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   PURVI G. PATEL (CA SBN 270702)
    PPatel@mofo.com
8   ERIK MANUKYAN (CA SBN 340307)
    EManukyan@mofo.com
9   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
10  Los Angeles, California 90017
    Telephone: 213.892.5200
11  Facsimile: 213.892.5454

12  Attorneys for Defendant
    ORACLE AMERICA, INC.

13

14                    **UNITED STATES DISTRICT COURT**

15                    **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17

18  MICHAEL KATZ-LACABE, et al.,            Case No. 3-22-cv-04792-RS

19                    Plaintiffs,            **DEFENDANT ORACLE
                                            AMERICA, INC.'S NOTICE OF**
20         v.                               **MOTION AND MOTION TO
                                            DISMISS PLAINTIFFS'**
21  ORACLE AMERICA, INC., a corporation     **COMPLAINT, OR
    organized under the laws of the State of Delaware,   ALTERNATIVELY STRIKE**
22                                          **PORTIONS OF THE COMPLAINT**
            Defendant.
23                                          Judge: Hon. Richard Seeborg

24                                          Date: February 9, 2023
                                            Time: 1:30 p.m.
25                                          Courtroom: 3

26                                          Date Action Filed: August 19, 2022
                                            Trial Date: Not set
27

28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 9, 2023, at 1:30 p.m., or soon thereafter as the matter may be heard, in Courtroom 3 located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Defendant Oracle America, Inc. will and hereby does move this Court for an order dismissing Plaintiffs' Complaint in its entirety pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6), and for an order striking portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f), on the grounds that:

(a) Plaintiffs lack Article III standing;

(b) Plaintiffs lack a basis to apply California law extraterritorially;

(c) Plaintiffs fail to state any claim for relief;

(d) Paragraphs 64, 65, 76-81, and 147 of the Complaint are prejudicial, redundant, and immaterial allegations in violation of Rule 8; and

(e) Paragraphs 123, 137, 157, 172, and 182 of the Complaint and Prayer for Relief J are immaterial and impertinent because Plaintiffs fail to and cannot allege that they lack an adequate remedy at law.

This motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Purvi G. Patel; the Request for Judicial Notice; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this motion.

Dated: November 7, 2022                    MORRISON & FOERSTER LLP

By:  */s/ Purvi G. Patel*
_____
Purvi G. Patel

*Attorneys for Defendant*
*Oracle America, Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED .................................................................. ix

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I.    INTRODUCTION ......................................................................................................... 1

II.   SUMMARY OF ARGUMENT ..................................................................................... 2

III.  BACKGROUND ............................................................................................................ 3

    A.    OA provides a suite of tools for advertisers to better connect with interested consumers ............................................................................................ 3

    B.    Plaintiffs' overarching allegation—that Oracle creates and sells individual consumer profiles—lacks both specificity and any factual basis............................ 6

IV.   ARGUMENT .................................................................................................................. 7

    A.    Plaintiffs Lack Article III Standing............................................................................. 7

        1.    Plaintiffs lack standing because they do not allege an injury that is concrete and particularized ............................................................................. 7

        2.    Plaintiffs cannot allege they suffered an injury that is fairly traceable to Oracle's conduct .......................................................................... 8

    B.    This Court Cannot Apply California Law to the Claims of Non-Residents ........... 9

        1.    Golbeck and Ryan fail to allege any basis for invoking California law ................................................................................................................. 9

        2.    California's UCL does not apply to non-residents................................... 11

        3.    Plaintiffs cannot assert California claims on behalf of non-resident members of the putative nationwide and worldwide classes ................... 12

    C.    The Complaint Fails to State a Claim Under Rule 12(b)(6) ................................ 13

        1.    Plaintiffs do not satisfy Rule 8's pleading standard................................. 13

        2.    Plaintiffs fail to meet the "high bar" to state a claim for invasion of privacy or intrusion upon seclusion (first and second causes of action)......................................................................................................... 14

            a.    Plaintiffs have not alleged a reasonable expectation of privacy............................................................................................ 15

            b.    Plaintiffs fail to allege a "highly offensive" or "egregious" breach of social norms ............................................................. 17

        3.    Plaintiffs fail to state a claim for CIPA or the federal Wiretap Act (fourth and fifth causes of action) ............................................................ 18

            a.    Plaintiffs fail to state a claim for wiretapping under the federal Wiretap Act and CIPA Section 631(a)(ii)........................ 18

            b.    Plaintiffs fail to state a claim under CIPA Section 631(a)(iii) ...... 20

            c.    Plaintiffs fail to state a claim under CIPA Section 631(a)(iv) ...... 21

        4.    Plaintiffs lack standing and fail to state a claim under the UCL (third cause of action)................................................................................ 21

**TABLE OF CONTENTS**
(continued)

**Page**

     5.    Plaintiffs fail to state a claim for equitable relief (all causes of action) .................................................................................................... 23

          a.    Plaintiffs' UCL and unjust enrichment claims and requests for injunctive relief under all other causes of action fail because there is an adequate remedy at law ................................. 23

          b.    Plaintiffs fail to state a claim for unjust enrichment under California or Florida law .............................................................. 24

     6.    Plaintiffs fail to state a claim for declaratory judgment (seventh cause of action) ............................................................................ 25

V.    CONCLUSION .......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Best Buy Stores L.P*,
No. 5:20-cv-41-Oc-30PRL, 2020 WL 5122781 (M.D. Fla. July 28, 2020),
*report and recommendation adopted sub nom. Anderson v. Coupons in News*,
2020 WL 5106676 (M.D. Fla. Aug. 31, 2020) ............................................................. 24, 25

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................................... 12

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018), *on reconsideration in part*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .................................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ................................................................................................. 24

*In re Banco Santander Sec.-Optimal Litig.*,
732 F. Supp. 2d 1305 (S.D. Fla. 2010) ................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................... 13

*Bravo v. L.A. Cnty.*,
No. CV 08-6344-AHS (MLG), 2008 WL 4614298 (C.D. Cal. Oct. 10, 2008) ..................... 13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................................. 19

*Brown v. Google LLC*,
No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................. 16

*Cabral v. Supple, LLC*,
No. EDCV 12-85-MWF, 2012 WL 12895825 (C.D. Cal. Oct. 3 2012) ............................... 15

*Cal. Advocs. for Nursing Home Reform, Inc. v. Chapman*,
No. 12-cv-06408-JST, 2013 WL 5946940 (N.D. Cal. Nov. 5, 2013), *amended
by* 2014 WL 2450949 (N.D. Cal. June 2, 2014) ...................................................................... 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................................... 21

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................... 7

*Chowning v. Kohl's Dep't Stores, Inc.*,
No. CV 15-08673 RGK, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016)................................ 23

*In re Clearly Canadian Sec. Litig.*,
875 F. Supp. 1410 (N.D. Cal. 1995) ............................................................... 13, 14

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .............................................................. 19

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012)................................................................... 22, 23

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) .............................................................. 7

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982).............................................................................. 10

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................... 21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................................... 14, 15, 16, 17

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011).......................................................... 16, 17, 18

*Gentges v. Trend Micro Inc.*,
No. C 11-5574 ................................................................................ 11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................. 21

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................. 14

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................... 20, 21

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .............................................................. 15

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................... 17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .............................................................. 19

*Granfield v. NVIDIA Corp.*,
No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)............................... 12

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................... 22

*Hammerling v. Google LLC*,
    No. 21-cv-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ............... 16, 17, 18, 25

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................................... 15

*Hernandez v. Burger*,
    102 Cal. App. 3d 795 (1980) ............................................................................. 10, 11

*I.C. v. Zynga, Inc.*,
    No. 20-cv-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) ........................ 8

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (Sept. 20, 2011) .................................. 21

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................. 10, 17

*Kay v. Copper Cane, LLC*,
    549 F. Supp. 3d 1014 (N.D. Cal. 2021) ................................................................... 12

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................ 21

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ................................................................................. 24

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................... passim

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ........................................................................... 22, 23

*Malasky v. Esposito*,
    No. 16-cv-04102-DMR, 2019 WL 79032 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F.
    App'x 643 (9th Cir. 2019) .................................................................................... 25

*Malverty v. Equifax Info. Servs., LLC*,
    407 F. Supp. 3d 1257 (M.D. Fla. 2019) ............................................................. 10, 11

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ................................................................... 21

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ................................................................................ 8

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................ 10

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) ........................................................................................ 10

*McCoy v. Alphabet, Inc.*,
    No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ...................... 17

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................................ 13

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ............................................................................ 13

*Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch., USA*,
    No. 20cv915-LL-BLM, 2022 WL 3019858 (S.D. Cal. July 29, 2022) .................. 14

*Murray v. Fin. Visions, Inc.*,
    No. CV-07-2578-PHX-FJM, 2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ............ 20

*N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*,
    764 So.2d 672 (Fla. Ct. App. 2000), *abrogated on other grounds by N. Am.
    Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299 (M.D.
    Fla. 2009) ........................................................................................................ 24

*Paulo v. Bepex Corp.*,
    792 F.2d 894 (9th Cir. 1986) ............................................................................ 11

*Popa v. Harriet Carter Gifts, Inc.*,
    No. 21-2203, 2022 WL 10224949 (3d Cir. Oct. 18, 2022) ................................. 12

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ............. 16, 21

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................... x-xii, 23

*Spilfogel v. Fox Broad. Co.*,
    433 F. App'x 724 (11th Cir. 2011) .................................................................... 10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................ 7, 8

*Tavernetti v. Superior Court*,
    22 Cal.3d 187 (1978) ....................................................................................... 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011) .............................................................. 24

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ....................................................................................... 8

*United States v. Luong*,
　471 F.3d 1107 (9th Cir. 2006) ........................................................................... 12

*United States v. Reed*,
　575 F.3d 900 (9th Cir. 2009) ............................................................................. 20

*In re Yahoo Mail Litig.*,
　7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................... 15, 20

*Yale v. Clicktale, Inc.*,
　No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .............. 19, 20

