Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorney for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Katz-Lacabe, Dr. Jennifer Golbeck and Dr. Johnny Ryan, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ORACLE'S MOTION TO DISMISS THE COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br><br>Date: February 9, 2023<br>Time: 1:30pm<br>Courtroom: 3<br><br>Date Action Filed: August 19, 2022<br>Trial Date: None set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................................. 2

III.  ARGUMENT ...................................................................................................................... 3

    A.    Plaintiffs Have Article III Standing ........................................................................ 3

        1.    Plaintiffs adequately alleged concrete and particularized injury ............... 3

        2.    Plaintiffs' injuries are fairly traceable to Oracle's conduct ....................... 5

    B.    This Court Can Apply California Law to the Claims of the Non-Resident
        Plaintiffs. ................................................................................................................. 6

        1.    Choice of law is inappropriate for disposition at this early stage .............. 6

        2.    California law applies to the claims of the Non-Resident Plaintiffs
             and Class Members ..................................................................................... 7

        3.    Plaintiffs Should Be Afforded an Opportunity for Discovery into
             Oracle's California Operations ................................................................... 9

    C.    Plaintiffs' Complaint Satisfies Rule 8 ..................................................................... 9

    D.    Plaintiffs Have Stated a Claim for Invasion of Privacy Under the California
        Constitution and Intrusion Upon Seclusion under the Common Law .................. 10

        1.    Plaintiffs have alleged a reasonable expectation of privacy .................... 11

        2.    Plaintiffs have alleged highly offensive and egregious conduct.............. 14

    E.    Plaintiffs Have Stated a Claim for Violation of CIPA ......................................... 16

        1.    Oracle is not a party to the communications ............................................ 16

        2.    Plaintiffs allege the "contents' of their communications were
             intercepted ................................................................................................. 18

    F.    Plaintiffs Have Stated a Claim for Violation of ECPA ........................................ 19

    G.    Plaintiffs Have Stated a Claim for Violations of the Unfair Competition
        Law........................................................................................................................ 20

        1.    Plaintiffs have standing under the UCL .................................................... 20

        2.    Plaintiffs satisfy both the unlawful and unfair prongs ............................. 21

    H.    Plaintiffs Have Stated a Claim for Unjust Enrichment. ....................................... 22

    I.    Plaintiffs Claim For Equitable Relief Is Distinct From the Remedies They
        Seek At-Law, And Thus Should Not Be Dismissed Under *Sonner* ..................... 23

    J.    Plaintiffs State A Claim For Declaratory Judgement............................................ 25

    K.    If the Motion to Dismiss Is Not Denied In Its Entirety, Leave to Amend Is
        Appropriate ........................................................................................................... 25

IV.   CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
 No. 21-CV-08017-EMC, 2022 WL 1605673 (N.D. Cal. May 20, 2022) ................................. 4

*Alvarez v. Chevron Corp.*,
 656 F.3d 925 (9th Cir. 2011) .................................................................................................. 21

*Aschroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................ 3

*Astiana v. Hain Celestial Grp., Inc.*,
 783 F.3d 753 (9th Cir. 2015) .................................................................................................. 22

*Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
 85 Cal. Rptr. 2d 301 (Ct. App. 1999) .................................................................................... 22

*Brooks v. Thomson Reuters Corp.*,
 No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......................... 22, 23

*Brown v. Google LLC*,
 No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........................... 20, 21

*Bruton v. Gerber Prods. Co.*,
 703 Fed. App'x 468 (9th Cir. 2017) ........................................................................................ 23

*Cabral v. Supple, LLC*,
 No. EDCV 12-85-MWF (OPX), 2012 WL 12895825 (C.D. Cal. 2012) ................................. 13

*Calhoun v. Google LLC*,
 526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................................... 21

*Callazo v. Wen by Chaz Den Inc.*,
 No. 15-cv-01974-ODW-AGR, 2015 WL 4398559 (C.D. Cal. 2015) ........................................ 7

*Campbell v. Facebook, Inc.*,
 951 F.3d 1106 (9th Cir. 2020) ................................................................................................. 4

*Caro v. Weintraub*,
 618 F.3d 94 (2d Cir. 2010) ..................................................................................................... 19

*Carpenter v. U.S.*,
 138 S. Ct. 2206 (2018) ................................................................................................ 11, 12, 15

*Cullen v. Shutterfly Lifetouch, LLC*,
 No. 20-CV-06040-BLF, 2021 WL 2000247 (N.D. Cal. May 19, 2021) ..................................... 9

*Eichenberger v. ESPN, Inc.*,
 876 F.3d 979 (9th Cir. 2017) ................................................................................................... 4

*ESG Capital Partners, LP v. Stratos*,
 828 F.3d 1023 (9th Cir. 2016) ................................................................................................ 23

*Fernandez v. CoreLogic Credco, LLC.*,
 593 F. Supp. 3d 974 2022) ....................................................................................................... 8

*Folgelstrom v. Lamps Plus, Inc.*,
 195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ..................................................... 15

## TABLE OF AUTHORITIES
### (continued)

Page

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...................................................................... 9

*Gentges v. Trend Micro Inc.*,
  No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) .............................. 8

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................... 18

*Granfield v. NVIDIA Corp.*,
  No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)............................ 8

*Hammerling v. Google LLC*,
  No. 21-CV-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ........... 11, 15

*Harris v. Cnty. of Orange*,
  682 F.3d 1126 (9th Cir. 2012).................................................................................. 3

*Hart v. TWC Prod. & Tech. LLC*,
  No. 20-CV-03842-JST, 2021 WL 1032354 (N.D. Cal. Mar. 17, 2021) ................... 23

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988 (2015) ............................................................................................ 23

*Hass v. Travelex Ins. Servs.Inc.*,
  555 F.Supp.3d 970 (C.D. Cal, 2021) ...................................................................... 24

*Hayden v. Retail Equation, Inc.*,
  2022 WL 2254461 (C.D. Cal. 2022)......................................................................... 14

*Hayden v. Retail Equation, Inc.*,
  No. SACV2001203DOCDFM, 2022 WL 3137446 (C.D. Cal. 2022) ....................... 24

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................................... 13

*Hernandez v. Burger*,
  102 Cal. App. 3d 795 (1980)............................................................................... 9, 14

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ............................................................................................ 11

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1 (1994) ........................................................................................... 11, 15

*Ho v. Pinsukanjana*,
  No. 17-CV-06520-NC, 2018 WL 2425980 (N.D. Cal. Apr. 24, 2018) ................... 10

*I.C. v. Zynga, Inc.*,
  No. 20-CV-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) ................... 5

*In re Adobe Sys., Inc. Priv. Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................... 22

*In re Anthem Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 17, 2016)................... 21

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ..................................................................... 22

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ........................................................................... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................... 14, 23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ............................................................................... 19

*In re Google Location Hist. Litig.*,
  514 F.Supp.3d 1147 (N.D. Cal. Jan. 25, 2021) ....................................................... 13

*In re Google RTB Consumer Priv. Litig.*,
  No. 21-CV-2155-YGR, 2022 WL 2165489 (N.D. Cal. June 13, 2022) ....................... 4, 18, 19

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 15

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 15

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020) ..................................................................... 21

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ............................................................................... 19

*In re Pharmatrak, Inc.*,
  329 F.3d 9 (1st Cir. 2003) ................................................................................. 18

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204(C.D. Cal. 2017) ................................................................... 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................................................... 21

*In re Zynga Privacy Litig*,
  750 F.3d 1098 (9th Cir. 2014) ........................................................................... 18

*Kay v. Copper Cane, LLC*,
  549 F. Supp. 3d 1014 (N.D. Cal. 2021) ................................................................. 7

*Kellman v. Spokeo, Inc.*,
  No. 3:21-CV-08976-WHO, 2022 WL 1157500 (N.D. Cal. Apr. 19, 2022) ..................... 24

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022) ................................................................. 20

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ..................................................................................... 21

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................... 25

*Low v. LinkedIn Corp.*,
  No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ............. 4, 5, 13, 15

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lozano v. AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)................................................................................ 22

*Lundy v. Facebook Inc.*,
   No. 18-CV-06793-JD, 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ................. 23

*Malverty v. Equifax Info. Servs., LLC*,
   407 F. Supp. 3d 1257 (M.D. Fla. 2019) ................................................................. 8

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)....................................................................... 6, 7, 8

*McCoy v. Alphabet, Inc.*,
   No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)...................... 15

*Moran v. Edgewell Pers. Care, LLC*,
   No. 21-CV-07669-RS, 2022 WL 3046906 (N.D. Cal. Aug. 2, 2022) ................... 25

