Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorney for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Katz-Lacabe, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware, <br><br> Defendant. | Case No. 3:22-cv-04792-RS <br><br> **[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** <br><br> Judge: Hon. Richard Seeborg <br><br> Date Action Filed: August 19, 2022 <br> Trial Date: Not set |

**I.      PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**II.     COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**III.    PROPORTIONALITY**

The parties are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1]

**IV.     LIAISON**

1.      The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

2.      Oracle America, Inc. appoints Whitney O'Byrne, Danielle Vallone, and Erik Manukyan (Morrison & Foerster LLP) as its e-discovery liaisons.

3.      Plaintiffs appoint David Rudolph and Jallé Dafa (Lieff Cabraser Heimann & Bernstein, LLP) as their e-discovery liaisons.

**V.      PRESERVATION**

The parties have discussed their preservation obligations and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

- 1 -    [STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
CASE NO. 3:22-CV-04792-RS

1.      All relevant ESI related to Plaintiffs' Complaint allegations will be preserved, with the exception of the data or information specified in Paragraph 6 below;

2.      Defendant Oracle America Inc. ("Oracle") has represented the preservation of raw data post-dating Plaintiffs' Complaint filed on August 19, 2022 is unduly burdensome and costly. In light of this representation, the parties are considering and continue to meet and confer regarding a compromise under which Oracle shall preserve and produce a one-month representative sample of the raw personal data and/or data associated with their respective identifiers (including but not limited to email addresses, phone numbers, Oracle/BlueKai cookies, device identifiers IDFA/ADID/IMEI, and IP addresses) of Plaintiffs and the members of the proposed Classes. The parties continue to meet and confer regarding Oracle's ongoing preservation obligations.

3.      The parties have conferred and agree that the types of ESI the parties will preserve include, at a minimum, the categories of information described in Section VI., Paragraph 1 below.

4.      The parties also continue to meet and confer regarding custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Vice President," and "Director."

5.      The parties agree that the following data or information should not be preserved because they are irrelevant and/or unduly burdensome under the proportionality factors:

    (a)    Any and all data system files and logs generated on or relating to Oracle's individual computer systems or devices and their usage;

    (b)    Any and all data system files and logs generated by Oracle on or relating to individual offline activities;

    (c)    "Aggregate consumer information" within the meaning of California Civil Code § 1798.1 associated only with Oracle's Moat product, and excluding any aggregate

consumer information used by or associated with the ID Graph,[2] BlueKai, Datalogix,[3] AddThis,[4] the Oracle Core Tag,[5] and Oracle Data Marketplace[6]; and

    (d)    All alterations or deletions of data made by Oracle to any ESI location, device, or file indicating when the change was made, specifics of the content of the change, the reason for the change, and who made the change.

## VI. SEARCH & REVIEW

1. The parties understand and agree that discovery in this case shall encompass information related to the allegations in Plaintiffs' Complaint filed on August 19, 2022,[7] including but not limited to the following:

---

[2] Oracle's "ID Graph" refers to the functionality which "connect[s] identities across disparate marketing channels and devices to one customer" and " seamlessly pulls together the many IDs across marketing channels and devices that comprise a given person, enabling marketers to tie their interactions to an actionable customer profile" as described in Oracle's technical documentation at *ID Management,* https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-helpcenter/IntegratingBlueKaiPlatform/id_management.html [https://perma.cc/LCW9-9PCH].

[3] "Datalogix" refers to the functionality and data which "provides marketers and publishers with a rich understanding of consumers across digital and offline channels based on what they do, what they say, and what they buy," as described by Oracle at *Datalogix by Oracle Data Cloud*, https://partners.twitter.com/en/partners/datalogix-byoracle-data-cloud [https://perma.cc/N855-D5VV] and *Using the Datalogix Profile Analysis Dashboard*, Oracle, https://docs.oracle.com/en/cloud/saas/marketing/cx-audienceuser/ AudienceInsight_DLXDashboard.htm#Using [https://perma.cc/G4DM-BWR8].

[4] "AddThis" refers to the tools, plugins, and functionality which are described in the *AddThis Privacy Policy*, https://www.oracle.com/legal/privacy/addthis-privacy-policy.html.

