1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   DANIELLE VALLONE (CA SBN 302497)
    DVallone@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482
    Telephone:    415.268.7000
5   Facsimile:    415.268.7522

6   PURVI G. PATEL (CA SBN 270702)
    PPatel@mofo.com
7   WHITNEY O'BYRNE (CA SBN 325698)
    WOByrne@mofo.com
8   ERIK MANUKYAN (CA SBN 340307)
    EManukyan@mofo.com
9   EMMA BURGOON (CA SBN 348097)
    EBurgoon@mofo.com
10  MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
11  Los Angeles, California 90017-3543
    Telephone:    213.892.5200
12  Facsimile:    213.892.5454

13  Attorneys for Defendant
    ORACLE AMERICA, INC.
14
    *Additional counsel on next page*
15

16              **UNITED STATES DISTRICT COURT**

17             **NORTHERN DISTRICT OF CALIFORNIA**

18                **SAN FRANCISCO DIVISION**

19

20  Michael Katz-Lacabe and Dr. Jennifer        Case No. 3-22-cv-04792-RS
    Golbeck, on behalf of themselves and all others
21  similarly situated,                         **DEFENDANT ORACLE
                                                AMERICA, INC.'S MOTION TO
22                    Plaintiffs,               DISMISS PORTIONS OF PLAINTIFFS'
                                                FIRST AMENDED COMPLAINT**
23          v.
                                                Judge:  Hon. Richard Seeborg
24  ORACLE AMERICA, INC., a corporation
    organized under the laws of the State of    Date:   October 5, 2023
25  Delaware,                                   Time:  1:30 p.m.
                                                Courtroom:  3
26                    Defendant.
                                                Date Action Filed:  August 19, 2022
27                                              FAC Filed:  May 22, 2023
                                                Trial Date:  Not set
28

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, CA 94065
Telephone:     650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

3    PLEASE TAKE NOTICE that on October 5, 2023, at 1:30 p.m., in Courtroom 3 located at

4  450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, Defendant Oracle

5  America, Inc. will and hereby does move this Court for an order dismissing the following causes

6  of action in Plaintiffs' First Amended Complaint on the grounds stated below, pursuant to Federal

7  Rules of Civil Procedure 8 and 12(b)(6):[1]

8    1.  Plaintiffs lack a basis to apply California law extraterritorially for the following
         causes of action:
9

10       a)  Intrusion Upon Seclusion Under California Law (Second Cause of Action);
             and

11       b)  Unjust Enrichment Under California Law (Seventh Cause of Action).

12   2.  Plaintiffs fail to state a claim for relief for the following causes of action:

13       a)  Intrusion Upon Seclusion Under Florida Common Law (Third Cause of
             Action);
14

15       b)  Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code
             §§ 630, *et seq.* (Fourth Cause of Action);

16       c)  Violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat.
             § 934.03 (Fifth Cause of Action);
17

18       d)  Violation of the federal Wiretap Act, 18 U.S.C. §§ 2510, *et. seq.* ("ECPA")
             (Sixth Cause of Action);

19       e)  Unjust Enrichment Under California Law (Seventh Cause of Action);

20       f)  Unjust Enrichment Under Florida Law (Eighth Cause of Action); and

21       g)  Declaratory Judgment (Ninth Cause of Action).

22  ///

23  ///

24  ///

25

26    [1] On April 6, 2023, the Court granted in part and denied in part Oracle's motion to dismiss
    Plaintiffs' Complaint. (ECF No. 49 ("Ord.").)  The Court denied Oracle's motion to dismiss as to
    Plaintiffs' claims for California invasion of privacy (on behalf of the proposed California
27  subclass) and California intrusion upon seclusion (on behalf of the proposed California subclass).
    (*See id.* at 11-13.)  Accordingly, Oracle does not move to dismiss those claims here, and will
28  respond separately to those claims 30 days after the Court's rules on this motion, as stipulated.
    (ECF No. 60.)

1    This motion is based upon this Notice; the accompanying Memorandum of Points and

2    Authorities; the pleadings, files, and records in this action; and such additional evidence and

3    arguments as may be presented at the hearing of this motion.

4

5    Dated:  June 28, 2023                    MORRISON & FOERSTER LLP

6
                                        By:    */s/ Purvi G. Patel*
7                                              Purvi G. Patel

8                                              **Attorneys for Defendant**
                                               **Oracle America, Inc.**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE AD TECH INDUSTRY PROVIDES TOOLS FOR BUSINESSES TO
       BETTER DELIVER TARGETED ADVERTISING.............................................. 2

III.   ARGUMENT ...................................................................................................... 3

       A.     Plaintiffs Cannot Extend California Law to Non-Residents ...................... 3

              1.    California's choice-of-law analysis requires dismissal of Golbeck's
                    California intrusion upon seclusion and unjust enrichment claims ........... 4

                    a.    The Court should again dismiss Golbeck's California
                          intrusion upon seclusion claim......................................................... 4

                    b.    The Court should dismiss Golbeck's California unjust
                          enrichment claim .............................................................................. 7

              2.    Plaintiffs cannot assert California claims on behalf of non-resident
                    members of the putative nationwide class ............................................... 8

       B.     Plaintiffs' Third Through Ninth Causes of Action Fail Under Rule 12(b)(6) ........ 9

              1.    Golbeck fails to state a claim for intrusion upon seclusion under
                    Florida Law (third cause of action).......................................................... 10

                    a.    Golbeck has failed to allege intrusion into a private place .......... 10

                    b.    Golbeck fails to allege a "highly offensive" intrusion ................. 12

              2.    Katz-Lacabe repeats his original CIPA claim, which again fails as a
                    matter of law (fourth cause of action)...................................................... 14

                    a.    Katz-Lacabe realleges elements of his CIPA claim that the
                          Court has dismissed as non-actionable record information .......... 14

                    b.    Katz-Lacabe fails to allege "willful" interception of the
                          content of his communications ....................................................... 16

                    c.    Katz-Lacabe's CIPA claims under §§ 631(a)(iii)-(iv) also
                          fail for failure to state a predicate claim...................................... 18

              3.    Golbeck fails to state a claim for wiretapping under the FSCA (fifth
                    cause of action) ....................................................................................... 18

                    a.    Oracle's bk-coretag.js is outside the scope of the FSCA
                          because the data it captures are not "electronic
                          communications"............................................................................. 19

                    b.    Golbeck has failed to allege a reasonable expectation of
                          privacy in her online browsing activity.......................................... 20

                    c.    Golbeck's FSCA claim fails, at minimum, as to seven types
                          of non-content information ............................................................. 21

              4.    Plaintiffs fail to state a claim under the ECPA (sixth cause of
                    action)...................................................................................................... 21

              5.    Katz-Lacabe fails to state a claim for unjust enrichment under
                    California law (seventh cause of action)................................................... 23

# TABLE OF CONTENTS
(continued)

| | | | Page |
|---|---|---|---|

6.   Golbeck fails to state a claim for unjust enrichment under Florida law (eighth cause of action) ........................................................ 24

7.   Plaintiffs' declaratory judgment claim fails to the same extent as their underlying claims, and because it is duplicative of the other remedies they seek (ninth cause of action) ................................................ 25

IV.   CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. State,*
    436 So. 2d 1132 (Fla. Dist. Ct. App. 1983) ................................................................. 11

*Allstate Ins. Co. v. Ginsberg,*
    863 So. 2d 156 (Fla. 2003) ....................................................................................... 10

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................... 8

*In re Apple Inc. Device Performance Litig.,*
    347 F. Supp. 3d 434 (N.D. Cal. 2018), *on reconsideration in part,*
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..................................................................... 4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................. 9, 22

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ...................................................................... 21

*Brown v. Google LLC,*
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................................................................... 22

*Cal. Soc'y of Anesthesiologists v. Brown,*
    204 Cal. App. 4th 390 (2012).................................................................................... 17

*Cardoso v. Whirlpool Corp.,*
    2021 WL 2820822 (S.D. Fla. July 6, 2021) .............................................................. 19

*Carvalho v. Equifax Info. Servs., LLC,*
    629 F.3d 876 (9th Cir. 2010)..................................................................................... 10

*Celestine v. Cap. One,*
    2017 WL 2838185 (S.D. Fla. June 30, 2017) ..................................................... 13, 14

*Connor v. Whirlpool Corp.,*
    2021 WL 3076477 (S.D. Fla. July 6, 2021) .............................................................. 19

*ESG Cap. Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016)................................................................................. 7, 23

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................. 23

*Flores-Figueroa v. United States*,
   556 U.S. 646 (2009) ............................................................................................... 17

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ............................................................ 15, 21

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................................................... 22

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................................... 15

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ........................................................ 8, 9

*Hammer v. Sorensen*,
   824 F. App'x 689 (11th Cir. 2020) ...................................................................... 5, 10

*Haskins v. Symantec Corp.*,
   2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) .......................................................... 18

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) ................................................................... 24

*Hayden v. Retail Equation, Inc.*,
   2022 WL 2254461 (C.D. Cal. May 4, 2022), *on reconsideration*,
   2022 WL 3137446 (C.D. Cal. July 22, 2022) .......................................................... 7

*Hernandez v. Burger*,
   102 Cal. App. 3d 795 (1980) ............................................................................... 6, 8

*Hillman Const. Corp. v. Wainer*,
   636 So. 2d 576 (Fla. Dist. Ct. App. 1994) ............................................................. 24

*Jacome v. Spirit Airlines Inc.*,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ........................................ 12, 19, 20

*Kopel v. Kopel*,
   229 So. 3d 812 (Fla. 2017) .......................................................................... 7, 8, 24

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................................... 17

*Lozano v. City of Los Angeles*,
   73 Cal. App. 5th 711 (2022) .................................................................................. 17

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021)...................................................................... 18

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d. 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
    Grocery Coop., Inc. v. Bumble Bee Foods LLS*, 31 F.4th 651 (9th Cir. 2022)............ 4, 6, 7, 8

