Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorney for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| Michael Katz-Lacabe and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>        Defendant. | Case No. 3:22-cv-04792-RS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ORACLE'S MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br><br>Date: October 5, 2023<br>Time: 1:30pm<br>Courtroom: 3<br><br>Date Action Filed: August 19, 2022<br>Trial Date: None set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 3

III.   ARGUMENT ...................................................................................................... 4

    A.  Plaintiff Katz-Lacabe's Claim for Violation of CIPA, Reinforced with Additional Detailed Allegations, Continues to Stand ............................................. 5

        1.  Plaintiffs allege the "contents" of their communications were intercepted ............................................................................................. 5

        2.  Plaintiffs allege Oracle acted "willfully" as required by Section 631 ........ 6

    B.  Plaintiffs Have Stated a Claim for Unjust Enrichment under California Law........ 9

        1.  California recognizes "Unjust Enrichment" as an independent cause of action without the need to show a quasi-contractual relationship or privity................................................................................................. 10

        2.  Plaintiff have adequately pleaded that Oracle was enriched 'at Plaintiffs' expense'............................................................................. 12

        3.  Oracle's collection of Plaintiffs' personal information via third party websites does not defeat the Unjust Enrichment claim .................. 13

    C.  Plaintiffs Have Stated a Claim for Violation of ECPA......................................... 14

    D.  California Law Applies to the Claims of Non-Residents....................................... 16

        1.  The Court must defer the choice-of-law analysis in light of Oracle's factual challenges to Plaintiffs' allegations................................................. 16

        2.  California law applies to Dr. Golbeck's Intrusion Upon Seclusion and Unjust Enrichment claims ................................................................... 17

            a.  Intrusion Upon Seclusion............................................................ 17

            b.  Unjust Enrichment ...................................................................... 20

    E.  Dr. Golbeck Has Stated a Claim for Wiretapping Under the Florida Security of Communications Act ("FSCA")....................................................... 21

    F.  Dr. Golbeck Has Stated a Claim In the Alternative for Intrusion Upon Seclusion under Florida Law .............................................................................. 22

    G.  Dr. Golbeck Has Stated a Claim In the Alternative for Unjust Enrichment under Florida Law .............................................................................................. 24

    H.  Plaintiffs State A Claim For Declaratory Judgment ............................................ 24

IV.    CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. State*,
436 So. 2d 1132 (Fla. Dist. Ct. App. 1983) ............................................................................. 22

*Alhadeff v. Experian Info. Sols., Inc.*,
541 F. Supp. 3d 1041 (C.D. Cal. 2021) ............................................................................ 21, 22

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003) ...................................................................................................... 18

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912 (9th Cir. 2001) ..................................................................................................... 3

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 4

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ................................................................................................... 10

*Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*,
No. 8:12-CV-2079-T-17MAP, 2013 WL 5437117 (M.D. Fla. Sept. 27, 2013) ..................... 22

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................... 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ......................................................................... 9, 15, 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................................. 8, 9

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD , 2021 WL 2820822 (S.D. Fla. 10 July 6, 2021) .............................. 21

*Celestine v. Cap. One*,
No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017) .......................................... 23

*Connor v. Whirlpool Corp.*,
No. 21-CV-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) .................................... 21

*Cottrell v. AT&T Inc.*,
No. 19-CV-07672-JCS, 2020 WL 4818606 (N.D. Cal. Aug. 19, 2020) .................................. 11

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ................................................................................................... 15

*Eiess v. USAA Federal Savings Bank*,
404 F.Supp.3d 1240 (N.D. Cal. Aug. 23, 2019) ..................................................................... 21

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........................................................................................... 10, 20

*Gerstle v. Am. Honda Motor Co., Inc.*,
No. 16-CV-04384-JST, 2017 WL 2797810 (N.D. Cal. June 28, 2017) ................................... 17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page

*Hammer v. Sorensen,*
   824 F. App'x 689 (11th Cir. 2020) ........................................................................ 22

*Harris v. Cnty. of Orange,*
   682 F.3d 1126 (9th Cir. 2012).................................................................................. 4

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
   61 Cal.4th 988 (2015) ........................................................................................... 11

*Hernandez v. Hillsides, Inc.,*
   47 Cal.4th 272 (2009) ........................................................................................... 18

*In re Apple Inc. Device Performance Litig.,*
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................................ 20

*In re Complaint of Bankers Trust Co.,*
   752 F.2d 874 (3d Cir.1984)................................................................................... 17

*In re Facebook, Inc. Internet Tracking Litigation ("Facebook Tracking"),*
   956 F.3d 589 (9th Cir. 2020).................................................................. 1, 9, 11, 18

*In re Gen. Motors LLC CP4 Fuel Pump Litig.,*
   393 F. Supp. 3d 871 (N.D. Cal. 2019) .................................................................. 11

*In re Google Inc. Gmail Litigation,*
   No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ......... 15, 16

*In re Google RTB Consumer Priv. Litig.,*
   606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................................ 5, 6

*In re Intuit Priv. Litig.,*
   138 F. Supp. 2d 1272 (C.D. Cal. 2001) ................................................................ 15

*In re Meta Pixel Healthcare Litig. Goldstein v. Costco Wholesale Corp.,*
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ................................................................ 5, 6

*In re Takata Airbag Prod. Liab. Litig.,*
   No. 14-24009-CV, 2017 WL 2406711 (S.D. Fla. June 1, 2017) ........................... 21

*In re Zynga Priv. Litig,*
   750 F.3d 1098 (9th Cir. 2014)................................................................................. 6

*Jackman v. Cebrink-Swartz,*
   334 So. 3d 653 , 657 (Fla. Dist. Ct. App. 2021) .................................................. 24

*Jacome v. Spirit Airlines Inc.,*
   No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)........ 21, 22, 23

*Kopel v. Kopel,*
   229 So. 3d 812 (Fla. 2017)................................................................................... 24

*Lectrodryer v. Seoulbank,*
   77 Cal.App.4th 723 (2000) .................................................................................. 10

*Lopez v. Apple, Inc.,*
   519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................... 8

*Lozano v. City of Los Angeles,*
   73 Cal. App. 5th 711 (2022) .................................................................................. 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Makkinje v. Extra Space Storage, Inc*.,
   No. 8:21-CV-2234-WFJ-SPF, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022) .......................... 21, 22

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................................... 17, 19, 20

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ......................................................................................... 19

*Munoz v. MacMillan*,
   195 Cal.App.4th 648 (2011) ................................................................................ 10

*N.G.L. Travel Assocs. v. Celebrity Cruises, Inc*.,
   764 So. 2d 672 (Fla. Dist. Ct. App. 2000) ............................................................. 24

*Oppenheim v. I.C. Sys., Inc.*,
   695 F. Supp. 2d 1303 (M.D. Fla.) ........................................................................ 23

*Paulsen v. CNF, Inc.*,
   559 F.3d 1061 (9th Cir. 2009) ............................................................................. 18

*People v. Superior Ct. of Los Angeles Cnty*.,
   70 Cal. 2d 123 (1969) ......................................................................................... 7

*Peoples Nat. Bank of Com. v. First Union Nat. Bank of Florida*, N.A.,
   667 So. 2d 876 (Fla. Dist. Ct. App. 1996) ............................................................. 24

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   214 F.Supp.3d 808 (N.D. Cal. 2016) ................................................................ 15, 16

*Popa v. Harriet Carter Gifts, Inc*.,
   52 F.4th 121 (3d Cir. 2022) ................................................................................. 20

*Post-Newsweek Stations Orlando, Inc. v. Guetzloe*,
   968 So. 2d 608 (Fla. Dist. Ct. App. 2007) ............................................................. 23

*Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc*.,
   29 Cal. App. 5th 230 (2018) ................................................................................ 10

*Regions Bank v. Kaplan*,
   No. 17-15478, 2021 WL 4852268 (11th Cir. Oct. 19, 2021) ..................................... 23

*Rodriguez v. Google* LLC,
   No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................... passim

*Rojas v. HSBC Card Servs. Inc*.,
   20 Cal. App. 5th 427 (2018) ................................................................................. 8

*Romano v. Motorola, Inc*.,
   No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) .............................. 24

*Rowe v. Educ. Credit Mgmt. Corp*.,
   559 F.3d 1028 (9th Cir. 2009) .............................................................................. 4

*Saleh v. Nike*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................. 5, 6

*Shadlich v. Makers Nutrition LLC*,
   No. 8:20-CV-389-T-60CPT, 2020 WL 5255133 (M.D. Fla. Sept. 3, 2020) ................... 23

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Siegelman v. Salimi*,
   No. D079923, 2023 WL 4721212  (Cal. App. Ct. July 25, 2023) ....................... 11