*Yoon v. Lululemon USA, Inc.*,
　549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................................. 20

*Yothers v. JFC Int'l, Inc.*,
　No. 20-cv-01657-RS, 2020 WL 5015262 (N.D. Cal. May 14, 2020) .................. 24

*Zinser v. Accufix Rsch. Inst., Inc.*,
　253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ............. 9

*In re Zynga Privacy Litig.*,
　750 F.3d 1098 (9th Cir. 2014) ........................................................................... 20

**Statutes & Rules**

18 U.S.C.
　§ 2510 et seq. .................................................................................................. 18
　§ 2510(4) ......................................................................................................... 20
　§ 2511(1)(a) ..................................................................................................... 19
　§ 2511(2)(d) ..................................................................................................... 19

Cal. Bus. & Prof. Code
　§ 17203 ........................................................................................................... 23
　§ 17204 ........................................................................................................... 21

Cal. Penal Code § 631 *et seq* .................................................................... *passim*

Fed. R. Civ. P.
　8 ....................................................................................................................... ix
　8(a)(2) ............................................................................................................. 13
　12(b)(1) ............................................................................................................ ix
　12(b)(6) ............................................................................................................ ix
　12(f) ..................................................................................................... ix, x, 13, 23
　23 .................................................................................................................... 11

**Other Authorities**

Alex Pearce, *Time For a National Privacy Law?*, 38-SPG Del. Law. 6 (2020) ........... 11

Manning Gilbert Warren, III, *The Prospects for Convergence of Collective
    Redress Remedies in the European Union*, 47 Int'l Law. 325, 332 (2013) ........................... 11

General Data Protection Regulation (GDPR)
    Article (1)(1) ................................................................................................................ 10
    Article (80)(1) .............................................................................................................. 11

## STATEMENT OF THE ISSUES TO BE DECIDED

The motion raises the following issues:

1.  **Standing**.  Whether Plaintiffs' claims should be dismissed for lack of standing under Rule 12(b)(1) because they have failed to allege sufficient injury-in-fact and a causal relationship between Oracle America, Inc.'s ("Oracle") conduct and their purported injuries.

2.  **Extraterritorial Application of California Law**.  Whether Plaintiffs' California claims should be dismissed because Plaintiffs have failed to allege any legal basis to apply California claims to non-resident Plaintiffs Golbeck and Ryan.

3.  **Inadequate Pleading**.  Whether Plaintiffs' claims should be dismissed under Rule 12(b)(6) because they have failed to plead their allegations with particularity and specificity as required by Rule 8.

4.  **Constitutional and Common Law Privacy Claims**.  Whether Plaintiffs' constitutional invasion of privacy and common law intrusion upon seclusion claims should be dismissed because (a) Plaintiffs do not allege a reasonable expectation of privacy, and (b) Oracle's alleged conduct does not constitute an egregious or offensive breach of privacy.

5.  **California Invasion of Privacy Act (CIPA) and federal Wiretap Act**.  Whether Plaintiffs' claims under CIPA and the federal Wiretap Act should be dismissed because (a) Oracle is exempt from liability as a party to Plaintiffs' alleged communications, (b) Plaintiffs cannot plausibly allege that Oracle intercepted the "contents" of their communications, (c) Plaintiffs cannot plausibly allege that Oracle violated the federal Wiretap Act's one-party consent policy, and (d) Plaintiffs cannot plausibly allege claims under their remaining CIPA theories.

6.  **Unfair Competition Law (UCL)**.  Whether Plaintiffs' UCL claim should be dismissed because Plaintiffs have not alleged (a) statutory standing under the UCL, (b) any conduct that would establish a violation of UCL's "unlawful" or "unfair" prongs, (c) any basis to apply the UCL extraterritorially to non-California Plaintiffs, or (d) that they lack an adequate remedy at law (nor can they).

7.  **Unjust Enrichment**.  Whether Plaintiffs' claims for unjust enrichment should be dismissed because (a) there is no standalone cause of action for unjust enrichment, and (b) Plaintiffs have not alleged that they lack an adequate remedy at law (nor can they).

8.  **Declaratory Judgment**.  Whether Plaintiffs' claim for declaratory judgment should be dismissed because declaratory judgment is not a standalone cause of action.

9.  **Matter to be Stricken**.

    a.  Whether Paragraphs 64, 65, 76-81, and 147 of the Complaint should be stricken pursuant to Rule 12(f) because they are prejudicial, redundant, and immaterial allegations in violation of Rule 8.

    b.  Whether Plaintiffs' requests for equitable relief under the First, Second, Fourth, Fifth, and Seventh causes of action at Paragraphs 123, 137, 157, 172, and 182 of the Complaint and Prayer for Relief J should be stricken pursuant to

Rule 12(f) as immaterial and impertinent because Plaintiffs fail to and cannot allege that they lack an adequate remedy at law.

Oracle summarizes the grounds for dismissal for each cause of action, by Plaintiff, in the chart below:

| Cause of Action | M. Katz-Lacabe | J. Golbeck | J. Ryan |
|---|---|---|---|
| **Invasion of Privacy Under the California Constitution** (First Cause of Action) | • No Article III standing<br>• Failure to allege a reasonable expectation of privacy or highly offensive breach of social norms<br>• No equitable relief because adequate remedy at law (*Sonner*) | • Not brought by Golbeck | • Not brought by Ryan |
| **Intrusion Upon Seclusion Under California Common Law** (Second Cause of Action) | • No Article III standing<br>• Failure to allege a reasonable expectation of privacy or a highly offensive breach of social norms<br>• No equitable relief because adequate remedy at law (*Sonner*) | • No Article III standing<br>• No extraterritorial application<br>• Failure to allege a reasonable expectation of privacy or a highly offensive breach of social norms<br>• No equitable relief because adequate remedy at law (*Sonner*) | • No Article III standing<br>• No extraterritorial application<br>• Failure to allege a reasonable expectation of privacy or a highly offensive breach of social norms<br>• No equitable relief because adequate remedy at law (*Sonner*) |
| **California Unfair Competition Law** (Third Cause of Action) | • No Article III standing<br>• No statutory standing<br>• Adequate remedy at law (*Sonner*)<br>• Failure to state a claim under the "unlawful" or "unfair" prong | • No Article III standing<br>• No statutory standing<br>• No extraterritorial application<br>• Adequate remedy at law (*Sonner*)<br>• Failure to state a claim under the "unlawful" or "unfair" prong | • No Article III standing<br>• No statutory standing<br>• No extraterritorial application<br>• Adequate remedy at law (*Sonner*)<br>• Failure to state a claim under the |

| Cause of Action | M. Katz-Lacabe | J. Golbeck | J. Ryan |
|---|---|---|---|
| | | | "unlawful" or "unfair" prong |
| **California Invasion of Privacy Act** (Fourth Cause of Action) | • No Article III standing<br><br>• Failure to state a claim because Oracle is exempt from liability as a party to the alleged communications and because Plaintiffs fail to plausibly allege that Oracle intercepted the "contents" of their alleged communications<br><br>• No equitable relief because adequate remedy at law (*Sonner*) | • Not brought by Golbeck | • Not brought by Ryan |
| **Federal Wiretap Act** (Fifth Cause of Action) | • No Article III standing<br><br>• Failure to state a claim because Oracle is exempt from liability as a party to Plaintiffs' alleged communications, because Oracle had the consent of at least one party to the alleged communications, and because Plaintiffs fail to plausibly allege that Oracle intercepted the "contents" of their alleged communications<br><br>• No equitable relief because adequate remedy at law (*Sonner*) | • No Article III standing<br><br>• Failure to state a claim because Oracle is exempt from liability as a party to Plaintiffs' alleged communications, because Oracle had the consent of at least one party to the alleged communications, and because Plaintiffs fail to plausibly allege that Oracle intercepted the "contents" of their alleged communications.<br><br>• No equitable relief because adequate remedy at law (*Sonner*) | • Not brought by Ryan |

| Cause of Action | M. Katz-Lacabe | J. Golbeck | J. Ryan |
|---|---|---|---|
| **Unjust Enrichment** (Sixth Cause of Action) | • No Article III standing<br><br>• Adequate remedy at law (*Sonner*)<br><br>Failure to state a claim under California law because (1) there is no standalone cause of action for 'unjust enrichment and (2) Plaintiffs fail to allege that Oracle has been unjustly conferred a benefit through mistake, fraud, coercion, or request | • No Article III standing<br><br>• No extraterritorial application<br><br>• Adequate remedy at law (*Sonner*)<br><br>• Failure to state a claim under Florida law because Golbeck received the benefit of the bargain and failed to plausibly allege that she conferred a benefit on Oracle that would be unjust for it to retain | • No Article III standing<br><br>• No extraterritorial application<br><br>• Adequate remedy at law (*Sonner*) |
| **Declaratory Judgment** (Seventh Cause of Action) | • No Article III standing<br><br>• Failure to state a claim because declaratory judgment is not a standalone cause of action<br><br>• No equitable relief because adequate remedy at law (*Sonner*) | • No Article III standing<br><br>• Failure to state a claim because declaratory judgment is not a standalone cause of action<br><br>• No equitable relief because adequate remedy at law (*Sonner*) | • No Article III standing<br><br>• Failure to state a claim because declaratory judgment is not a standalone cause of action<br><br>• No equitable relief because adequate remedy at law (*Sonner*) |

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.      INTRODUCTION

3

Plaintiffs Michael Katz-Lacabe, Jennifer Golbeck, and Johnny Ryan's Complaint cobbles

4

together various media reports and online publications—instead of factual allegations as to each

5

Plaintiff—to challenge the fundamental concept of online advertising.  Defendant Oracle

6

America, Inc. ("Oracle") is a part of Oracle Corporation, an enterprise software company and

7

cloud service provider.  Oracle's business lines include Oracle Advertising ("OA"), an

8

enterprise-level platform of analytical tools for digital advertisers.