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................ 15, 16

*Paulo v. Bepex Corp.*,
   792 F.2d 894 (9th Cir. 1986)................................................................................ 9

*Petrie v. Elec. Game Card, Inc.*,
   761 F.3d 959 (9th Cir. 2014)............................................................................... 10

*Popa v. Harriet Carter Gifts, Inc.*,
   No. 21-2203, 2022 WL 10224949 (3d Cir. Oct. 18, 2022).................................... 8

*Revitch v. New Moosejaw, LLC*,
   No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............... 5, 17

*Rex v. Chase Home Fin. LLC*,
   905 F. Supp. 2d 1111 C.D. Cal. 2012).................................................................. 21

*Riley v. California*,
   573 U.S. 373 (2014) ........................................................................ 11, 12, 15

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).............. 13, 14

*Rojas v. Bosch Solar Energy Corp.*,
   443 F. Supp. 3d 1060 (N.D. Cal. 2020) ................................................................ 22

*Rowe v. Educ. Credit Mgmt. Corp.*,
   559 F.3d 1028 (9th Cir. 2009)................................................................................ 3

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................................... 18, 19

*Smith v. State Farm Mut. Auto. Ins. Co.*
   93 Cal.App.4th 700 (Nov. 20, 2001).................................................................... 22

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)......................................................................... 24, 25

*Spilfogel v. Fox Broad. Co.*,
   433 F. App'x 724 (11th Cir. 2011) ......................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011)............................................................................. 3

*Stromberg v. Qualcomm Inc.*,
  14 F.4th 1059 (9th Cir. 2021) ..................................................................... 6, 7, 8

*Sussman v. Am. Broad. Cos., Inc.*,
  186 F.3d 1200 (9th Cir. 1999).......................................................................... 19, 20

*Swearingen v. Yucatan Foods L.P.*,
  24 F. Supp. 3d 889 (N.D. Cal. Feb. 7, 2014) ..................................................... 9

*Thomas v. Dun & Bradstreet Credibility Corp.*,
  100 F. Supp. 3d 937 (C.D. Cal. 2015) ............................................................... 6

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)................................................................................... 3, 4

*U.S. v. Luong*,
  471 F.3d 1107 (9th Cir. 2006)........................................................................... 8

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008)............................................................................ 15

*Wallace v. SharkNinja Operating, LLC*,
  No. 18-cv-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020)...................... 9

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......................................................... 14, 15

*Wu v. Sunrider Corp.*,
  No. CV 17-4825 DSF (SSX), 2017 WL 6880087 (C.D. Cal. 2017)........................ 22

*Yale v. Clicktale, Inc.*,
  No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)................... 18, 19

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  No. 19-CV-00792-EMC, 2022 WL 844152 (N.D. Cal. Mar. 22, 2022).................... 25

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................. 19

*Zapata Fonesca v. Goya Foods, Inc.*,
  No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)..................... 6

*Zeiger v. WellPet LLC*,
  526 F.Supp.3d 652 (N.D. Cal. 2021) ................................................................ 24

**Statutes**

18 U.S.C. § 2510 ............................................................................................. 18

18 U.S.C. § 2511(2)(d) ..................................................................................... 19

18 U.S.C. § 2518(3) ........................................................................................... 8

28 U.S.C. § 2201(a) ......................................................................................... 25

Cal. Civ. Code § 1798.1 ................................................................................... 22

Cal. Civ. Code § 1798.81.5(a) .......................................................................... 22

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION TO
DISMISS COMPLAINT; CASE NO. 3:22-CV-04792

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Treatises**

5A Wright & Miller, Federal Practice and Procedure § 1380 (2014) ............................................. 10

Restatement (Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977) ....................................... 4, 8

**Other Authorities**

Ballot Pamp., Proposed Stats. & Amends. To Cal. Const. With Arguments to Voters. Gen. Election (Nov. 7, 1972) ........................................................................................................... 15

Cal. Const. art. 1, § 1 ............................................................................................................. 27

Rest., Restitution, § 1, com. e ................................................................................................. 29

I.   **INTRODUCTION**

Plaintiff class representatives are informed and concerned citizens who allege that Oracle's data market and related products and services, together with the collection of data and surveillance of the personal lives that supports them, present an egregious and a serious invasion of privacy interests long recognized in our society through the common law, and well-established in Constitutional and statutory law.  Plaintiffs' Class Action Complaint ("Complaint," Dkt. No. 1) sets forth, in extraordinarily detailed allegations—including over 150 footnotes to Oracle's own technical documentation, forensics, and other sources of evidence—the technology and other means by which Oracle collects and aggregates personal data for use in its surveillance tools, including what Oracle itself describes as "combining [data] into a single consistent and accurate customer *profile*."  Compl. ¶ 22 (emphasis added).

Oracle's interception and unauthorized collection of personal data itself violates Plaintiffs' protected privacy interests, including State and Federal wiretapping laws, such as through Oracle's use of its "core tag" JavaScript code that captures the content of Internet communications.  Oracle's centralized aggregation of personal data into individual profiles, or digital dossiers, which it effectively sells through products and services, also violates Plaintiffs' protected privacy interests.  Oracle sells this detailed personal information to third parties, either directly, or through its "ID Graph" and other related products and services (e.g., "BlueKai," "Datalogix, "AddThis") derived from this data. Using Oracle's products based on these digital dossiers, Oracle's clients profile class members, manipulate their political activities, impair their control of their personal information, and corrode their autonomy and freedom.

In the face of these detailed allegations that, if true, describe straightforward violations of well-established law, Oracle's motion to dismiss seeks an adjudication on the merits, in part by attempting to rely on its own tendentious interpretations of materials extraneous to the Complaint. Oracle repeatedly misstates not only the import, but the actual substance of Plaintiffs' allegations, while also eliding the substantial authority weighing against its arguments.

Oracle's legal arguments fail on the merits. Article III standing here is well-supported, and Oracle's arguments to the contrary stray from binding precedent.  Plaintiffs have plausibly alleged

a factual and legal basis to apply California state law to all proposed class members, but, respectfully, the Court's determination of that issue is best done at class certification on a fuller record. The Complaint supports every element of every claim with specific factual allegations, which Oracle meets only by trying—impermissibly on this motion—to refute. Plaintiffs have thoroughly pled a basis for having a reasonable expectation of privacy in their affairs that Oracle has, by design and with purpose, transgressed, but that expectation and the degree to which Oracle has defeated it, presents an inherently fact-intensive question that should not be resolved on this motion. Plaintiffs have adequately alleged that if they can prove their claims at trial, they will be entitled to declaratory and injunctive relief, damages at law and, distinct from damages at law, equitable restitution. Plaintiffs respectfully submit that Oracle's motion should be denied in full, but if granted to any extent, the Court should grant leave to amend.

## II.    FACTUAL BACKGROUND

The extraordinarily detailed allegations in the Complaint set forth the relevant background for consideration in this Rule 12(b)(6) motion to dismiss. Dkt. No. 1. Plaintiffs allege that Oracle engages in wrongful acquisition and subsequent disposition of the personal data of the Plaintiffs and Class members. Oracle's collection and interception of personal data is so pervasive that Oracle effectuates surveillance of Plaintiffs and the Class, chronicling the activities and movements of their daily lives. Compl. ¶¶ 116, 130. Oracle collects minute details about Plaintiffs' Internet and *offline* activities, including their brick-and-mortar purchases and location information. *Id*. ¶¶ 44, 49, 52, 87, 115, 116, 129, 130. Oracle creates dossiers based on this online and offline data, which constitute precisely the sort of "cradle-to-grave profiles" the right to privacy under the California Constitution was created to constrain. *See, e.g., id*. ¶¶ 64-65, 72, 74-81, 116-121.

Oracle's "background" section largely presents a self-serving gloss on documents it pulled from its own website, most of which are extraneous to the Complaint, and thus are improperly before the Court on this motion. Respectfully, the Court should not consider that material on this motion.[1] *See* Plaintiffs' Opposition to Oracle's Request for Judicial Notice, filed herewith ("Opp'n

---

[1] Plaintiffs object to Oracle's additional four pages of argument, styled as a "Statement of the Issues to Be Decided" with an appended chart, included with its motion, as outside the letter and spirit of

to RJN"), at 3 (Oracle concedes the purpose of the material it submits is to tell its side of the story by "provid[ing] the Court with a clearer picture of Oracle's business practices.").  In focusing on facts exogenous to the Complaint, Oracle's motion as a whole largely ignores' the extensive allegations of Plaintiffs' Complaint.