[5] Oracle's "bk-coretag.js functionality" is the functionality which "extract[s] online user attributes and import[s] them into the Oracle Data Cloud platform" as described in Oracle's technical documentation at *Oracle Data Cloud Core Tag Implementation*, https://docs.oracle.com/en/cloud/saas/datacloud/ data-cloud-help-center/IntegratingBlueKaiPlatform/DataIngest/coretag_implementation.html [https://perma.cc/8XVU-8Z2F].

[6] Oracle's "Data Marketplace" refers to "the world's largest third-party data marketplace" for "audience data trading" as described in Oracle's technical documentation at *Oracle Data Marketplace,* https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloudhelp-center/AudienceDataMarketplace/AudienceDataMarketplace.html [https://perma.cc/27S8-GX7H].

[7] In agreeing that discovery may encompass these categories of information, the parties do not concede the admissibility, relevancy, or existence of any documents or information potentially included in each category or of the subject matter to which the category refers. The parties do not adopt or endorse the factual premise or predicate of any category. The parties preserve all rights to assert any applicable objection, privilege, or protection at an appropriate time.

1            (a)     Oracle's collection, storage, use, and sale of the Personal Data[8] of the representative Plaintiffs and the members of the Classes[9];

(b)     Data, information, and documents related to the representative Plaintiffs or the members of the Classes, including but not limited to any Personal Data, and or data associated with their respective identifiers (including but not limited to email addresses, phone numbers, Oracle/Bluekai cookies, device identifiers IDFA/ADID/IMEI, and IP addresses);

(c)     "Aggregate consumer information" within the meaning of California Civil Code § 1798.140 except for such data that is associated solely with Oracle's Moat product.

(d)     Oracle's policies, security guidelines, operating procedures, and practices concerning its collection of Internet users' Personal Data;

(e)     Oracle's policies, security guidelines, operating procedures, and practices concerning the sale of Internet users' Personal Data;

(f)     Oracle's policies, security guidelines, operating procedures, and practices concerning the sharing of Personal Data, with third-party advertisers, researchers, government agencies, developers, and other customers;

(g)     Oracle's information system architecture depicting the collection, storage, use, and sale of Internet users' Personal Data;

(h)     ESI, including but not limited to ESI contained on Plaintiffs' physical devices related to the allegations in Plaintiffs' Complaint.

(i)     The parties continue to meet and confer regarding the relevance of source code and documentation related to Oracle's ID Graph, Data Marketplace, and Oracle's bk-

---

[8] The parties agree that "Personal Data" as used herein includes all "personal information" within the meaning of that term as set forth in California Civil Code § 1798.140, but without regard to whether or not such personal information is otherwise publicly available, and all "personal information" or "personal data" as those terms are defined in the Oracle Advertising Privacy Policy as of September 7, 2022, including both "Offline information" and "Online information" as defined therein.

[9] Plaintiffs' alleged definitions of the Class and its Subclasses are set forth in paragraphs 104-105 of the Complaint (herein "the Classes").

coretag.js, cookies,[10] tracking pixels,[11] device identification,[12] cross-device tracking,[13] AddThis, and Datalogix functionality and data.

2. A party who intends to use search terms will describe a search protocol that will include: (a) the criteria to be used to identify the universe of documents to which search terms will be applied (e.g., date range), and (b) proposed search terms to be applied to that universe of documents, subject to revision based on, for example, meet and confer of the parties and the number of hits returned by each term. A requesting party may also suggest search terms to be applied. Any search protocol will include a requirement for the producing party to provide hit reports for proposed search terms before using the search terms to narrow the universe of documents to be searched. The parties agree to meet and confer regarding the search protocol and to raise any unresolved disputes to the Court for resolution.

3. A party who intends to use TAR will describe a TAR protocol that will include: (a) the TAR system to be used; (b) the criteria to be used to identify the universe of documents to which TAR is to be applied (the "TAR Universe"); (c) its methodology for training the TAR model and identifying responsive documents; (d) the methodology for validation testing to be used; (e) the subject-matter expert who will oversee the implementation of the TAR protocol; and (f) the process by which; (f) the process by which documents excluded as not conducive to categorization (e.g., multimedia files, primarily numerical spreadsheets, database files) will be reviewed for production.

---

[10] Oracle's "cookies" are any cookies which Oracle uses to inform its ID Graph and Data Marketplace with Internet user data, such as are described in the *Oracle Advertising Privacy Policy*, https://www.oracle.com/legal/privacy/advertising-privacy-policy.html [https://perma.cc/MP25- TAXY].