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988)............................................................................... 9, 24

*N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*,
    764 So. 2d 672 (Fla. Dist. Ct. App. 2000) ............................................................. 7, 24

*Oman v. Delta Air Lines, Inc.*,
    889 F. 3d 1075 (9th Cir. 2018).................................................................................. 6

*Oppenheim v. I.C. Sys., Inc.*,
    695 F. Supp. 2d 1303 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010) ............................ 13

*Paulo v. Bepex Corp.*,
    792 F.2d 894 (9th Cir. 1986)..................................................................................... 8

*People v. Atkins*,
    25 Cal. 4th 76 (2001) ............................................................................................. 16

*People v. Super. Ct. (Smith)*,
    70 Cal. 2d 123 (1969) ........................................................................................ 16, 17

*Peoples Nat'l Bank of Com. v. First Union Nat'l Bank of Fla., N.A.*,
    667 So. 2d 876 (Fla. Dist. Ct. App. 1996) ............................................................. 8, 25

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ....................................................................................... 15

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022)........................................................................................ 6

*Post-Newsweek Stations Orlando, Inc. v. Guetzloe*,
    968 So. 2d 608 (Fla. Dist. Ct. App. 2007) ................................................................ 13

*Regions Bank v. Kaplan*,
    2021 WL 4852268 (11th Cir. Oct. 19, 2021)............................................................. 13

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ........................................................... 22

*Saleh v. Nike*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021)....................................................................... 15

*Shadlich v. Makers Nutrition LLC*,
    2020 WL 5255133 (M.D. Fla. Sept. 3, 2020) ........................................................................ 13

*Smith v. Maryland*,
    442 U.S. 735 (1979) ................................................................................................................ 10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020).................................................................................................. 25

*Spilfogel v. Fox Broad. Co.*,
    433 F. App'x 724 (11th Cir. 2011) ................................................................................... 10, 11

*Stasiak v. Kingswood Co–Op, Inc.*,
    2012 WL 527537 (M.D. Fla. Feb. 17, 2012) ........................................................................ 13

*State v. Jackson*,
    650 So. 2d 24 (Fla. 1995)....................................................................................................... 20

*Sussman v. ABC*,
    186 F.3d 1200 (9th Cir. 1999)................................................................................................ 23

*Tavernetti v. Super. Ct.*,
    22 Cal. 3d 187 (1978) ............................................................................................................ 18

*Tech & Intell. Prop. Strategies Grp. PC v. Fthenakis*,
    2011 WL3501690 (N.D. Cal. Aug. 10, 2011)........................................................................ 25

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) .............................................................................. 7, 9

*United States v. Reed*,
    575 F.3d 900 (9th Cir.2009)................................................................................................... 15

*United States v. Taylor*,
    935 F.3d 1279 (11th Cir. 2019) ............................................................................................. 12

*United States v. Trader*,
    981 F.3d 961 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296 (2021) ..................... 10, 12, 20, 21

*United States v. VanDyck*,
    776 F. App'x 495 (9th Cir. 2019) ......................................................................................... 12

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................................... 21

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 ............................................................................................................. 15

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ............................ 4

NOTICE OF MOTION AND MOTION TO DISMISS
PORTIONS OF PLAINTIFFS' FAC
  sf-5565459
              vi                  CASE NO. 3-22-cv-04792-RS

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ........................................................................... 15, 16

**Statutes**

18 U.S.C. § 2511(1)(a) ........................................................................................... 21

Cal. Civ. Code
   § 1798.99.80 ...................................................................................................... 1
   § 1798.140(i) ...................................................................................................... 7
   § 1798.140(d) ...................................................................................................... 5

Cal. Pen. Code
   § 7(1) .............................................................................................................. 16
   § 630 .............................................................................................................. 17
   § 631 *et seq.* ................................................................................................ *passim*
   § 632 .......................................................................................................... 16, 17

Fla. Stat.
   § 501.702(9) ...................................................................................................... 5
   § 934.01 .......................................................................................................... 20
   § 934.02 .......................................................................................................... 21
   § 934.02(12)(c) ................................................................................................ 19
   § 934.03(1)(a) ................................................................................................ 18
   § 934.03(1)(d) ................................................................................................ 18

**Other Authorities**

Fed. R. Civ. P.
   8(a)(2) ............................................................................................................ 10
   12(b)(6) ............................................................................................................ 9

Restatement (Second) of Torts § 652B (1977) ................................................... 10

## STATEMENT OF THE ISSUES TO BE DECIDED

The motion raises the following issues:

1. **Extraterritorial Application of California Law**.  Whether Golbeck's California intrusion upon seclusion and unjust enrichment claims should be dismissed again because Golbeck has failed to allege any legal basis to apply California claims to her, a resident of Florida, or members of the putative nationwide class.

2. **Intrusion Upon Seclusion Under Florida Law**.  Whether Golbeck's Florida intrusion upon seclusion claim should be dismissed because (a) she does not allege an invasion into a private quarter or place and (b) Oracle's alleged conduct does not constitute a highly offensive intrusion.

3. **California Invasion of Privacy Act (CIPA)**.  Whether Katz-Lacabe's CIPA claim should be dismissed because he (a) again bases his claim on the collection of non-content record information contrary to the Court's prior ruling and (b) has failed to allege "willful" interception.

4. **Florida Security of Communications Act (FSCA)**.  Whether Golbeck's FSCA claim should be dismissed because (a) the FSCA does not apply to common web analytics tools, (b) Golbeck had no reasonable expectation of privacy in her browsing activity, and (c) the alleged data intercepted was non-content record information.

5. **Federal Wiretap Act (ECPA)**.  Whether Plaintiffs' ECPA claim should again be dismissed because (a) ECPA is a one-party consent statute and Oracle's customers have consented to Oracle's alleged collection of the information at issue, and (b) Plaintiffs have not alleged enough to satisfy ECPA's "crime-tort" exception.

6. **Unjust Enrichment Under California Law**.  Whether Plaintiffs' claim for unjust enrichment under California law should again be dismissed because they have not shown that Oracle's alleged retention of a benefit was unjust.

7. **Unjust Enrichment Under Florida Law**.  Whether Golbeck's claim for unjust enrichment under Florida law should be dismissed because she has failed to allege that (a) Oracle's alleged retention of any benefit was unjust, and (b) any alleged benefit was conferred directly on Oracle.

8. **Declaratory Judgment**.  Whether Plaintiffs' claim for declaratory judgment should again be dismissed (a) to the extent Plaintiffs failed to state a claim for any underlying claim, and (b) because they fail to allege that they seek anything beyond what they seek in their underlying claims.

Oracle summarizes the grounds for dismissal for each cause of action, by Plaintiff, in the chart below:

| Cause of Action | M. Katz-Lacabe | J. Golbeck |
|---|---|---|
| **Intrusion Upon Seclusion Under California Law** (Second Cause of Action) | • Court previously denied motion to dismiss (Ord. at 11-13.) | • No extraterritorial application, as the Court previously determined (Ord. at 19-21.) |

| Cause of Action | M. Katz-Lacabe | J. Golbeck |
|---|---|---|
| **Intrusion Upon Seclusion Under Florida Law** (Third Cause of Action) | ● Not brought by Katz-Lacabe | ● Failure to allege an intrusion into a private place that was highly offensive |
| **California Invasion of Privacy Act** (Fourth Cause of Action) | ● Failure to allege "willful" interception and dismissal as to the types of data the Court has already determined do not to constitute actionable "content" (Ord. at 15-16.) | ● Not brought by Golbeck |
| **Florida Security of Communications Act** (Fifth Cause of Action) | ● Not brought by Katz-Lacabe | ● Failure to state a claim (i) because the statute excludes tracking technology, such as the bk-coretag.js from its scope, and (ii) because Golbeck had no reasonable expectation of privacy in her web browsing activity<br><br>● Dismissal as to the types of data the Court has already determined do not constitute actionable "content" (Ord. at 15-16.) |
| **Federal Wiretap Act** (Sixth Cause of Action) | ● Failure to state a claim because, as this Court previously found, Oracle had the consent of at least one party to the alleged communications and the crime-tort exception does not apply (Ord. at 16.) | |
| **Unjust Enrichment: California Law** (Seventh Cause of Action) | ● Failure to allege that Oracle's alleged retention of benefit was unjust | ● No extraterritorial application |
| **Unjust Enrichment: Florida Law** (Eighth Cause of Action) | ● Not brought by Katz-Lacabe | ● Failure to allege that Oracle's retention of benefit was unjust or that she conferred a benefit "directly" on Oracle |
| **Declaratory Judgment** (Ninth Cause of Action) | ● Fails to the same extent as underlying claims and for failure to allege they seek anything beyond what is sought in the underlying claims | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Remaining Plaintiffs Michael Katz-Lacabe and Jennifer Golbeck continue to use this lawsuit to air their grievances with the advertising technology ("ad tech") industry at large. While broadly condemning standard and legally prescribed industry-wide practices, they once again ask the Court to take on the role of legislator to create a new legal privacy framework. Despite having pled "barely" enough for some of their claims to survive Oracle's first motion to dismiss, Plaintiffs do not allege any new facts to support the additional claims they try to bring, and they replead claims the Court has already rejected.[1]  None of the facts alleged revive the claims the Court already dismissed, nor do they support Golbeck's new Florida causes of action.

Plaintiffs' core theory remains unchanged: Oracle America, Inc. ("Oracle"), through its Oracle Advertising ("OA") business, purportedly violates consumers' privacy by compiling and selling "dossiers" of their personal information.  But OA does not compile and sell "dossiers" on specific individuals.  Rather, OA provides its customers with access to "interest segments" (comprising pseudonymized groups of consumers likely to be interested in a certain topic, like "sports enthusiast"), which they can use to deliver more relevant and targeted advertising. Plaintiffs attach "Offline Access Request Response Reports" ("OARRR") to the FAC as "evidence" of the dossiers Oracle purportedly maintains,[2] but fail to acknowledge that Oracle creates OARRRs pursuant to the California Privacy Rights Act ("CPRA") as a legally required *consumer* right.  It cannot be that Oracle's compliance with California's privacy law constitutes an invasion of privacy.