4

*Spilfogel v. Fox Broad. Co.*,
   No. 09-CV-80813, 2010 WL 11504189 (S.D. Fla. May 4, 2010) ....................... 18, 22

5

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ........................................................................ 4

6

*Stasiak v. Kingswood Co–Op*, Inc.,
   No. 8:11-CV-1828-T-33MAP, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012) ..................... 23, 24

7

*State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota*, L.L.C.,
   9 F. Supp. 3d 1303 (M.D. Fla. 2014) ............................................................... 20

8

*Sussman v. Am. Broad. Cos., Inc.*,
   186 F.3d 1200 (9th Cir. 1999) ....................................................................... 15

9

10

*T. K. v. Adobe Sys. Inc.*,
   No. 17-CV-04595-LHK, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ..................... 16

11

*U.S. v. McTiernan*,
   695 F.3d 882 (9th Cir. 2012) ....................................................................... 15

12

*United States v. Barrington*,
   648 F.3d 1178 (11th Cir. 2011) ..................................................................... 21

13

14

*United States v. Reed*,
   575 F.3d 900 (9th Cir. 2009) ....................................................................... 6

15

*United States v. Taylor*,
   935 F.3d 1279 (11th Cir. 2019) ..................................................................... 23

16

*United States v. Trader*,
   981 F.3d 961 (11th Cir. 2020) ....................................................................... 23

17

*United States v. VanDyck*,
   776 F. App'x 495 (9th Cir. 2019) ................................................................. 23

18

19

*Wash. Mut. Nat'l Bank v. Sup. Ct.*,
   24 Cal. 4th 906 (2001) ................................................................................ 17

20

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) .......................................................... 24

21

*Williams v. Wells Fargo Bank N.A.*,
   No. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................... 21

22

23

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......................................................... 6

24

**Statutes**

25

18 U.S.C.A. § 2511(2)(d) ................................................................................ 14

26

28 U.S.C. § 2201(a) ....................................................................................... 25

27

Cal. Civ. Code § 1798.100 *et seq* ................................................................. 18

28

Cal. Penal Code § 631(a) ............................................................................... 6, 8

Fla. Stat. § 934.02(12)(c) ............................................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page

Fla. Stat. § 934.02(7) ....................................................................................................... 22

**Treatises**

Restatement (Second) of Torts § 652B, cmt. (b) ............................................................ 18

Restatement (Third) of Restitution § 1, cmt. a .................................................... 9, 11, 12

Restatement (Third) of Restitution and Unjust Enrichment § 44 cmt. b, illus. 10 (2011) ............. 12

**Other Authorities**

Arthur R. Miller, *The Assault on Privacy* 24–54 (1971); Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) ......................................................................... 4

Ballot Pamp., Proposed Stats. & Amends. To Cal. Const. With Arguments to Voters. Gen. Election (Nov. 7, 1972) ............................................................................................. 4

Florida Digital Bill of Rights, Senate Bill 262 *with* California Consumer Privacy Act of 2018 ... 18

1   **I.**     **INTRODUCTION**

2          This case seeks to remedy Oracle's systematic violations of Plaintiffs' deeply-entrenched

3   and historically recognized Constitutional, common law, and statutory rights to privacy.  In its

4   ruling on Oracle's previous motion to dismiss (Order on Motion to Dismiss, Dkt. 49, herein

5   "Order"), this Court rejected Oracle's challenges to Plaintiffs' Article III standing, the claims for

6   violation of their California Constitutional and common law rights to privacy, and the California

7   Invasion of Privacy Act ("CIPA"), and ruled that this case will proceed to the fact-finding stage.

8   Order at 23. The Court dismissed, with leave to amend, the remaining claims.  *Id*.

9          In the present motion (Motion to Dismiss Portions of Plaintiffs' First Amended Complaint,

10  Dkt. 63, "Motion"), Oracle does not challenge Plaintiffs' claims brought under California law for

11  intrusion upon seclusion and violation of the right to privacy under the California Constitution—

12  those claims go forward. In the First Amended Complaint ("FAC," Dkt. 54), Plaintiffs have

13  amended their allegations to adhere to the Court's reasoning and rulings in the Order with respect

14  to their claims under the federal Electronic Communications Privacy Act ("ECPA"), and the

15  California common law claim for unjust enrichment.  With respect to Plaintiffs' two California

16  common law claims, intrusion upon seclusion and unjust enrichment, Plaintiffs have augmented

17  their allegations with additional facts that support the application of California law for all putative

18  members of a national class. In the alternative to the application of California common law claims

19  nationally, the Florida resident Plaintiff brings claims under the common law of her home state, as

20  well as its wiretapping statute.  Plaintiffs have dropped the California Unfair Competition Law

21  claim dismissed by the Court. Finally, Plaintiffs have also narrowed the scope of the putative class

22  by no longer naming a foreign plaintiff for purposes of bringing a worldwide class.

23         Oracle's Motion presents another broad, sweeping dispute with the facts, and again attempts

24  to frame this case as an existential referendum on "ad tech" that "create[s] a new legal privacy

25  framework." But the Court has already rejected that notion, recognizing that Plaintiffs' allegations

26  are "in line with the analysis" provided by the Ninth Circuit in *In re Facebook, Inc. Internet*

27  *Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589, 603, 604 (9th Cir. 2020). Order at 12.

28  It further found that Plaintiffs' core allegations "go well beyond" describing  "routine commercial

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS PORTIONS OF FIRST AMENDED
COMPLAINT; CASE NO. 3:22-CV-04792

behavior," and that their "allegation that Oracle's accumulation of a 'vast repository of personal data' . . . from compiling Plaintiffs' browsing activity, online communications, and offline activity—is what contravenes the reasonable expectation of privacy." Order at 12.

The Court should again allow the CIPA claim to proceed. Oracle's attempt to fashion a statutory construction that requires Plaintiffs prove interception of communications intentionally without their consent, while having no legal basis, is amply present in the allegations. *See, e.g.*, FAC ¶¶ 99-118. Indeed, the gravamen of the FAC (as before) reveals Oracle's intent to exploit consumers' ignorance and inability to reasonably comprehend the extent of its surveillance such that there is no practical way for them to consent to its practices, as Oracle well knows. *Id.*

Plaintiffs respectfully urge the Court to consider again the legal basis for their independent claim for unjust enrichment under California law. Plaintiffs have now better pled and shown that Oracle's enrichment has indeed been "at the expense of another" by virtue of the deprivation of Plaintiffs' established legal rights, consistent with the law in this Circuit and in California. Oracle attempts to steer the analysis to requirements for an alternative avenue to establishing unjust enrichment, *i.e.*, quasi-contact principles, erroneously casting it is as the sole path. However, the law expressly allows for a claim of unjust enrichment without having to take that path, but instead by showing a violation of established legal rights, as Plaintiffs have done.

Plaintiffs' amended allegations show that their ECPA claim should go forward because Oracle's purposeful, downstream use of intercepted communications exemplifies the kind of tortious motivation that compels application of the "exception to the exception" that vitiates any purported consent to the interception, consistent with rulings within this District and by this Court.

Oracle's choice of law arguments, based on numerous contested factual assertions, *require* discovery to resolve. Moreover, Oracle has failed to demonstrate differences between the laws of California and Florida that matter for *this* litigation, nor has Oracle shown that it is inappropriate to apply California law to the class members located outside of California. In the alternative, the Florida resident Plaintiff has adequately pleaded her claims under Florida law.

Plaintiffs respectfully submit that Oracle's motion should be denied in full, but if granted to any extent, the Court should allow leave to amend.

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS PORTIONS OF FIRST AMENDED
COMPLAINT; CASE NO. 3:22-CV-04792

## II.  **FACTUAL BACKGROUND**

Plaintiffs refer to this Court's summary of the general background. Order at 2-4. In the FAC, Plaintiffs have added extensive additional allegations that buttress the claims which the Court dismissed with leave to amend.  The FAC has more detail about the data Oracle has collected from Plaintiffs. FAC ¶¶ 6, 14-15. It attaches (under seal) the Offline Access Request Response Reports ("OARRRs") that Oracle provided Plaintiffs prior to this litigation, revealing the specific location, offline purchase, and other data Oracle has collected on Plaintiffs. *Id.* ¶¶ 7-10, 16-20, Exs. A & B. The FAC also has greater specificity establishing the basis to apply California law nationwide, including that the "last act" for the purposes of analyzing choice-of-law issues, took place in California. *Id.* ¶¶ 28-30.  The CIPA and ECPA claims have further allegations regarding the "contents" of the intercepted communications (*id.* ¶¶ 182-187, 219-220) and Oracle's awareness that its conduct was illegal and that it intended to invade Plaintiffs' privacy, as relevant to the crime-tort exception to the ECPA (*id.* ¶¶ 227-229).  The FAC adds extensive allegations of fact and law supporting their re-pled unjust enrichment claim, including explicitly responding to the Court's reasoning on this issue in its Order (*id.* ¶¶ 239-255).  Dr. Golbeck now brings claims under Florida law for wiretapping, and, in the alternative to California law, intrusion upon seclusion and unjust enrichment (*id.* ¶¶ 160-177, 191-210, 256-262).