9

Advertisers, as they have done for decades in the "offline" world, seek to have their

10

advertisements shown to the individuals most likely to be interested in the ad.  The digital world

11

is no different.  As part of the process of effectively selling ad space to advertisers, website

12

operators place advertising "cookies" on their websites to recognize users without the need to

13

identify users' personal information.  These cookies allow website operators to show more

14

relevant advertisements to site visitors.  OA is a part of that process—but *only if* the internet user

15

gives consent to the website operator for cookies.

16

Plaintiffs allege that Oracle's practice of offering tools to enable its business customers to

17

deliver online advertising tailored to consumers violates various common law and statutory

18

claims.  Critically missing from the Complaint, however, are plausible, fact-based allegations to

19

support their claims.  Instead, Plaintiffs rely on unsupported and inaccurate theories on how

20

Oracle operates.  Contrary to Plaintiffs' theories, Oracle does not function as a standalone

21

marketplace for consumers' raw data, nor does it sell "digital dossiers" on specific individuals.

22

Rather, Oracle offers services designed to help its customers deliver relevant advertising to

23

groups of consumers interested in that content, known as "interest segments" (*e.g.*, "sports

24

enthusiast").  Oracle develops these interest segments from anonymous identifiers collected by

25

third-party websites with the visitor's consent.

26

The Complaint also misrepresents Oracle's commitment to consumer privacy.  Oracle has

27

implemented appropriate technical, physical, and organizational measures to protect personal

28

information.  Oracle routinely reviews and updates its privacy policies to reflect changes in the

1   law and the market and to provide transparency around its data practices.

2   None of the causes of action Plaintiffs assert could award any relief to Plaintiffs for the

3   alleged conduct.  Plaintiffs essentially ask this Court to legislate privacy rights from the bench on

4   an unprecedented scale, based on a misrepresentation of the key facts.  They seek to expand the

5   Court's jurisdiction to adjudicate the claims of residents of fifty different states and an

6   unspecified number of countries, without justification.  They also ask the Court to manufacture a

7   new legal privacy framework and apply it on a global scale, again, without justification.

8   Plaintiffs' Complaint is meant to further the preferred policies of self-described activists, not to

9   seek relief for a legitimate privacy harm remediated under any existing law.  For these reasons,

10   the Court should dismiss Plaintiffs' Complaint in its entirety, with prejudice.

11   ## II.   SUMMARY OF ARGUMENT

12   The Court should dismiss the Complaint for the following reasons.

13   *First*, Plaintiffs each lack Article III standing to bring any claim alleged in the Complaint.

14   As an initial matter, they failed to allege any concrete harm that is fairly traceable to Oracle's

15   conduct, a party with which they admittedly have no direct relationship.

16   *Second*, Plaintiffs do not have a legal basis for their novel extraterritorial application of

17   California law.  In particular, the Court should dismiss the California intrusion upon seclusion

18   and Unfair Competition Law ("UCL") claims of Golbeck and Ryan, neither of whom are

19   California residents.  They allege no basis for invoking California law and have failed to

20   overcome the strong presumption that the state's laws do not apply extraterritorially.

21   *Third*, Plaintiffs are unable to state a single cause of action under the pleading standards

22   of Rule 8.  Plaintiffs fail to even identify which state's common law applies to their unjust

23   enrichment and declaratory judgment causes of action.

24   As to their invasion of privacy and intrusion upon seclusion claims, under California law,

25   Plaintiffs fail to plausibly allege that they had any reasonable expectation of privacy in the data

26   collected, or that Oracle's conduct was "egregious."  Instead, their own allegations repeatedly

27   confirm that Oracle's platform aligns with the applicable laws, not to mention current norms.

28   Plaintiffs also fail to state a claim under the California Invasion of Privacy Act ("CIPA")

and the federal Wiretap Act because Oracle is not a third-party wiretapper, but rather is a party to Plaintiffs' alleged communications, and Plaintiffs cannot plausibly allege that Oracle intercepted the "contents" of their communications.  Oracle has a complete defense to Plaintiffs' federal Wiretap Act claim on the grounds that it obtained the consent of at least one party (its customers) to participate in Plaintiffs' alleged communications.  And Plaintiffs' remaining CIPA claims are not viable without an underlying violation of CIPA's wiretapping provision.

Under the UCL, Plaintiffs lack standing to assert a claim because their only alleged loss—the collection and use of their personal information—is insufficient to meet the statute's "injury-in-fact" requirement.  They also fail to plausibly allege that Oracle's conduct violates the UCL's "unlawful" or "unfair" prongs, the only two prongs under which Plaintiffs assert claims.

Plaintiffs also fail to state a claim for equitable relief.  Their UCL and unjust enrichment claims, and their separate requests for injunctive relief under their invasion of privacy, intrusion upon seclusion, CIPA, federal Wiretap Act, and declaratory judgment claims all fail because Plaintiffs do not and cannot allege an inadequate remedy at law.  Plaintiffs' unjust enrichment claims independently fail because they have not identified which state's law applies to this common law claim.  To the extent Plaintiffs intend to invoke California or Florida law (where Katz-Lacabe and Golbeck allegedly reside), Plaintiffs cannot state an unjust enrichment claim under those states' laws.

Finally, Plaintiffs' claim for declaratory judgment must be dismissed because it is not a standalone cause of action.

### III.   BACKGROUND

#### A.   OA provides a suite of tools for advertisers to better connect with interested consumers

Advertising technology companies—of which Oracle is one of many—maintain software platforms comprised of tools designed to improve the efficiency of digital advertising and its usefulness to consumers.  (Declaration of Purvi G. Patel ("Patel Decl.") Ex. D.)  OA, formerly known as "Oracle Data Cloud," is a suite of cloud-based applications that includes tools used by others engaged in digital advertising, marketing, sales, and e-commerce.  (*Id.* Ex. A.)

1    Oracle's products allow its customers to organize and manage the data they collect

2  independent of Oracle, empowering customers to deliver content to the appropriate audience in a

3  suitable environment.  (*Id.*)  Oracle does not dictate or control what information its customers

4  collect, nor does Oracle use the data its customers collect for Oracle's own purposes.  (*Id*. Ex. B.)

5  Rather, Oracle plays a simple intermediary role, providing tools to businesses seeking to reach

6  only those internet users who are most likely to be interested in their messages.  (*Id.*)  Oracle's

7  services benefit internet users as they receive more tailored and relevant advertisements, and

8  Oracle's products enhance the value of online advertising, which allows websites to provide

9  useful online services and content free of charge.

10    In practice, internet users are confronted with advertisements when visiting virtually every

11  website.  When visiting a website, the user is presented with a simple choice:  would I prefer to

12  see an advertisement that may be relevant to me, or a random advertisement?  If the internet user

13  prefers the latter, they may withhold consent for the placement of an advertising cookie.[1]  If, on

14  the other hand, the internet user chooses the former, they will give consent for the placement of

15  an advertising cookie.  (*Id*. Ex. J.)  The decision to use cookies is made by the website owner, not

16  Oracle, and it is the website owner that implements the software code that adds the cookie once

17  consent is received.  (*Id*. Ex. L.)  If the user has consented, the advertiser (in a fully automated

18  and anonymous system) receives the signal that a website visitor may fall in a certain advertising

19  segment so that the website can show them a relevant ad.  (*Id.*)  Though the products that Oracle

20  provides facilitate ad tailoring, Oracle enters the equation (1) *only after* the website operator

21  agrees to deploy cookies, and (2) *only if* the internet user gives the website operator revocable

22  consent to the placement of cookies by the specific webpage and to the use of cookies by the

23  browser in general.  (*Id*. Exs. J, L.)

24

25    [1] Websites use cookies to recognize website visitors without the need to identify the user's personal information.  (Patel Decl. Exs. J, L.)  This is accomplished by placing a text file on the user's device (in a folder maintained by the web browser).  (*Id.*)  When the user uses the browser

26  to visit a website, the browser can look in that folder and see the text file, allowing the website to recognize the user as the same browser (and likely the same user) that previously visited the website.  (*Id.*)  Cookies use a unique identifier called a "cookie ID" to help identify the user.  (*Id.*)

27  If the user consented to the use of a specific type of cookie, Oracle can identify which websites with that cookie the user's browser visited and can associate that cookie ID with the subject

28  matter of the website(s) (*i.e.*, sports).  (*Id.*)

OA's suite of tools has been developed to achieve this objective.  Each tool operates as a separate offering with different deliverables, benefiting customers and consumers alike:

- **BlueKai**.  BlueKai is a tool that allows Oracle's customers to provide personalized and contextual advertising to the customer's users.  Website operators place JavaScript code on their own websites that, with each visitor's consent, gathers information associated with identifiers known as "cookie IDs."  (ECF No. 1, Class Action Complaint ("Compl.") ¶¶ 28-30.)  BlueKai then links the cookie ID to an interest segment, based on the visitor's activity (*e.g.*, "sports enthusiast").  (Patel Decl. Ex. F.)  BlueKai customers obtain only information about general interest segments associated with certain cookie IDs, not "private information."  (*Id.*)

- **DataLogix**.  The DataLogix tool enables Oracle customers to deliver relevant content to visitors.  DataLogix "aggregates and provides insights" on "consumer spending" and allows customers to "connect[] offline consumer spending to digital marketing that helps marketers increase the effectiveness and measurability of their advertising."  (*Id*. Ex. G.)

- **AddThis**.  AddThis connects people to content and enables marketers to develop more personal and effective relationships with their current and future customers.  (Compl. ¶ 41 n.32.)  With an AddThis-enabled website, internet users can bookmark or post the webpage to their various social media platforms, including Facebook, Pinterest, and Twitter.  (*Id.* ¶ 41.)  AddThis allows Oracle's customers—website operators—to place cookies on their own websites to collect certain data provided by site visitors, and those operators may license portions of that data to Oracle, subject to Oracle's terms and policies requiring that each customer has consent from their website visitors to do so.  (Patel Decl. Ex. H.)