## III.    ARGUMENT

The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp*., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation and quotation omitted).  The Complaint need only "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [a] plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A.    Plaintiffs Have Article III Standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Oracle ignores binding jurisprudence holding that claims substantively identical to the ones alleged here, including intrusion upon seclusion, allege a concrete harm sufficient to give rise to Article III standing. *Id*. at 2204 ("[v]arious intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example . . . *intrusion upon seclusion*") (citations omitted, emphasis added).

#### 1.    Plaintiffs adequately alleged concrete and particularized injury

Courts within the Ninth Circuit consistently hold that historical privacy rights

---

the 25-page limit on briefing. Civil L.R. 7-2(b) (brief, including notice of motion and memorandum of points and authorities, may not exceed 25 pages). Plaintiffs respectfully request the Court to strike or disregard the material at pages "ix-xii" of Oracle's filing.

"'encompass[] the individual's control of information concerning his or her person' . . . the violation of which gives rise to a concrete injury sufficient to confer standing." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook Tracking*"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Privacy torts do not always require additional consequences to be actionable . . . the 'intrusion itself' makes the defendant liable.") (citing Restatement (Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977)).  Likewise, claims under the Wiretap Act (ECPA) and CIPA, particularly where the defendant creates "cradle-to-grave profile[s] without users' consent," allege harm or a material risk of harm sufficient to confer Article III standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598-599.  In *Facebook Tracking*, the Ninth Circuit explained: "the legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act . . . and CIPA . . . these statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.*at 598; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (where plaintiffs "claimed a violation of the concrete privacy interests that ECPA and CIPA protect . . . No more is needed to support standing").

Oracle ignores *Facebook Tracking* and other recent authority within this district that has found Article III standing with respect to closely analogous allegations.  In *In re Google RTB Consumer Priv. Litig.*, No. 21-CV-2155-YGR, 2022 WL 2165489, at *4 (N.D. Cal. June 13, 2022), the court found Article III standing based on allegations that Google "surreptitiously observes, collects, and analyzes real-time information about everyone engaging on [its] platforms," and where, as here "the complaint contains factual allegations describing the nature and extent of Google's [cf. Oracle's] data collection and disclosure practices." *See also Al-Ahmed v. Twitter, Inc.*, No. 21-CV-08017-EMC, 2022 WL 1605673, *7 (N.D. Cal. May 20, 2022) ("[i]nvasion of privacy by itself is sufficiently concrete and particularized to confer Article III standing").[2]

---

[2] Oracle's authority is not to the contrary.  *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) predates *Spokeo*, *Facebook Tracking*, and *TransUnion*, and thus relies on outdated analysis.  Moreover, the court there noted that the plaintiffs had *not* brought a Wiretap Act claim, which claim may have conferred standing under then-current

In short, Plaintiffs bring the same claims that have been consistently held to give rise to concrete and particularized injury.  Plaintiffs allege in detail that Oracle 1) intercepted their electronic communications by, for example, the use of Oracle JavaScript code; 2) tracked, compiled, and analyzed their web browsing and other activity and thereby created electronic profiles on them; 3) processes personal data to enrich the profiles of them and make their personal information available to third parties without their consent; and, that 4) Plaintiffs and the Class members suffered as a result.  *See, e.g.*, Compl. ¶¶ 4-9; ¶ 117.

### 2. Plaintiffs' injuries are fairly traceable to Oracle's conduct

Oracle's characterization that Plaintiffs only "generically" allege that Oracle has trafficked in Plaintiffs' personal data is belied by the actual allegations, which not only specifically allege that Plaintiffs fell into Oracle's data collection traps, but also that Oracle has retained their data.  Compl. ¶¶ 26-73.   The Complaint details what Oracle itself tells the world it does with this data, inescapably leading to the reasonable inference that Oracle sells each Plaintiff's data to third parties, either directly, or through its "ID Graph" and other related products and services.  *Id.*

Without supporting authority, Oracle conjures "numerous third parties that made independent decisions" that break any causal link that can be traced to Oracle. Motion to Dismiss, Dkt. No. 23 (*"MTD"*) at 9.  However, Plaintiffs allege an uninterrupted causal chain with Oracle at each link, *i.e.*, that Oracle itself collects, analyzes, profiles, and sells Plaintiffs' data.  Compl. ¶¶ 26-73.  That other third parties may be involved in *abetting* Oracle's violations of their privacy rights does not absolve Oracle of liability. *See Revitch v. New Moosejaw, LLC,* No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (website owner's "enabling" of third-party wiretapping by embedding data broker's tracking code on website did not absolve data broker of liability).

Plaintiffs' injuries are concrete and particularized and also "fairly traceable" to Oracle's conduct sufficient to confer Article III standing.

---

law. *Id.* at *6, fn. 1. *I.C. v. Zynga, Inc.*, No. 20-CV-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) stands for the proposition that where "risk of harm" is "not sufficiently imminent or substantial to confer standing," injunctive relief is not appropriate. *Id.* at *12. Plaintiffs here have properly alleged a *current* harm sufficient to confer standing, and thus Oracle's arguments concerning "hypothetical" or "conjectural" harm is irrelevant. *See, e.g.,* Compl. ¶¶ 102, 117, 131.

**B.**   **This Court Can Apply California Law to the Claims of the Non-Resident Plaintiffs.**

Oracle's choice of law analysis is fatally infirm and provides no basis to dismiss Dr. Golbeck's and Dr. Ryan's California claims. In the Ninth Circuit, the first step of the choice of law analysis is to determine whether California law applies extraterritorially, and *then* determine whether the defendant has met its burden of demonstrating that foreign law, and not California law, should apply to the class claims. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 589-590 (9th Cir. 2012). Where California law may be applied extraterritorially, as it may here, courts apply the three-step government interest test[3] to determine California law should apply, as it should here.

**1.**   **Choice of law is inappropriate for disposition at this early stage**

Oracle fails to engage in the rigor of a choice of law analysis, and instead only briefly suggests the existence of differences between California law and the law where these Plaintiffs reside. Oracle does not walk through the three-step governmental interests test, nor does Oracle provide any analysis on whether "the conflict between California's law and foreign law is so severe as to preclude applying California law to Plaintiffs' nationwide [and worldwide] class claims." *Zapata Fonesca v. Goya Foods, Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *4 (N.D. Cal. Sept. 8, 2016). This lackadaisical approach warrants denying Oracle's argument outright. *See infra* Section III.B.2; *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 947 (C.D. Cal. 2015) ("Defendant's cursory reference to Oregon's limitations period [is] insufficient to show a compelling reason to justify displacing California law.").

---

[3] "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Finally, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021) (internal quotations and citations omitted).

2.     **California law applies to the claims of the Non-Resident Plaintiffs and Class Members**

Oracle's choice of law argument fails on the merits because the California law claims have extraterritorial application and should be so applied under California's governmental interest test. Plaintiffs meet their "initial burden to show that… California has significant contact or significant aggregation of contacts to the claims of each class member." *Stromberg*, 14 F.4th at 1067-68 (citing *Mazza*, 666 F.3d at 589–90) (internal quotations omitted).  Sufficient contacts in California are demonstrated where a defendant has a principal place of business in California, class members reside in California, and/or the business decisions related to the conduct at issue were made in California.  *Id*. at 1068.  Oracle does not dispute its having a principal place of business "for a majority of the class period," located in Redwood City, California.  Compl. ¶ 10.  Plaintiffs have further alleged that Redwood City is the "nerve center" of Oracle's business activities, "the place where its high-level officers direct, control, and coordinate the corporation's activities, including its marketing, software development, and major policy, financial, and legal decisions."  *Id*. ¶ 15. Plaintiffs have thereby alleged that Oracle's conduct giving rise to their claims, "emanated from, and was conceived and executed in, California."  *Id*. ¶ 16.[4]

Oracle's argument that the "territorial scope of the UCL is limited to California" because the non-resident Plaintiffs' harm occurred "entirely out of state" fails.  MTD at 11.  UCL claims apply extraterritorially where the defendant's actionable conduct occurs in California.  *See Callazo v. Wen by Chaz Den Inc.*, 15-cv-01974-ODW-AGR, 2015 WL 4398559 at *3-5 (C.D. Cal. 2015) (collecting cases); *Stromberg*, 14 F.4th at 1068; *Mazza*, 666 F.3d at 589-590.  Plaintiffs allege that Oracle's conduct "emanated from, and was conceived and executed in, California."  Compl. ¶ 16.  These allegations "demonstrate wrongful conduct in California and are sufficient at the

---

[4] Oracle's reliance on this Court's decision in *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1021 (N.D. Cal. 2021) is misplaced. In *Kay*, unlike here, the plaintiff failed to even *allege* the defendant's business decisions were "directed from California or had anything to do with California." *Kay*, 549 F. Supp. 3d 1014 at 1021.  Those very different circumstances could not offer any basis to infer a "sufficient nexus between California and the misrepresentations." *Id*. In contrast here, no "inference" is necessary: Plaintiffs *specifically allege* Oracle's principal place of business is in California and that Oracle's privacy-invasive conduct "emanated" from California.  Compl. ¶ 10, 15-16.