[11] Oracle's "tracking pixels" are 1x1-sized pixel image tags that point to endpoints on Oracle servers and which track website visit and email activity, such as are described in the *Oracle Advertising Privacy Policy*, https://www.oracle.com/legal/privacy/advertising-privacy-policy.html [https://perma.cc/MP25- TAXY].

[12] "Device identification" means the practice of tracking Internet users' online activities by collecting identifiers tied to their devices, such as is described in the *Oracle Advertising Privacy Policy*, https://www.oracle.com/legal/privacy/advertising-privacy-policy.html [https://perma.cc/MP25- TAXY].

[13] "Cross-device tracking" refers to the practice of tracking Internet user's activities across multiple devices, as described in Oracle's technical documentation at *Creating Audiences*, Oracle, https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-helpcenter/Platform/Audiences/create_audience.html [https://perma.cc/K6F2-NPZF].

4. If a party is using culling technology, criteria or methods, the producing party agrees to disclose details in advance to the receiving party along with the sources across which it plans to apply the culling techniques. The parties must also provide written information regarding the use of any other advanced culling techniques they employ in connection with their culling of the documents if they are using such technology to exclude documents from manual review.

5. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. The parties shall meet and confer regarding whether Source code is relevant, and if so Source code files will be made available according to a separate protective order and not included in custodial data productions.

6. Deduplication. A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across custodians at the family level using MD5 or SHA-1 hash.

**VII.   PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

1  **VIII.  PHASING**

2      When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties

3  agree to discuss phasing the production of ESI.

4  **IX.  DOCUMENTS PROTECTED FROM DISCOVERY**

5      1.  Pursuant to Federal Rule Evidence 502(d), the production of a privileged or work

6  product-protected document ("Protected Information"), whether inadvertent or otherwise, is not a

7  waiver of privilege or protection from discovery in this case or in any other federal or state

8  proceeding.  For example, the mere production of privileged or work-product-protected documents

9  in this case as part of a mass production is not itself a waiver in this case or in any other federal or

10  state proceeding.

11      2.  Communications that post-date the filing of the Complaint need not be placed on a

12  privilege log.

13      3.  If the receiving party has reason to believe that a produced document or other

14  information may reasonably be subject to a claim of privilege or protection, then the receiving

15  party shall immediately sequester the document or information, cease using the document or

16  information and cease using any work product containing the information, and shall inform the

17  producing party of the beginning Bates number of the document or, if no Bates number is

18  available, shall otherwise inform the producing party of the information.

19      4.  A producing party must give written notice to any receiving party asserting a claim

20  of privilege, work-product protection, or other ground for reclaiming documents or information

21  inadvertently produced (a "clawback request").  After a clawback request is received, the receiving

22  party shall immediately sequester the document (if not already sequestered) and shall not review or

23  use that document, or any work product containing information taken from that document, for any

24  purpose.

25  **X.  MODIFICATION**

26      If necessary, the ESI Protocol may be amended by written modification of all parties and

27  approval by the Court.

28

1 | **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated:  March 15, 2023

Respectfully Submitted,

*/s/ David T. Rudolph*

Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

***Attorneys for Plaintiffs and the Class***

Dated:  March 15, 2023

*/s/ Whitney O'Byrne*

Tiffany Cheung (SBN 211497)
TCheung@mofo.com
Danielle Vallone (SBN 302497)
DVallone@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

Purvi G. Patel (SBN 270702)
PPatel@mofo.com
Whitney O'Byrne (SBN 325698)
WOByrne@mofo.com
Erik Manukyan (SBN 340307)
EManukyan@mofo.com
Emma Burgoon (SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

***Attorneys for Oracle America, Inc.***

## **ATTESTATION**

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: March 15, 2023                                   */s/ David T. Rudolph*
                                                        David T. Rudolph

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____

_____
Honorable Richard Seeborg
United State District Judge

# APPENDIX 1 PRODUCTION FORMAT AND METADATA

1. **Production Components**. Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat file) and an image load file that can be loaded into commercially acceptable production software (e.g., Relativity).