This is not the only instance in which Plaintiffs ignore that Oracle is lawfully operating within laws designed to protect California consumers.  Despite acknowledging Oracle's status as a registered data broker, Plaintiffs broadly take issue with Oracle's alleged collection and sale of their personal information—actions expressly contemplated and permitted by statute.[3]  They

---

[1] (*See* Ord. at 23.)

[2] (ECF Nos. 54 ("FAC"), 55-2, 55-3.)

[3] (*See* FAC ¶¶ 21, 26, 39, 89, 105 (citing Cal. Civ. Code § 1798.99.80, which defines "data broker" as an entity permitted to collect and sell to third parties the personal information of consumers with whom it has no direct relationship).)

1   further ignore that internet users are given the choice to opt out of the alleged data collection

2   practices.  For the second time, Plaintiffs' allegations do no more than support their individual

3   positions that the entire online advertising industry *should* be illegal, even if no data privacy law

4   currently exists that would render it so.

5          Plaintiffs unsuccessfully reassert claims rejected by this Court, including California claims

6   on behalf of Golbeck (a Florida resident) and their putative nationwide class.  Moreover, despite

7   guidance from the Court, Plaintiffs are again unable to state a claim for relief under the vast

8   majority of their causes of action.  More critically, Plaintiffs' proffered view threatens to upend

9   essential practices impacting how websites operate, including the use of third parties for basic

10  functionality like hosting.  Plaintiffs' position is untenable; they would have this Court find a

11  wiretap or invasion of privacy every time a website routed any information through a third-party

12  server—a routine action taking place constantly on almost every website.  The Court should

13  decline Plaintiffs' invitation to find a privacy violation simply because they do not like how the

14  modern internet works.  For the reasons provided herein, the Court should grant Oracle's motion

15  to dismiss, this time, with prejudice.

16  **II.     THE AD TECH INDUSTRY PROVIDES TOOLS FOR BUSINESSES TO BETTER
           DELIVER TARGETED ADVERTISING**

17

18         Oracle is a part of Oracle Corporation, an enterprise software company and cloud service

19  provider.  Oracle's business lines include OA, an enterprise-level suite of analytical tools for

20  digital advertisers to deliver content to audiences most likely to be interested in that content.  (*See*

21  FAC ¶¶ 37-38 (describing how OA customers use OA's tools to deliver "targeted advertising"

22  and "orchestrate a relevant, personalized experience for each individual").)  Websites derive

23  revenue based on how effectively they deploy ads, which in turn allows website owners to

24  provide online services and content free of charge.  In this way, online advertising powers today's

25  internet by allowing ad tech companies to help businesses deliver targeted advertising to

26  consumers.  (*See* Ord. at 18 n.11 (describing Plaintiffs' free access to third-party websites as a

27  benefit derived from the monetization of their data).)

28

The OA products at issue here (BlueKai, AddThis, and Datalogix),[4] like other products in the ad tech space, help businesses target their content to pseudonymized interest segments most likely to be interested in their campaign (*e.g.*, "sports enthusiast"). (*See* FAC ¶¶ 37-38.) For example, using the BlueKai Data Management Platform ("DMP"), OA customers can create targeted ad campaigns through which they can access OA-created interest segments on the Oracle Data Marketplace; these segments do not include any personally identifiable information. (*See, e.g., id.* ¶¶ 36, 64(d).) OA's products are supported by information received from cookies (*id.* ¶ 43), bk-coretag.js (*id.* ¶¶ 44-50), tracking pixels (*id.* ¶ 51), device identification (*id.* ¶ 54), and cross-device tracking (*id.* ¶ 55)—technologies that Plaintiffs identify in the FAC.

Underlying each of these products is the Oracle ID Graph, which is an internal tool OA uses to connect the data that OA's customers and data partners have collected across marketing channels and devices. (*Id.* ¶ 37.) This functionality enhances, supports, and validates OA's products. (*Id.*) To ensure consumers' privacy, Oracle pseudonymizes all personally identifiable information it collects online. (*Id.* ¶ 60.) Moreover, it does not use any data it receives from customers to create sensitive interest segments, including those related to medical diagnoses, pregnancy, racial, religious, political or sexual orientation, citizenship or immigration status, and prohibits its customers from doing the same. (*Id.* ¶ 113 (quoting the Oracle Advertising Privacy Policy).) Consumers are not and cannot be harmed by Oracle's practices, which are ubiquitous in the digital world. Plaintiffs clearly wish to change the status quo, but legislation is the proper vehicle for such change, not litigation.

## III.    ARGUMENT

### A.    Plaintiffs Cannot Extend California Law to Non-Residents

Plaintiffs assert California claims for (i) intrusion upon seclusion and (ii) unjust enrichment on behalf of a putative nationwide class or, in the alternative, a California sub-class.[5]

---

[4] Plaintiffs mention "Moat Reach" and "Oracle Moat" once each in the FAC, both times in a footnote. (FAC ¶¶ 55 n.32, 114 n.146.) They fail to specify what, if any, claims they have against either one or what they mean by "Oracle Moat" (which is not an Oracle product).

[5] Plaintiffs also bring their ninth cause of action for declaratory judgment on behalf of a purported nationwide class. (FAC ¶¶ 264-67.) Because this claim "rise[s] and fall[s] with its other claims" (Ord. at 22), and Plaintiffs cannot extend their California claims nationwide, they similarly cannot extend their declaratory relief claim.

1    As before, the Court should reject Plaintiffs' attempt to apply California law extraterritorially to

2    Golbeck, a resident of Florida, and the broader putative nationwide class.  (*See* Ord. at 22

3    (dismissing the California intrusion upon seclusion claim as to Golbeck and Plaintiffs' putative

4    nationwide class in part because of the significant legal differences in applicable law).)  Dismissal

5    with prejudice is warranted.

6    **1.**    **California's choice-of-law analysis requires dismissal of Golbeck's**
       **California intrusion upon seclusion and unjust enrichment claims**

7

8        "A federal court sitting in diversity must look to the forum state's choice of law rules to

9    determine the controlling substantive law."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180,

10   1187 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).  Where, like here, "there is no

11   advance agreement between the parties," California applies the governmental interest test to

12   select the appropriate law.  *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 445

13   (N.D. Cal. 2018), *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019).

14       California's governmental interest test is a three-step process.  *See Mazza v. Am. Honda*

15   *Motor Co., Inc.*, 666 F.3d. 581, 590 (9th Cir. 2012), *overruled on other grounds by Olean*

16   *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLS*, 31 F.4th 651 (9th Cir. 2022).  The first

17   step of the inquiry is to ask whether the laws of the affected jurisdictions are "the same or

18   different."  *Id.*  If different, the second step is to examine each jurisdictions' interest in having its

19   own law applied to determine whether a "true conflict" exists.  *Id.*  Finally, if the court finds there

20   is a true conflict, it must ask "which state's interest would be more impaired if its policy were

21   subordinated to the policy of the other state."  *Id.*  There is no basis to invoke California law on

22   behalf of Golbeck or the putative nationwide class.

23   **a.**    **The Court should again dismiss Golbeck's California intrusion**
       **upon seclusion claim**

24

25       The Court previously determined that California's three-pronged governmental interest

26   test disqualifies Golbeck from pursuing a claim for intrusion upon seclusion under California law

27   (*see* Ord. at 18-22), and nothing alleged in the FAC changes that result.

28       ***First***, the Court rejected Plaintiffs' argument that there's only a "superficial difference[]"

between California's and Florida's intrusion upon seclusion claim, instead emphasizing Florida's distinct requirement that plaintiffs "show an intrusion into a private place [or quarter] and not merely a private activity." (*Id.* (quoting *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020))); *see also infra* Section III(B)(1)(a). Nothing in the FAC changes that conclusion. Golbeck does not allege any facts that eliminate the Florida requirement that the alleged intrusion be into a private place or quarter, and significant differences remain between the laws of California and Florida, warranting the same finding under the first prong that the two states' laws differ in a way that is "neither 'trivial [n]or wholly immaterial.'" (Ord. at 19-20.)

*Second*, the Court found a true conflict exists because there was "indeed a possibility that a successful claim under California law would fail to be meritorious under [Florida law]." (*Id.* at 20.) The Court considered the states' differing interests and policy choices: (i) Florida's "private quarter" requirement; (ii) the fact that intrusion upon seclusion "necessitates consideration of legal and social norms," which are not uniform across the fifty states; (iii) the fact that "Florida's [intrusion upon seclusion] laws have not stretched to reach claims premised on the collection of online data;" and (iv) that Florida has considered but failed to enact "consumer privacy legislation conferring substantive data privacy rights in the way that California has done." (*Id.*) Those same grounds for a true conflict exist here. Though the Florida legislature recently enacted new data privacy legislations for its citizens, it is not operative until July 1, 2024, and its reach is significantly narrower than that of the CPRA.[6] Moreover, the balance of the remaining factors still demonstrates a fundamental conflict between the two states' intrusion upon seclusion claims. Oracle is unaware of a single intrusion upon seclusion claim under Florida law successfully made involving the collection of web browsing data (ECF No. 35 at 5), and for good reason. Because Florida requires intrusions into a private "place," it is ill-suited to claims arising out of the collection of information from publicly available businesses and websites. (*See infra*

---

[6] Florida Senate Bill 262, creating a Digital Bill of Rights, was signed into law by Governor DeSantis on June 6, 2023. *Compare* Fla. Stat. § 501.702(9) (applying to businesses that have an annual gross revenue exceeding $1 *billion* and that derive at least *half* their global revenue from selling online ads or providing targeted advertising) *with* Cal. Civ. Code § 1798.140(d) (applying to businesses that have annual gross revenues over $25 *million* or otherwise obtain personal information on 100,000 or more consumers).