Oracle responds to the FAC by introducing self-serving opinion about the propriety of its conduct (Mot. at 1-3), ostensibly provided as background, which has no place in the Court's consideration of this Motion. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("extraneous evidence should not be considered in ruling on a motion to dismiss"). Suffice to say, for present purposes, that Oracle's conduct is widely considered highly offensive, has been condemned worldwide, and violates vital privacy rights at the historical foundation of our society. *See*, e.g., FAC ¶¶ 89-98, 123-177. Contrary to Oracle's unsupported pronouncement, the mere act of registering under California's mandatory data broker registry law provides no absolution of its liability, nor does it place the State's imprimatur on Oracle's privacy-invasive conduct.  Rather, the registry was created specifically to *facilitate* the enforcement of privacy rights to *protect* against unlawful surveillance via the collection, aggregation and commercial exploitation

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS PORTIONS OF FIRST AMENDED
COMPLAINT; CASE NO. 3:22-CV-04792

of personal data.  By design, it  allows citizens to learn of the *extent* of Oracle's data collection activities and seek to have the information deleted, or, as here, once aware of  highly offensive privacy invasions, exercise those rights.  The legislature specifically noted that the registry's purpose is to strengthen the "inalienable" right to privacy embodied in the common law and codified as an "enforceable right of privacy for every Californian" in the California Constitution in 1972.  Assembly Bill (AB) 1202 (Chapter 753, Statutes of 2019).

Of specific concern has been the threat posed by advancements in technology providing the ability to create ever-more detailed dossiers on citizens' personal lives—the very type of dossiers that Oracle compiles and brags about in its promotional materials.  Ballot Pamp., Proposed Stats. & Amends. To Cal. Const. With Arguments to Voters. Gen. Election *26 (Nov. 7, 1972) ("Computerization of records makes it possible to create 'cradle-to-grave' profiles of every American . . . "); *see also, e.g.,* FAC ¶¶124-126.  With monumental increases in technologies, the long-sounding alarm about technology's assault on privacy has now taken on special urgency: precisely the concerns warned of have come to fruition in *Oracle*'s conduct. *See* generally Arthur R. Miller, *The Assault on Privacy* 24–54 (1971); Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 195 (1890) ("Recent inventions and business methods call attention to the next step which must be taken . . . for securing to the, individual . . . the right "to be let alone."). This lawsuit addresses these long-held concerns over the encroachments of technological advances on individual privacy.

## III.  <u>ARGUMENT</u>

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.  *Rowe v. Educ. Credit Mgmt. Corp*., 559 F.3d 1028, 1029-30 (9th Cir. 2009).  The Complaint need only "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**A.**    **Plaintiff Katz-Lacabe's Claim for Violation of CIPA, Reinforced with Additional Detailed Allegations, Continues to Stand**

This Court held that Plaintiffs properly stated a claim under CIPA in their original Complaint.  Order at 14-16. In amending the Complaint generally in response to the Court's Order, Plaintiffs buttressed their original allegations with greater detail about Oracle's wiretapping activities. As before, Oracle's arguments for dismissal are meritless and should be rejected.

**1.**    **Plaintiffs allege the "contents" of their communications were intercepted**

Plaintiffs allege that Oracle intercepts "content" on the basis of Oracle's own statements about the bk.coretag.js functionality in its developer documentation, including:  "a. the URLs being browsed by the Internet user as well as the referrer URL; b. webpage title; c. webpage keywords; . . .f. product page visits; g. 'purchase intent' signals; h. 'add-to-cart actions'; and i. data entered by the user into forms on the website."[1] FAC ¶¶ 47, 183. Oracle incorrectly argues that the Court's ruling that Plaintiffs adequately alleged that the "contents" of their communications were intercepted (Order at 14-15) is limited to "contents" solely comprising URLs or data input into online forms.  Rather, the Court referenced Oracle's erroneous assertion, made for the first time in its reply papers, that Plaintiffs' "concede[d]" that webpage titles, keywords, "purchase intent signals," and add-to-cart actions are not contents of communications.  Order at 15, fn. 9. While Plaintiffs made no such concession, the Court did not rule out that such data constitutes "contents"; it did not reach the issue, perhaps as a result of Oracle's misdirection. *Compare* Reply, Dkt. 35, at 13 *with* Opposition, Dkt. 30, at 18-19.[2] The precedent in this District, as cited by the Court, establishes, such data is considered "contents" within the meaning of CIPA. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 949; *see also In re Meta Pixel Healthcare Litig.*, No. 22-

---

[1] Plaintiffs do not allege that the date and time of the website visit or the IP address of the user's computer are "contents," as Oracle misdirects.

[2] Plaintiffs cited *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) for the propositions that "details about the content within the site or app"; and "list of keywords about [the] site or app" constituted "contents" of communications for ECPA purposes, and *Saleh v. Nike*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) for the propositions that "customer's purchasing selections," "keystrokes," and "interactions with" defendants' website were contents of communications for ECPA purposes. Contrary to Oracle's representation, the court in *Saleh* explicitly found that a customer's "purchasing selections" were contents for CIPA purposes. *Id.* (noting that defendant's promotional materials "demonstrate [defendant's] ability to record a customer's purchasing selections *and other content communications* to a website owner.") (emphasis added).

CV-03580-WHO, 2022 WL 17869218, at *11 (N.D. Cal. Dec. 22, 2022) (interactions with "log-in buttons" constitute contents).  Add-to-cart actions and other purchase intent activities constitute contents because they convey a specific "intended message" regarding a specific product; they are not "characteristics" of some other communicative act.[3]  *See, e.g.,* FAC ¶¶ 183-187; *In re Zynga Priv. Litig,* 750 F.3d 1098, 1106 (9th Cir. 2014).

Against the weight of this authority, Oracle urges this Court to stretch the meaning of "record information" far beyond any reasonable meaning of that term, or any meaning the Ninth Circuit has adopted. In contrast to "contents," record information is "data that is incidental to the use of a communication device and contains no 'content' or information that the parties intended to communicate." *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009); *see also In re Zynga*, 750 F.3d at 1106 (record information is "information regarding the *characteristics* of the message that is generated in the course of the communication") (emphasis added). Oracle concedes that "[w]ebpage titles and keywords *express the attributes* of a website," i.e., communicate substantive content, but argues that this expressive content does not qualify under CIPA because it fails to "explain why an internet user accessed that website." Mot. at 16. No case holds that "contents" of communications must convey that level of specificity; "express[ive]" material, by definition, conveys an intended message, is not simply "data that is incidental" to the message, such as the time or location of transmission. *Reed*, 575 F.3d at 916.

### 2.    Plaintiffs allege Oracle acted "willfully" as required by Section 631

Section 631 of CIPA states that any person who "willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any . . . communication" is liable for violation of the statute. Cal. Penal Code § 631(a).  This Court, in ruling that Plaintiffs' original complaint stated a claim under CIPA, implicitly held that Plaintiffs properly alleged these elements. Oracle now argues that Plaintiffs have failed to allege that Oracle "intentionally (i) sought to capture the 'content' of electronic communications (ii) [deliberately]

---

[3] Oracle's authority does not demonstrate otherwise. *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) provides no analysis of the demarcation between content and record information, and has also been superseded by *In re Google RTB Consumer Priv. Litig.*, *Saleh, and In re Meta Pixel Healthcare Litig. Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) is out-of-Circuit authority interpreting a different statute (FSCA), and has likewise been superseded by these authorities.

without consent." Mot. at 17.  However, the FAC makes these allegations in spades, rendering Oracle's arguments to nothing more than a factual dispute as to its intent. Moreover, although the FAC alleges that Oracle knowingly exploited consumers' ignorance and inability to reasonably form any basis to consent to its practices, and thus has effectively operated clandestinely, Oracle's tortured interpretation of CIPA's language that would require it deliberately acted without consent has no support in statutory language or case law.