- **Moat Analytics**.  Moat Analytics allows Oracle customers to evaluate their advertising campaigns via aggregated metrics about an advertisement, such as the number of times a given advertisement was viewed.  (Compl. ¶ 40.)  Because these metrics report ad visibility and accessibility only in aggregate, Moat "neither tracks any personally identifiable information (PII), nor employs cookies for measurement."  (Patel Decl. Ex. K.)

Oracle ID Graph is the underlying tool used to enhance, support, and validate OA products like BlueKai, AddThis, and DataLogix.  The Oracle ID Graph is not a product offering; rather it enhances other OA products by enabling connections between the data that customers have collected across marketing channels and devices, so OA's customers can make better use of their data to offer a more relevant experience for interested consumers.  (Compl. ¶ 22.)

Regardless of product offering, Oracle does not place any cookies or any other tracking technology on any third-party website.  Oracle's customers choose to place the cookies on their own websites, and Oracle mandates that its customers have strict privacy controls and data protection practices in place in order to use Oracle's products.  (Patel Decl. Ex. B (discussing these privacy safeguards in Section 6); *see also id.* Ex. J (discussing customers' collection of first-

1   party data in Section 2).)  Oracle's customers must also comply with all applicable "data

2   protection laws, rules, regulations, and regulatory guidelines" and must obtain proper consent.

3   (*See*, *e.g.*, *id.* Ex. B Section 6.1.)

4   **B.     Plaintiffs' overarching allegation—that Oracle creates and sells individual
        consumer profiles—lacks both specificity and any factual basis**

5

6       Plaintiffs seek to use this Court to enforce their policy ideals for the online advertising

7   industry in what they describe as the "unregulated worldwide data marketplace."  (Compl. ¶ 2.)

8   They are not typical class plaintiffs who have suffered some compensable harm, and only one is a

9   California resident.  Katz-Lacabe, a "privacy rights activist," resides in California.  (*Id.* ¶ 3.)

10  Golbeck, a professor at the University of Maryland, resides in Florida.  (*Id.* ¶ 5.)  Ryan advises on

11  data legislation and resides in Ireland.  (*Id.* ¶ 7.)  As summarized in **Exhibit A**, they assert seven

12  causes of action purportedly on behalf of five separate classes, generally defined to encompass

13  consumers whose internet "profile" was "made available for sale or use" to Oracle's customers.

14      Plaintiffs' prime allegation seems to be that Oracle has somehow improperly developed

15  profiles about each of them.  Nowhere, however, do Plaintiffs allege any specific facts about the

16  "profiles" Oracle purportedly created for them, or how they harmed Plaintiffs or are otherwise

17  improper.  The only allegations that may relate to any such "profiles" are Katz-Lacabe's and

18  Golbeck's allegations that they received documents from Oracle regarding the personal data

19  Oracle had collected about them.  (Compl. ¶¶ 4, 6.)  Ryan does not allege he received any such

20  document.  As Katz-Lacabe and Golbeck concede, however, these documents were provided

21  directly to them by Oracle (*id.*)—not from a third party that had purchased the documents or

22  information from Oracle.  As required by law, including under the California Consumer Privacy

23  Act, Oracle provides Data Subject Access Requests (DSARs) regarding information Oracle has

24  lawfully received, upon request by a consumer, free of charge.  (Patel Decl. Ex. C.)  Plaintiffs

25  mischaracterize these statutorily required DSARs as nefarious "profiles" and do not and cannot

26  allege that they were *actually* sold or made available for sale by Oracle to ***anyone***.

27

28

1   **IV.   ARGUMENT**

2       **A.   Plaintiffs Lack Article III Standing**

3          To allege Article III standing, Plaintiffs must plausibly plead that they "(1) suffered an

4   injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

5   likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

6   (2016).  Each named Plaintiff must have standing before they can represent a class and "must

7   allege and show that they personally have been injured," not that the injury has been suffered by

8   other, unidentified class members.  *Id.* at n.6 (citation omitted); *In re Carrier IQ, Inc.*, 78 F. Supp.

9   3d 1051, 1069 (N.D. Cal. 2015); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107

10   (N.D. Cal. 2007).  Plaintiffs cannot demonstrate that they each have standing.

11          **1.   Plaintiffs lack standing because they do not allege an injury that is
     concrete and particularized**

12

13          To state an injury in fact, Plaintiffs must allege an injury that is both "concrete and

14   particularized," and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc.*, 578 U.S.

15   at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Plaintiffs allege only

16   that they have suffered and will continue to suffer amorphous and hypothetical "privacy harms."

17   Neither alleged harm is sufficient for standing.

18          ***First***, Plaintiffs allege, without specificity, that they have suffered and will continue to

19   suffer the corrosion of individual and collective societal autonomy, and that Oracle's practices

20   have caused unspecified "financial, dignitary, reputational, and relational harms."  (Compl. ¶¶ 2,

21   102, 117, 131, 181.)  These speculative and inflammatory allegations, based on

22   mischaracterizations of media reports (*see, e.g.*, *id.* ¶ 64), cannot satisfy *Spokeo*'s requirements

23   for "concrete and particularized" harm that is "not conjectural or hypothetical."  578 U.S. at 339.

24   Moreover, even if the allegations of harm were sufficiently pled, the Complaint does not contain a

25   single allegation that any ***Plaintiff*** suffered these purported harms.

26          Plaintiffs' broad allegations that Oracle creates so-called "dossiers" are equally

27   unavailing.  Plaintiffs vaguely allege that these purported dossiers are "used to further invade

28   Plaintiffs' privacy," thereby harming "their ability to control dissemination and use of

1   information about them." (Compl. ¶¶ 117, 131.) Not only is this alleged harm non-specific, but

2   the theory that Plaintiffs' personal data has some inherent economic value alone cannot satisfy

3   Article III. *See Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *5 (N.D.

4   Cal. Nov. 11, 2011).

5        **Second**, Plaintiffs' remaining allegations of injury relate to hypothetical, potential risks of

6   future harm that are also insufficient to establish standing. (*See, e.g.*, Compl. ¶¶ 73, 76, 82, 117,

7   131); *Spokeo*, 578 U.S. at 338-39. For example, Plaintiffs repeatedly allege that Oracle *could* use

8   consumers' personal information in the future, including for purported sales to state actors or

9   entry into a *future* "unified national health records database." (*See, e.g.*, Compl. ¶¶ 73, 76, 82,

10  117, 131.) The mere risk of future harm, particularly of the speculative nature alleged here,

11  however, is insufficient to confer standing for damages or for injunctive relief. *TransUnion LLC*

12  *v. Ramirez*, 141 S. Ct. 2190, 2212 (2021) (damages claim); *I.C. v. Zynga, Inc.*, No. 20-cv-01539-

13  YGR, 2022 WL 2252636, at *12 (N.D. Cal. Apr. 29, 2022) (injunctive relief claim). Thus,

14  Plaintiffs have not met their burden under Article III. *TransUnion*, 141 S. Ct. at 2211.

15
16       **2.**      **Plaintiffs cannot allege they suffered an injury that is fairly traceable to Oracle's conduct**

17       Plaintiffs also lack standing because they fail to allege causation between Oracle's alleged

18  actions and their alleged harm. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)

19  (citing *Allen v. Wright*, 468 U.S. 737, 757 (1984)). Plaintiffs must "show each link in the causal

20  chain between the defendant and the asserted injury," and must demonstrate that each link is "not

21  hypothetical or tenuous." *Cal. Advocs. for Nursing Home Reform, Inc. v. Chapman*,

22  No. 12-cv-06408-JST, 2013 WL 5946940, at *7 (N.D. Cal. Nov. 5, 2013) (citations omitted),

23  *amended by* 2014 WL 2450949 (N.D. Cal. June 2, 2014). The Supreme Court and the Ninth

24  Circuit have both recognized that a causal link is too weak to support standing where it involves

25  "numerous third parties" whose "independent decisions" collectively have a "significant effect"

26  on a plaintiff's alleged injuries. *Maya*, 658 F.3d at 1070.

27       As an initial matter, Plaintiffs fail to adequately allege that Oracle tracked, profiled, or

28  sold any of ***Plaintiffs'*** personal information. (*See, e.g.*, Compl. ¶¶ 4, 6, 9;) (generically alleging

1   only that each Plaintiff "visited websites" that used "Oracle JavaScript code" to track, compile,

2   and sell their personal information).  This alone defeats Plaintiffs' claim that Oracle's conduct

3   caused them harm.

4        Even so, the numerous third parties that made independent decisions leading to the alleged

5   harm break any causal link that can be traced to Oracle.  Plaintiffs admit repeatedly that they do

6   not have a direct relationship with Oracle.  (*See*, *e.g.*, *id*. ¶¶ 1, 24, 86, 88, 91.)  They further

7   concede that numerous third parties made independent decisions to collect consumers' personal

8   information, which had a significant effect on their alleged injuries.  (*See*, *e.g.*, *id*. ¶ 38

9   ("[**N**]**umerous** high-traffic **websites** like the New York Times, ESPN, and Amazon [] **place**

10  **cookies and/or pixels on their websites**") (emphasis added); *id.* ¶ 41 ("AddThis is a widget, or a

11  piece of code that **web developers incorporate into a website**[.]") (emphasis added); *id*. ¶ 43

12  (alleging that Oracle collects "personal information **collected and sold by other third party**

13  **data brokers**") (emphasis added).)  Plaintiffs' own allegations show that the separate decisions

14  of third parties to collect their information breaks the already "tenuous" causal link to any alleged

15  conduct by Oracle.

16       Because Plaintiffs do not plausibly plead that they suffered an injury in fact that is fairly

17  traceable to Oracle's conduct, each of their claims should be dismissed for lack of standing.