1   pleading stage to buttress any concerns regarding [] any attenuation of California's connections to

2   Plaintiff's claims."[5]   *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 989 (S.D. Cal.

3   Mar. 25, 2022).

4          Because California has a significant aggregation of contacts to the claims of the non-

5   resident Plaintiffs and Class Members, "the burden shifts to [Oracle] to demonstrate that foreign

6   law, rather than California law, should apply to class claims" under California's government

7   interest test.   *Stromberg*, 14 F.4th at 1068 (citing *Mazza*, 666 F.3d at 590) (internal quotations

8   omitted).   Again, Oracle's provides no rigorous analysis.   Attempting to claim a difference between

9   California and Florida law on Intrusion Upon Seclusion, Oracle points to superficial differences in

10  the language courts use to express the concept—even though both jurisdictions rely on the

11  *Restatement of Torts (Second)* to define Intrusion Upon Seclusion.[6]   *See In re Vizio, Inc., Consumer*

12  *Priv. Litig.*, 238 F. Supp. 3d 1204, 1231–32 (C.D. Cal. 2017).   Oracle's arguments regarding the

13  GDPR are similarly unavailing; while Oracle has made general references to the procedural

14  differences between California law and the GDPR, "it has failed to provide the court with a robust

15  analysis that demonstrates how the differences are material to this litigation."   *Fernandez*, 593 F.

16  Supp. 3d at 987.   Indeed, Oracle fails to analyze the substantive data protection rights under the

17  ─────────────────────

18  [5] Oracle's authorities are inapposite or irrelevant.   The issue before the courts in *Gentges*, *In re Apple*, and *Granfield* was Article III standing, not choice of law.   *Gentges v. Trend Micro Inc.*, No.

19  C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (holding "plaintiffs lack standing" because "none of the Plaintiffs resides (sic) in California and none of the conduct that forms the basis of this action arose here"); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*,

20  802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (plaintiffs lacked standing to assert claims under the UCL because the terms of service at issue "selects the law of each consumer's respective home

21  state"); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *2-3 (N.D. Cal. July 11, 2012) (plaintiff *conceded* choice of law issue where purchase was made out of state).   The

22  Ninth Circuit's decision in *Luong*, and the Third Circuit's decision in *Popa*, MTD at 12, are completely irrelevant because they do not discuss choice of law or the UCL.   *See U.S. v. Luong*,

23  471 F.3d 1107, 1109 (9th Cir. 2006) (holding the district court had jurisdiction to authorize the wiretap of defendant's phone under 18 U.S.C. § 2518(3)); *Popa v. Harriet Carter Gifts, Inc.*, No.

24  21-2203, 2022 WL 10224949, at *6-7 (3d Cir. Oct. 18, 2022) (vacating the district court's order regarding the interpretation of "interception" under Pennsylvania's Wiretapping and Electronic

25  Surveillance Control Act).

    [6] Moreover, neither of the cases Oracle relies upon are like this one. The unpublished Eleventh

26  Circuit case, *Spilfogel*, concerned a recording that occurred on a public street.   *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 726 (11th Cir. 2011).   In *Malverty*, , the plaintiff labeled her claim

27  "intrusion upon seclusion," but the Court held the plaintiff was actually attempting to allege a claim for publication of private facts because Equifax accidently disclosed credit report information to

28  third parties.   *Malverty v. Equifax Info. Servs., LLC*, 407 F. Supp. 3d 1257, 1267 (M.D. Fla. 2019).

GDPR, many of which mirror those available under California law.  Oracle fails to engage in any meaningful discussion of the remaining two steps of California's choice of law test *at all* (*see* MTD at 10-11), let alone an "analytically rigorous" one, and on those grounds alone Oracle's motion should be denied.  *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012).  Oracle has failed to demonstrate, at this stage, that California law should be displaced on the facts of this case. [7]

### 3.  Plaintiffs Should Be Afforded an Opportunity for Discovery into Oracle's California Operations

Dismissing the non-resident California claims on choice-of-law grounds before an opportunity to conduct discovery into Oracle's data collection practices would be unduly prejudicial.  *See Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020).  Dismissal of non-resident Plaintiffs' California claims is premature at this juncture and better addressed at class certification, as courts in this District have repeatedly held.  *See, e.g., Cullen v. Shutterfly Lifetouch, LLC*, No. 20-cv-06040-BLF, 2021 WL 2000247, at *9 (N.D. Cal. May 19, 2021); *Swearingen v. Yucatan Foods L.P.*, 24 F. Supp. 3d 889, 896 (N.D. Cal. Feb. 7, 2014) (J. Seeborg) (holding the propriety of a nationwide class, which requires a "detailed choice-of-law analysis," should be addressed at class certification after discovery, not on a motion to dismiss).

### C.  Plaintiffs' Complaint Satisfies Rule 8

Oracle's statement that "Plaintiffs fail to plead facts describing how Oracle's conduct violates any of the claims asserted, instead filling their Complaint with allegations complaining about the online advertising industry generally" (MTD at 13) cannot be squared with extensive allegations and factual citations in the Complaint.  Plaintiffs' complaint describes in detail 1) the

---

[7] Oracle's cases are inapposite.  The Ninth Circuit in *Paulo v. Bepex Corp*., 792 F.2d 894, 896 (9th Cir. 1986) held Ontario's interest in applying its law outweighed California's because the plaintiff employees were located in Toronto, Canada, "the employee and the defendant were both participants in Ontario's workers' compensation system at the time of the injury," and California had "little interest in applying its law to compensate the citizens of Ontario."  *Id.*  The California Court of Appeal in *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980), held that California had no legitimate interest in having its law applied because the plaintiff was a resident and citizen of Mexico and the car accident at issue occurred in Mexico.  Here, unlike *Paulo* and *Hernandez*, Plaintiffs have alleged California has "significant interest in regulating the conduct of businesses operating within its borders."  Compl. ¶ 18.

operation of Oracle's ID Graph and the ways in which it violates statutory and common law (Compl. ¶¶ 45-56; 120, 134, 146); 2) the operation of Oracle's Data Marketplace and its facilitation of the purchase and sale of Plaintiffs' data (*id.* ¶¶ 57-73); 3) the operation of Oracle's JavaScript code and how it violates ECPA and CIPA (*id.* ¶¶ 29-35; 138-172); and 4) the ways in which Oracle's Datalogix, AddThis, and Bluekai products operate to collect and disseminate Plaintiffs' sensitive data without their knowledge or consent (*id.* ¶¶ 20-44).

Oracle's request that the Court "strike" "redundant and immaterial" allegations in the complaint is baseless.  The specific allegations at issue directly relate to Oracle's conduct and are neither redundant nor immaterial (*id.* ¶¶ 76-79, 81 (referencing data broker conduct Oracle engages in); ¶¶ 64-65 (referencing data available on Oracle's Data Marketplace), ¶ 80 (discussing Oracle website trackers); ¶ 147 (describing "data security risks that are inherent in Oracle's surveillance practices")), and also illustrate the extent to which Oracle's conduct is highly offensive and egregious (*see, e.g.,* discussion Section D.2 below).  That Oracle is evidently embarrassed by these allegations is no basis to strike them. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014) (motions to strike are generally disfavored); *Ho v. Pinsukanjana*, No. 17-CV-06520-NC, 2018 WL 2425980, at *2 (N.D. Cal. Apr. 24, 2018) ("If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits.") (citing 5A Wright & Miller, Federal Practice and Procedure § 1380 (2014)).  Similarly, Oracle's statement that "Plaintiffs focus on advocating for worldwide reform of privacy laws" (MTD at 14) is wholly unsupported by *anything* in the Complaint.  To the contrary, the Plaintiffs allege that *current* privacy law, including decades of constitutional and common law, entitles them to the relief they seek. That is the entire point of the Complaint.  Oracle's motion to strike should be denied.