2. **Image Load File.** Image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder. Every image in the delivery volume should be cross-referenced in the image load file. The imageID key should be named the same as the Bates number of the page. Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered. Sample Concordance/Opticon Image (.OPT) Load File:

- MSC000001, MSC001, \VOL001\IMAGES\001\MSC000001.TIF,Y,,,2
- MSC000002, MSC001, \VOL001\IMAGES\001\MSC000002.TIF,,,,
- MSC000004, MSC001, \VOL001\IMAGES\001\MSC000004.TIF,Y,,,2
- MSC000005, MSC001, \VOL001\IMAGES\001\MSC000005.TIF.

3. **Metadata Fields and Metadata File**. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, NATIVELINK, TEXTLINK, HASH_VALUE, REDACTED, REDACTED_REASON, and CONFIDENTIALITY. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)

- New Line = ® (ASCII:174)
- Multi-value delimiter = (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de- duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath[14] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| NativeFileLink | Relative path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| SourceParty | Name of entity or party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType | (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |

---

[14] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows: <br><br> Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above <br> Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified** <br><br> Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created** |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |

| Field Name | Field Description |
|---|---|
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the document was last printed. |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Redaction Reason | The reason for the redaction. If more than one reason, separate by semi-colons. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" applicable. Otherwise, blank. |

4.  **TIFFs**. The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document

orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape). All hard copy Documents that are scanned will be produced in electronic form.

5. **Color Documents**. Where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format. If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

6. **Text Files**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

7. **Image Load Files / Data Load Files**. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

8. **Bates Numbering**. Each TIFF image produced under this Order shall be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be

1  sequential within a given Document.  The producing party will identify the Bates number range of
2  each production in a cover letter or production log accompanying the production.  If a producing
3  party skips a Bates number or set of Bates numbers in a production, the producing party will
4  identify and note the gap in the cover letter or production log accompanying the production.  The
5  producing party will brand all TIFF images in the lower right-hand corner with its corresponding
6  Bates number, using a consistent font type and size.  If the receiving party believes that a Bates
7  number obscures the content of a Document, then the receiving party may request that the
8  Document be produced with the Bates number in a different position.

9      9.    **Confidentiality Designation**.  Responsive documents in TIFF format will be
10 stamped with the appropriate confidentiality designations in accordance with the Protective Order
11 in this matter.

12     10.    **Redaction**.  The parties agree that where ESI items need to be redacted, they shall
13 be produced in TIFF format with each redaction clearly indicated or where TIFF format is not
14 practicable, in redacted native format, as noted below. Any unaffected data fields shall be
15 provided. The redaction of any material for privilege or other reason shall be governed by the
16 applicable rules and case law regarding privilege and the provisions contained in the Protective
17 Order entered in this action. Documents that are to be produced in native format, but that require
18 redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF
19 image production is not practicable (e.g., the file is a video or very large spreadsheet), the
20 producing party may produce a copy of the native file with the relevant portions replaced with
21 "REDACTED" or a similar mark. If modification of a native file is required for redaction
22 purposes, metadata information associated with that file should remain unchanged, unless it also
23 requires redaction. For each document that is redacted, a Redaction field will be populated with
24 the word "REDACTED" in the .DAT file.  Also, the producing party will keep a pristine original
25 copy of the native document.

26     11.    **Printing Specifications for Excel and PowerPoint Files**.  For Excel and
27 PowerPoint type files that are printed to TIFF for redaction and redacted, the following printing
28 options shall be enabled:

Excel Print to TIFF Options

- Unhide columns and rows
- Unhide worksheets
- Autofit columns and rows, settings to be over by columns first and, then down by row
- Print gridlines
- Do not apply Autofilter
- Display headings
- Display comments
- Header and Footer filename field handling: Show field code

12. **Native Files**. Spreadsheets (e.g., MS Excel, Oracle Sheets), PowerPoint files, and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel, with applicable metadata and extracted, searchable text. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, color TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

13. **Proprietary Files**. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

14. **Databases, Structured, Aggregated or Application Data**. For requests in which responsive information is contained in a database or other structured or aggregated data source, the parties will meet and confer to identify a reasonable method and format for production.

1    15. **Production Media**. Documents shall be encrypted and produced on an FTP link.
2 and shall identify a production number corresponding to the production volume (e.g., "VOL001,"
3 "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each
4 piece document shall also identify: (1) the producing party's name; (2) the production date; (3) the
5 Bates Number range; and (4) the set(s) of requests for production for which the documents are
6 being produced.