1  Section III(B)(1)(a).)

2      ***Third***, Golbeck unsuccessfully attempts to establish that California's interest would be

3  more impaired if its policy were subordinated to that of Florida by adding allegations purporting

4  to establish California as the "place of the wrong."  (FAC ¶¶ 28-30); *see also Hernandez v.*

5  *Burger*, 102 Cal. App. 3d 795, 802 (1980) (concluding that "with respect to regulating or

6  affecting conduct within its borders, the place of the wrong has the predominant interest").

7  According to Golbeck, California is the "place of the wrong" because the "last acts to make

8  Oracle liable"—*i.e.*, Oracle's alleged "creation, maintenance, and provision" of purported data

9  profiles "to third parties"—occurred in Redwood City.  (FAC ¶ 28.)  The Court has already

10  rejected this argument, concluding instead that the "place of the wrong" was outside California

11  because "the 'last event[s]' involved in the collection and interception of data [] were made

12  possible by an intermediary that may or may not be located in the state."  (Ord. at 21.)

13      Nothing in the FAC revives Golbeck's claim.  She alleges that the "last act" attaching

14  liability to Oracle occurred in California, while simultaneously alleging that Oracle's intrusion

15  happened when bk-coretag.js intercepted her web browsing data.  (*See* FAC ¶¶ 44-50 (alleging

16  that bk-coretag.js intercepts communications "[w]hen a user opens an Internet webpage").)  This

17  interception, however, would have happened where Golbeck was located, presumably not in

18  California.  (Ord. at 21 ("Plaintiffs interactions with the third-party websites do not necessarily

19  take place in California—and presumably do not, when considering [Golbeck].")  Thus, "the last

20  event *necessary to make the actor liable*"—Golbeck's "interactions with the third-party

21  websites"—occurred in Plaintiff's home jurisdiction.  (*Id.*; *Mazza*, 666 F.3d at 593 (emphasis

22  added));[7] *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130-32 (3d Cir. 2022)

23  (reasoning from Ninth Circuit and other authority that electronic communications are intercepted

24  on plaintiffs' browsers—*i.e.*, where the cookies sit and reroute data).  Notably, Golbeck does not

25  place herself or her web browsing activity in California.

26  

27      [7] The case Plaintiffs cite in the FAC is consistent with Oracle's position.  (FAC ¶ 29 (citing
*Oman v. Delta Air Lines, Inc.*, 889 F. 3d 1075, 1079 (9th Cir. 2018)).)  Unlike in *Oman*, the

28  conduct that "create[d]" liability here occurred *outside* California, on Plaintiffs' browsers.  *See
Oman*, 889 F.3d at 1079.

Golbeck's contention that California has the greater interest in non-resident members of the putative class because of the CPRA must also be rejected. The plain text of the statute makes clear that it does not apply to non-Californians. Cal. Civ. Code § 1798.140(i) (defining a "[c]onsumer" as "a natural person who is a *California resident*") (emphasis added); *see also Hayden v. Retail Equation, Inc.*, 2022 WL 2254461, at *5 (C.D. Cal. May 4, 2022), *on reconsideration*, 2022 WL 3137446 (C.D. Cal. July 22, 2022). The allegations in the original Complaint were insufficient for the Court to extend claims for intrusion upon seclusion under California law to residents of other states, including Florida, and nothing alleged in the FAC requires a different conclusion here.

### b.      The Court should dismiss Golbeck's California unjust enrichment claim

As with Golbeck's California intrusion upon seclusion claim, her unjust enrichment claim also fails California's three-prong governmental interest test and must be dismissed.

*First*, Florida and California law differ on unjust enrichment. *Mazza*, 666 F.3d at 590. While California requires that the plaintiff "show that the defendant received and unjustly retained a benefit at the plaintiff's expense," the plaintiff does not need to allege defendant's knowledge and acceptance of the benefit. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Florida, however, requires plaintiff to prove that the defendant had "knowledge" and "accept[ance]" of the benefit. *See N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 n.5 (Fla. Dist. Ct. App. 2000). Moreover, Florida demands that the "benefit" be conferred "directly" on the defendant, whereas California has no such requirement. *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). The Ninth Circuit recognized these fundamental differences in *Mazza* when it found "[t]he elements necessary to establish a claim for unjust enrichment … vary materially from state to state." 666 F.3d at 591 (refusing to certify a nationwide class for unjust enrichment); *see also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1122 (N.D. Cal. 2021) (same, but at pleading stage).

*Second*, those legal differences represent a "true conflict" between the states, as Florida's "direct benefit" requirement substantially undermines Golbeck's unjust enrichment claim.

1   *Mazza*, 666 F.3d at 590; *see Kopel*, 229 So. 3d at 818; *see also infra* Section III(B)(6).  Golbeck

2   alleges Oracle received her data through data partners and customers who deployed cookies, the

3   bk-coretag.js, and other pixels on their websites.  (FAC ¶¶ 44-50.)  Because Oracle allegedly

4   received Golbeck's data through "intermediar[ies]," she has failed to allege that she directly

5   conferred her data, or any benefit derived from it, on Oracle.  (Ord. at 18 n.11); *see also Peoples*

6   *Nat'l Bank of Com. v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct.

7   App. 1996) (dismissing unjust enrichment claim where intermediary bank, and not plaintiff

8   lender, directly distributed overpayments to defendant lenders).

9       ***Third***, Florida's "interests would be more impaired if its policy were subordinate" to the

10  policy of California, and therefore Florida law must govern Golbeck's claim.  *Mazza*, 666 F.3d at

11  598 (citation omitted); *see also Hernandez*, 102 Cal. App. 3d at 802 (finding "the place of the

12  wrong has the predominant interest").  Here, "[Golbeck's] interactions with the third-party

13  websites"—the activity underlying her unjust enrichment claim—"presumably [did] not" occur

14  "in California" and her new allegations fail to demonstrate otherwise.  (Ord. at 21.)  Rather, as the

15  Court has already found, "the state where the last event necessary to make the actor liable

16  occurred" was Florida—where she and her browsers and devices are located.  (*Id.* at 20); *see*

17  *supra* Section III(A)(1)(a).  Thus, Florida's interest in applying its own laws to its citizens

18  outweighs California's "little interest in applying its law to compensate citizens of [other states]."

19  *See Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986).  Golbeck's California unjust

20  enrichment claim should be dismissed.

21          **2.      Plaintiffs cannot assert California claims on behalf of non-resident**
                **members of the putative nationwide class**
22

23      The Court should once again reject Plaintiffs' attempts to expand California law well

24  beyond its intended reach.  (*See* Ord. at 18-22.)  Plaintiffs each seek to represent a proposed

25  nationwide class for claims brought under California law, without a plausible basis of residency

26  or location of injury in California.  *See In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802

27  F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing CLRA and UCL claims by non-California

28  residents who purchased their iPad and data plans outside of California); *Granfield v. NVIDIA*

1   *Corp.*, 2012 WL 2847575, at *2-3 (N.D. Cal. July 11, 2012) (dismissing out-of-state plaintiffs'

2   California claims where plaintiff purchased her computer in Massachusetts); *see also In re Toyota*

3   *RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1122 (dismissing California unjust enrichment

4   claim as to nationwide class based on variability in state laws). In fact, the overwhelming

5   majority of putative class members would not have a single connection to the state. "California's

6   interest in applying its law to residents of foreign states is attenuated," particularly where "the

7   claims of foreign residents concern[] acts that took place in other states." (Ord. at 20 (quoting

8   *Mazza*, 666 F.3d at 594).) This Court has already held that in light of differing community

9   standards and legal frameworks among states, the law of California should not be applied

10  nationwide. (Ord. at 21.) As demonstrated above, Plaintiffs have added nothing to the FAC to

11  warrant a different finding here. (*See supra* Section III(A)(1).)

12         Plaintiffs' attempt to apply California claims to a nationwide class suffers from an

13  additional issue: Oracle moved its headquarters out of California in 2020. (FAC ¶ 26 ("Until at

14  least December 2020, Oracle's principal place of business is, or has been for the majority of the

15  class period, Redwood City, California[.]").) Thus, even if Plaintiffs' mistaken logic about the

16  locus of injury were to apply, *see supra* Section III(A)(1)(a), the alleged conduct since the move

17  would have occurred outside the state. The Court expressed concern about this very issue, stating

18  that Oracle's relocation "would only present additional hurdles in the choice of law analysis for

19  selecting California as the law to apply nationally." (Ord. at 21 n.12.) Plaintiffs have done

20  nothing to address the Court's concerns.

21         **B.      Plaintiffs' Third Through Ninth Causes of Action Fail Under Rule 12(b)(6)**

22         A court must dismiss a claim under Rule 12(b)(6) if the plaintiff (1) fails to state a

23  cognizable legal theory or (2) has not alleged sufficient facts establishing a claim to relief that is

24  "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

25  *Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations, without more, are insufficient to

26  defeat a motion to dismiss. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

27  The Court must not assume the truth of legal conclusions merely because they are pleaded in the

28  form of factual allegations. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555 (plaintiff must

1  plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

2  action will not do"); Fed. R. Civ. P. 8(a)(2).  The Court must dismiss Plaintiffs' third through

3  ninth causes of action, many for the second time, because Plaintiffs fail to state a claim.

4  Furthermore, the Court may deny Plaintiffs leave to amend where, like here, they have "fail[ed]

5  to cure deficiencies by amendments previously allowed."  *Carvalho v. Equifax Info. Servs., LLC*,

6  629 F.3d 876, 892 (9th Cir. 2010).