Oracle first argues that Plaintiffs do not allege Oracle "willfully" intercepted the contents of their communications. Mot. at 16-17. But Plaintiffs repeatedly allege exactly that, and no further inferences as to intent are required. *See* FAC ¶¶ 206, 216, 229. Plaintiffs further allege that Oracle has engaged in a deliberate scheme to surveil class members across the Internet by intercepting the communications they have with websites, thereby gaining information it can use to compile and enrich the dossiers it creates on them. *Id.* In finding Plaintiffs had stated a claim, the Court implicitly found Plaintiffs had alleged the requisite willfulness. Order at 14-16. In the face of this finding, with nowhere else to turn, Oracle now advances an *ex-post* rationalization that it could not know what it was doing because Oracle's customers "customize" (an undefined term) the bk.coretag.js code and are therefore somehow responsible for Oracle's wiretapping scheme. Mot. at 17. Intent is a paradigmatic factual issue that cannot be resolved at the pleadings stage, as Oracle's own authorities recognize, and Oracle's argument at most concedes that there is now a factual dispute for a jury to resolve. *People v. Superior Ct. of Los Angeles Cnty*., 70 Cal. 2d 123, 134 (1969).

Moreover, the FAC is replete with allegations, supported by citations to Oracle's technical documentation, that Oracle intentionally deployed its bk-coretag.js script with the express intent of learning about users' communications with websites, and that it did so knowing that class members could not and did not consent to that. *See* FAC ¶¶ 44-46.[4]  At a minimum, Plaintiffs' allegations demonstrate that Oracle deployed a wiretapping device specifically designed to capture contents of communications, and courts have found that such allegations are sufficient to support the

---

[4] The bk-coretag.js *automatically* intercepts URLs, and thus there is no question that Oracle intended to intercept those contents. *Id. Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022)—interpreting Section 632's intent requirement with respect to "confidential" communications, not Section 631—is thus inapposite for that reason alone.

willfulness element.  *Lopez v. Apple, Inc.,* 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (willfulness properly alleged where Apple was aware that at least some confidential communications were being recorded, even if "accidentally"); *see also Rojas v. HSBC Card Servs. Inc*., 20 Cal. App. 5th 427, 435 (2018) (finding element satisfied where company intended to record work-related calls, but designed the system to record all calls).

Oracle next argues that Oracle "could not have known" that it was intercepting class members' communications with third parties without their consent; in Oracle's view, the third-party website operators, and not Oracle, were tasked with obtaining consent for Oracle's surveillance, thereby absolving Oracle of any wrongdoing.  Mot. at 16-17. But this again raises a factual question. Plaintiffs allege that Oracle's labyrinth and largely hidden surveillance scheme is such that Plaintiffs *could* not consent to this conduct. FAC ¶¶ 101-102. Plaintiffs support these allegations with extensive citations to academic and forensic analysis, demonstrating the farcical nature of any purported consent, and further explicitly allege Oracle knew or should have known that class members' consent to its conduct was nonexistent, and that Oracle in fact deliberately exploits this lack of consent to effectively monitor them clandestinely. *See* FAC ¶¶ 103-116.

Moreover, Oracle's meritless suggestion that Section 631 extends the "willfulness" element to *actual knowledge* of lack consent is refuted by the very language of the statute.  The statute makes a defendant liable who "willfully *and* without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any [intercepted] message, report, or communication." Cal. Penal Code § 631(a) (emphasis added).  The willfulness requirement thus applies to the *reading or learning* of the contents of the communication; the statute is violated if *that* conduct is done intentionally, but there is no statutory language, and no case law, suggesting "willfulness" encompasses *subjective belief* that the interception was done without consent. "[T]he party seeking the benefit of the [consent] exception" to CIPA bears "the burden to *prove* consent," not simply prove the defendant *believed* there was consent. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (emphasis added); *see also Rodriguez v. Google* LLC, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (plaintiffs properly alleged CIPA claim despite argument that plaintiffs had consented based on disclosures);

*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) ("any consent [to the wiretap] must be *actual*" (emphasis added)). No case has ever interpreted CIPA in the manner Oracle suggests,[5] and indeed Oracle relies on cases interpreting different elements of a different section of the statute for its arguments. Mot. at 16-17. Here, Plaintiffs do not allege that Oracle "accidentally" intercepted the contents of their communications—the bk-coretag.js functions exactly as Oracle designed, and Oracle was and is aware of this interception, which was without their consent.[6]

### B.     Plaintiffs Have Stated a Claim for Unjust Enrichment under California Law

To allege unjust enrichment as an independent cause of action, Plaintiffs must plead that Oracle unjustly retained a benefit 'at the plaintiff's expense'—such 'expense' includes as a matter of established California law simply, and without more, the violation of Plaintiffs' privacy rights. "[T]he consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." Restatement (Third) of Restitution § 1, cmt. a. Oracle argues that Plaintiffs must allege more than Oracle's enrichment via a violation of their rights, but that they must additionally plead unjust enrichment through quasi-contract principles, i.e., that Plaintiffs directly expended their own financial resources or that Oracle's conduct directly caused their property to become less valuable. (Mot. at 23).   Oracle is incorrect as a matter of black-letter law: to establish "at the expense of another," Plaintiffs have no such obligation to allege or show such facts.   *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020) ("Under California law, this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.").   Plaintiffs have more than adequately alleged facts to proceed with their unjust enrichment claim based on Oracle's violation of their privacy rights and its resulting unjust retention of benefits therefrom.

---

[5] In fact, Oracle's interpretation would eviscerate much of this District's recent jurisprudence on CIPA; in most cases the defendant argues they subjectively believed that the Plaintiffs had legally consented.   Despite this argument, these cases, including *Brown*, *Rodriguez*, and *Calhoun*, have moved forward at the pleadings stage.   Oracle's nonsensical argument would have these cases all wrongly decided.

[6] Because Plaintiffs have properly alleged that Oracle willfully intercepted the contents of their communications, without consent, plaintiffs also properly allege that Oracle uses or communicates information obtained from that interception and/or have aided and abetted such interception or use, i.e., violated what Oracle refers to as Section 631(a) "(iii)-(iv)."

1. **California recognizes "Unjust Enrichment" as an independent cause of action without the need to show a quasi-contractual relationship or privity**

Unjust enrichment is an independent cause of action under California law, as this Court has held.  Although often interpreted as sounding in "quasi contract," the claim is not limited to solely a quasi-contract theory.  "California law on [an independent claim for] unjust enrichment is not narrowly and rigidly limited to quasi-contract principles," and the doctrine recognizes "there need be no relationship that gives substance to an implied intent basic to the 'contract' concept, rather the obligation is imposed because good conscience dictates that under the circumstances the person benefited should make reimbursement." *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc*., 29 Cal. App. 5th 230, 240 (2018) (reversing dismissal, on demurrer, of unjust enrichment cause of action). The Ninth Circuit has instructed that under California law, unjust enrichment "states a claim for relief as an independent cause of action *or* as a quasi-contract claim for restitution." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (noting that by alleging the unjust retention of a benefit, plaintiff states an "independent cause of action" or "*alternatively*," a claim under quasi-contract) (emphasis added) *Id*. at 1038-1039. Therefore, "[t]he elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Pro. Tax Appeal,* 29 Cal. App. 5th at 238 (quoting *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (2000)).

As the Ninth Circuit noted in *Astiana*, "[w]hen a plaintiff alleges unjust enrichment, a court *may* 'construe the cause of action as a quasi-contract claim seeking restitution'" where the claim, as in *Astiana*, arises under such circumstances.  *Astiana v. Hain Celestial Grp.*, *Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (emphasis added).  However, the *Astiana* court made no express or implied limitation that a free-standing unjust enrichment claim must be based in quasi-contract, and any such limitation would be inconsistent with the Restatement principles upon which California courts have relied to come to recognize unjust enrichment as its own independent claim. California law recognizes only that quasi-contract theory is a "typica[l]," not an exclusive, basis for unjust enrichment.  *Astiana*, 783 F.3d at 762 (citing *Munoz v. MacMillan*, 195 Cal.App.4th 648 (2011) (referring to quasi-contract theory as "typical"); *see also Siegelman v. Salimi,* No. D079923, 2023 WL 4721212  at * 12-13, fn. 5

(Cal. App. Ct. July 25, 2023) (the Restatement Third, in discussing quasi-contract principles and other bases for unjust enrichment, reflects "the 'inherent flexibility of the concept of unjust enrichment' and seeks to classify the circumstances in which a liability in restitution will predictably be imposed.'"). Similarly, although an unjust enrichment claim may arise between parties in privity, such a claim stands even where there is no privity. *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,* 61 Cal.4th 988, 998 (2015) ("Though this restitutionary obligation is *often* described as quasi-contractual, a privity of relationship between the parties is not *necessarily* required") (emphasis added); *In re Gen. Motors LLC CP4 Fuel Pump Litig.,* 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019) ("California law imposes no requirement of privity to make out an unjust enrichment claim.").