18       **B.**    **This Court Cannot Apply California Law to the Claims of Non-Residents**

19       **1.**    **Golbeck and Ryan fail to allege any basis for invoking California law**

20       Golbeck's and Ryan's California claims under intrusion upon seclusion and the UCL, as

21  well as any unjust enrichment claim asserted under California law, should be dismissed.  They are

22  residents of Florida and Ireland, respectively, and cannot invoke California law.  "A federal court

23  sitting in diversity must look to the forum state's choice of law rules to determine the controlling

24  substantive law." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001),

25  *amended by* 273 F.3d 1266 (9th Cir. 2001).  "Where there is no advance agreement between the

26  parties regarding applicable law," California applies the governmental interest test to select the

27  appropriate law.  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 445 (N.D. Cal.

28  2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019).  Because (i) non-

1    resident Plaintiffs fail to allege a California choice of law provision that governs their claims and

2    (ii) California's governmental interests test confirms that a non-resident's claims are governed by

3    the laws of their respective country and state, Golbeck's and Ryan's California claims must be

4    dismissed.

5        **First**, Plaintiffs' choice of law discussion is conspicuously bare.  (Compl. ¶ 14.)  Beyond

6    a conclusory allegation that California "has a greater interest in the claims of Plaintiffs and Class

7    members than any other state or country" (*id.*), Plaintiffs do not cite any authority to displace the

8    presumption that each sovereignty has the stronger interest in regulating wrongs occurring within

9    its borders.  *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980), *modified*, Mar. 12, 1980;

10   *see also Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("[California] has no legitimate interest

11   in protecting nonresident[s].").

12       **Second**, California's governmental interest test requires the Court to consider whether the

13   laws of the other state or country are "the same or different" from California, and—if different—

14   apply the law of the jurisdiction with the interest that would be "more impaired if its law were not

15   applied."  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82, 87 (2010) (citation omitted).

16   Here, critical differences between the laws of California, Florida, and the European Union—

17   where Plaintiffs reside—confirm that Golbeck and Ryan cannot invoke California law.

18       California's common law intrusion upon seclusion tort departs from the GDPR because,

19   for example, it does not require an evaluation of contemporary social norms.[2]  Even within the

20   United States, the differences between California's and Florida's laws are "not trivial or wholly

21   immaterial" as each state "may impose or not impose liability depending on" its own policy

22   choices.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012).  Unlike California,

23   Florida requires an intrusion into a "private quarter[]" (or "place") where there is an expectation

24   of privacy, regardless of whether the intrusion is physical or electronic.  *See, e.g.*, *Spilfogel v. Fox

25   Broad. Co.*, 433 F. App'x 724, 726 (11th Cir. 2011) (citation omitted); *Malverty v. Equifax Info.*

26

27       [2] *Compare* Article 1(1) GDPR ("This Regulation lays down rules relating to the protection of
     natural persons with regard to the processing of personal data and rules relating to the free
     movement of personal data."), *with In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063

28   (N.D. Cal. 2012) ("Actionable invasions of privacy must be sufficiently serious … to constitute
     an *egregious breach* of the social norms underlying the privacy right.") (citation omitted).

1  *Servs., LLC*, 407 F. Supp. 3d 1257, 1267 (M.D. Fla. 2019).[3]  The procedural rules also differ,

2  particularly with respect to class actions—the GDPR, for example, does not permit consumers to

3  bring class actions directly.[4]  Opt-in versus opt-out rules, as well as the frequency and availability

4  of representative actions, also vary significantly among the jurisdictions.[5]

5         Moreover, each jurisdiction's interest in applying its own laws outweighs California's

6  "little interest in applying its law to compensate citizens of [other states and countries]."  *Paulo v.*

7  *Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986).  "[W]ith respect to regulating or affecting

8  conduct within its borders, the place of the wrong has the predominant interest."  *Hernandez*, 102

9  Cal. App. 3d at 802.  Here, the place of the alleged wrong is in each Plaintiff's home

10  jurisdiction—where the alleged internet activity took place, and where each Plaintiff's browsers

11  and devices are located.  (*See infra* Section IV(B)(2).)  Thus, the Court should dismiss Golbeck's

12  and Ryan's California claims.

13         **2.**      **California's UCL does not apply to non-residents**

14         As a separate and independent ground for dismissal, the territorial scope of the UCL is

15  limited to California when the allegedly wrongful conduct occurred entirely outside of the state.

16  *See Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal.

17  July 9, 2012).  Here, Plaintiffs allege that Oracle tracks internet users through:  (i) cookies "stored

18  on Internet users' web browsers" (Compl. ¶ 28); (ii) JavaScript code placed on "Internet users'

19  electronic devices" (*id*. ¶ 30); and (iii) tracking pixels "embedded into webpages and mobile

20  applications" triggered "[w]hen a user visits a site" (*id*. ¶ 36).  They fail to allege in non-

21  conclusory terms, however, that any of their alleged harms actually occurred within California.

22         Because Golbeck and Ryan accessed the internet on devices located outside California,

23

24        [3] Consumer privacy laws across the 50 states are a "fragmented patchwork," rather than a coherent whole.  Alex Pearce, *Time For a National Privacy Law?*, 38-SPG Del. Law. 6 (2020).

25        [4] *See* Article 80(1) GDPR (providing an opt-in system of data protection representative actions, but data subjects must request that not-for-profit organizations and other public interest associations bring the action on behalf of data subjects).

26

27        [5] *See, e.g.*, *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1335 (S.D. Fla. 2010) (few countries recognize "'opt-out' class actions akin to that provided by Rule 23"); Manning Gilbert Warren, III, *The Prospects for Convergence of Collective Redress Remedies in*

28  *the European Union*, 47 Int'l Law. 325, 332 (2013) (most EU nations with class actions have an opt-in procedure).

1   the alleged tracking necessarily occurred outside the territorial scope of the UCL.  *See, e.g.*,

2   *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) ("The most reasonable interpretation

3   of the statutory definition of interception is that [it] occurs where the tapped phone is located *and*

4   where the [alleged eavesdropper] first overhear[s] the call."); *Popa v. Harriet Carter Gifts, Inc.*,

5   No. 21-2203, 2022 WL 10224949, at *6-7 (3d Cir. Oct. 18, 2022) (reasoning from *Luong* and

6   other decisions that electronic communications are intercepted on plaintiffs' browsers—*i.e.*,

7   where the cookies sit and reroute data).  Plaintiffs fail to plead otherwise.  Rather, they conclude

8   that this conduct "emanated" from California because Oracle maintains headquarters in the state

9   (Compl. ¶ 16), an argument that has been squarely rejected by this Court.  *See Kay v. Copper*

10  *Cane, LLC*, 549 F. Supp. 3d 1014, 1021 (N.D. Cal. 2021) (An inference "about the locus of

11  corporate power does not overcome the heavy presumption against extraterritorial application and

12  establish a sufficient nexus between California and the [wrongful conduct].") (citation omitted).

13  The Court should therefore dismiss Golbeck's and Ryan's UCL claims.

### 3.  Plaintiffs cannot assert California claims on behalf of non-resident members of the putative nationwide and worldwide classes

16      The Court should reject Plaintiffs' attempts to expand California law well beyond its

17  intended reach.  They each seek to represent unidentified members of the "nationwide" and

18  "worldwide" classes for claims brought under California law, without a plausible basis of

19  residency or location of injury in the state.  *See In re Apple & AT&T iPad Unlimited Data Plan*

20  *Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing CLRA and UCL claims by non-

21  California residents who purchased their iPad and data plans outside of California); *Granfield v.*

22  *NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *2-3 (N.D. Cal. July 11, 2012)

23  (dismissing out-of-state plaintiffs' California claims where plaintiff purchased her computer in

24  Massachusetts).  In fact, if permitted, the overwhelming majority of class members would be

25  members without a single connection to the state.  The Court should dismiss all claims for

26  violations of intrusion upon seclusion and the UCL, as well as any California unjust enrichment

27  claim, that Plaintiffs allege on behalf of non-residents.

28

1    **C.      The Complaint Fails to State a Claim Under Rule 12(b)(6)**

2          A court must dismiss a complaint for failure to state a claim under Federal Rule of Civil

3    Procedure 12(b)(6) if the plaintiff (1) fails to state a cognizable legal theory or (2) has not alleged

4    sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556

5    U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

6    Conclusory allegations, without more, are insufficient to defeat a motion to dismiss. *See*

7    *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The Court must not assume

8    the truth of legal conclusions merely because they are pleaded in the form of factual allegations,

9    nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S.

10   at 677-79; *Twombly*, 550 U.S. at 555 (plaintiff must plead "more than labels and conclusions, and

11   a formulaic recitation of the elements of a cause of action will not do").

12                    **1.      Plaintiffs do not satisfy Rule 8's pleading standard**

13         Rule 8 requires the complaint to contain "a short and plain statement of the claim showing

14   that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . .

15   claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 545.

16   Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned,

17   the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. When faced with a

18   complaint that violates Rule 8, the court can either dismiss it or strike the "redundant or

19   immaterial matter" from the complaint under Rule 12(f). *In re Clearly Canadian Sec. Litig.*, 875

20   F. Supp. 1410, 1416 (N.D. Cal. 1995).

21         Complete dismissal is appropriate because the Complaint fails to comply with

22   Rule 8. Plaintiffs fail to plead facts describing how *Oracle*'s conduct violates any of the claims

23   asserted, instead filling their Complaint with allegations complaining about the online advertising

24   industry generally. This is inappropriate. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1176-77

25   (9th Cir. 1996) (affirming dismissal of 53-page, 122-paragraph complaint that included a

26   "rambling[]" narrative containing "immaterial background information" and "storytelling");

27   *Bravo v. L.A. Cnty.*, No. CV 08-6344-AHS (MLG), 2008 WL 4614298, at *2 (C.D. Cal. Oct. 10,

28   2008) ("[A] district court has the discretion to dismiss a prolix complaint that fails to comply with

1   the requirements of Rule 8, notwithstanding the existence of a viable cause of action.")  And

2   rather than fairly apprising Oracle of the precise claims asserted or which state's law applies to

3   their unjust enrichment or declaratory judgment claims, Plaintiffs focus on advocating for

4   worldwide reform of privacy laws.  *See Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch.,*

5   *USA*, No. 20cv915-LL-BLM, 2022 WL 3019858, at *4 (S.D. Cal. July 29, 2022) ("Plaintiff's

6   failure to identify which state laws govern the claims brought on behalf of the putative [] class

7   means that the Court cannot determine whether those claims have been adequately pled.")  These

8   pleading failures alone justify dismissal.