### D. Plaintiffs Have Stated a Claim for Invasion of Privacy Under the California Constitution and Intrusion Upon Seclusion under the Common Law

Under the California Constitution and common law intrusion upon seclusion, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez*

*v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).  Both issues present "mixed questions of law and fact."  *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994).

### 1.    Plaintiffs have alleged a reasonable expectation of privacy

A reasonable expectation of privacy has been violated where a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms."  *See Facebook Tracking*, 956 F.3d at 601-02 (quoting *Hernandez*, 47 Cal. 4th at 286).  "To make this determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities."  *Id.* at 602 (citing *Hill*, 7 Cal. 4th at 36).  In *Facebook Tracking,* plaintiffs alleged that Facebook obtained "an enormous amount of individualized data" by collecting URLs of third-party websites that could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform."  *Id.* at 603, 605.  The Ninth Circuit instructed that "[t]he question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive *and* whether the manner it was collected" violates social norms.  *Id.* at 603. There, because Facebook deployed "plug-ins" to garner "a comprehensive browsing history of an individual," allowing Facebook to "compile a 'vast repository of personal data,'" and viewing the allegations in the light most favorable to Plaintiffs, the court held that Facebook allegedly compiled "highly personalized profiles from sensitive browsing histories and habits" preventing any conclusion that the Plaintiffs failed to allege a reasonable expectation of privacy.  *Id.* at 603, 604 n.7 (citing *Carpenter v. U.S.*, 138 S. Ct. 2206, 2217 (2018) and *Riley v. California*, 573 U.S. 373, 397-99 (2014)).  *Facebook Tracking* controls here. Plaintiffs allege conduct by Oracle that similarly yields the kind of highly personalized profiles assembled by Facebook.  Plaintiffs allege Oracle's unauthorized collection of vast swaths of their browsing activity, online communications, and offline activity compiles a 'vast repository of personal data.'[8]  *See, e.g.*, Compl. ¶¶ 26-56.

---

[8] The authority Oracle relies on has found that allegations of mass collection of data, such as from app usage, violates a reasonable expectation of privacy. *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 2812188, at *11 (N.D. Cal. July 18, 2022) (citations omitted) ("Here, Plaintiffs have plausibly alleged a reasonable expectation of privacy because Google allegedly collected potentially sensitive data while users might not expect that Google was tracking them.").

Oracle's argument that a reasonable expectation of privacy can exist *only* where a defendant fails to adhere to its own policies (MTD at 16), not only fails to comprehend the nature of the claims here, it turns privacy law on its head. Plaintiffs here are not in privity with Oracle, they are not customers of Oracle, nor consumers of Oracle's products and services.[9] Oracle sits atop a complex data collection and processing apparatus feeding its labyrinthine multinational data marketplace, making it impossible for ordinary persons to reasonably understand the true purpose and extent of Oracle's data collection and compiling of digital dossiers, which are opaque, if not invisible, to ordinary people. Compl. ¶ 86. Moreover, constitutional and common law privacy rights do not rely on contractual promises. While such representations may be probative of a reasonable expectation, Oracle cannot bootstrap its own representation into a necessary condition. Indeed, controlling law holds that "individuals maintain the expectation that entities will not be able to collect . . . broad swaths of personal information absent consent." *Facebook Tracking*, 956 F.3d at 604 n.7; *see also Carpenter*, 138 S. Ct. at 2217 (holding an "individual maintains a legitimate expectation of privacy in the record of his physical movements); *Riley*, 573 U.S. at 397-99.

Oracle's related argument that its supposed "disclosure" on its website somehow eviscerates Plaintiffs' reasonable expectation of privacy is likewise unavailing. MTD at 16. Plaintiff specifically dispute in the Complaint that Oracle provided such notice, Compl. ¶¶ 91-100, and Oracle's attempt to litigate the extent of any disclosures through extraneous materials is inappropriate at this stage. *See* Opp'n to RJN at 1-8. Oracle cites no authority for the proposition that a company can excuse its mass intrusion into Plaintiffs' privacy simply by opaquely describing its activities on a website. And Plaintiffs allege, to the contrary, that there is no reasonable basis for an ordinary person to be sufficiently informed to manifest the requisite consent. Compl. ¶¶ 86-89. Indeed, Oracle does not deny that Plaintiffs *cannot even be aware of the scope of Oracle's activities*, let alone consent to them. *Id.* ¶¶ 84-100.

Oracle's argument that the information at issue is not sufficiently sensitive (MTD at 15) is

---

[9] As Plaintiffs allege, "Oracle conducts the business practices alleged in this complaint within a context and in a manner where consent from the persons whose data it assembles is not reasonably possible or practical, in fact does not occur, and which in light of the extent of the privacy rights that are violated by Oracle's business practices, no consent to such practices could be enforced as a matter of law." Compl. ¶ 84; *see also id.* ¶¶ 84-103.

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION TO DISMISS COMPLAINT; CASE NO. 3:22-CV-04792

1   likewise unavailing.   As Oracle acknowledges, Plaintiffs extensively allege Oracle collects,

2   analyzes, and uses their sensitive data without even the pretense of consent.   *See id.* (citing *e.g.*,

3   Compl. ¶¶ 82, 114).   Oracle curiously refers to these allegations as "conclusory," ignoring that

4   Plaintiffs devote many pages of their Complaint to describing precisely these practices.   *See, e.g.*,

5   Complaint ¶¶ 61-65 (describing in detail "sensitive" information Oracle collects and facilitates sale

6   of).[10]   Moreover, Plaintiffs allege that even data that alone may not be deemed sensitive, when

7   combined with other data about the same individual, allows for a profile and understanding of that

8   individual that is *intensively* sensitive.   *See, e.g.*, *id.*, ¶¶ 111, 45-73; Ballot Pamp., Proposed Stats.

9   & Amends. To Cal. Const. With Arguments to Voters. Gen. Election at 26 (Nov. 7, 1972); *In re*

10   *Google Location Hist. Litig.*, 514 F.Supp.3d 1147, 1155 (N.D. Cal. Jan. 25, 2021) (denying motion

11   to dismiss where "Plaintiffs [allege] a reasonable expectation of privacy *in the sum of* the stored

12   information") (emphasis added).

13       This Court's detailed analysis of the applicability of *Facebook Tracking* in *Rodriguez v.*

14   *Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) applies here.   In

15   *Rodriguez*, as here, the Plaintiffs alleged the defendant collected "'browsing habits and histories,'

16   including "detailed URL requests, app browsing histories,'" and other information. *Id.*  at *8. This

17   Court noted that in *Facebook Tracking* "[b]ecause the data at issue comprised 'browsing histories

18   and habits'—as opposed to, say, mere IP addresses—the court found it sufficiently sensitive in

19

---

20   [10] Oracle's authority is not to the contrary. *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011
     WL 5509848 (N.D. Cal. Nov. 11, 2011) did not involve conduct anywhere near the comprehensive
21   surveillance alleged here—the "browsing histories" at issue there were not complete browsing
     histories, but only of the various profiles the plaintiffs viewed on defendant LinkedIn's website. *In*
22   *re Google Location History Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) involved collection *only*
     of location history without consent.   *Cabal* involved a motion to compel where the *defendant*
23   resisted providing "mere contact information, such as names and addresses" of class members to
     plaintiffs' counsel; however, the court there found that that information, combined with disclosure
24   of information related to the plaintiffs' health information, did constitute a "serious invasion of
     privacy."   *Cabal v. Supple, LLC*, No. EDCV 12-85-MWF (OPX), 2012 WL 12895825, at *3 (C.D.
25   Cal. 2012).   In *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020), the court
     noted that "plaintiffs made clear that all that they were alleging was the collection of IP addresses"
26   and held that, for Article III standing purposes, there is "no legally protected privacy interest in IP
     addresses *alone*, which is the only interest plaintiffs concretely allege." *Id.*  (emphasis added).
27   Indeed, in a prior order in that case, the court found the plaintiffs *did* have standing where they had
     alleged (apparently without sufficient basis) that "Facebook systematically and covertly tracks,
28   collects, and stores users' . . . detailed location histories without their knowledge and consent,"
     mirroring the allegations here. *Id.*

nature." *Id*.   Under such circumstances, this Court held that "[b]y any assessment, there is, at this early juncture, scant daylight between the allegations of *In re Facebook, Inc. Internet Tracking Litigation* and those lodged by plaintiffs here." *Id.* There is likewise no doubt as to the viability of Plaintiffs' claims here, which directly mirror in all salient respects (and indeed allege even more egregious conduct than) those of the Plaintiffs' in *Rodriguez* and *Facebook Tracking*.