7          **1.**        **Golbeck fails to state a claim for intrusion upon seclusion under**
8                              **Florida Law (third cause of action)**

9        Generally, Florida courts follow the Restatement's two-prong approach to intrusion upon

10  seclusion, requiring (i) an intrusion that is (ii) highly offensive to a reasonable person.  *Hammer*

11  *v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020); *see also* Restatement (Second) of Torts

12  § 652B (1977).  The Supreme Court of Florida, however, has construed the claim "even more

13  narrowly than the Restatement provides."  *Hammer*, 824 F. App'x at 695.  Specifically, Florida

14  law requires a plaintiff to "show an intrusion into a private *place* and not merely a private

15  activity."  *Id.* (citing *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 n.3, 162 (Fla. 2003))

16  (emphasis added).  Golbeck does not adequately allege either prong, warranting dismissal.

17          **a.**        **Golbeck has failed to allege intrusion into a private place**

18        Under the first prong, Golbeck must plausibly allege intrusion "into a 'place' in which

19  there is a reasonable expectation of privacy."  *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 726

20  (11th Cir. 2011) (citation omitted).  The Eleventh Circuit applies the "third-party doctrine" to

21  determine whether the plaintiff's expectation of privacy was reasonable.  *United States v. Trader*,

22  981 F.3d 961, 967 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296 (2021).  The third-party doctrine

23  stands for the principle that "a person lacks a reasonable expectation of privacy in information he

24  has voluntarily disclosed to a third party."  *Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 743-44

25  (1979)).  While Golbeck alleges Oracle collected data on both her offline and online behavior,

26  (FAC ¶¶ 12-19), critically absent is a plausible allegation that Oracle accessed a private place.

27  Golbeck's few particularized allegations point only to the collection of data from *publicly*

28  accessible brick-and-mortar businesses (offline) and websites (online)—two domains where

1    Golbeck had no reasonable expectation of privacy from third parties.  (*Id.* ¶¶ 12-17, 163-69); *see*

2    *Spilfogel*, 433 F. App'x at 726.  This is insufficient.

3    **Offline**.  Golbeck alleges that Oracle collected her "location information," "real world

4    movement data," and "brick-and-mortar store purchases," including from a third-party company

5    called PlaceIQ.  (FAC ¶¶ 16-17.)  But her purported movements between physical "retailer

6    locations, restaurants, gas stations, and banks," represent public activities outside a private

7    domain, and were observable by countless strangers with whom she had no reasonable

8    expectation of privacy.  *See Adams v. State*, 436 So. 2d 1132, 1133 (Fla. Dist. Ct. App. 1983) (no

9    reasonable expectation of privacy "when transacting" with a salesperson "in a place of business

10   open to the public"); *see also Spilfogel*, 433 F. App'x at 727 (no intrusion upon seclusion in a

11   conversation held on a city street where plaintiff "voluntarily placed herself in a public place").

12   The "third-party doctrine" applies with full force here, especially where the physical location

13   records that Oracle allegedly obtained from PlaceIQ are confined to locations where Golbeck

14   transacted business (FAC ¶ 16 ("retailer locations, restaurants, gas stations, and banks"); *id.* ¶¶ 4,

15   12, 57, 59, 64, 67, 102, 130, 147 (describing collection of data from "brick-and-mortar" retail

16   locations), state only the name of the merchant rather than a particular address (*id.* ¶ 16 n.9; *see*

17   *also id.*, Ex. B at 27-30), and therefore do not even begin to approach the revealing nature of

18   location data held to be private.

19   Indeed, Golbeck's leap from merchant names to real-world "physical location[]" data is

20   unsupported by any particularized facts and should be rejected.  (*Id.* ¶ 16; *id.*, Ex. B.)  Golbeck

21   cites only to a PlaceIQ press release from 2016, contending it shows that Oracle gets "real world

22   movement data" from PlaceIQ.  (*Id.* ¶ 16 n.9.)  But that press release states only that Oracle has

23   access to PlaceIQ's finished "consumer audiences," which PlaceIQ "*built from* real world

24   movement data and observations." *Id.* (emphasis added).  Golbeck's OARRR, which lists only

25   merchant names (not physical addresses), corroborates that Oracle does not receive any "real

26   world movement data" from PlaceIQ.  (*Id.*, Ex. B at 27-30.)  There is no basis to infer that Oracle

27   collected Golbeck's physical location data, and because the locations she alleges Oracle collected

28   are from public merchants, Golbeck's allegations regarding offline data fail to support her

1    intrusion upon seclusion claim.

2        ***Online***.  Golbeck's allegations related to online tracking fare no better.  The Eleventh

3    Circuit has analogized surfing the web to navigating public highways, especially where internet

4    users fail to undertake any effort to "shroud" their internet activity.  *United States v. Taylor*,

5    935 F.3d 1279, 1284 n.4 (11th Cir. 2019) (comparing "browsing the open internet" to "traveling

6    along the equivalent of 'public highways'").  Golbeck's theory that collecting web browsing data

7    is "tantamount to erecting a camera in her home" is, therefore, directly contrary to the Eleventh

8    Circuit's view.  *Id.*; (FAC ¶ 163).

9        When someone accesses a website, the website owner, at a minimum, is aware of the

10   visit—like a business owner recognizing that a person has walked into their shop.  Behavior on a

11   website, like behavior in a brick-and-mortar store, has no resemblance to behavior in the

12   "solitude" of one's home, because the internet user has knowingly disclosed her presence to the

13   website owner.  *See Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *7 (Fla. Cir. Ct. June 17,

14   2021) ("[T]here can be no reasonable expectation of privacy from a third-party website owner

15   when [an internet user] voluntarily browses through that third-party's website."); (*contra* FAC

16   ¶ 163.)  Moreover, an internet user also discloses her browsing history to at least one additional

17   third party—the user's Internet Service Provider ("ISP").  Several circuit courts, including both

18   the Ninth and Eleventh Circuits, are in accord that "subscriber information disclosed during

19   ordinary use of the internet," such as IP addresses and web browsing history, fall within the

20   "third-party doctrine" because ISPs are, by default, aware of internet user's conduct on the

21   internet.  *See Trader*, 981 F.3d at 968 (collecting cases); *see also United States v. VanDyck*,

22   776 F. App'x 495, 496 (9th Cir. 2019) (reaffirming that "internet users have no expectation of

23   privacy in the IP addresses of the websites they visit" because "they should know" this

24   information is provided to their ISPs) (citation omitted).  Considering the numerous entities with

25   whom Golbeck voluntarily shared her online movements, such online activity cannot constitute

26   any intrusion into any private place.

27            **b.      Golbeck fails to allege a "highly offensive" intrusion**

28        Golbeck's Florida intrusion upon seclusion claim also fails because she does not plausibly

allege that Oracle's conduct was so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309-10 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (citation omitted).  Nor can she.

Information *more* sensitive than anything at dispute in this case has failed under the Eleventh Circuit's "outrageous[ness]" standard:

- **Sensitive financial information found in a credit report.**  *Celestine v. Cap. One*, 2017 WL 2838185, at *4 (S.D. Fla. June 30, 2017); *see also Stasiak v. Kingswood Co–Op, Inc.*, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012) (obtaining credit report without permission does not rise to the level of outrageousness required for invasion of privacy).
- **Unredacted social security number.**  *See Regions Bank v. Kaplan*, 2021 WL 4852268, at *13 (11th Cir. Oct. 19, 2021) (applying same outrageousness standard to publication of private facts and dismissing claim).
- **Private medical records.**  *See Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007) (dismissing publication of private facts claim).
- **Attorney-client communications.**  *Id.*

The types of data on which Golbeck bases her claim—web browsing history, credit card purchases, and select data regarding retail store visits (FAC ¶¶ 12-18)—are a far cry from the sort of intrusions that Florida courts have found highly offensive.  None of the online information allegedly collected (URLs, page visits, and interactions on a website) even approaches the sensitivity of information that courts have found outrageous.  *Stasiak*, 2012 WL 527537, at *3.  Nor can Golbeck meet the requisite threshold by alleging Oracle's collection spanned "hundreds of [] websites."  (FAC ¶ 15); *see, e.g.*, *Shadlich v. Makers Nutrition LLC*, 2020 WL 5255133, at *2 (M.D. Fla. Sept. 3, 2020) (collecting cases where ongoing phone calls from debt collectors and telemarketers were not sufficiently outrageous for intrusion claims).  The same is true for Golbeck's credit card purchases and location data ("offline data") (FAC ¶¶ 16-17), which are both derived from shopping behaviors and, by Golbeck's admission, convey generalized "spending habits and preferences."  (*Id.* ¶ 17; *see also id.*, Ex. B (listing merchant names, interest segments, and the frequency of shopping at certain categories of stores)); *see also supra* Section III(B)(1)(a).  Because Golbeck's allegations focus on "spending habits," such as the frequency she shops at certain stores (*Id.* ¶ 17; *see also id.*, Ex. B), this data is even less sensitive than that conveyed in a credit report, and not so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Oppenheim*, 695 F. Supp. 2d at 1309-10

1   (citation omitted); *see also Celestine*, 2017 WL 2838185, at *4 (dismissing intrusion upon

2   seclusion claim involving unauthorized access of plaintiff's credit report over 86 times).  Her

3   Florida intrusion upon seclusion claim, therefore, must be dismissed.

**2.   Katz-Lacabe repeats his original CIPA claim, which again fails as a matter of law (fourth cause of action)**

6   As before, Katz-Lacabe bases his CIPA claim on § 631(a) subsections (ii)-(iv):

7   (ii) willfully attempting to read or to learn the contents or meaning of a communication in transit

8   over a wire; (iii) attempting to use or communicate information obtained from the above conduct;

9   and (iv) aiding and abetting another in the above conduct.  Cal. Penal Code § 631(a); (*see* FAC

10  ¶ 180).[8]  Despite the Court's prior ruling, Katz-Lacabe alleges Oracle intercepted several types of

11  web browsing data via its bk-coretag.js that, the Court held, do not constitute "contents" under the

12  statute.  (FAC ¶¶ 4-10.)  While only two types of data ("referrer URLs" and "data entered into

13  forms") survived the Court's prior "contents" analysis, Katz-Lacabe realleges all nine types of

14  data with no new fact allegations in support.  (*Id.*; *see also* Ord. at 15 n.9.)  The FAC is

15  essentially a motion for reconsideration as to the types of data the Court has already found to

16  constitute non-actionable record information.  (*Id.*)  There is no reason to reverse course, and

17  Katz-Lacabe's CIPA claim should be dismissed, at minimum, as to the types of information

18  already rejected by this Court.  (*Id.*)  His claim must also be dismissed in its entirety for failure to

19  allege "willful[]" interception.  *See* Cal. Pen. Code § 631(a)(ii).