Therefore, Oracle errs as a matter of law by arguing that Plaintiff Katz-Lacabe *must* allege that he "directly expended [his] own resources" or "that [his] property has become less valuable." Plaintiffs respectfully submit that the Court's Order establishes no such requirement. The Order first quotes *Facebook Tracking*: "California law requires disgorgement of unjustly earned profits *regardless of whether* a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." Order at 17 (emphasis added). In the sentence that follows, the Court states that Plaintiffs "have neither directly expended their own resources, nor shown that their property has become less valuable," thereby correctly observing that Plaintiffs chose not to have alleged that *particular basis* for unjust enrichment. Oracle's argument is simply the opposite of what *Facebook Tracking* holds. *See Cottrell v. AT&T Inc.,* No. 19-CV-07672-JCS, 2020 WL 4818606, at *4 (N.D. Cal. Aug. 19, 2020) (applying this aspect of *Facebook Tracking* to independent claim for unjust enrichment and denying motion to dismiss on that basis). This is in keeping with the established principle that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599; *Cottrell* at *4 (N.D. Cal. Aug. 19, 2020) ("[*Facebook Tracking*] has resolved this issue of California law in favor of [plaintiff's] position that a plaintiff need not show damages to recover for unjust enrichment."); *see also* Rest., Restitution, § 1, com. e. (where "a benefit has been received by the defendant but the

plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust ... [t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched.").

### 2. Plaintiff have adequately pleaded that Oracle was enriched 'at Plaintiffs' expense'

California and Ninth Circuit precedent allows the element of 'at plaintiffs' expense' to be demonstrated solely by the deprivation of rights long recognized at common law. The Restatement is crystal clear on the point, as stated above, that "'at the expense of another' can also mean 'in violation of the other's legally protected rights.'" Restatement (Third) of Restitution § 1, cmt. a. Therefore, Plaintiff need *not* show that he "directly expended [his] own resources" or "that [his] property has become less valuable," as Oracle continues to assert to the Court.

An illustration from the Restatement mirroring Plaintiffs' allegations here demonstrates that in the specific context of a privacy violation, the claimant need only show a violation of protected rights (and defendant's consequent benefit) to be entitled to unjust enrichment:

> On going out of business, Local Pharmacy sells Customers' prescription records and accompanying medical information to National Chain. In connection with the sale, Local Pharmacy agrees not to inform Customers of the pending disclosure of their records; the object of this provision is to allow National Chain to communicate with Customers once their files have been transferred. Because it gives Customers no opportunity to object to the disclosure of confidential information, the transaction between Local Pharmacy and National Chain is both a *violation of Customers' protected right of privacy* in their prescription records and a deceptive marketing practice under local law. By the rule of this section, Customers have a claim against Local Pharmacy for the proceeds of the sale of their confidential information*, and a claim against National Chain for the additional profits it derived from the unlawful transaction*."

Restatement (Third) of Restitution and Unjust Enrichment § 44 cmt. b, illus. 10 (2011) (emphasis added). Thus, where an independent third party ("Local Pharmacy") provides personal information to a data aggregator ("National Chain") without the customer's consent, the customer has a claim against the data aggregator for unjust enrichment based on the data aggregator's profits. This straightforward logic directly applies to Plaintiffs' allegations here. Plaintiffs' FAC is replete with allegations that Oracle has violated their protected privacy rights and has benefitted thereby. *See, e.g.*, FAC ¶¶ 80-88,164, 235, 251-255.

3.      **Oracle's collection of Plaintiffs' personal information via third party websites does not defeat the Unjust Enrichment claim**

Oracle's assertion, as noted by the Court in its Order, that Plaintiffs must, and have failed to, affirmatively allege "why the access [they] received to [websites containing Oracle tracking devices] would not defeat the unjust enrichment claim," Mot. at 23, citing Order at 18 n.11, miscasts the Plaintiffs' theory of liability and, to the extent it implies that Oracle obtained consent from third parties, ignores pertinent allegations in the FAC.

Plaintiffs allege that Oracle engages in a purposeful scheme to surveil Plaintiffs and class members, knowing that they are unaware and lack sufficient information to reasonably understand—and therefore cannot consent to—Oracle's conduct. *See, e.g.* FAC ¶¶ 39, 99-118.  In the FAC (and the original Complaint) Plaintiffs set forth extraordinarily detailed allegations which if proven would convincingly establish that Plaintiffs have not and cannot consent to Oracle's collection or use of their personal information.  *Id.*  These allegations apply to all methods of Oracle's data collection including via third parties. *See e.g.*, *Id.* ¶¶ 7, 12, 51, 59, 79, 97, 106-108, 182, 198, 229, 249.  At paragraph 249 of the FAC, Plaintiffs explicitly respond to the Court's query, stating that "the access Plaintiffs and United States Class members received to those websites *does not defeat their unjust enrichment claim* because" of a litany of reasons, including that: 1) Plaintiffs were in fact not aware of Oracle's conduct while browsing websites and did not and could not consent to that conduct;  2) Plaintiffs were not aware of and did not consent to the collection of their *location data* by Oracle, which is independent of their visit to any website; and 3) Plaintiffs were not aware of and did not consent to the collection of *their real-world activity, such as brick-and-mortar purchases*, which is independent of their visit to any website. FAC ¶ 249.[7]  Plaintiffs further allege that had they "known of Oracle's conduct, Plaintiffs would not have visited those websites or, if such visits were unavoidable, would have taken additional precautions to avoid being tracked and profiled by Oracle." *Id.* Plaintiffs specifically allege that Oracle did in fact collect their information in a "manner contrary to expectations created by the consent process," because *they were unable to and did not consent to that conduct at any time under any "process" from any*

---

[7] Oracle repeatedly and systematically elides that Plaintiffs' unjust enrichment claim is premised on more than just internet activity; it is also premised on the profit Oracle made from selling Plaintiffs' *offline* data. *Id.*

*website*. See FAC ¶¶ 99-118. That Plaintiffs were not in direct privity with Oracle is irrelevant; and in any event Plaintiffs allege Oracle was aware of the fact that Plaintiffs and class members could not consent to its conduct. *See e.g., id.* ¶ 116; *cf.* Order at 17.

Indeed, the gravamen of the FAC is that Oracle knowingly exploits the fact that persons it deliberately surveils have little idea of the extent of its penetration into their lives, and that it takes advantage of the reality of the asymmetry of information. *See e.g., Id.* ¶¶ 103, 112-116, 227. Oracle has unjustly benefitted from this purposeful exploitation. Oracle's factual assertions that third parties have endeavored to obtain consent from Plaintiffs on Oracle's behalf (*see* Mot. at 17-18, 24) requires impermissible factual finding to examine at this stage. However, if the facts are proven as alleged, Oracle's invasions of Plaintiffs' Constitutional and common law rights are sufficiently unjust to warrant disgorgement of the wrongfully-gained profits.

Another Court within this District recently held that the plaintiffs had stated a stand-alone claim for unjust enrichment against a data broker—where plaintiffs also had no privity—based on the data broker's profits from violation of their privacy rights through the creation of "detailed cradle-to-grave dossiers." *Brooks v. Thomson Reuters Corp*., No. 21-CV-01418-EMC, 2021 WL 3621837, at *1 (N.D. Cal. Aug. 16, 2021). Here, as in *Brooks*, Plaintiffs allege a claim for unjust enrichment against Oracle for the aggregation and sale of their information and that Oracle acted without their consent, whether directly or via third-party websites. *See, e.g.,* FAC ¶¶ 131-149, 249. Plaintiffs have more than adequately stated a stand-alone claim for unjust enrichment under California law.

**C.     Plaintiffs Have Stated a Claim for Violation of ECPA**

The ECPA prohibits Oracle from acquiring the contents of electronic communications "for the purpose of committing any criminal or tortious act." 18 U.S.C.A. § 2511(2)(d). As this Court has noted, to succeed with this so-called "exception to the exception," Plaintiffs must allege that "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortuously." *Rodriguez*, 2021 WL 2026726, at *6 fn. 8.

Contrary to Oracle's assertion, under Ninth Circuit law, the goal of "mak[ing] money" cannot legitimize the interception of electronic communications made for tortious purposes of the

kind alleged in the FAC.  Mot. at 22.  First, a "lawful purpose" does not "sanitize" a wiretap that is *also made* "for an illegitimate purpose." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (eavesdropping done for a legitimate purpose of news gathering, if otherwise tortious, does not immunize the party from liability).  Likewise, tortious conduct such as blackmail or theft of business secrets, though primarily done to "make money," is not exempt from Section 2511. *See, e.g., id.* (where wiretapping "is done for the purpose of facilitating some further impropriety, *such as blackmail*, section 2511 applies") (emphasis added).