9          In particular and at a minimum, the Court should strike the redundant and immaterial

10  allegations in Paragraphs 76-79, 81 (referencing three proposed bills aimed at data brokers, none

11  of which have been passed by Congress); Paragraphs 64-65, 80 (containing prejudicially false

12  allegations that Oracle can "traffic" in individuals' "highly sensitive personal information");[6] and

13  Paragraph 147 (referencing an alleged exposure of a server holding BlueKai records that is not at

14  issue here).  *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. at 1416 (when a complaint violates

15  Rule 8, the court can dismiss the complaint or strike the redundant or immaterial matter).

16          **2.      Plaintiffs fail to meet the "high bar" to state a claim for invasion of
                       privacy or intrusion upon seclusion (first and second causes of action)**
17

18          Courts have consistently enforced a "high bar" to state a Constitutional claim for invasion

19  of privacy or a common law claim for intrusion upon seclusion.  *Low*, 900 F. Supp. 2d at 1025.

20  Because of the "similarity of the tests" for the two claims, courts consider them together and

21  evaluate whether "(1) there exists a reasonable expectation of privacy, and (2) [whether] the

22  intrusion was highly offensive."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601

23  (9th Cir. 2020); *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 829 (N.D.

24  Cal. 2020).  Plaintiffs cannot clear this high bar.

25

26

27          [6] Plaintiffs' own cited references demonstrate that this is false.  (Compl. ¶ 98; *see also* Patel
     Decl. Ex. J (Oracle "does not create any online interest segments that reflect personal information
28   that we consider sensitive" and it prevents its partners and customers from "using personal
     information provided to them by Oracle" to create sensitive interest segments.).)

1

                **a.**      **Plaintiffs have not alleged a reasonable expectation of privacy**

2

      When determining whether a reasonable "expectation of privacy" exists, "courts consider

3

a variety of factors, including the customs, practices, and circumstances surrounding a

4

defendant's particular activities." *Facebook Tracking*, 956 F.3d at 601-02.  For example, courts

5

may examine what a user would reasonably expect in light of the nature of the allegedly collected

6

data and the defendant's disclosures.  *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193

7

(N.D. Cal. 2020).  Neither of these factors supports a claim that Plaintiffs had a reasonable

8

expectation of privacy.

9

      *First*, the nature of the data allegedly collected was not sensitive in nature and does not

10

support a reasonable expectation of privacy.  Plaintiffs allege in conclusory fashion that Oracle

11

collects their browsing and internet history data, app usage data, identifying contact information,

12

home location, and device data.  (*See*, *e.g.*, Compl. ¶¶ 27, 44, 49, 164.)  But courts have

13

consistently held that there is no reasonable expectation of privacy in this type of information.

14

*See*, *e.g.*, *Low*, 900 F. Supp. 2d at 1025 (plaintiffs did not adequately state a claim for intrusion

15

upon seclusion or invasion of privacy involving "browsing history" data); *In re Google Location*

16

*History Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (geolocation data collection insufficient

17

to establish privacy interest); *Cabral v. Supple, LLC*, No. EDCV 12-85-MWF (OPx), 2012 WL

18

12895825, at *3 (C.D. Cal. Oct. 3 2012) ("mere contact information, such as names and

19

addresses" not enough to create a reasonable expectation of privacy); *In re Yahoo Mail Litig.*, 7 F.

20

Supp. 3d 1016, 1041 (N.D. Cal. 2014); *Heeger*, 509 F. Supp. 3d at 1189 ("no legally protected

21

privacy interest in IP addresses").

22

      In the context of informational privacy, only the "**dissemination or misuse of sensitive**

23

**and confidential** information" is protected.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041

24

(citation omitted; emphasis added).  Although Plaintiffs allege that Oracle collects data such as

25

health, biometric, genetic, pregnancy, religion, political, or sexual orientation information (*see*,

26

*e.g.*, Compl. ¶¶ 82, 114), these conclusory allegations about collection cannot substitute for an

27

allegation regarding dissemination or misuse.  Indeed, the allegations and cited references in the

28

Complaint recognize that Oracle does not use any such sensitive information (Patel Decl. Ex. J),

1   and Plaintiffs admit that Oracle and its customers are *expressly prohibited* from creating interest

2   segments based on sensitive information.  (Compl. ¶ 98.)  In any event, Plaintiffs fail to allege

3   that this collection (which Oracle disputes) was "gratuitous," "improper," or otherwise exceeded

4   the scope of routine commercial behavior, as required to state a claim.  *See Folgelstrom v. Lamps*

5   *Plus, Inc.*, 195 Cal. App. 4th 986, 991-92 (2011), *modified*, June 7, 2011 (citing cases) (the sort of

6   conduct generally arising to the level of invasion of privacy includes the "gratuitous disclosure of

7   a patient's HIV status" or the "improper use of confidential mental health records"); *Hammerling*

8   *v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 2812188, at *12 (N.D. Cal. July 18, 2022).

9       **Second**, Plaintiffs concede that Oracle publicly disclosed its data collection practices.

10   (*See, e.g.*, Patel Decl. Ex. J, Sections 2-4.)  Courts have dismissed privacy claims when the

11   defendant makes such disclosures, even if those disclosures are "ambiguous," as long as the

12   disclosures were not "blatantly deceitful."  *See, e.g.*, *Hammerling*, 2022 WL 2812188, at *12.

13   Here, far from being ambiguous or deceitful, Oracle explicitly and clearly discloses how its

14   advertising technologies and partnerships work (Patel Decl. Ex. J; *see also id.* Exs. E, I),

15   providing full transparency of the information used to assist in the delivery of targeted

16   advertising.  Plaintiffs also allege that Oracle is a publicly registered data broker with the state of

17   California, acknowledging that Oracle's data-brokering activities are publicly disclosed in line

18   with reasonable expectations as established by law.  (Compl. ¶¶ 24, 74, 114, 128.)

19       Plaintiffs allege nothing more than unsupported conclusions about Oracle's data collection

20   practices.  But this Court has found a plaintiff adequately pled a claim for an invasion of privacy

21   or intrusion upon seclusion based on the alleged collection of consumer information in limited

22   cases where a defendant failed to comply with its own specific representation that it would not

23   collect certain data.  *See, e.g.*, *Facebook Tracking*, 956 F.3d at 602 (tracking Facebook users after

24   they had logged out); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *8

25   (N.D. Cal. May 21, 2021) (Google violated "an expectation" it "set" that it would not save

26   "activity on . . . apps"); *Brown v. Google LLC,* No. 20-CV-03664-LHK, 2021 WL 6064009, at *1

27   (N.D. Cal. Dec. 22, 2021) (tracking data in "Incognito Mode" in Chrome).  Plaintiffs do not (and

28   cannot) allege that Oracle did so here.

1

**b.      Plaintiffs fail to allege a "highly offensive" or "egregious"
breach of social norms**

2

3          Plaintiffs' privacy claims also fail because they have not alleged that Oracle's conduct is

4   highly offensive or egregious.  An actionable claim for invasion of privacy "must be highly

5   offensive to a reasonable person, and sufficiently serious and unwarranted so as to constitute an

6   egregious breach of [] social norms." *Facebook Tracking*, 956 F.3d at 606 (citation omitted).

7   Specifically, courts have found there is no "highly offensive intrusion of privacy" for the types of

8   data allegedly collected here:

9          • **Browsing and interest history data**. *In re Google, Inc. Privacy Policy Litig.*, 58 F.
               Supp. 3d 968, 988 (N.D. Cal. 2014) (disclosure of browsing history to third-party app
10             developers not "highly offensive" enough to meet the "high bar" required); *Low*, 900
               F. Supp. 2d at 1025 (disclosure of users' browser history to third parties was not
11             highly offensive);

12         • **App usage data**. *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816,
               at *8 (N.D. Cal. Feb. 2, 2021) (collecting app usage "data . . . does not rise to the
13             requisite level of an egregious breach of social norms or intrusion in a manner highly
               offensive to a reasonable person"); *Hammerling*, 2022 WL 2812188, at *12 (data
14             collection related to non-Google apps was not highly offensive);

15         • **Identifying contact information**. *Folgelstrom*, 195 Cal. App. 4th at 992 (finding that
               defendant's collection of plaintiff's address and use of it to mail him advertisements
16             was not an egregious breach of social norms, but rather "routine commercial
               behavior"); and

17
           • **Device data**. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosures of
18             unique device identification number, personal data, and geolocation information
               without consent were not an egregious breach of social norms).
19

20         Indeed, the bar to state such a claim is so high that "[e]ven disclosure of personal

21   information, including social security numbers" (which Plaintiffs do not allege are at issue) "does

22   not constitute an 'egregious breach of the social norms' to establish an invasion of privacy

23   claim." *Low*, 900 F. Supp. 2d at 1025 (citing *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28

24   (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010)).  As demonstrated in the cases cited

25   above, Plaintiffs' conclusory allegations of Oracle's collection of consumer browsing and internet

26   history data, app usage data, identifying contact information, home location, and device data (*see*,

27   *e.g.*, Compl. ¶¶ 27, 44, 49, 164) reflect "routine commercial behavior" in the advertising industry.

28   *Folgelstrom*, 195 Cal. App. 4th at 992.  This is a far cry from situations where courts have found

1    egregious breaches of social norms, such as "dissemination of photographs of [a] decapitated

2    corpse of an accident victim." *Id.* at 991-92.  Even conclusory allegations that Oracle compiles

3    information relating to "race, religion, sexual orientation, and health" (Compl. ¶¶ 87, 114, 128),

4    which Oracle disputes, is not enough to reach this "high bar" of "egregious" conduct.  *See*, *e.g.*,

5    *id.*; *Hammerling*, 2022 WL 2812188, at *12 (finding "[a] conclusory claim that [defendant]

6    collects general information about a user's religion, political affiliation, or sexual preference"

7    insufficient to be "highly offensive").  Because Plaintiffs cannot allege any "egregious" or

8    "highly offensive" breach of social norms, the Court should dismiss Plaintiffs' privacy claims.