### 2.   Plaintiffs have alleged highly offensive and egregious conduct

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606 (quoting *Hernandez*, 47 Cal. 4th at 287). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy."  *Id.*

As an initial threshold matter, the Ninth Circuit has instructed, and courts within this District (including this Court) have repeatedly recognized, that this question is one for the jury, not the Court.   "The ultimate question of whether Facebook's [*cf.* Oracle's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."  *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019); *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (Seeborg, J.) (Whether conduct rises to the level of highly offensive "is indeed a factual question 'best left for a jury.'") (citation omitted).  Moreover, where a defendant, like Oracle here, claims their data gathering and use practices amount to "routine commercial behavior," (MTD at 16) dismissing an invasion of privacy claim at the pleading stage is "particularly inappropriate where . . . Defendants are the only party privy to the true extent of the intrusion on Plaintiffs' privacy." *Hayden v. Retail Equation, Inc.,* 2022 WL 2254461, at *8 (C.D. Cal. 2022).  The contours and extent of Oracle's invasion into Plaintiffs' privacy can only be determined through discovery.

To the extent the Court engages in a threshold analysis, the clear weight of authority as well as extensive factual allegations in the Complaint demonstrate the conduct is both highly offensive and egregious.  No case has found that the pervasive level of surveillance Plaintiffs allege Oracle engages in is not highly offensive or egregious, and none of the authorities Oracle cites come close to involving the scope of conduct Oracle engages in.[11]  Oracle's citations only relate to four *individual* modes of data collection, which Plaintiffs allege that Oracle *combines* (with yet more data) as part of its surveillance apparatus.  Nor does any case address the combination of this data with *offline* activity as Plaintiffs allege here. *See., e.g,* Compl. ¶¶ 27, 42, 49, 115.  *See In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (disclosure of Google data only); *Low*, 900 F. Supp. 2d at 1025 (disclosure of users' LinkedIn profile viewing history only); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (collection of  app usage data only) *Hammerling*, 2022 WL 2812188, at *12 (same); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (collection only of plaintiff's address).[12]

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms."  *Hill*, 7 Cal.4th at 37.  The highly offensive nature of Oracle's conduct is supported by the statements of U.S. legislators, which demonstrate Oracle's conduct unquestionably transgresses widely accepted community norms.  Compl. ¶¶ 64, 76-78, 81, 119, 133.[13]  The Complaint explains U.S. Senators have stated that the conduct described in the Complaint "is an *egregious abuse* of consumers' privacy," *id.*¶¶ 78, 119, and poses "*serious risks*

---

[11] Oracle relies almost entirely on pre-*Facebook Tracking* authority, some almost a decade old.  To the extent they conflict with *Facebook Tracking*, these cases do not reflect the current law in this Circuit and are thus outdated and no longer persuasive.

[12] *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) predates *Facebook Tracking* and is outdated; moreover, this Court noted that the decision (upon which *In re Google, Inc. Privacy Policy Litig.* relied) has subsequently been found "unpersuasive" due to its "lack of consideration for California's privacy norms." *Williams.,* 384 F. Supp. 3d at 1054 (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1079 (N.D. Cal. 2016).

[13] Moreover, as the Ninth Circuit recognized in Facebook Tracking, "[a]nalogous cases decided in the Fourth Amendment context support a conclusion that the breadth of information allegedly collected would violate community norms. These cases hold that individuals have a reasonable expectation of privacy in collections of information that reveal 'familiar, political, professional, religious, and sexual associations.'" *See Facebook Tracking*, 956 F.3d at 604 n.7 (citing *Carpenter*, 138 S. Ct. at 2217; *Riley*, 573 U.S. at 397–99; *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008)).

1   to Americans everywhere by selling their most private information." *Id.*¶¶ 81, 119. Oracle's

2   specific conduct as a data broker has been singled out by U.S. Senators as particularly concerning.

3   *Id.* ¶ 81.

4          Oracle's statement that "Plaintiffs fail to allege that this collection (which Oracle disputes)

5   was 'gratuitous,' 'improper,' or otherwise exceeded the scope of routine commercial behavior, as

6   required to state a claim" (MTD at 16) is false.  Plaintiffs allege, repeatedly and specifically, that

7   Oracle's conduct is highly offensive in that it goes well beyond the scope of any societally accepted

8   understanding of "routine commercial behavior."  *See, e.g.,* Compl. ¶¶ 108-22.  The highly

9   egregious nature of Oracle's conduct is also supported by the third party analysis, reporting, and

10  commentary cited throughout the Complaint, including that Oracle specifically has been decried as

11  a "privacy deathstar[]"  (*id.*. ¶ 75) and has been singled out by Humans Right Watch for its invasive

12  surveillance of children (*id.* ¶ 41).  The Complaint also describes that Oracle's conduct at issue has

13  been the subject of numerous legal complaints and lawsuits in Europe and the U.K, and further

14  explains that the FTC has warned consumers about the "shadowy" "data broker ecosystem" where

15  companies sell a "staggering" amount of "highly personal information." *Id.* ¶¶ 78-80.  These

16  allegations demonstrate that Oracle's conduct goes well beyond societally accepted norms for

17  commercial behavior, and is widely considered "egregious" and a "serious risk[]" to privacy and

18  autonomy.  At a minimum, there is a triable question as to whether Oracle's conduct exceeds those

19  bounds. *See Opperman*, 87 F. Supp. 3d at 1061 (Where "Plaintiffs allege that consumers, the media,

20  the Federal Trade Commission, and Congress have closely scrutinized the practices at issue in this

21  case because of concerns that the practices were inappropriate . . .[t]he Court cannot conclude as a

22  matter of law that Defendants' [conduct] was not 'highly offensive.' That question is best left for a

23  jury.").

24          **E.      Plaintiffs Have Stated a Claim for Violation of CIPA**

25               **1.      Oracle is not a party to the communications**

26          Plaintiffs allege Oracle intercepts the contents of their communications with websites

27  without consent, thereby violating CIPA and ECPA. Compl. ¶¶ 29-35.  Oracle's argument that it is

28  a "party" to Plaintiffs' website communications is, again, contrary to controlling authority in

*Facebook Tracking.*   The court there analyzed whether Facebook was a party to the communications between users and third-party websites containing Facebook tracking code.  It adopted the First and Seventh Circuit's interpretation that a party simultaneously copying communications via a tracking code did not exempt it from liability under the Wiretap Act's party exception.  *Facebook Tracking,* 956 F.3d at 607-608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule.").  The relevant allegations here are indistinguishable from those in *Facebook Tracking*—Plaintiffs allege that Oracle used tracking software embedded on third-party websites to collect the contents of their communications. Compl. ¶¶ 29-35.

Courts within this District have found the party exception does not apply in analogous circumstances.  In *Revitch*, 2019 WL 5485330, the court denied a motion to dismiss where the plaintiff alleged the owner of a website ("Moosejaw") violated CIPA by embedding into its webpages a mechanism that allowed data broker Navistone to eavesdrop on the plaintiff's communications.  While Navistone argued it was a "party" to the communications because it was a direct recipient, the court disagreed, holding that a third-party eavesdropper does not become a party to a communication merely by directly receiving the communication.  *Id.* at *2.  As the court explained, "[a]lthough Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing.*"  Id.*  Oracle's authority *supports* that Oracle is not a party to the communications alleged here. In *Graham v. Noom*, in holding that the "vendor" providing session replay software was a party to the communications, the Court distinguished the facts at issue before it from those in *Moosejaw* and *Facebook Tracking*:

> In *Moosejaw*, for example, NaviStone was a marketing company [and data broker] that partnered with e-commerce sites to intercept visitor data and create marketing databases of consumer information. In *Facebook*, Facebook tracked its users to third-party websites (through Facebook's code on the websites) — even when its users were not signed into Facebook, and then it sold that data to advertisers.  NaviStone and Facebook were independent parties who mined information from other websites and sold it: NaviStone through its code on participating e-commerce sites and Facebook through its plug-ins on third-party sites

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (Citation Omitted).  That is precisely what is alleged here:  Oracle is an independent party "who mined information from other websites and sold it . . . through its code on participating e-commerce sites."[14]  Moreover, the court agreed with Moosejaw that Noom "could be liable if it allowed the equivalent of permitting 'an outsider to tap his telephone or listen in on the call,'" as is precisely what Plaintiffs allege here.  *Id.* at 833.