**a.   Katz-Lacabe realleges elements of his CIPA claim that the Court has dismissed as non-actionable record information**

22  Katz-Lacabe reasserts his CIPA claim based on the same nine types of data on which he

23  based his original claim.  (FAC ¶¶ 47, 184 n.157.)  The Court has already concluded that

24  (1) webpage titles, (2) webpage keywords, (3) purchase intent signals, (4) add to cart actions,

25  (5) page visits, (6) the date and times of website visits, and (7) IP addresses are "record

26  information that do[] not constitute 'content'" under CIPA and there is no reason for a different

---

[8] Although CIPA § 631(a) is not formally separated into subdivisions, Oracle uses the subdivision structure for clarity.  Katz-Lacabe does not allege a violation of subsection (i) for intentionally wiretapping with any telegraph or telephone wire.

1  outcome this time around.  (*See* Ord. at 15 n.9 (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098,

2  1106 (9th Cir. 2014)).)[9]

3        Despite the Court's prior ruling, Katz-Lacabe again tries to argue that webpage titles,

4  webpage keywords, purchase intent, and add-to-cart actions constitute "content."[10]  The Court has

5  already decided this issue.  (Ord. at 15-16.)  In fact, Katz-Lacabe cites the same cases in the FAC

6  that Plaintiffs already put before the Court in their opposition to Oracle's original motion to

7  dismiss.  (FAC ¶ 184 n.157 (citing *In re Google RTB Consumer Priv. Litig.* ("*Google RTB*"), 606

8  F. Supp. 3d 935, 949 (N.D. Cal. 2022) and *Saleh v. Nike*, 562 F. Supp. 3d 503, 518 (C.D. Cal.

9  2021)); *see also* ECF No. 30 at 19 (same).)  While these cases discuss the data as part of broader

10  allegations, they do not hold that it is content.  *See Google RTB*, 606 F. Supp. 3d at 949 (does not

11  specifically identify webpage keywords and webpage titles as content); *see also Saleh*, 562 F.

12  Supp. 3d at 518 (explicitly acknowledges "not all of this information may constitute [content]").

13  Other courts, meanwhile, have expressly found that this data is *not* content.  *See Zynga*, 750 F.3d

14  at 1106 (browsing history and URLs devoid of search terms are not "content"); *see also Yoon*,

15  549 F. Supp. 3d at 1082-83 (same, finding that unlike the "words of a text message or an email,"

16  this data does not convey substantive meaning); *Goldstein v. Costco Wholesale Corp.*, 559 F.

17  Supp. 3d 1318, 1321 (S.D. Fla. 2021) (finding content views and mouse clicks on websites "did

---

20  [9] Oracle acknowledges the Court's ruling that Plaintiffs pled "just barely enough" regarding
referrer URLs and webform entries.  (Ord. at 16.)  Oracle preserves its arguments that (i) referrer
21  URLs constitute "content" only to the extent they contain "search terms," rather than "basic
identification and address information" and (ii) data entered into webforms constitute "content"
22  only to the extent they explain the meaning behind a person's communication with a website,
such as the substantive answers to a questionnaire.  *See Zynga*, 750 F.3d at 1107-09 (referrer
23  URLs); *see In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003) (webforms).  The FAC remains
devoid of particular allegations as to both.

24  [10] Katz-Lacabe does not add any allegations regarding page visits, the date and time of
website visits, and IP addresses; nor does he offer any reason why the Court should depart from
25  its earlier ruling that this data is not "content."  (Ord. at 15 n.9.)  Other cases in the Ninth Circuit
are in accord.  *See, e.g.*, *United States v. Reed*, 575 F.3d 900, 917 (9th Cir.2009) (holding
26  "origination, length, and time" of telephone call was not "content"); *see also Yoon v. Lululemon
USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (finding IP addresses, pages viewed, and date and time of
27  visit were not content).  Moreover, Plaintiffs appear to have abandoned their wiretapping claims
as to date and time of access and IP addresses altogether.  Plaintiffs list these categories of data
28  only in their generalized statement of facts (FAC ¶ 47), not in the substantive allegations under
any wiretapping cause of action. (*See id*. ¶¶ 183 (CIPA), 199 (FSCA), 218 (ECPA).)

1   not convey the substance of any communication").[11]

2          Webpage titles and keywords express the attributes of a website, but do not explain why

3   an internet user accessed that website.  (*Contra* FAC ¶¶ 184, 186.)  Similarly, purchase intent

4   signals and add-to-cart actions are based on standalone mouse clicks—at best, they are conjecture

5   about the meaning or purpose behind the action and, contrary to Katz-Lacabe's allegations, lack

6   the expressive certainty of the words exchanged in a phone call to a bookstore.  (*Id.*)  Because

7   these types of data do not reveal the "intended message conveyed" when users interact with a

8   webpage they cannot qualify as "content[]."  *Zynga*, 750 F.3d at 1106.

9                       **b.      Katz-Lacabe fails to allege "willful" interception of the content
                                of his communications**
10

11         CIPA § 631(a) requires a showing that the defendant "*willfully* and without the consent of

12  all parties" "reads, or attempts to read" the "contents" of a communication.  Cal. Pen. Code

13  § 631(a)(ii) (emphasis added).  Katz-Lacabe has not alleged (and cannot allege) that Oracle acted

14  with the requisite intent to violate CIPA.

15         Courts evaluating intent under other sections of CIPA require that the plaintiff prove the

16  eavesdropping or interception was done "with the *purpose or desire*" of violating the elements of

17  the statute, or with "*knowledge to a substantial certainty.*"  *People v. Super. Ct. (Smith)*, 70 Cal.

18  2d 123, 134 (1969) (analyzing CIPA § 632's intent requirement) (emphases added).  Section

19  631(a)'s willfulness requirement should be read consistently with the intent requirement in § 632.

20  Cal. Pen. Code § 632(a) ("A person who, *intentionally* and without the consent of all parties to a

21  confidential communication, uses [a device] to eavesdrop upon or record[.]") (emphasis added).

22  California courts routinely treat willfulness interchangeably with intentionality.  *See* Cal. Pen.

23  Code § 7(1) (defining "willfully" to imply "a purpose or willingness to commit the act"); *see also*

24  *People v. Atkins*, 25 Cal. 4th 76, 85 (2001) (interpreting "willfully" as acting "intentionally" but

25  "without regard to motive or ignorance" of the law) (citation omitted).  Because CIPA §§ 631(a)

26  and 632 are "closely related" in the Legislature's goal of controlling the use of eavesdropping

27

28  _____
       [11] Because both the FSCA and CIPA base their "content" requirement on ECPA, the analysis
    is the same under all three.  *See infra* Section III(B)(3)(c).

1    devices, "a general rule of statutory construction" requires that their willfulness and intentionality

2    requirements be "construe[d]" the same. *Cal. Soc'y of Anesthesiologists v. Brown*, 204 Cal. App.

3    4th 390, 403 (2012); *see also* Cal. Pen. Code § 630 (expressing legislative intent).

4          The only allegation Katz-Lacabe makes in support of Oracle's purported intention to

5    violate CIPA are two barebones claims that Oracle intended to use a recording device and that it

6    acted "deliberate[ly]" and "purposeful[ly]." (FAC ¶ 188.)  This fails as a matter of law.

7    Katz-Lacabe fails to allege that Oracle intended to use a recording device for some impermissible

8    purpose—*i.e.*, that Oracle *intentionally* (i) sought to capture the "content" of electronic

9    communications (ii) without consent. *Id.*; *see also Flores-Figueroa v. United States*, 556 U.S.

10   646, 652 (2009) (expressing the general rule that a criminal statute's *mens rea* is applied to each

11   element); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (similarly applying

12   CIPA § 632's intent requirement to its confidentiality element, where the statute prohibits

13   intentional recording of confidential communications).  **First**, Oracle's customers customize the

14   bk-coretag.js, deploy it for their own ad campaigns,[12] and choose what portion of the collected

15   data they wish to share with Oracle.  The fact that Oracle provides its customers with the bk-

16   coretag.js tool does not establish that Oracle knew with "substantial certainty" that some of its

17   customers *might* share and Oracle thereby might receive the "content" of a communication rather

18   than record information.  *See Smith*, 70 Cal. 2d at 134.  Indeed, "deploy[ing] recording devices

19   that *might* happen" to record the content of an internet user's communications is insufficient to

20   establish intent.  *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (emphasis

21   added).  **Second**, because customers configure the bk-coretag.js to fire on their websites (not

22   Oracle's), and because it is those website operators, and not Oracle, that are in a position to

23   disclose the cookies and obtain the user's consent, Oracle could not have known that the alleged

24

25

26          [12] Though Plaintiffs allege "Oracle places the bk-coretag.js" on its customers' websites (FAC
     ¶ 182), they admit each customer expressly permits Oracle to do so.  (*Id.* ¶ 53 ("Oracle has
27   agreements with numerous high-traffic websites like the New York Times, ESPN, and Amazon to
     place … pixels on their websites.").)  And of course, despite Plaintiffs' allegations, each customer
28   places the cookie on its own website, as Oracle has no way of altering the code of a third party's
     website.