Second, courts in this District have recently found the exception applies in identical circumstances. In *Brown*, 525 F. Supp. 3d at 1067, the plaintiffs alleged that Google "intercepted their communications for the purpose of associating their data with preexisting user profiles," which the court held sufficiently alleged that the "primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously." That is, "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies this exception." *Id.*; *see also U.S. v. McTiernan*, 695 F.3d 882, 889 (9th Cir. 2012) (Section 2511 usually applies where the recording is "done for the purpose of facilitating some *further impropriety*" (emphasis added)).  Recognized tortious purposes providing a basis for the "exception to the exception" include facilitating "invading [a plaintiff's] privacy." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F.Supp.3d 808, 828 (N.D. Cal. 2016) (recognizing that "further invading the privacy of plaintiffs' staff" sufficed to state crime-tort exception to consent exception); *In re Intuit Priv. Litig.*, 138 F. Supp. 2d 1272, 1279 (C.D. Cal. 2001) (intercepting electronic communications with the purpose of facilitating violation of California Constitutional right to privacy would suffice for Section 2511 to apply) (citing *Sussman,* 186 F.3d at 1202). Plaintiffs' allegations here are saliently identical to those in *Brow*n v. *Google*, and the exception applies here for the same reason.[8]

---

[8] Oracle's citation to this Court's decision in *Rodriguez*, 2021 WL 2026726  is inapposite.  There, this Court cited and quoted Judge Koh's decision in *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) for the proposition that a primary purpose *could be* "to make money," thus disallowing the exception. However, it was Judge Koh again in *Brown v. Google* who acknowledged that same proposition in her prior precedent, yet nonetheless applied the exception given the distinguishing factor of a "further use"

Oracle's argument that Plaintiffs "merely state, in a conclusory manner, that Oracle acted with the intent to invade Plaintiffs' privacy" and only offer a "formulaic recitation of the elements" (Mot. at 22) is simply wrong and ignores Plaintiffs' allegations regarding Oracle's intent. Plaintiffs allege that Oracle intercepted Plaintiffs' data for the further use of creating "cradle-to-grave profiles" on class members (*see, e.g.*, FAC ¶¶ 4-20).  For example, Oracle "associate[d]" the data it collected from wiretapping Dr. Golbeck's communications "with a profile of her maintained by Oracle." *Id.* ¶ 14.  Plaintiffs further allege that Oracle was aware that its creation and maintenance of these profiles, which were enriched with fruits of Oracle's wiretapping, violated Class members' privacy and was potentially illegal: in 2016, shortly after Oracle acquired BlueKai, Oracle CEO Larry Ellison, in describing Oracle's amassing of profiles, acknowledged that Oracle's conduct was potentially illegal and was "scaring the lawyers." *Id.* ¶227.[9] At the very least, Plaintiffs plausibly plead the requisite intent, and the issue must be decided based on facts elicited through discovery.

**D.    California Law Applies to the Claims of Non-Residents.**

**1.    The Court must defer the choice-of-law analysis in light of Oracle's factual challenges to Plaintiffs' allegations**

As a threshold issue, Oracle's choice-of-law arguments newly raise and rely on numerous factual questions that *require* discovery to resolve, including: (1) whether the "last act" for choice of law purposes was Oracle's interception of data from Plaintiffs' internet browsers or the creation and sale of dossiers by Oracle (Mot. at 6); (2) the specific location of this "last act," whether in California or elsewhere (*id.*); (3) the location of relevant conduct, including the "locus of injury" (Mot. at 9); and (4) the purported transfer of Oracle's headquarters from California to Texas in 2020 and its impact, if any, on the location of the relevant conduct (*id.*).  *See T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) ("the Court

---

of the data.  *Brown,* 525 F. Supp. 3d at 1067.  Similarly, Judge Orrick has distinguished *In re Google Inc. Gmail Litigation* and applied the exception where subsequent disposition of the "fruits of the interception . . . could constitute the further tortious act."  *Planned Parenthood,*, 214 F. Supp. 3d at 828.  The allegations of the FAC make clear that this case is distinguishable on this point from *Rodriguez* and *In re Google Inc. Gmail Litigation*, and rather is akin to *Planned Parenthood* and substantially similar to *Brown.*

[9] "[Oracle's conduct] is a combination of real-time looking at all of their social activity, real-time looking at where they are, including, micro-locations – *this is scaring the lawyers who are shaking their heads and putting their hands over their eyes* – knowing how much time you spend in a specific aisle of a specific store and what is in that aisle of a store." FAC ¶ 227.

finds it more appropriate to address [choice-of-law] issues at the class certification stage once both sides have had the opportunity to further develop their arguments and engage in discovery."); *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017).  The Court should therefore defer ruling on these issues.

### 2.    California law applies to Dr. Golbeck's Intrusion Upon Seclusion and Unjust Enrichment claims

Oracle fails to satisfy its burden to demonstrate that foreign law, rather than California law, should apply to the Plaintiff and class claims. *See, e.g., Wash. Mut. Nat'l Bank v. Sup. Ct.*, 24 Cal. 4th 906, 919-20 (2001).  Contrary to Oracle's assertion, in applying the "governmental interest" analysis to the prior complaint, the Court made no binding factual findings (as it could not at the pleading stage) that obviate the need to consider Plaintiffs' revised allegations. *See* Order at 18. Oracle either fails to grapple with or mischaracterizes Plaintiffs' additional allegations that address the issues identified by the Court's Order.  With these augmented allegations, the application of California law is appropriate as determined by the "governmental interest" analysis.[10]

#### a.    Intrusion Upon Seclusion

Florida law is materially the same as California law as applied to facts which need to be proven *in this case* because both jurisdictions expressly recognize a claim for intrusion into a "private place" that is an "electronic space."  However, even if the Court finds there is a difference, Oracle has not demonstrated that Florida's interests would be more impaired.

Step 1: Difference in Laws. Only differences that are "material, that is, if they make a difference in *this* litigation," matter for purposes of a choice-of-law analysis.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590-591 (9th Cir. 2012) (emphasis added) *citing In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984) ("Any differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law.").  Here, there are no material, outcome determinative differences between California and Florida laws as both recognize a claim for intrusion into a private "electronic space."

The Florida Supreme Court has articulated intrusion upon seclusion as an intrusion "into a

---

[10] Plaintiffs concur with Oracle that the three-step governmental interest analysis applies here. Mot. at 4.

'place' in which there is a reasonable expectation of privacy," which includes "physically or electronically intruding into one's private quarters." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Importantly, under Florida law, "private quarters" can encompass 'electronic space' such as a telephone wire or other electronic instrumentalities such as a computer or internet browser.  "A claim for invasion of privacy by intrusion contemplates a scenario in which the defendant has intruding into a place or area—whether it be a physical space, such as a bedroom *or into an electronic space, such as a telephone line*—in which the plaintiff had a reasonable expectation of privacy." *Spilfogel v. Fox Broad. Co.*, No. 09-CV-80813, 2010 WL 11504189, at *5 (S.D. Fla. May 4, 2010) (citing Restatement (Second) of Torts § 652B, cmt. (b)'s statement that intrusion can include "tapping [a person's] telephone wires") (emphasis added).

In California, to show an intrusion upon seclusion, "defendant must have 'penetrated some zone of physical or sensory privacy ... or obtained unwanted access to data' by electronic or other covert means, in violation of the law or social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607.  Plaintiffs allege Oracle obtained unwanted access to Dr. Golbeck's personal information by using tracking technologies intruding into her private electronic space. FAC ¶¶ 15, 42-51.  Because an intrusion can mean "electronically intruding" into a private "electronic space" under both Florida and California law, there will be no difference in result with respect to the application of either state's laws.  Accordingly, "the choice of law inquiry ends" here because the states' laws do not materially differ.  *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009).