9             **3.      Plaintiffs fail to state a claim for CIPA or the federal Wiretap Act
                        (fourth and fifth causes of action)**
10

11   Plaintiffs do not and cannot plausibly allege that Oracle's advertising practices amount to

12   wiretapping under CIPA or the federal Wiretap Act, as amended by the Electronic

13   Communications Privacy Act §§ 2510, *et seq*.  There are four separate bases for a violation of

14   CIPA § 631(a):  (i) intentionally wiretapping with any telegraph or telephone wire; (ii) willfully

15   attempting to read or to learn the contents or meaning of a communication in transit over a wire;

16   (iii) attempting to use or communicate information obtained from the two previous activities; and

17   (iv) aiding and abetting another in the above conduct.  Cal. Penal Code § 631(a).  Plaintiffs allege

18   violations under subsections (ii)-(iv) only.  (Compl. ¶ 151.)[7]  Mirroring subsection (ii) of CIPA,

19   Plaintiffs also assert a violation of the federal Wiretap Act for "intentional interception of the

20   contents [of] any wire, oral, or electronic communication through the use of a device."  (*Id.*

21   ¶ 158); 18 U.S.C. § 2511(1)(a).  None of Plaintiffs' wiretapping theories are viable.

22            **a.      Plaintiffs fail to state a claim for wiretapping under the federal
                        Wiretap Act and CIPA Section 631(a)(ii)**
23

24   Plaintiffs' wiretapping claims fail for three independent reasons:  (1) Oracle is a party to

25   Plaintiffs' alleged communications and therefore exempted under both CIPA and the federal

26

27

28        [7] Although CIPA § 631(a) is not formally separated into subdivisions, Oracle uses the
     subdivision structure for clarity.

Wiretap Act;[8] (2) Plaintiffs fail to plead the interception of "contents" as defined under CIPA and the federal Wiretap Act;[9] and (3) the federal Wiretap Act is a one-party consent statute, and Oracle's customers have consented to its presence.

*First*, both Oracle and its customers are parties to Plaintiffs' alleged communications, rather than third-party eavesdroppers. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter" to intercept an electronic communication "where such person is a party to the communication."); *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 828, 831-33 (N.D. Cal. 2021) (dismissing CIPA claim under the "party to the communication" exception). Plaintiffs allege they visited several websites deploying Oracle's bk-cortetag.js JavaScript code. (Compl. ¶¶ 29-35, 153.) Oracle did not surreptitiously or unilaterally place its code on those websites. (*See id.* ¶ 38 ("Oracle has agreements with numerous high-traffic websites like the New York Times, ESPN, and Amazon to place cookies and/or pixels on their websites.").) The websites that Plaintiffs allegedly visited are run by Oracle's customers, who intentionally use Oracle's bk.coretag.js JavaScript to analyze their own data, target their advertisements, and measure the reach of their advertising campaigns. (*See id.* ¶ 30 n.15 (describing how *customers* can use collected "coretags" to organize data collected on visitors); *see also* Patel Decl. Ex. D.) Plaintiffs voluntarily visited these websites and knowingly transmitted data to the website operators. The website operators are inherently parties to these alleged communications, and so is Oracle, who, "as [their] service provider," is "an extension" of the website operators rather than an outsider "who presses up against a door to listen to a conversation." *Graham*, 533 F. Supp. 3d at 832 (reasoning that the defendant is "not a third-party wiretapper because it is not an outsider, and instead is a software vendor that provides a service that allows [the website operator] to analyze its own data"); *see also Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same).

---

[8] Courts routinely analyze violations of 18 U.S.C. § 2511(1)(a), for intercepting the contents of an electronic communication, and violations of CIPA § 631(a), for willfully learning the contents of a communication, together. *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) ("[A]nalysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

[9] *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (courts analyze the "contents" requirements under CIPA and the federal Wiretap Act in the same way).

***Second***, Plaintiffs fail to plausibly allege that Oracle intercepted the "contents" of their alleged electronic communications, defeating their claims under CIPA and the federal Wiretap Act.  18 U.S.C. § 2510(4) (defining "intercept" under the federal Wiretap Act as the "aural or other acquisition of the *contents* of any wire, electronic, or oral communication") (emphasis added); *see In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (defining the scope of "contents" under the federal Wiretap Act as the "the intended message conveyed by the communication," not the mere characteristics of the message).  Plaintiffs allege that Oracle used its code to intercept "product views, purchase intent, [and] add-to-cart actions," as well as "specific webpages and information about the webpages."  (Compl. ¶¶ 152, 161.)  Unlike the "words of a text message or an email," product views and add-to-cart actions are non-content record information more akin to "keystrokes, mouse clicks, pages viewed, and shipping and billing information" inputted by visitors to a website.  *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) (concluding that keystrokes, mouse clicks, and pages viewed do not constitute "content" for purposes of wiretapping liability because they lack substantive communicative valence); *Yale*, 2021 WL 1428400, at *3 (same); *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir. 2009) (defining "contents" as the "substance, purport, or meaning" of a communication) (quoting 18 U.S.C. § 2510(8)).

***Finally***, Plaintiffs' federal Wiretap Act claim fails on an independent and alternative basis:  the federal Wiretap Act is a one-party consent statute and, because Oracle's customers independently chose to deploy Oracle's tools on their websites, it follows that all of Oracle's customers necessarily consented to Oracle's participation in Plaintiffs' alleged electronic communications.  (*See* Patel Decl. Ex. B); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a Wiretap Act claim."); *Murray v. Fin. Visions, Inc*., No. CV-07-2578-PHX-FJM, 2008 WL 4850328, at *4 (D. Ariz. Nov. 7, 2008).

### b.      Plaintiffs fail to state a claim under CIPA Section 631(a)(iii)

The third clause of CIPA § 631(a) prohibits anyone from "attempting to use or communicate information obtained as a result of" engaging in violation of subsections (i) and (ii). *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978); *see also In re Google Inc. Gmail Litig.*,

No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013).  Because Plaintiffs do not allege a CIPA violation under § 631(a)(i) (Compl. ¶ 151), and because Plaintiffs' CIPA claim fails under § 631(a)(ii) (*supra* Section IV(C)(3)(a)), Plaintiffs' § 631(a)(iii) claim must also fail.

### c. Plaintiffs fail to state a claim under CIPA Section 631(a)(iv)

CIPA § 631(a)(iv) imposes liability on a person that "aids, agrees with, employs, or conspires with" anyone to violate § 631(a).  Cal. Penal Code § 631(a).  Because Plaintiffs fail to plead that Oracle's customers violated § 631(a), or otherwise allege an underlying § 631(a) violation, their CIPA § 631(a)(iv) claim must also fail.  *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

### 4. Plaintiffs lack standing and fail to state a claim under the UCL (third cause of action)

*Lack of Standing*.  Under the UCL, standing is limited to those who have "lost money or property" as a result of the defendant's alleged unfair competition.  Cal. Bus. & Prof. Code § 17204; *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803-04 (N.D. Cal. 2019); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011). Plaintiffs' only alleged loss is Oracle's "collection and use of their personal information and related profiling."  (Compl. ¶ 143.)  Courts, however, have repeatedly held that a plaintiff's personal information "does not constitute money or property under the UCL."  *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (Sept. 20, 2011); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) ("no federal court has wedged individual digital data into the UCL's 'money or property' box"); *Low*, 900 F. Supp. 2d at 1026 (PI "does not constitute money or property under Proposition 64.").  The "loss" of such information, even where a defendant has purportedly benefited from the sale or use of that information, is therefore insufficient to establish standing under the UCL.  *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (granting motion to dismiss because loss of PI does not constitute "money or property"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (explaining that the

1   "sharing of names, user IDs, location and other [PI] does not constitute lost money or property for

2   UCL standing purposes").

3       ***Failure to State an "Unlawful" or "Unfair" Claim***.[10]  (Compl. ¶¶ 140-42.)  Plaintiffs'

4   "unlawful" prong claim is based on alleged violation of the right to privacy under the California

5   Constitution and intrusion upon seclusion under California common law.  (*Id.* ¶¶ 140-41.)

6   Because Plaintiffs have failed to "state a claim under the predicate law . . . [their unlawful] claim

7   also fails."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citation

8   omitted); *see supra* Section IV(C)(2).  Plaintiffs' "unfair" prong claim fares no better.  Where, as

9   here, the alleged unfair business practices "overlap entirely with the business practices addressed

10  in the . . . unlawful" claim, the unfair prong cannot survive if the unlawful prong does not.

11  *Hadley*, 243 F. Supp. 3d at 1104-05.  Without any additional facts specific to their "unfair" claim,

12  it is duplicative and must be dismissed.

13       Even if considered independently of Plaintiffs' unlawful prong claim, Plaintiffs cannot

14  satisfy either the "balancing test" or the "tethering test" used by California courts to evaluate

15  unfair prong claims.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)

16  (the "balancing test" requires the court to "weigh the 'utility of the defendant's conduct against

17  the gravity of the harm to the alleged victim'") (citation omitted); *Lozano v. AT & T Wireless*

18  *Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (the "tethering test" requires the alleged unfair act

19  to be "tethered to some legislatively declared policy or proof of some actual or threatened impact

20  on competition") (citation omitted).

21       Plaintiffs fail to satisfy the balancing test because, as discussed above, they do not

22  adequately allege they suffered any harm as a result of Oracle's conduct.  (*See supra* Section

23  IV(C)(4)("Lack of Standing").)  And even if they had, any harm allegedly suffered is greatly

24  outweighed by the utility of Oracle's conduct.  Oracle's digital platform provides tools that ensure

25  consumers receive advertisements tailored to their preferences and interests.  This benefits

26  consumers both because it makes the ads they see more relevant to their particular interests and

27  also because it raises the value of online advertising, which helps allow many websites to provide

28

---

[10] Plaintiffs do not assert a claim under the UCL's third prong, the "fraudulent" prong.