### 2.   Plaintiffs allege the "contents' of their communications were intercepted

"[T]he *meaning* of 'contents' of a communication under CIPA is the same under the ECPA."  *In re Google RTB Consumer Priv. Litig.*, 2022 WL 2165489 at *11 (citation omitted). The ECPA broadly defines "contents" as "any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510.  Plaintiffs allege that Oracle intercepts "content" based on Oracle's own description of the bk.coretag functionality in its developer documentation.  These include "a. the URLs being browsed by the Internet user as well as the referrer URL; b. webpage title; c. webpage keywords; . . .f. product page visits; g. "purchase intent" signals; h. "add-to-cart actions"; and i. data entered by the user into forms on the website." ¶¶ 32, 164.  Fatal to Oracle's argument is that Plaintiffs allege, and Oracle ignores, that Oracle intercepts "data entered by the user into forms on the website," (*id*.) which are indisputably the "contents" of communications. *In re Zynga Privacy Litig*, 750 F.3d 1098, 1107 (9th Cir. 2014) (information entered into form on website is "contents of a communication"); *In re Pharmatrak, Inc.*, 329 F.3d 9, 15, 18-19 (1st Cir. 2003) (same); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) ("information that would otherwise be considered 'record information' . . . may be 'contents' of a communication where the user communicates with a website by entering his information into a form provided by the website").  This omission alone vitiates Oracle's argument.

URLs viewed by internet users can also constitute contents of communications.  In *Facebook Tracking*, the Ninth Circuit noted that URLs divulge "a user's personal interests, queries,

---

[14] *Yale* is inapposite for the same reason; it wholly relied on *Graham* to find the party exception applied based on a "virtually identical claim," without further analysis.  *Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021).

and habits on third-party websites operating outside of Facebook's platform."  956 F.3d at  605. *See also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) (finding "post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user" and in some instances "URLs qualify as content."[15]); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) ("some queried URLs qualify as content. . . . a URL may convey 'substantive information' about web browsing activity."). *See also In re Google RTB Consumer Priv. Litig.*, 2022 WL 2165489, at *10 ("URL of the page [being visited]"; "referrer URL that caused navigation to the current page"; "details about the content within the site or app"; and "list of keywords about [the] site or app" constituted "contents" of communications for ECPA purposes); *Saleh*, 562 F. Supp. 3d at 518 ("customer's purchasing selections," "keystrokes," and "interactions with" defendants' website were contents of communications for ECPA purposes).[16]

### F.    Plaintiffs Have Stated a Claim for Violation of ECPA

Whether third-party websites have consented to embed Oracle's core tag is immaterial because 18 U.S.C. § 2511(2)(d) provides an exception to consent where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  To allege this "exception to the exception," Plaintiffs need only plead "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)) ("Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the

---

[15] *See also id.*: Where "the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the Wiretap Act."

[16] Neither *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) nor *Yale* are to the contrary.  *Yoon* did not address allegations that the defendant intercepted the contents entered into forms; *Yale* found only that "IP addresses, locations, browser types, and operating systems" were not "content" for ECPA purposes. *Yale*, 2021 WL 1428400, at *3.

1   interception—its intended use—was criminal or tortious.'") (citations omitted).

2       Here, Oracle's interceptions were "performed for the secondary and independent purpose

3   of committing tortious acts in violation of the law." Compl. ¶ 170.  Plaintiffs allege that Oracle had

4   the independent intent of using the intercepted content for the purpose of collecting, analyzing,

5   compiling, and selling Plaintiffs' personal profiles, in violation of Plaintiffs' right under the

6   California Constitution, the UCL, and the common law.  *Id.*  Under Ninth Circuit law, any purported

7   legitimate purpose for its conduct that Oracle now asserts does not "sanitize" an interception that

8   was also made for a tortious purpose. *See Sussman,* 186 F.3d at 1202 ("the existence of a lawful

9   purpose does not mean that the interception is not also for a tortious or unlawful purpose . . . [t]he

10  existence of the lawful purpose would not sanitize a [recording] that was also made for an

11  illegitimate purpose").  Indeed, no third party websites would be in a position to "consent" to

12  Oracle's unlawful purpose because like an ordinary person, they have insufficient information

13  about Oracle's downstream conduct, and thus no basis to provide consent.

14      **G.**     **Plaintiffs Have Stated a Claim for Violations of the Unfair Competition Law**

15              **1.**      **Plaintiffs have standing under the UCL**

16      The jurisprudence on UCL standing in privacy cases has evolved such that the weight of

17  authority in this District and within the Ninth Circuit now holds that the use of personal information

18  without consent constitutes economic injury for the purposes of UCL.  *See Klein v. Facebook, Inc.*,

19  580 F. Supp. 3d 743, 803 (N.D. Cal. 2022) ("numerous courts have recognized that plaintiffs who

20  lose personal information have suffered an economic injury"); *Brown v. Google LLC*, No. 20-CV-

21  03664-LHK, 2021 WL 6064009, at *14 (N.D. Cal. Dec. 22, 2021) (Google's data collection caused

22  plaintiffs to lose "money or property").

23      In *Brown*, the court considered a nearly identical claim, and recognized at least two types

24  of economic injury are present where a plaintiff alleges their personal data was collected and used

25  without their consent.  First, "because Google previously has paid individuals for browsing

26  histories, it is plausible that, had Plaintiffs been aware of Google's data collection, they would have

27  demanded payment for their data. Thus, by inducing Plaintiffs to give Google their data without

28  payment, Google caused Plaintiffs to acquire in a transaction less[ ] than [they] otherwise would

have." *Id.* at 15.   Second, the court recognized that because "there are several browsers and platforms willing to pay individuals for data, it is plausible that Plaintiffs will decide to sell their data at some point. . . . [a]ccordingly, by obtaining Plaintiffs' data and selling it to advertisers, Google 'diminished' Plaintiffs' 'future property interest.'" *Id*.

Likewise, in *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), the court recognized that the "Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." *id.* at 636; *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) (plaintiffs plausibly alleged injury from the loss of value of their personal information).

Plaintiffs have alleged economic injury, i.e., "the loss of money and/or property as a result of Oracle's unfair and/or unlawful practices" through "collection and use of their personal information." Compl. ¶ 143.   Plaintiffs also allege that Oracle "caused damage to and loss of Plaintiffs' and Class members' property right to control the dissemination and use of their personal information and communications." Compl. ¶ 144.   These allegations suffice for UCL standing. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011); *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1145 (C.D. Cal. 2012) (UCL standing does not require a tangible monetary expenditure).

### 2.   Plaintiffs satisfy both the unlawful and unfair prongs

Plaintiffs' claims satisfy both the unlawful and unfair prongs of the UCL.   "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011). "Virtually any law—federal, state or local— can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*,

93 Cal.App.4th 700, 718 (Nov. 20, 2001).  Plaintiffs properly allege violations of multiple laws, and thus satisfy the unlawful prong.

Plaintiffs also satisfy the "balancing" and "tethering" tests of the unfairness prong.  Under the balancing test, courts weigh "the harm to the consumer against the utility of the defendant's practice."  *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *7 (N.D. Cal. Aug. 16, 2021) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Ct. App. 1999)).   The Complaint plausibly alleges the harm caused by the unauthorized collection and dissemination of Plaintiffs' personal information clearly outweighs the utility of that sale.  *See, e.g., Brooks*, 2021 WL 3621837, at *7-8. Under the tethering test, the unfairness must 'be tethered to some legislatively declared policy.'"  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (citations omitted).  This test is easily satisfied here because numerous California statutes, including the CCPA, "reflect 'California's public policy of protecting consumer data.'"  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) (quoting *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014)); *see also* Cal. Const. art. 1, § 1; Cal. Civ. Code § 1798.1; Cal. Civ. Code § 1798.81.5(a).  Thus, Oracle's alleged conduct "is 'comparable' to a violation of law."  *In re Adobe*, 66 F. Supp. 3d at 1227.