1   data it received was collected without prior consent.[13]  In fact, OA's privacy policy refers internet

2   users to the disclosures on its customers' websites for notice of any collection practices.  (FAC

3   ¶ 109 n.140 (hyperlinking the OA Privacy Policy).)[14]  As a result, any alleged impermissible

4   capture of content could not have been done knowingly, intentionally, or willfully and Katz-

5   Lacabe's CIPA claim should be dismissed in its entirety as a result.

**c.    Katz-Lacabe's CIPA claims under §§ 631(a)(iii)-(iv) also fail for failure to state a predicate claim**

8       Katz-Lacabe's claims under CIPA §§ 631(a)(iii)-(iv) are predicated on a violation of

9   §631(a)(ii).  Cal. Penal Code § 631(a); *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978);

10  *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).  Because his CIPA

11  § 631(a)(ii) claim fails in its entirety for failure to plausibly allege "willful[]" interception, so

12  must his remaining ones.  *Id.*

**3.    Golbeck fails to state a claim for wiretapping under the FSCA (fifth cause of action)**

15      Golbeck asserts a single claim for violations of two sections of Florida's wiretapping

16  statute, §§ 934.03(1)(a) and 934.03(1)(d).  (FAC ¶¶ 192-93.)  Subsection (1)(a) prohibits the

17  intentional interception of the "contents" of an "electronic communication," while section (1)(d)

18  punishes the "use" of information obtained as a result of such interception.  *See also* Fla. Stat.

19  § 934.03(1)(a), (d).  Golbeck fails to state a claim under either section (1)(a) or (1)(d)[15] because

20  the information allegedly obtained by Oracle's bk-coretag.js does not qualify under the FSCA's

21  definition of "electronic communication" and she fails to plead that the information is subject to a

---

[13] Katz-Lacabe's "lack of specificity" in his allegations—his inability to offer a single example of either a full-string URL or web form allegedly collected by Oracle or identify even one website whose privacy policy was deficient in disclosing use of the bk-coretag.js—further undermines any argument that Oracle knew or had substantial certainty it was (i) receiving these types of data and (ii) receiving them without prior consent.  (Ord. at 15.)

[14] For the same reasons as the Court previously found with respect to Plaintiffs' original Complaint, the OA Privacy Policy is incorporated by reference into the FAC because it is "referenced . . . by name and by link." (Ord. at 7); *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *1 n.1 (N.D. Cal. Dec. 2, 2013) (taking judicial notice of website referred to extensively in complaint).

[15] Because Golbeck fails to state a claim under FSCA § 934.03(1)(a), and subsection (1)(d) is based on a predicate violation of subsection (1)(a), her claim under subsection (1)(d) also fails.

1   reasonable expectation of privacy.  Separately, Golbeck's FSCA claim must fail as to the seven

2   types of data this Court has previously found to constitute non-content record information.  *See*

3   *supra* Section III(B)(2)(a) & n.9.

a.   <strong>Oracle's bk-coretag.js is outside the scope of the FSCA because the data it captures are not "electronic communications"</strong>

6       Florida courts have held that the FSCA does not apply to web-based JavaScript software,

7   like the bk-coretag.js.  *Jacome*, 2021 WL 3087860, at *3 (dismissing near-identical FSCA claims

8   premised on "commonplace" JavaScript-based web analytics tools deployed to "improve a

9   website browsers' experience"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla.

10  July 6, 2021) (adopting *Jacome*'s ruling on similar facts); *Connor v. Whirlpool Corp.*, 2021 WL

11  3076477, at *2 (S.D. Fla. July 6, 2021) (same).  This conclusion is supported both by the plain

12  text of the Act and its legislative history.

13      The plain text of the statute confirms that the Legislature never intended to apply the

14  FSCA to online analytics tools like Oracle's bk-coretag.js.  Golbeck alleges the bk-coretag.js

15  redirects the content of her electronic communications to website owners by sending a parallel

16  electronic communication back to Oracle.  (FAC ¶¶ 14, 45 (describing how the JavaScript code

17  sends a "separate 'GET' request[]" to Oracle's servers containing "copies of contents in the

18  initial" transmission to the website).)  But because the FSCA defines "electronic

19  communications" to exclude "*[a]ny* communication from an electronic or mechanical device

20  which permits the tracking of the movement of a person or an object," Golbeck's alleged parallel

21  transmission is exempt under the statute.  *Jacome*, 2021 WL 3087860, at *3 (finding web

22  communications entered on a website and transmitted by JavaScript software back to an analytics

23  company "definitionally excluded" because the software "*tracks* a website browser's

24  movements") (quoting Fla. Stat. § 934.02(12)(c)).  Much like the software at issue in *Jacome*,

25  Oracle's bk-coretag.js "tracks" a website user's movements and therefore falls outside the scope

26  of the FSCA.  *Id.*; (*see also* FAC ¶ 50 (alleging that "Oracle's bk-coretag.js JavaScript code has

27  been recognized by security researchers as a tracking mechanism" and an "online activity

28  'tracker'").)

1    This plain text interpretation is supported by the legislative history.  When the Florida

2    legislature first passed the FSCA in 1969, it was concerned with wire and oral communications.

3    *Jacome*, 2021 WL 3087860, at *2; *see also* Fla. Stat. § 934.01. The Florida Legislature added

4    "electronic communications" only after Congress amended the ECPA in 1986 to include the term

5    for purposes of protecting "computerized recordkeeping systems."  *See State v. Jackson*, 650 So.

6    2d 24, 27 (Fla. 1995); *see also* Sen. Rep. No. 99-541, at 3 (1986).  But even then, Congress, and

7    by extension the Florida Legislature, were still unconcerned with the collection of routine

8    browser information.  *Jackson*, 650 So. 2d at 27 (noting that the FSCA "is modeled after" ECPA

9    and that the court "may look to the federal legislative history as a guide").  Instead, they were

10    focused on the transmission of (i) "financial records or funds transfers among financial

11    institutions," (ii) "medical records between hospitals and/or physicians' offices," and (iii) "the

12    transmission of proprietary data among the various offices of a company."  *See* Sen. Rep. No. 99-

13    541, at 3, 8; *see also Jacome*, 2021 WL 3087860, at *2.  Importantly, Golbeck fails to allege

14    Oracle's bk-coretag.js collects *any* data that falls within those categories.  (FAC ¶¶ 197-99.)

15
16
    **b.**    **Golbeck has failed to allege a reasonable expectation of privacy in her online browsing activity**

17    Golbeck's FSCA claim fails for a separate and additional reason:  under Florida law, she

18    lacks a reasonable expectation of privacy in the data captured by the bk-coretag.js.  Much like her

19    Florida intrusion upon seclusion claim, *see supra* Section III(B)(1)(a), the FSCA requires

20    Golbeck to sufficiently plead a reasonable expectation of privacy.  *Jacome*, 2021 WL 3087860, at

21    *3.  Again, the third-party doctrine is critical to evaluating her claim.  *See supra*

22    Section III(B)(1)(a) (citing *Trader*, 981 F.3d at 967 ("[A] person lacks a reasonable expectation

23    of privacy in information he has voluntarily disclosed to a third party.").)  Golbeck cannot make

24    this threshold showing for two reasons.  ***First***, she had no "reasonable expectation of privacy"

25    from the "website owner when [she] voluntarily browse[d] through" its website.  *Jacome*, 2021

26    WL 3087860, at *7.  All of Golbeck's data captured by the bk-coretag.js would have necessarily

27    been exposed to the website owners who deployed the bk-coretag.js in the first place, and

28    therefore ceased being private.  ***Second***, the bk-coretag.js captured several categories of

"subscriber information"—such as URLs, page visits, IP address, date and time information—that Golbeck simultaneously shared with another third party:  her ISP.  *Trader*, 981 F.3d at 968 (affirming the third-party doctrine as to web "subscriber information" shared with ISPs).  Thus, under the third-party doctrine, Golbeck forfeited any reasonable expectation of privacy in data captured by the bk-coretag.js.  *Id.*

### c.  Golbeck's FSCA claim fails, at minimum, as to seven types of non-content information

Finally, Golbeck's claim fails in part because she fails to allege the interception of content information.  The FSCA (like CIPA and ECPA) applies only to "contents" of a communication, which it defines as including "any information concerning the substance, purport, or meaning of that communication."  Fla. Stat. § 934.02.  The analysis of "content" under the FSCA is the same as under ECPA, and by extension, the same as under CIPA.  *See Goldstein*, 559 F. Supp. at 1322 (applying Ninth Circuit law on ECPA's definition of "content" to a claim under the FSCA); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (holding that the analysis of "content" is the same under both CIPA and ECPA).  Golbeck's FSCA claim is premised on Oracle's alleged interception of the same nine types of internet browsing data as her CIPA and ECPA claims.  (FAC ¶¶ 47, 199.)  Because this Court has already determined that the "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" underpinning Katz-Lacabe's CIPA claim do not constitute "content," the same outcome is warranted here.  (*See* Ord. at 15 n.9; *see also supra* Section III(B)(2)(a).)

### 4.  Plaintiffs fail to state a claim under the ECPA (sixth cause of action)

Plaintiffs must show "an intentional interception of the contents [of] any wire, oral, or electronic communication through the use of a device" to establish a violation of the ECPA.  (FAC ¶ 212); 18 U.S.C. § 2511(1)(a).  As an initial matter, as the Court has already ruled (Ord. at 16), no violation exists where at least one party to the allegedly intercepted communication consented to the interception.  *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").  The consent

1   of both parties is required only if plaintiff shows that the primary motivation or a determining

2   factor in defendant's actions was to injure plaintiff tortiously.  *Brown v. Google LLC*, 525 F.