<u>Step 2: The States' Respective Interests</u>. Oracle has also failed to meet its burden to show a "true conflict" between Florida and California law. As Oracle concedes, after the Court issued its Order, Florida passed legislation recognizing the importance of protecting data privacy rights, thereby "confer[ing] substantive data privacy rights in the way that California has done." Order at 20.  This demonstrates that the states have coequal interests in the application of privacy laws, not that Florida has a conflicting interest.  *Compare* Florida Digital Bill of Rights, Senate Bill 262 *with* California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq*.[11]

---

[11] Oracle argues there is a true conflict because Florida's law applies to businesses with gross annual revenues over $1 billion, whereas California's applies to companies with revenues over $25

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS PORTIONS OF FIRST AMENDED
COMPLAINT; CASE NO. 3:22-CV-04792

Oracle contends that a conflict exists because it "is unaware" of a "single" successful intrusion upon seclusion claim under Florida law involving the collection of web browsing data. Mot. at 5. But Plaintiffs are unaware of single such *unsuccessful* claim—it appears, unsurprisingly, that no case on par with the instant one has been decided under Florida law yet. To the extent that "Florida's laws have not stretched to reach claims premised on the collection of online data" (Order at 20), that is a function of the fact that no such case has been decided yet.

Step 3: Impairment of State Interests. California law acknowledges that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders . . . ." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 at 98 (2010). The "place of the wrong" is defined as "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593. Oracle makes the factual assertion that the "last act" attaching liability to Oracle was in Florida because Oracle used its tracking technologies to intrude on Dr. Golbeck's device in Florida. Mot. at 6. Oracle's argument elides the central gravamen of Plaintiffs' FAC, which challenges Oracle's "compiling of profiles on Plaintiffs" which "took place in California" as did "the provision of those profiles to third parties." FAC ¶ 28.

Plaintiffs' amended allegations show that Oracle was headquartered in California for a substantial portion of the class period, Oracle's relevant activities are in California, and Oracle has explicitly represented that the entity responsible for the processing of personal data was located in California. FAC ¶¶ 23-30.[12] Plaintiffs expressly allege that the "last act" for choice of law purposes is this "creation, maintenance, and provision to third parties of" the profiles Oracle creates. FAC ¶ 28. Nonetheless, Oracle argues the "last act" was the interception of data *on Plaintiffs' computer* by Oracle's JavaScript code. Mot. at 6. Oracle is wrong both as a matter of law and as a matter of fact: it conflates the "last act" with respect to Plaintiffs *wiretap* allegations with the "last act" that

---

million. *Id.* But Oracle's argument only proves that Florida has an interest, like California, in the protection of individuals' privacy, and indeed the new Florida law will apply to Oracle given Oracle Advertising's annual revenue of approximately $2 billion. FAC ¶ 252. Plaintiffs do not suggest the CCPA extends to non-residents, as Oracle contends (MTD at 7). California has a greater interest in regulating the unlawful conduct within its borders, and, as alleged in the FAC, the CCPA demonstrates that interest.

[12] *See, e.g.,* FAC ¶ 28 ("At least until December 2020, Oracle publicly represented that 'Oracle Corporation and Oracle America, Inc., with their registered address at 500 Oracle Parkway, Redwood Shores, CA, 94065, United States, are responsible for the processing of your personal data.'").

1   makes Oracle liable for Plaintiffs' *intrusion and unjust enrichment* claims.[13]   *See* Mot. at 6.

2   Plaintiffs' common law claims are not based solely on the interception of their communications,

3   but also upon the extensive compilation, analysis, and sale of Plaintiffs' information *within*

4   *California*.   FAC ¶ 28.   As such, the "last act" cannot be activity that takes place solely on Dr.

5   Golbeck's computer.

6        To the extent Oracle still contends, contrary to Plaintiffs' well-pled allegations, that the "last

7   act" is the interception of data on Plaintiffs' computers, it raises a purely factual dispute. Mot. at 6.

8   Thus, the choice-of-law determination must be deferred to allow development of the factual record.

9   *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019). If the

10  Court does not defer that issue, it must, at this stage, construe all of the factual allegations in

11  Plaintiffs' complaint as true, and should find Oracle has not carried its burden to demonstrate

12  Florida's interests outweigh California's.

13                      **b.**   **Unjust Enrichment**

14       Step 1: Difference in Laws. In California, a defendant is unjustly enriched when "the

15  defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners,*

16  828 F.3d at 1038; *see* section III.B, *supra*.   Florida law has functionally the same elements: (1) the

17  plaintiff confers a benefit directly upon defendant; (2) the defendant has knowledge of the benefit;

18  (3) the defendant accepts and retains the benefit; and (4) it would be inequitable for the defendant

19  to retain the benefit. *State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota*, L.L.C., 9 F.

20  Supp. 3d 1303, 1311-12 (M.D. Fla. 2014).   Under the facts here, no material difference exists

21  because Plaintiffs' proof will be the same whether under Florida or California law.   *Mazza*, 666

22  F.3d at 594.   Oracle had "knowledge" and "acceptance" of the benefit because Oracle knowingly

23  disclosed Plaintiffs' personal information and profited from this unlawful activity, and the benefit

24  was "directly" conferred upon Oracle when it collected and sold Plaintiffs' personal information.

25  FAC ¶¶ 12, 14, 15, 43-53, 236-237, 248-249, 255.

26       Step 2: The States' Respective Interests. Nor has Oracle met its burden to show a "true

27  _____
    [13] Plaintiffs allege only their own State's wiretap claims, along with the ECPA, for their respective

28  state classes, and thus the choice-of-law analysis is irrelevant to Plaintiffs' CIPA, FSCA, and ECPA
    claims. *Popa v. Harriet Carter Gifts, Inc*., 52 F.4th 121, 132 (3d Cir. 2022), addressing the location
    of the "interception" under Pennsylvania's wiretap statute, is therefore inapposite.

conflict." Oracle's only argument is that Oracle did not "directly" benefit from Dr. Golbeck's personal information because it received it through "intermediaries." Mot. at 8. Florida law, however, holds the exact opposite: "[i]t would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant." *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *9 (S.D. Fla. June 1, 2017) (quoting *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011)); *see also* Section III.G, *infra*.

Step 3: Impairment of State Interests. Finally, Oracle has failed to show that Florida's interest would be more impaired than California's. *See* Section III.D.2.a., *supra*.[14]

**E.    Dr. Golbeck Has Stated a Claim for Wiretapping Under the Florida Security of Communications Act ("FSCA")**

The FSCA applies to electronic communications intercepted by JavaScript code. *Makkinje v. Extra Space Storage, Inc.*, No. 8:21-CV-2234-WFJ-SPF, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022) (involving JavaScript software); *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1045 (C.D. Cal. 2021) (same); *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (software can constitute a "device" in the wiretapping context). Oracle argues the FSCA does not apply to electronic devices that track "movements" (Fla. Stat. § 934.02(12)(c)), however, Oracle's Florida authorities all relate to so-called "session replay" software, which records the literal physical movements of the users' mouse cursor;[15] this is unlike the bk.coretag.js script, which sends the contents themselves to Oracle specifically for analysis and aggregation (*see* FAC ¶¶ 44-45). Moreover, none of Oracle's cases involved allegations, as here, that the third party used the data for their own purposes to create dossiers on the plaintiffs. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021).

Dr. Golbeck properly alleges the contents of her communications have been intercepted.

---

[14] While Oracle argues California law should not apply to the claims of the nationwide non-resident class members, here the Court should only consider the laws of California and Florida, as those are the only states' laws Oracle has put at issue. *See Eiess v. USAA Federal Savings Bank*, 404 F.Supp.3d 1240, 1251 (N.D. Cal. Aug. 23, 2019).

[15] *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) (session replay software at issue); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD , 2021 WL 2820822, at *2 (S.D. Fla. 10 July 6, 2021) (same); *Connor v. Whirlpool Corp.*, No. 21-CV-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same).

The statute defines contents as "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7) (emphasis added). Multiple Florida courts have found similar allegations to properly state an FSCA claim. *Makkinje* 2022 WL 80437, at *2; *Alhadeff*, 541 F. Supp. 3d at 1045 (under FSCA, "clicks, movements, keystrokes, search terms, pages and content viewed" are "very communicative").

Oracle is incorrect that an FSCA claim requires demonstration of an expectation of privacy in electronic communications. *See Makkinje*, 2022 WL 80437, at *2 (plaintiff adequately alleged FSCA claim despite arguments plaintiffs had no expectation of privacy); *Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, No. 8:12-CV-2079-T-17MAP, 2013 WL 5437117, at *4 (M.D. Fla. Sept. 27, 2013) ("[T]he definition of 'wire communication' does not include the same qualifying 'reasonable expectation of privacy' language as the definition of oral communication."). In any event, Dr. Golbeck had a reasonable expectation of privacy with respect to *Oracle's* surveillance, and Oracle's authorities do not hold otherwise. The plaintiff in *Jacome* sued the owner of a website he interacted with for violations of the FSCA. *Jacome*, 2021 WL 3087860, at *7. The court held only that, with *respect to that website owner* "there can be no reasonable expectation of privacy from a third-party website owner when Plaintiff voluntarily browses through that third-party's website." *Id*. The court did not hold that the plaintiff had no reasonable expectation of privacy with respect to parties *other* than the website owner, such as Oracle. *See* Section III.F, *infra*.