1  free online services and content to consumers.  (Patel Decl. Ex. A.)  Oracle's conduct cannot be

2  deemed unfair on balance.  *Davis*, 691 F.3d at 1169.  Likewise, Plaintiffs fail to satisfy the

3  tethering test because they have not sufficiently "tethered" (or "tied") Oracle's conduct to a

4  legislatively declared policy or any anti-competitive conduct.  *Lozano*, 504 F.3d at 735.  On the

5  contrary, the Complaint highlights that current legislative policy *allows* Oracle's conduct and

6  references a number of proposed bills aimed at data brokers that have *not* been passed by

7  Congress.  (*See*, *e.g.*, Compl. ¶¶ 63, 74, 76-79, 81, 112, 126.)  Nor is there a single allegation that

8  Oracle's conduct is somehow actually or potentially "anti-competitive."

9          **5.      Plaintiffs fail to state a claim for equitable relief (all causes of action)**

10              **a.      Plaintiffs' UCL and unjust enrichment claims and requests for
11                      injunctive relief under all other causes of action fail because
                       there is an adequate remedy at law**

12          In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), the Ninth Circuit

13  held that Plaintiffs cannot pursue equitable relief unless they establish that they lack an adequate

14  remedy at law.  Because Plaintiffs fail to allege that they lack an adequate remedy at law and

15  Plaintiffs' UCL and unjust enrichment claims exclusively provide for equitable relief, those

16  claims must be dismissed in their entirety.[11]  Similarly, Plaintiffs' requests for injunctive relief

17  under their constitutional invasion of privacy, California common law intrusion upon seclusion,

18  CIPA, federal Wiretap Act, and declaratory judgment claims should be dismissed or stricken

19  pursuant to Rule 12(f).  (*See* Compl. ¶¶ 123, 137, 157, 172, 182, Prayer for Relief J.)

20          Here, as in *Sonner*, Plaintiffs do not assert anywhere in their 65-page Complaint that

21  money damages are insufficient to compensate them, let alone allege a single fact to support such

22  an assertion.  Nor could they do so:  Plaintiffs seek "compensation" for their invasion of privacy

23  and intrusion upon seclusion claims (*id*. ¶¶ 123, 137); "damages for the greater of $5,000 or

24  three times the amount of actual damages" for their CIPA claim (*id*. ¶ 157); and statutory

25  damages for their federal Wiretap Act claim (*id*. ¶ 172).  (*See also* Prayer for Relief E (seeking an

26

27          [11] *See* Cal. Bus. & Prof. Code § 17203 (UCL remedies); *Chowning v. Kohl's Dep't Stores,
       Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016)

28  ("[D]amages . . . are not available under the UCL" (quoting *Korea Supply Co. v. Lockheed Martin
       Corp.*, 29 Cal.4th 1134, 1148 (2003))).

1    award of "damages, including punitive damage, and/or nominal damages, . . . in an amount

2    according to proof at trial, including interest thereon").)  Because Plaintiffs do not and cannot

3    plead that they lack an adequate remedy at law, they are not entitled to equitable relief.

4                  **b.**      **Plaintiffs fail to state a claim for unjust enrichment under California or Florida law**

5

6         Plaintiffs fail to specify under which state law their unjust enrichment claim arises.  This

7    alone is cause for dismissal.  *See Yothers v. JFC Int'l, Inc.*, No. 20-cv-01657-RS, 2020 WL

8    5015262, at *6 (N.D. Cal. May 14, 2020) (dismissing unjust enrichment claim because plaintiffs

9    failed to specify under which state law the claim arose); *In re TFT-LCD (Flat Panel) Antitrust*

10   *Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) (Plaintiffs "must specify the state laws under

11   which [they are] asserting claims for unjust enrichment").  Regardless, the claim fails under either

12   California or Florida law, the only two state laws that could potentially be at issue.

13        ***California Law***.  "[I]n California, there is no[] standalone cause of action for 'unjust

14   enrichment.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  When

15   there is no contract, courts can convert an unjust enrichment claim into a quasi-contract claim for

16   restitution.  For such a claim, Plaintiffs must allege mistake, fraud, coercion, or request ***and*** that

17   Plaintiffs conferred a benefit on Oracle that would be unjust for it to retain.  *See id.*  Plaintiffs

18   make no such allegations.  Their conclusory allegation that Oracle has "wrongfully and

19   unlawfully trafficked in" their data is insufficient.  (Compl. ¶ 174.)  Nor do Plaintiffs offer any

20   plausible facts to explain how Oracle's alleged monetization of their data (*id.* ¶¶ 174-76)

21   conferred a benefit on Oracle "at the [Plaintiffs'] expense."  *Lectrodryer v. SeoulBank*, 77 Cal.

22   App. 4th 723, 726 (2000).

23        ***Florida Law***.  Florida courts typically dismiss unjust enrichment claims where plaintiff

24   received the benefit of the bargain or where plaintiff failed to plausibly allege a benefit conferred

25   on defendant.  *See N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (Fla. Ct.

26   App. 2000)  ("Unjust enrichment 'cannot exist where payment has been made for the benefit

27   conferred.'"), *abrogated on other grounds by N. Am. Clearing, Inc. v. Brokerage Computer Sys.,*

28   *Inc.*, 666 F. Supp. 2d 1299 (M.D. Fla. 2009); *Anderson v. Best Buy Stores L.P*, No. 5:20-cv-41-

Oc-30PRL, 2020 WL 5122781, at *3 (M.D. Fla. July 28, 2020) (dismissing unjust enrichment claim where plaintiff failed to plausibly allege a benefit conferred on defendant), *report and recommendation adopted sub nom. Anderson v. Coupons in News*, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020).  Golbeck, the only Florida resident, received the benefit of the bargain—access to (unidentified) websites she chose to visit and interact with.  (Compl. ¶ 6.)  Moreover, any allegation that Golbeck conferred a benefit on Oracle that would be unjust to retain is conclusory and insufficient to state a claim.

> **6.     Plaintiffs fail to state a claim for declaratory judgment (seventh cause of action)**

Plaintiffs' cause of action for declaratory judgment must be dismissed.  Where, as here, there is no basis for the underlying claims, dismissal is appropriate.  *Malasky v. Esposito*, No. 16-cv-04102-DMR, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir. 2019); *Hammerling*, 2022 WL 2812188, at *17.

## V.     CONCLUSION

Oracle respectfully asks the Court to dismiss Plaintiffs' Complaint in its entirety, with prejudice, because Plaintiffs (i) lack Article III standing, (ii) cannot justify the extraterritorial application of California law, and (iii) fail to state a claim for relief.  Moreover, because Plaintiffs plead prejudicial, redundant, and immaterial allegations in violation of Rule 8, Oracle respectfully asks the Court to dismiss the Complaint or to strike Paragraphs 64-65, 76-81, and 147 of the Complaint as well as Plaintiffs' requests for injunctive relief in Paragraphs 123, 137, 157, 172, 182, and Prayer for Relief J with prejudice.

Dated: November 7, 2022                    MORRISON & FOERSTER LLP


                                          By:  */s/ Purvi G. Patel*
                                                Purvi G. Patel

                                          **Attorneys for Defendant**
                                          **Oracle America, Inc.**

**EXHIBIT A**

| No. | Cause of Action | Class/Sub-Class | Plaintiff Bringing Cause of Action |
|---|---|---|---|
| 1 | Invasion of Privacy Under the California Constitution | • California Sub-Class[12] | • Katz-Lacabe |
| 2 | Intrusion Upon Seclusion Under California Common Law | • Worldwide Class[13]<br>• United States Sub-Class[14]<br>• California Sub-Class<br>• CIPA Sub-Class[15]<br>• ECPA Sub-Class[16] | • Katz-Lacabe<br>• Golbeck<br>• Ryan |
| 3 | Violation of California's UCL | • Worldwide Class<br>• United States Sub-Class<br>• California Sub-Class<br>• CIPA Sub-Class<br>• ECPA Sub-Class | • Katz-Lacabe<br>• Golbeck<br>• Ryan |
| 4 | Violation of CIPA | • CIPA Sub-Class | • Katz-Lacabe |
| 5 | Violation of the Federal Wiretap Act | • ECPA Sub-Class | • Katz-Lacabe<br>• Golbeck |
| 6 | Unjust Enrichment | • Worldwide Class<br>• United States Sub-Class<br>• California Sub-Class<br>• CIPA Sub-Class<br>• ECPA Sub-Class | • Katz-Lacabe<br>• Golbeck<br>• Ryan |
| 7 | Declaratory Judgment | • Worldwide Class<br>• United States Sub-Class<br>• California Sub-Class<br>• CIPA Sub-Class<br>• ECPA Sub-Class | • Katz-Lacabe<br>• Golbeck<br>• Ryan |

---

[12] Defined as "[a]ll natural persons located in California whose personal information, or data derived from their personal information, was used to create a profile and made available for sale or use through Oracle's ID Graph or Data Marketplace."  (Compl. ¶ 104.)

[13] Defined as "[a]ll natural persons whose personal information, or data derived from their personal information, was used to create a profile and made available for sale or use through Oracle's ID Graph or Data Marketplace."  (*Id.*)

[14] Defined as "[a]ll natural persons located in the United States whose personal information, or data derived from their personal information, was used to create a profile and made available for sale or use through Oracle's ID Graph or Data Marketplace."  (*Id.*)

[15] Defined as "[a]ll members of the California Sub-Class whose contents of their electronic communications were intercepted by the use of Oracle's bk-coretag.js functionality."  (*Id.*)

[16] Defined as "[a]ll members of the United States Sub-Class whose contents of their electronic communications were intercepted by the use of Oracle's bk-coretag.js functionality."  (*Id.*)