### H.  Plaintiffs Have Stated a Claim for Unjust Enrichment.

Unjust enrichment is a standalone claim under California and Ninth Circuit law. *See e.g., Brooks,* 2021 WL 3621837, at *11 ("The Court rejects Thomson Reuters's argument that unjust enrichment is not a standalone cause of action and thus cannot be asserted, because that argument is based on outdated law"); *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020); *Wu v. Sunrider Corp.*, No. CV 17-4825 DSF (SSX), 2017 WL 6880087, at *4 (C.D. Cal. 2017).  First, the *Astiana* case upon which Oracle solely relies to argue to the contrary, is no longer the law.[17]  *See Brooks*, 2021 WL 3621837, at *11 (noting, post-*Astiana*, that "[t]he Ninth

---

[17] Based on California appellate court decisions, the Ninth Circuit held in *Astiana* that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.' " *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015).  A few months later, the California Supreme Court recognized that an unjust enrichment claim is valid in

1    Circuit has allowed a claim for unjust enrichment 'as an independent cause of action or a quasi-

2    contract claim for restitution.'" (citing *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39

3    (9th Cir. 2016)).  Second, Oracle is flatly wrong that "Plaintiffs fail to specify under which state

4    law their unjust enrichment claim arises" (MTD at 24); Plaintiffs clearly assert that "the common

5    law of California applies to the common law claims of all Class members." Compl. ¶ 18.

6         "To allege unjust enrichment as an independent cause of action, a plaintiff must show that

7    the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap.*

8    *Partners,* 828 F.3d at 1038.  There is no requirement that Plaintiffs show that they suffered a

9    corresponding loss. *Facebook Tracking,* 956 F.3d at 599 (recognizing "a right to disgorgement of

10   profits resulting from unjust enrichment, even where an individual has not suffered a corresponding

11   loss"); *Lundy v. Facebook Inc.*, No. 18-CV-06793-JD, 2021 WL 4503071 (N.D. Cal. Sept. 30,

12   2021), *Hart v. TWC Prod. & Tech. LLC,* No. 20-CV-03842-JST, 2021 WL 1032354, at *8 (N.D.

13   Cal. Mar. 17, 2021) ("Even though the Court earlier concluded that Hart 'suffered no economic

14   loss from the disclosure of [his] information, [he] may proceed at this stage on a claim for unjust

15   enrichment to recover the gains that [TWC] realized from its allegedly improper conduct.'"

16   (*quoting In re Facebook*, 402 F. Supp. 3d at 803)).  Oracle's assertion that Plaintiffs failed to show

17   that the enrichment was "at the [Plaintiffs'] expense" cannot be read to graft on to Plaintiffs' burden

18   a requirement to show a corresponding loss.  MTD at 24.  Rather, under an unjust enrichment

19   theory, where the wrongful conduct is directed at Plaintiffs, it is at their expense.  *Facebook*

20   *Tracking,* 956 F.3d at 600; Rest., Restitution, § 1, com. e. The entirety of the Complaint specifies

21   how Oracle wrongfully collected and used Plaintiffs' personal data for commercial exploitation.

22   Plaintiffs have thereby stated a cognizable claim for unjust enrichment under California law.

23        I.    **Plaintiffs Claim For Equitable Relief Is Distinct From the Remedies They**
             **Seek At-Law, And Thus Should Not Be Dismissed Under *Sonner***
24
              Oracle's attempt to apply the Ninth Circuit's holding in *Sonner v. Premier Nutrition Corp.*,
25

26   _____

27   some circumstances.  *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,* 61 Cal. 4th 988, 1000 (2015).
     District courts and the Ninth Circuit have since routinely recognized standalone unjust enrichment
28   claims.  *See*, e.g. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Brooks*,
     2021 WL 3621837, at *11; *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017)
     (recognizing *Hartford "*clarified" California law on this issue).

971 F.3d 834 (9th Cir. 2020) fails because Plaintiffs seek equitable remedies that are distinct and unavailable from their claims at law. *Sonner* stands for the simple proposition that an equitable claim seeking functionally the same remedy for the same harm as a parallel claim at-law for damages should not be pursued at trial. *Sonner*, 971 F.3d at 844 (plaintiff "fail[ed] to explain how the same amount of money for the exact same harm is inadequate or incomplete"). Here, unlike in *Sonner*, the remedies Plaintiffs seek under their equitable claims are distinct from the remedies available under their legal claims, including "restitution and disgorgement of [] unjust profits and revenues." Compl. ¶ 145; 173-178. The Ninth Circuit recognizes that restitution of unjust profits under a claim for unjust enrichment is distinct measure from losses that may be recovered as damages under claims at-law. *Facebook Tracking*, 956 F.3d at 599 ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss"). Plaintiffs also seek prospective injunctive relief, *id.* ¶¶ 123, 137, 148, 157, 172, 182, Section IX(J). *See Hass v. Travelex Ins. Servs. Inc.*, 555 F.Supp.3d 970, 976 (C.D. Cal, 2021) ("[I]njunctive relief is not an available remedy at law; moreover, its presence in the Complaint distinguishes this case from *Sonner*").

Thus, claims for equitable relief survive under *Sonner* if they "go beyond" the remedies available to plaintiffs via their legal claims. *Kellman v. Spokeo, Inc.*, No. 3:21-CV-08976-WHO, 2022 WL 1157500, at *12 (N.D. Cal. Apr. 19, 2022) (at the pleadings stage "it is not clear what the extent of legal remedies will be, and there is every possibility that the equitable relief will go beyond them."). Restitution of unjust enrichment and prospective injunctive relief "go beyond" damages. *Facebook Tracking*, 956 F.3d at 600; *Hayden v. Retail Equation, Inc.*, No. SACV2001203DOCDFM, 2022 WL 3137446, at *4 (C.D. Cal. 2022) ("Plaintiffs allege that money damages for past use of [their consumer data] does not address or discourage the continued collection and usage of data . . . In so doing, Plaintiffs have shown that available legal remedies are potentially inadequate to address all of the harms caused by Defendants' use of consumer data."); *Zeiger v. WellPet LLC*, 526 F.Supp.3d 652, 687 (N.D. Cal. 2021).

Finally, as this Court has noted, "'*Sonner* does not preclude a plaintiff from pleading equitable remedies in the alternative.'" *Moran v. Edgewell Pers. Care, LLC*, No. 21-CV-07669-

1   RS, 2022 WL 3046906, at *4 (N.D. Cal. Aug. 2, 2022) (Seeborg, J.) (citing *Yeomans v. World Fin.*

2   *Grp. Ins. Agency, Inc*., No. 19-CV-00792-EMC, 2022 WL 844152, at *7 (N.D. Cal. Mar. 22, 2022)

3   (collecting cases). Therefore, determining "Plaintiff's entitlement to seek the equitable remedy of

4   restitution may be revisited at a later stage." *Moran*, 2022 WL 3046906, at * 4 (citation omitted).

5   Should the Court find that *Sonner* requires Plaintiffs' to include additional allegations regarding

6   whether they have adequate remedies at law, Plaintiffs request the Court grant leave to so amend.

### J.   Plaintiffs State A Claim For Declaratory Judgement

8   Oracle's only argument for dismissal of Plaintiffs' claim for declaratory judgment is that

9   "there is no basis for the underlying claims." MTD at 25.  Because that argument fails, there is no

10  basis to dismiss the declaratory judgment claim. 28 U.S.C. § 2201(a).

### K.   If the Motion to Dismiss Is Not Denied In Its Entirety, Leave to Amend Is Appropriate

12  Oracle fails to offer any justification for its request that dismissal should be *with prejudice*.

13  Typically, a court "should grant leave to amend even if no request to amend the pleading was made,

14  unless it determines that the pleading could not possibly be cured by the allegation of other facts."

15  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Given the especially fact-intensive nature of

16  Oracle's challenge to the pleadings here (*see, e.g*., Opp'n to RJN at 3), leave to amend, as is the

17  default, would be appropriate.

## IV.   CONCLUSION

19  Plaintiffs respectfully submit that the Court should deny Oracle's Motion to Dismiss in its

20  entirety, but that any dismissal, in whole or in part, should be without prejudice and with leave to

21  amend.

22   Dated: December 16, 2022           */s/* Michael W. Sobol

23                                      Michael W. Sobol (SBN 194857)
                                        msobol@lchb.com

24                                      David T. Rudolph (SBN 233457)
                                        drudolph@lchb.com

25                                      Jallé H. Dafa (SBN 290637)
                                        jdafa@lchb.com

26                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                        275 Battery Street, 29th Floor

27                                      San Francisco, CA  94111-3339
                                        Telephone:  415.956.1000
                                        Facsimile:  415.956.1008

28                                      *Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Michael W. Sobol, certify that I caused the foregoing document to be served on all counsel for all parties to this action by filing it through the Court's ECF system.

Dated: December 16, 2022

*/s/ Michael W. Sobol*
Michael W. Sobol

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS COMPLAINT; CASE NO. 3:22-CV-04792