3   Supp. 3d 1049, 1067 (N.D. Cal. 2021).  Here, too, the Court rejected Plaintiffs' view, concluding

4   that the exception "does not apply to a case such as this." (Ord. at 16.)  Additionally, and as with

5   the CIPA claim, Plaintiffs have failed to allege that Oracle intercepted the "contents" of their

6   communications.  *See infra* Section III(B)(3)(c) ("content" analysis is the same for all three

7   wiretapping statutes).

8       Plaintiffs do not allege *any* facts that alter the Court's previous ruling that the consent of

9   Oracle's customers dooms their ECPA claim, and instead attempt to plead that the crime-tort

10  exception applies to Oracle's conduct.  (*See* FAC ¶¶ 226-29 (alleging Oracle intercepted their

11  information "for the purpose of committing any criminal or tortious act") (quoting 18 U.S.C.

12  § 2511(2)(d)).)[16]  As the Court previously found, the crime-tort exception does not apply here,

13  "where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users,

14  but to make money.'"  (Ord. at 16 (quoting *Rodriguez*, 2021 WL 2026726, at *6 n.8).)  The same

15  result is warranted.

16      In their second attempt to invoke the exception, Plaintiffs still do not come close to

17  alleging that the primary motivation or a determining factor in Oracle's actions was to injure

18  Plaintiffs tortiously.  *Brown*, 525 F. Supp. 3d at 1067.  Instead, they merely state, in a conclusory

19  manner, that Oracle acted with the intent to invade Plaintiffs' privacy.  (*See, e.g.*, (FAC ¶¶ 226-

20  27, 229.)  The Court should reject Plaintiffs' mere "formulaic recitation of the elements" of this

21  cause of action.  *See Twombly*, 550 U.S. at 555.[17]  Moreover, Oracle's alleged conduct—the

22  purported collection and sale of consumer data—is, by Plaintiffs' own admission, motivated by

23

---

24  [16] Plaintiffs' new allegation that "[a]ny disputes as to Oracle's intent under the wiretapping statute are to be decided by the jury" (FAC ¶ 229), is contradicted by case law.  Courts regularly

25  resolve the issue of a defendant's intent at the pleading stage—just as this Court has already done in this case.  (Ord. at 16); *see Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal.

26  Mar. 18, 2014).  Oracle's intent under ECPA, and by extension, the applicability of the crime-tort

27  exception, can be decided at this stage of litigation.

[17] Plaintiffs cherry-pick an out-of-context quote from Oracle's CEO in 2016 (FAC ¶ 227), but

28  that quote does nothing to establish that Oracle acted with the *primary* motivation to commit a tort, as required.

1  profit, not by a desire to invade Plaintiffs' privacy.  (*See, e.g.*, FAC ¶ 248 (alleging Oracle

2  "*profited* from disclosing users' browsing histories, internet activity, and real world activity")

3  (emphasis added); *id.* ¶ 42 ("Oracle . . . *monetizes* this data") (emphasis added).)  Plaintiffs allege

4  that the "mere existence" of this lawful purpose does not "sanitize" an interception done for an

5  "illegitimate purpose."  (FAC ¶ 228 (quoting *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir.

6  1999).)  This misses the point; there is nothing for Oracle to sanitize given that it did not act with

7  any "illegal or tortious purpose" to start.  *Sussman*, 186 F.3d at 1203.  Plaintiffs fail to allege any

8  facts to show that Oracle's primary motivation was to tortiously capture the contents of their

9  communications, which requires dismissal of the ECPA claim, with prejudice.

10                    **5.      Katz-Lacabe fails to state a claim for unjust enrichment under
                                 California law (seventh cause of action)**

11

12          To state a claim for unjust enrichment under California law, Katz-Lacabe must allege:

13  (1) receipt of a benefit, and (2) unjust retention of the benefit at the expense of another.  *Stratos*,

14  828 F.3d at 1038.  Plaintiff's allegations as to the second prong fail.[18]

15          As an initial matter, Katz-Lacabe did not comply with two clear instructions from the

16  Court.  ***First***, the Court asked Katz-Lacabe to show that he "directly expended [his] own

17  resources" or "that [his] property has become less valuable."  (Ord. at 17); *In re Facebook, Inc.*

18  *Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020).  Katz-Lacabe has done neither, which

19  alone warrants dismissal of this claim with prejudice.  His allegation that he is not required to

20  show a corresponding loss are beside the point.  (*See* FAC ¶¶ 240-48.)  ***Second***, the Court asked

21  him to explain "why the access [he] received to [Oracle's customers' websites] would not defeat

22  the unjust enrichment claim."  (Ord. at 18 n.11.)  He does not do so, and again, his failure here

23  requires dismissal with prejudice.

24          Separately, Katz-Lacabe does not establish any adequate basis for his claim that it would

25  be "unjust" for Oracle to retain his data.  *See Stratos*, 828 F.3d at 1038.  His allegations are

26

_____

27      [18] Because California law cannot be applied extraterritorially to Golbeck or the proposed
      nationwide class (*see* Section III(A), *supra*), Oracle construes the California unjust enrichment

28  claim as alleged solely by Katz-Lacabe and the California sub-class.  Should the Court decide that
      extraterritorial application is warranted, Oracle's arguments here should apply to both Plaintiffs.

1   two-fold:  (1) he did not consent to Oracle's collection or use of his data (FAC ¶¶ 249-50); and

2   (2) Oracle's conduct constitutes an "invasion of privacy," and is therefore "inherently unjust" (*see*

3   FAC ¶¶ 249, 249(a), 252).  Neither is sufficient.  ***First***, the Court already rejected the consent

4   argument: "Plaintiffs here were at no time in direct privity with Oracle.  As a result, Defendant

5   did not collect information from Plaintiffs in a manner contrary to expectations created by the

6   consent process."  (Ord. at 17 (citing *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 597

7   (N.D. Cal. 2021)).)  Although given an opportunity to amend, Katz-Lacabe does not (and cannot)

8   establish that he is in direct privity with Oracle.  (*See, e.g.*, FAC ¶ 52.)  ***Second***, Katz-Lacabe's

9   conclusory allegation that Oracle's conduct was "inherently unjust," without more, is insufficient

10  to state a claim.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (holding

11  that conclusory allegations are insufficient to defeat a motion to dismiss).

12  ### 6.   Golbeck fails to state a claim for unjust enrichment under Florida law (eighth cause of action)

13

14  To state a claim for unjust enrichment under Florida law, Golbeck must adequately plead

15  that:  (1) she has "conferred a benefit on the defendant, who has knowledge thereof; (2) defendant

16  voluntarily accept[ed] and retain[ed] the benefit conferred; and (3) the circumstances are such that

17  it would be inequitable for the defendant to retain the benefit without paying the value thereof to

18  the plaintiff."  *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994).

19  Florida courts dismiss unjust enrichment claims where plaintiffs received the benefit of the

20  bargain.  *See N.G.L.*, 764 So. 2d at 675 ("Unjust enrichment 'cannot exist where payment has

21  been made for the benefit conferred.'") (citation omitted).  Similar to Katz-Lacabe (*see*

22  Section III(B)(5), *supra*), Golbeck fails to allege that she has not received the benefit of the

23  bargain given that she has been able to freely access "hundreds" of websites.  (FAC ¶ 15.)

24  Additionally, Florida's unjust enrichment law demands that the "benefit" be conferred

25  "directly" on the defendant.  *Kopel*, 229 So. 3d at 818.  Even accepting Golbeck's argument that

26  she has conferred a benefit on Oracle, she does not make any allegations that this benefit was

27  conferred "directly."  Both the Court's order and Golbeck herself acknowledge that Oracle's

28  customers collect consumer information and provide it to Oracle.  (*See* Ord. at 18 n.11 (stating

that Oracle has data "received and/or collected with permission from third [parties]"); *see, e.g.*, FAC ¶ 53 ("Oracle has agreements with numerous high-traffic websites like the New York Times, ESPN, and Amazon to place cookies and/or pixels on their websites.").)  Oracle's customers are therefore the necessary intermediaries between Golbeck and Oracle, precluding any ability for her to "directly" confer a benefit on Oracle as contemplated by Florida law.  *See Peoples Nat'l Bank*, 667 So. 2d at 879 (dismissing unjust enrichment claim where overpayments were distributed through an intermediary bank rather than directly by plaintiff).  Her claim for unjust enrichment under Florida law therefore fails.

> **7.      Plaintiffs' declaratory judgment claim fails to the same extent as their underlying claims, and because it is duplicative of the other remedies they seek (ninth cause of action)**

Plaintiffs' claim for declaratory judgment fails for two reasons.  *First*, because it "rise[s] and fall[s] with [their] other claims," (Ord. at 22), and Plaintiffs have failed to allege facts sufficient to state a claim for their third through eighth causes of action, their associated claim for declaratory judgment must be dismissed to the same extent.  *Second*, Plaintiffs again fail to contend, as they must, that this claim seeks anything beyond what they seek in their underlying claims.  *Tech & Intell. Prop. Strategies Grp. PC v. Fthenakis*, 2011 WL3501690, at *10 (N.D. Cal. Aug. 10, 2011).[19]

## IV.    CONCLUSION

Oracle respectfully asks the Court to (1) reject Plaintiffs' extraterritorial application of the second and seventh causes of action to Golbeck and the putative nationwide class and (2) dismiss Plaintiffs' third through ninth causes of action for failure to state a claim.

Dated: June 28, 2023                              MORRISON & FOERSTER LLP

                                                  By:    */s/ Purvi G. Patel*
                                                  _____
                                                         Purvi G. Patel

                                                  ***Attorneys for Defendant***
                                                  ***Oracle America, Inc.***

---

[19] In its Order, the Court deferred a decision on Plaintiffs' entitlement to equitable relief to a later stage of litigation.  (Ord. at 23.)  Oracle reserves all rights with respect to its arguments that equitable relief is unavailable where Plaintiffs have an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).