F.     **Dr. Golbeck Has Stated a Claim In the Alternative for Intrusion Upon Seclusion under Florida Law**

Dr. Golbeck has alleged intrusion into a "private quarter." As discussed above, Florida courts recognize that "private quarter" can include 'electronic space.' *See Hammer v. Sorensen*, 824 F. App'x 689, 696 (11th Cir. 2020) (electronic email addresses can be "associated with private quarters" i.e., accessed privately, for the purposes of an intrusion claim). Dr. Golbeck also alleges a reasonable expectation of privacy under Florida law.  As with Oracle's unsuccessful arguments with respect to Plaintiffs' California claim (Order at 11-13), Oracle's Florida authorities all relate to disanalogous and isolated individual modes of alleged invasions of privacy.  *See Adams v. State*, 436 So. 2d 1132, 1133 (Fla. Dist. Ct. App. 1983) ( "transacting" "in a place of business open to the

public"); *see also Spilfogel*, 433 F. App'x at 727 (conversation on a city street).[16] No Florida case addresses any fact pattern that comes close to resembling the one at bar.  Oracle's internet-related authorities are not to the contrary.  *United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019) is a *Georgia* case examining Fourth Amendment issues under the U.S. Constitution. The Circuit's footnoted dicta recognized that, in that case, there was no issue regarding whether the government's collection of the criminal defendants' information was a "search" for Fourth Amendment purposes because the defendants "purposefully shroud[ed]" their internet activities using a "Tor" browser.  *Id.* The question of the threshold for a reasonable expectation of privacy in internet browsing activity was not at issue in that case, and it has no bearing on the proper interpretation of the reasonable expectation of privacy under Florida common law.[17] *Jacome*, as noted above, at most suggests a plaintiff cannot expect to keep information shared with a website private *from that website's owner*.

Dr. Golbeck alleges a highly offensive intrusion.  Again, Oracle cites to no case that remotely resembles the fact pattern at bar.  *See* Mot. at 13 (citing cases concerning only social security numbers, credit reports, medical records, and attorney-client communications).[18]  Oracle

---

[16] Oracle raises yet another factual challenge when it asserts that it does not obtain "'real world movement data' from PlaceIQ." and that "there is no basis to infer that Oracle collected" that data. MTD at 11. No "infer[ence]" regarding Oracle's collection of location information is needed at this stage; Plaintiffs allege Oracle does so, and Oracle appears to deny the veracity of that allegation. *Id.* That is a pure factual dispute to be determined through discovery, and Plaintiffs have repeatedly requested that Oracle produce the data underlying the OARRR to resolve this very issue.  Plaintiffs also allege that "the OARRR reflects only a small portion of the information collected by Oracle on Plaintiffs since at least 2016," FAC ¶ 20, and the material cited throughout the FAC supports that Oracle collects specific location information on class members.  *See, e.g., id.* ¶¶ 69, 79.

[17] *United States v. Trader*, 981 F.3d 961, 967-68 (11th Cir. 2020), and *United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019) are likewise inapposite Fourth Amendment search-and-seizure cases that do not address Florida common law and, at most, suggest internet subscribers do not have a Fourth Amendment right against the government obtaining the IP addresses and emails associated with their ISP accounts as part of a criminal investigation.

[18] *Celestine v. Cap. One,* No. 17-20237-CIV, 2017 WL 2838185, at *4 (S.D. Fla. June 30, 2017) (access to credit reports only, as opposed to access to web browsing activity, geolocation activity, and offline activity and purchases)*; Stasiak v. Kingswood Co–Op*, Inc., No. 8:11-CV-1828-T-33MAP, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012) (same); *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1307 (M.D. Fla.) (addressing telephone calls by collection agency, not compilation and sale of dossiers); *Shadlich v. Makers Nutrition LLC*, No. 8:20-CV-389-T-60CPT, 2020 WL 5255133, at *2 (M.D. Fla. Sept. 3, 2020) (same). *Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268 (11th Cir. Oct. 19, 2021) and *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 149 (Fla. Dist. Ct. App. 2007) are additionally inapposite because they address a different tort—publication of private facts—that has different elements from intrusion upon seclusion and implicates First Amendment concerns. *See id.*

does not cite a single Florida case addressing the offensiveness of detailed web browsing tracking, let along combing that with detailed *offline* activity. More instructive are the statements of Florida state courts recognizing that "engaging in repeated surveillance of another person can constitute the tort of invasion of privacy—intrusion upon seclusion," *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 657 (Fla. Dist. Ct. App. 2021). Moreover, Plaintiffs' allegations regarding widespread societal, congressional, and regulatory concern with Oracle's activities (*see* FAC ¶¶ 91-96) demonstrate there is a triable question of fact as to whether that conduct is "intolerable in a civilized society." *Stasiak*, 2012 WL 527537, at *3. The weight of authority demonstrates that Dr. Golbeck has stated a claim for intrusion under common law.

### G.    Dr. Golbeck Has Stated a Claim In the Alternative for Unjust Enrichment under Florida Law

As explained above, *supra* section III.A.2., Oracle has demonstrated no material differences between California and Florida unjust enrichment law, and for the same reasons Dr. Golbeck's alternative claim under Florida law properly states a claim. Moreover, Dr. Golbeck alleges precisely why the access she received to certain websites does not defeat that claim.[19] *See* section III.B.3, *supra*. Oracle ignores that it 'directly benefitted' from her personal information, even if that information may have passed through intermediaries, and "erroneously equates direct contact with direct benefit." *Romano v. Motorola, Inc*., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). Under Florida law, "the 'direct benefit' element of an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary. In other words, a direct benefit can derive from a transaction with no direct contact." *Weinberg v. Advanced Data Processing, Inc*., 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015).[20]

### H.    Plaintiffs State A Claim For Declaratory Judgment

Again, Oracle's only substantive argument for dismissal of Plaintiffs' claim for declaratory

---

[19] *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc*., 764 So. 2d 672 (Fla. Dist. Ct. App. 2000) supports Dr. Golbeck's argument; not only was she never 'paid' by Oracle for the use of her data, she also never "bargained for," i.e., consented to, that use. *Id*. at 675.

[20] *Kopel v. Kopel,* 229 So. 3d 812, 818 (Fla. 2017), and *Peoples Nat. Bank of Com. v. First Union Nat. Bank of Florida*, N.A., 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996), are not to the contrary. *Kopel* held that the defendants had not been unjustly enriched because the subject payments had gone to other parties, not the defendants, whereas in *Peoples Nat. Bank* there was no unjust enrichment because the plaintiff was not the source of the subject funds.

1   judgment is that Plaintiffs "failed to allege facts sufficient to state a claim for their third through

2   eighth causes of action." Mot. at 25.  Because that argument fails, there is no basis to dismiss the

3   declaratory judgment claim. 28 U.S.C. § 2201(a). [21]

4   **IV.   <u>CONCLUSION</u>**

5          Plaintiffs respectfully submit that the Court should deny Oracle's Motion to Dismiss the

6   First Amended Complaint in its entirety, but that any dismissal, in whole or in part, should be

7   without prejudice and with leave to amend.

8

9    Dated: August 4, 2023                    */s/* Michael W. Sobol
                                              Michael W. Sobol (SBN 194857)
10                                            msobol@lchb.com
                                              David T. Rudolph (SBN 233457)
                                              drudolph@lchb.com
11                                            Jallé H. Dafa (SBN 290637)
                                              jdafa@lchb.com
12                                            Nabila Abdallah (SBN 347764)
                                              nabdallah@lchb.com
13                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                              275 Battery Street, 29th Floor
14                                            San Francisco, CA  94111-3339
                                              Telephone:  415.956.1000
15                                            Facsimile:  415.956.1008

16                                            *Attorneys for Plaintiffs and the Class*

17

18

19

20

21

22

23

24

25

26

27

28   ───────────────
     [21] Oracle's footnoted attempt (Mot. at 25, fn. 19) to preserve its *Sonner* argument has already been
     rejected by this Court. Order at 22-23.

1

## **CERTIFICATE OF SERVICE**

2          I, Michael W. Sobol, certify that I caused the foregoing document to be served on all

3   counsel for all parties to this action by filing it through the Court's ECF system.

4

5   Dated: August 4, 2023                              */s/ Michael W. Sobol*

Michael W. Sobol

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO ORACLE'S MOTION
TO DISMISS PORTIONS OF FIRST AMENDED
COMPLAINT; CASE NO. 3:22-CV-04792