1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   DANIELLE VALLONE (CA SBN 302497)
    DVallone@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482
    Telephone:    415.268.7000
5   Facsimile:    415.268.7522

6   PURVI G. PATEL (CA SBN 270702)
    PPatel@mofo.com
7   WHITNEY O'BYRNE (CA SBN 325698)
    WOByrne@mofo.com
8   ERIK MANUKYAN (CA SBN 340307)
    EManukyan@mofo.com
9   EMMA BURGOON (CA SBN 348097)
    EBurgoon@mofo.com
10  MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
11  Los Angeles, California 90017-3543
    Telephone:    213.892.5200
12  Facsimile:    213.892.5454

13  Attorneys for Defendant
    ORACLE AMERICA, INC.
14
    *Additional counsel on next page*
15

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN FRANCISCO DIVISION**

19

20  Michael Katz-Lacabe and Dr. Jennifer          Case No. 3-22-cv-04792-RS
    Golbeck, on behalf of themselves and all others
21  similarly situated,                           **DEFENDANT ORACLE**
                                                   **AMERICA, INC.'S REPLY IN**
22                    Plaintiffs,                  **SUPPORT OF ITS MOTION TO**
                                                   **DISMISS PORTIONS OF PLAINTIFFS'**
23          v.                                     **FIRST AMENDED COMPLAINT**

24  ORACLE AMERICA, INC., a corporation           Judge:  Hon. Richard Seeborg
    organized under the laws of the State of
25  Delaware,                                     Date:   October 5, 2023
                                                   Time:  1:30 p.m.
26                    Defendant.                   Courtroom:  3

27                                                 Date Action Filed:  August 19, 2022
                                                   FAC Filed:  May 22, 2023
28                                                 Trial Date:  Not set

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, CA 94065
Telephone:    650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT ................................................................................................................ 1

    A.     California Law Does Not Apply to Non-Residents ................................................. 1

        1.     The Court should not defer a choice-of-law analysis because further fact discovery would not change the outcome ............................................. 1

        2.     California and Florida intrusion upon seclusion laws are materially different ............................................................................................................. 3

        3.     California and Florida unjust enrichment laws are materially different ............................................................................................................. 4

        4.     California law should not be applied to non-resident members of the putative nationwide class ........................................................................... 4

    B.     Plaintiffs' Third Through Ninth Causes of Action Fail Under Rule 12(b)(6) ........ 4

        1.     Golbeck cannot sustain her claim for Florida intrusion upon seclusion ........................................................................................................... 4

        2.     Katz-Lacabe's CIPA claim fails as a matter of law ..................................... 5

            a.     Katz-Lacabe cannot revive his CIPA claim as to the seven types of data this Court dismissed as record information because they fail to express the meaning behind his website visits ....................................................................................................... 5

            b.     Katz-Lacabe's attempt to substantiate Oracle's "willful[ness]" cannot be reconciled with his own allegations ................................................................................................. 7

        3.     Golbeck cannot evade the FSCA's tracking device exception and reasonable expectation of privacy requirement............................................ 9

        4.     For the second time, Plaintiffs cannot satisfy the crime-tort exception to ECPA's one-party consent rule ............................................. 11

        5.     Plaintiffs fail to state a quasi-contract claim for unjust enrichment and cannot establish that Oracle unjustly retained a benefit ..................... 12

            a.     A standalone cause of action for unjust enrichment under California law must be grounded in quasi-contract theory ........... 12

            b.     Oracle's alleged retention of the benefit conferred is not unjust ................................................................................................. 13

        6.     Golbeck fails to show she conferred a direct benefit on Oracle, which disqualifies her unjust enrichment claim under Florida law ......... 14

        7.     Plaintiffs' declaratory judgment claim fails alongside the rest................. 15

III.    CONCLUSION .......................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alhadeff v. Experian Info. Sols., Inc.*,
5      541 F. Supp. 3d 1041 (C.D. Cal. 2021) ...................................................................... 9

6

*Ashcroft v. Iqbal*,
7      556 U.S. 662 (2009) ............................................................................................... 7

*Astiana v. Hain Celestial Grp. Inc.*,
8      783 F.3d 753 (9th Cir. 2015) ................................................................................. 12

9

*Bell Atl. Corp. v. Twombly*,
10      550 U.S. 544 (2007) ............................................................................................... 7

11

*Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*,
     2013 WL 5437117 (M.D. Fla. Sept. 27, 2013) ...................................................... 10
12

13

*Brown v. Google LLC*,
     525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................... 8, 11
14

*Calhoun v. Google LLC*,
15      526 F. Supp. 3d 605 (N.D. Cal. 2021) .................................................................... 8

16

*Carvalho v. Equifax Info. Servs., LLC*,
     629 F.3d 876 (9th Cir. 2010) ................................................................................. 15
17

18

*Deteresa v. Am. Broad. Cos.*,
     121 F.3d 460 (9th Cir. 1997) ................................................................................. 11

19

*ESG Cap. Partners, LP v. Stratos*,
20      828 F.3d 1023 (9th Cir. 2016) ............................................................................... 12

21

*In re Facebook, Inc. Internet Tracking Litig.*,
     956 F.3d 589 (9th Cir. 2020) ................................................................................. 13
22

23

*In re Gen. Motors LLC CP4 Fuel Pump Litig.*,
     393 F. Supp. 3d 871 (N.D. Cal. 2019) .................................................................. 13

24

*Gerstle v. Am. Honda Motor Co.*,
25      2017 WL 2797810 (N.D. Cal. June 28, 2017) ......................................................... 3

26

*In re Google Assistant Priv. Litig.*,
     457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................... 9

27

*In re Google RTB Consumer Privacy Litigation*,
28      606 F. Supp. 3d 935 (N.D. Cal. 2022) .................................................................... 6

*Hammer v. Sorensen*,
  824 F. App'x 689 (11th Cir. 2020) .................................................................................. 3, 5

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................. 14

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
  61 Cal. 4th 988 (2015) ...................................................................................................... 13

*In re Intuit Priv. Litig.*,
  138 F. Supp. 2d 1272 (C.D. Cal. 2001) .............................................................................. 11

*Jackman v. Cebrink-Swartz*,
  334 So. 3d 653 (Fla. Dist. Ct. App. 2021) ........................................................................... 5

*Jacome v. Spirit Airlines Inc.*,
  2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .............................................................. 9, 10

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) .......................................................................... 9

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................................. 8

*Makkinje v. Extra Space Storage, Inc.*,
  2022 WL 80437 (M.D. Fla. Jan. 7, 2022) ............................................................................ 10

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
  Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ........................... 2, 4

*In re Meta Pixel Healthcare Litig.*,
  2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) .................................................................... 6

*Munoz v. MacMillan*,
  195 Cal. App. 4th 648 (2011) ............................................................................................. 13

*Oppenheim v. I.C. Sys., Inc.*,
  695 F. Supp. 2d 1303 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010) .................. 5

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
  214 F. Supp. 3d 808 (N.D. Cal. 2016) ............................................................................... 11

*Potter v. Chevron Prods. Co.*,
  2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ....................................................................... 2

*Professional Tax Appeal v. Kennedy Wilson Holdings, Inc.*,
  29 Cal. App. 5th 230 (2018) ............................................................................................... 12

*Ribas v. Clark*,
    696 P.2d 637 (Cal. 1985) ................................................................. 9

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................................. 9

*Rojas v. HSBC Card Servs. Inc.*,
    20 Cal. App. 5th 427 (2018)................................................................. 8

*Romano v. Motorola, Inc.*,
    2007 WL 4199781 (S.D. Fla. Nov. 26, 2007)................................................................. 14

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014) ................................................................. 12

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021)................................................................. 6

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ................................................................. 3

*Siegelman v. Salimi*,
    2023 WL 4721212 (Cal. Ct. App. July 25, 2023)................................................................. 13

*Spilfogel v. Fox Broad. Co.*,
    2010 WL 11504189 (S.D. Fla. May 4, 2010),
    *aff'd*, 433 F. App'x 724 (11th Cir. 2011)................................................................. 5

*Sussman v. Am. Broad. Cos.*,
    186 F.3d 1200 (9th Cir. 1999) ................................................................. 11

*Swafford v. Int'l Bus. Machs. Corp.*,
    383 F. Supp. 3d 916 (N.D. Cal. 2019) ................................................................. 12

*T. K. v. Adobe Sys. Inc.*,
    2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ................................................................. 3

*In re Takata Airbag Product Liability Litigation*,
    2017 WL 2406711 (S.D. Fla. June 1, 2017) ................................................................. 14, 15

*Tech & Intell. Prop. Strategies Grp. PC v. Fthenakis*,
    2011 WL 3501690 (N.D. Cal. Aug. 10, 2011)................................................................. 15

*United States v. Barrington*,
    648 F.3rd 1178, 1203 (11th Cir. 2011) ................................................................. 10

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015)................................................................. 9

*United States v. McTiernan*,
   695 F.3d 882 (9th Cir. 2012) ............................................................................................. 11

*United States v. Trader*,
   981 F.3d 961 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296 (2021) .......................................... 4

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) ................................................................................. 14

*Williams v. Wells Fargo Bank N.A.*,
   2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ........................................................................ 14

*Yee v. Select Portfolio, Inc.*,
   2018 WL 6173886 (N.D. Cal. Nov. 26, 2018) ....................................................................... 15

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ......................................................................................... 6-7

**Statutes**

Cal. Civ. Code
   § 1798.99.80(d) .............................................................................................................. 11
   § 1798.150(b) .................................................................................................................. 3

Cal. Pen. Code § 630 .......................................................................................................... 9

Fla. Stat.
   § 501.702 ........................................................................................................................ 3
   § 934.02(12) ................................................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.   **INTRODUCTION**

Plaintiffs continue to paint the ubiquitous and legally prescribed actions of a registered data broker as sinister, namely by claiming, again, that Oracle creates "cradle to grave dossiers."[1] Not so.  Oracle generates "generalized categories or associations" "such as the likelihood that the person has a computer and is an online shopper, that they may buy or like pasta sauce and salad dressings, and that they are interested in a number of sports."[2]  The only personally identifying information Oracle retains (and the only information Plaintiffs are currently permitted to seal)[3] is information that Oracle uses only to help it comply with "right to know" requests under the California Privacy Rights Act ("CPRA")—those efforts cannot simultaneously be privacy violations.  Similarly, Plaintiffs reaffirm their fundamental (and willful) misunderstanding that Oracle "deploys" the technologies at issue.  But as the Court has recognized, Oracle's customers engage Oracle's products and associated technologies (like the bk-coretag.js ("core tag")) and are solely responsible for customizing and deploying them.[4]

Throughout their opposition, Plaintiffs ignore and contradict the Court's previous order and governing law as to the scope of "contents" under the California Invasion of Privacy Act ("CIPA"), the Ninth Circuit precedent as applied to their unjust enrichment claim, and the timing of the Court's choice of law ruling.  Moreover, Plaintiff Golbeck offers little (and sometimes no) authority to support her newly added Florida claims.  For all of these reasons, the Court should dismiss Causes of Action Three through Nine, with prejudice.

II.   **ARGUMENT**

   A.   **California Law Does Not Apply to Non-Residents**

      1.   **The Court should not defer a choice-of-law analysis because further fact discovery would not change the outcome**

The Court has already confirmed that the parties' choice-of-law dispute is ripe for determination at the pleading stage given "further fact development" is unlikely to "materially

---

[1] (ECF No. 67 ("Opp.") at 14.)
[2] (ECF No. 68 ("Sealing Ord.") at 2.)
[3] (Sealing Ord. at 2 (allowing only name, email address, address, and phone number to be sealed).)
[4] (ECF No. 49 ("Ord.") at 16 ("As Defendant's customers must have chosen to deploy Oracle's tools on their websites …."").)

1    impact the choice of law determination." (Ord. at 19.)[5]  Against that conclusion, Golbeck

2    manufactures four fact issues that purportedly need resolving: (1) whether the last act necessary

3    to make Oracle liable occurred when it allegedly intercepted data from Golbeck's browser, or

4    instead, refined her data; (2) where that last act occurred; (3) the "locus of injury"; and (4) what

5    impact Oracle's transfer of headquarters had on the first three issues.  (Opp. at 16.)  None of these

6    should alter the Court's original analysis.  (Ord. at 18-22.)

7            Identifying the last act necessary for liability is an issue of law, not of fact.  (*Contra* Opp.

8    at 16, 19-20.)  Golbeck uses the incorrect legal standard used to determine the "place of the

9    wrong."  (ECF No. 63 ("Mot.") at 6 (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d. 581,

10   593 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop. v. Bumble*

11   *Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)).)  Golbeck insists the "place of the wrong" attaches

12   to the *very last act* in the entire chain of conduct—*i.e.*, "the creation, maintenance, and provision"

13   of ad segments to third parties.  (Opp. at 19.)  But the "place of the wrong" is "the state where the

14   last event *necessary to make the actor liable* occurred."  *Mazza*, 666 F.3d at 593 (emphasis

15   added); (Opp. at 19).  According to Golbeck's own allegations, Oracle's supposed liability for

16   each of her claims attached the moment the core tag was deployed by Oracle's customers on her

17   browser.  (*See* ECF No. 55-4 ("FAC") ¶¶ 145, 166-67 (alleging Oracle violates her privacy by

18   "intercept[ing]" data and that Oracle was unjustly enriched by "use of cookies, pixels, and other

19   means to track and compile internet browsing history").)

20           Moreover, the Court has already determined that any collection of Golbeck's data via the

21   core tag occurred outside of California.  (Ord. at 21.)  There is therefore no remaining fact dispute

22   as to the location of the last act or the locus of injury to impact the choice-of-law analysis.  (*See*

23   *id.*; *see also* Mot. at 6.)  Nor does the relocation of Oracle's headquarters from California to

24   Texas in 2020 warrant delay in deciding this issue.  (*Contra* Opp. at 16.)  As the Court has

25   already observed, the relocation "would only present additional hurdles in the choice of law

26

27        [5] *See also Potter v. Chevron Prods. Co.*, 2018 WL 4053448, at *10 (N.D. Cal. Aug. 24, 2018)
     (further development of the factual record unlikely to "materially impact the choice of law"

28   analysis where plaintiffs were non-California residents allegedly injured out-of-state and
     defendant was headquartered in-state).

1  analysis for selecting California as the law to apply nationally." (Ord. at 21 n.12.)[6]

2  **2.  California and Florida intrusion upon seclusion laws are materially**
**different**

3

4  Golbeck acknowledges that a "material" difference between California and Florida law is

5  one that makes a "difference in *this* litigation." (Opp. at 17.) Here, there is a material difference

6  between Florida and California law: Florida law requires intrusion into a physical private quarter

7  or place to state an intrusion upon seclusion claim (Ord. at 20), whereas California law allows a

8  claim based on an intrusion into *either* a "zone of physical or sensory privacy." *Shulman v. Grp.*

9  *W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998). To show there is no material difference between the

10  states' laws, Golbeck must show that California's "zone of sensory privacy" is equivalent to

11  Florida's "private quarter." She cannot: two friends talking on a park bench might occupy a zone

12  of sensory privacy, but do not occupy a private quarter.[7]

13  Next, Golbeck argues there is not a true conflict between California's and Florida's

14  respective interests, because Florida's Digital Bill of Rights confers the same "substantive data

15  privacy rights" as the CPRA. (Opp. at 18.)[8] But this is only *one* of several factors considered by

16  the Court when weighing the states' differing interests, including whether Florida's disparate

17  privacy norms and its "private quarter" requirement would reach a claim like hers. (Ord. at 20

18  (noting "Florida's laws have not stretched to reach" data privacy claims like this one).)

19  Golbeck's only response is that no plaintiff has thought to bring a case like this before. (Opp. at

20  19.) The answer is far simpler: Florida's "private quarter" requirement means allegations like

21  Golbeck's are not viable to begin with. *See* Section II(B)(1); (*see also* Mot. at 5, 10 (citing

22  *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020))).

23  _____

24  [6] Because the parties have extensively briefed the choice of law issue and there are no dispositive fact issues that remain, Golbeck's cases are inapposite. (Opp. at 16-17); *T. K. v. Adobe Sys. Inc.*, 2018 WL 1812200, at *13 (N.D. Cal. Apr. 17, 2018) (deferring decision were defendant

25  offered only "one paragraph and one footnote of analysis on the choice of law issue"); *Gerstle v. Am. Honda Motor Co.*, 2017 WL 2797810, at *4 (N.D. Cal. June 28, 2017) (deferring decision

26  because the court needed a further developed factual record).
[7] Golbeck's argument also expressly contradicts the Court's ruling, which found the two

27  states' laws differ in a way that is "neither 'trivial [n]or wholly immaterial.'" (Ord. at 19-20.)
[8] The two laws, however, are not identical. For example, unlike the CPRA, Florida's law

28  does not confer any private right of action. *Compare* Fla. Stat. § 501.702 *with* Cal. Civ. Code
§ 1798.150(b).

Finally, Golbeck cannot credibly dispute that Florida—where she resides and uses her devices—has the greater interest as the alleged "place of the wrong." *See* Section II(A)(1).

### 3. California and Florida unjust enrichment laws are materially different

Golbeck argues that California unjust enrichment laws are substantially the same but fails to show how Florida's "direct benefit" requirement does not defeat her claim. (Opp. at 20.)  As argued below, there is no direct benefit here because Golbeck's data had to undergo a change of hands, labor, and a secondary market before it could be transformed into revenue. *See* Section II(B)(6).  As with intrusion upon seclusion, Florida's interest would be more impaired as the "place of the wrong." *See* Section II(A)(1); *see also Mazza*, 666 F.3d at 593.

### 4. California law should not be applied to non-resident members of the putative nationwide class

Apart from her failed attempt to raise fact disputes, *see* Section II(A)(1), Golbeck's only other argument is that the choice-of-law analysis should be confined to California and Florida, because those are the "only states' laws Oracle has put at issue." (Opp. at 21 n.14.)  Not so— Oracle also raised the need to consider the "legal and social norms … across the fifty states." (*See* Mot. at 5, 9.)

### B. Plaintiffs' Third Through Ninth Causes of Action Fail Under Rule 12(b)(6)

### 1. Golbeck cannot sustain her claim for Florida intrusion upon seclusion

Oracle cited state and federal Florida cases disposing of the premise that web browsing on publicly available websites, or commercial activity in brick-and-mortar stores,[9] afford Golbeck a reasonable expectation of privacy. (Mot. at 10-12.)  Golbeck's only response is that Oracle's cases are "disanalogous" because they do not perfectly align with her allegations. (Opp. at 22-23.)[10]  But by her own estimation, there are no Florida cases that do. (Opp. at 23 ("No Florida

---

[9] Oracle does not raise a "factual challenge" as to Golbeck's PlaceIQ allegations. (*Contra* Opp. at 23 n.16.)  Rather, Oracle asserts Golbeck's allegations about tracking "real world movement data" are conclusory and should be disregarded because the FAC otherwise does not support (Mot. at 11 (citing FAC ¶ 16 n.9)) or directly contradicts (Mot. at 11 (citing FAC, Ex. B at 27-30)) that premise.

[10] Golbeck ignores that Oracle's Fourth Amendment cases focus on an *identical* reasonable expectation of privacy inquiry. *See, e.g.*, *United States v. Trader*, 981 F.3d 961, 967 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296 (2021).  Moreover, she provides no compelling reason why the Florida intrusion upon seclusion cases Oracle cites should not be instructive (Mot. at 11), where, by her own admission, there is not more direct authority (Opp. at 19, 23).

1    case addresses any fact pattern that comes close to resembling the one at bar.").)  That is because

2    discovery of her consumer identity—that she "may buy or like pasta sauce and salad dressings"—

3    or of publicly-available personal identifiers (like name and email) is not an intrusion into a private

4    quarter or place, electronic or otherwise.  (Sealing Ord. at 2); *Hammer*, 824 F. App'x at 696.[11]

5         Golbeck cites one case for the proposition that "engaging in repeated surveillance of

6    another person can constitute the tort of invasion of privacy."  (Opp. at 24 (quoting *Jackman v.*

7    *Cebrink-Swartz*, 334 So. 3d 653, 657 (Fla. Dist. Ct. App. 2021)).)  *Jackman*, however, was a case

8    about feuding neighbors, one of whom installed "a twenty-five-foot-high rooftop camera" that

9    peered over the other's "privacy fence" into the backyard and allegedly "recorded twenty-four

10   hours a day, seven days a week."  334 So. 3d at 655-57.  Not only has Golbeck failed to allege

11   24/7 surveillance, online or offline, *Jackman* is distinct for the obvious reason that it involved a

12   private quarter.  *Id.*  Golbeck is without any supporting authority.[12]

13        **2.    Katz-Lacabe's CIPA claim fails as a matter of law**

14            **a.    Katz-Lacabe cannot revive his CIPA claim as to the seven types
                      of data this Court dismissed as record information because they
15                    fail to express the meaning behind his website visits**

16        The Court has already concluded that Katz-Lacabe's (1) webpage titles, (2) webpage

17   keywords, (3) the date and times of website visits, (4) IP addresses, (5) page visits, (6) purchase

18   intent signals, and (7) add-to-cart actions are non-content "record information" and therefore

19   cannot provide a basis for his CIPA claim.  (Ord. at 15 n.9.)  Katz-Lacabe now attempts to revise

20   the record, arguing (i) he never conceded these types of data were non-content record information

21   and (ii) the Court never reached the issue because of Oracle's "misdirection."  (Opp. at 5.)  He is

22   _____

23        [11] To the extent Golbeck argues Oracle intruded into a *private* "electronic space," that is also
     wrong.  (Opp. at 22.)  Golbeck's web browsing activity was conducted on others' websites, with
24   no effort to shroud her activity from those websites or her ISP.  (*See* Mot. at 12; *contra* Opp. at
     22.)  Her open conduct on the web is not analogous to the personal, password-protected email
25   account in *Hammer* or the private phone line in *Spilfogel*.  *Hammer*, 824 F. App'x at 696;
     *Spilfogel v. Fox Broad. Co.*, 2010 WL 11504189, at *5 (S.D. Fla. May 4, 2010), *aff'd*, 433 F.
26   App'x 724 (11th Cir. 2011).  Moreover, these "electronic space[s]" were mentioned in *Hammer*
     and *Spilfogel* only as hypotheticals and were not actually at issue.  *Id.*
27        [12] Golbeck also attempts to distinguish certain of Oracle's cases on the basis that they involve
     different privacy torts.  (Opp. at 23 n.18.)  But Oracle noted as much in its motion (Mot. at 13),
28   and the "highly offensive" inquiry is the same under all of Florida's privacy torts.  *Oppenheim v.*
     *I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309-10 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir.
     2010).

1    wrong on both counts.  In his opposition to Oracle's first motion to compel, Katz-Lacabe failed to

2    argue that those seven types of data fell within the scope of *In re Google RTB Consumer Privacy*

3    *Litigation* ("*Google RTB*"), 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) or *Saleh v. Nike, Inc.*, 562

4    F. Supp. 3d 503, 518 (C.D. Cal. 2021).  He used those cases to support the proposition that

5    "URLs viewed by internet users can also constitute contents of communications."  (ECF No. 30 at

6    18-19.)  With the benefit of the parties' papers (including both parties' discussion of *Google RTB*

7    and *Salah*), the Court agreed with Oracle that Katz-Lacabe conceded those types of data are

8    record information.  (Ord at 15 n.9.)  Further, the Court supported its conclusion with a cite to *In*

9    *re Zynga*—seminal Ninth Circuit authority finding communications that merely reveal the

10   characteristics of a message rather than its intended meaning to be non-actionable record

11   information.  (*Id.* (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).)  Katz-

12   Lacabe may disagree with the Court's interpretation of *Zynga*, but he cannot claim that the Court

13   was somehow misled by Oracle.  (Opp. at 5.)

14         The Court should uphold its prior finding that these seven types of data constitute non-

15   content record information.  Katz-Lacabe's "reinforced" and "detailed allegations" amount to a

16   restatement of cases the Court already considered (*Google RTB* and *Saleh*)[13] and a flawed

17   analogy about how clicking an add-to-cart button is like calling a bookstore to put a book on hold.

18   (*Contra* Opp. at 5; *see* FAC ¶¶ 184-87; *see also* Mot. at 16.)  Unlike a phone call to a bookstore

19   where the caller states *why* they are calling, a click online does not reveal the meaning behind the

20   user's interaction: it can be done by accident or to check price, shipping costs, or estimated time

21   of delivery.  (*Contra* Opp. at 6.)

22         Moreover, because the "contents of a communication" must convey "a person's intended

23   message to another"— *i.e.*, the meaning behind Katz-Lacabe's communication with the

24   website—his argument that *all* "express[ive] material" qualifies as content is incorrect.  *Zynga*,

25   750 F.3d at 1106-07 ("Congress intended the word 'contents' to mean a person's intended

26   _____

27   [13] Neither *Google RTB* nor *Saleh* hold that keywords and add-to-cart actions are content.
     (*Contra* Opp. at 5 (citing *Google RTB*, 606 F. Supp. 3d at 949; *Saleh*, 562 F. Supp. 3d at 518); *see*
     *also* Mot. at 15.)  Katz-Lacabe's one other case is inapposite because it deals with "log-in
28   buttons," which are not at issue.  (Opp. at 5-6 (citing *In re Meta Pixel Healthcare Litig.*, 2022 WL
     17869218, at *11 (N.D. Cal. Dec. 22, 2022)).)

1  message to another[.]"); (*contra* Opp. at 6).  Purchase intent signals, add-to-cart actions, webpage

2  titles, and keywords are expressive in the abstract, but do not explain Katz-Lacabe's purpose

3  behind visiting a website or clicking a product.  (Mot. at 16.)  They are not content.

4           **b.    Katz-Lacabe's attempt to substantiate Oracle's "willful[ness]"
             cannot be reconciled with his own allegations**

5

6           Oracle could not have intended to capture the content of Katz-Lacabe's electronic

7  communications, without prior consent, for the simple reason that *Oracle's customers* (not

8  Oracle) design and control their own websites.  Oracle's customers deploy the core tag on their

9  websites and control where and when the core tag is deployed at all, what the core tag collects

10 when it is deployed, and the level of notice provided.  (Mot. at 17 n.12.)  Katz-Lacabe does not

11 contend with that fact.  Instead, he alleges in conclusory fashion that Oracle, itself, "deployed a

12 wiretapping device specifically designed to capture contents of communications."  (Opp. at 7.)

13          As a preliminary matter, Katz-Lacabe claims his allegations of "willfulness" and "intent"

14 require "no further inferences."  (*Id*.)  But the paragraphs of the FAC he identifies (FAC ¶¶ 206,

15 216, 229) merely "recit[e]" the elements of CIPA, and are therefore insufficient as a matter of

16 law.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[14]  Similarly, his allegations about

17 "automatic[]" interception are irrelevant to the two threshold legal questions Oracle raises:

18 (i) whether Katz-Lacabe sufficiently alleged Oracle had the intent to obtain *content*, rather than

19 record information, and (ii) whether he alleged Oracle intended to obtain that information *without*

20 *prior consent*.  (*Contra* Opp. at 7 n.4 (citing FAC ¶¶ 44-46).)

21          **Intent to capture content.**  Katz-Lacabe points to "technical documentation" in his FAC

22 purportedly showing Oracle pre-programs the core tag to collect content from customers'

23 websites.  (Opp. at 7.)  But the technical documents he references suggest the exact opposite.

24 (*See, e.g.*, FAC ¶ 44 n.17; *id*. ¶ 47 n.18.)  The documents illustrate that Oracle's customers

25

26 _____

27    [14] Contrary to Katz-Lacabe's argument, Oracle takes issue with the *sufficiency* of his
   allegations, not their veracity.  (*Contra* Opp. at 7; *see also* Mot. at 17 (identifying "barebones"
28 allegations).)  Katz-Lacabe cannot escape *Iqbal* and *Twombly* by claiming Oracle is instead
   raising a "factual dispute for a jury to resolve."  (Opp. at 7); *Ashcroft v. Iqbal*, 556 U.S. 662, 678
   (2009).

1    "configure" and control what the core tag captures.  (*See id*. ¶ 44 n.17.)[15]  The only plausible

2    inference from these documents is that Oracle's customers configured the core tag to capture

3    what they deemed useful, and created advertising segments from their own data.  Because

4    Oracle's customers control their own websites, Oracle has no independent ability to deploy the

5    core tag.  It is the website operators that choose to deploy the tag.  Even though the Court

6    previously found that Plaintiffs' alleged referrer URLs and web form data were "content" (Ord. at

7    15), Katz-Lacabe makes no plausible allegation that Oracle *designed* the core tag to capture this

8    information (or even that it in fact does so) such that it had "knowledge to a substantial certainty."

9    *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021) (citation omitted).[16]

10           **Intent to capture data without prior consent.**  Katz-Lacabe identifies no allegation that

11   Oracle knew its customers were failing to obtain consent and instead challenges the entire notice

12   and consent framework under California privacy law—a novel *legal* argument rather than a

13   plausible fact allegation.  (Opp. at 8 (citing FAC ¶¶ 103-16).)  Indeed, Katz-Lacabe states it is

14   Oracle's "burden" to "prove consent" and that Oracle is instead seeking dismissal on the

15   "subjective belief" that Katz-Lacabe consented.  (Opp. at 8.)  This misses the point.  Oracle is not

16   invoking the consent "exception" at this stage.  (*Id*.)  Rather, Oracle could not have acted with

17   intent to violate CIPA because Katz-Lacabe's allegations fail to demonstrate that Oracle knew its

18   receipt of core tag data was violating his privacy expectations.  Indeed, Katz-Lacabe's allegations

19   show the opposite: that Oracle anticipated internet users would need to receive notice and/or

20   consent, and structured a system whereby its customers would provide notice to users.  (Mot. at

21   18 n.14.)  None of Katz-Lacabe's cases are on point as none discuss intent and all involve a

22   defendant directly responsible for notice and consent, unlike Oracle.  (Opp. at 8.)[17]  Katz-Lacabe

23   _____

24   [15] As these documents explain, "[c]onfiguring the Oracle Data Cloud core tag entails generating the tag code *you* will deploy on *your* site" with the goal of ultimately "organiz[ing] the online user attributes *you* are ingesting" into a data container.  (FAC ¶ 44 n.17 (emphasis added).)

25   [16] Katz-Lacabe's cases are in stark contrast.  (Opp. at 8 (citing *Lopez*, 519 F. Supp. 3d at 689

26   and *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018)).)  In *Lopez*, plaintiffs alleged Apple *knew* it was capturing confidential communications because it was sending those same communications "to contractors to improve Siri's functioning."  519 F. Supp. 3d at 684.

27   Similarly in *Rojas*, plaintiff alleged HSBC had a policy of recording all employee calls, meaning it necessarily *knew* it was also recording confidential calls.  20 Cal. App. 5th at 435.

28   [17] *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (internet users interacted directly with Google's Chrome browser); *Brown v. Google LLC*, 525 F. Supp. 3d 1049,

interacted with the core tag on Oracle's *customers*' websites (not Oracle's) and they (not Oracle) controlled privacy disclosures.  Because of this, Katz-Lacabe has not sufficiently alleged *Oracle intended* to obtain that information without prior consent.

Katz-Lacabe's only remaining response is that § 631(a)'s "willfulness" requirement does not modify its consent element.  (Opp. at 8.)  But he offers no cases in support.  The California Supreme Court and the Ninth Circuit, meanwhile, have emphasized that all CIPA provisions should be interpreted in accord with the law's "broad privacy-protecting statutory purposes." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (citing *Ribas v. Clark*, 696 P.2d 637, 639-41 (Cal. 1985)).  CIPA's purpose is to protect against those who seek to "eavesdrop[] upon private communications." Cal. Pen. Code § 630.  Because Oracle's customers choose when and where to deploy the core tag, and have the only opportunity to provide notice and/or obtain prior consent from website visitors, Oracle cannot have any *intent* to eavesdrop.  It would be against the purpose of the statute to impose liability.  *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (treating the intent analysis under CIPA and ECPA the same); *see also United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (holding that ECPA requires "criminal intent," meaning "not as a result of accident or mistake").

### 3.   Golbeck cannot evade the FSCA's tracking device exception and reasonable expectation of privacy requirement

Golbeck tries to save her FSCA claim by arguing that the statute's tracking device exception should not apply to the core tag and that the FSCA does not have a reasonable expectation of privacy element.[18] (Opp. at 21-22.)  Both arguments fail.

**Tracking Device Exception.**  To support her argument that the Court should ignore *Jacome*'s finding that the FSCA was not intended to apply to web analytics software, Golbeck identifies two cases applying the FSCA to JavaScript code.  (*Id*. at 21.)  But *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041 (C.D. Cal. 2021) predates *Jacome* and does not grapple

---

1055 (N.D. Cal. 2021) (same as to its "[i]ncognito" feature); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (third-party app developers were given express language by Google to put in their privacy policies).

[18] Golbeck's claim also fails because she has failed to allege that Oracle intercepts the content of her communications. *See* Section II(B)(2)(a).

1    with *Jacome's* discussion of the FSCA's tracking device exception, and *Makkinje v. Extra Space*

2    *Storage, Inc.*, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022) involved "live chat communications" not

3    present here, which do not implicate the exception.[19]  *See* Fla. Stat. § 934.02(12); (*see also* Mot.

4    at 19 (citing *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021)

5    and follow-on cases)).  Her only remaining response is that Oracle's cases are distinct because the

6    session replay technology involved tracks the "literal physical movements" of users, whereas

7    Oracle's core tag collects "content[]."  (Opp. at 21; *see* FAC ¶ 50.)  But the session replay

8    technology at issue in *Jacome* purportedly captured substantially the same information that

9    Golbeck alleges Oracle's core tag collects.  *Compare* 2021 WL 3087860, at *4 (alleging session

10   replay collected "mouse clicks and movements, keystrokes, search terms, information inputted by

11   Plaintiff, and pages and content viewed by Plaintiff") *with* (FAC ¶ 14 (alleging core tag collected

12   "URLs for the specific articles and web pages [Golbeck] accessed, as well as content she entered

13   in search forms and other fields, add-to-cart actions")).  The technologies are analogous, and the

14   exception applies equally to both.[20]

15         **Reasonable Expectation of Privacy**.  Opposite *Jacome* again, Golbeck insists the FSCA

16   does not require a "reasonable expectation of privacy."  (Opp. at 22.)  But her cases either express

17   no opinion on her interpretation, or otherwise fail to discuss the correct type of communications

18   at issue (*i.e.*, electronic communications).[21]  Even if Golbeck were right that *Jacome's* holding

19   was limited to plaintiff's reasonable expectation of privacy from the "website owner" alone (Opp.

20   at 22), she still offers no response to the fact that she shared her data with her third-party internet

21   service provider, negating any expectation of privacy (Mot. at 20).  Accordingly, Golbeck's

22   FSCA claim fails.

23   _____

24   [19] Plaintiff's third case, *United States v. Barrington*, 648 F.3rd 1178, 1203 (11th Cir. 2011), supports the idea that software can constitute a "device," such as a tracking device, and is therefore consistent with Oracle's argument.

25   [20] Golbeck's argument that none of Oracle's cases feature allegations about compiling "dossiers" is irrelevant.  (Opp. at 21.)  That allegation has no bearing on stating an FSCA claim.

26   [21] *Compare Jacome*, 2021 WL 3087860, at *7 (finding a reasonable expectation of privacy requirement in the legislative intent of the statute) *with Makkinje*, 2022 WL 80437, at *2 (failing

27   to address defendant's reasonable expectation of privacy argument) *and Brevard Extraditions, Inc. v. Fleetmatics, USA, LLC*, 2013 WL 5437117, at *4 (M.D. Fla. Sept. 27, 2013) (finding no

28   reasonable expectation of privacy requirement in the definition of "wire communication" but not electronic communication).

1

**4.      For the second time, Plaintiffs cannot satisfy the crime-tort exception to ECPA's one-party consent rule**

2

3        Plaintiffs again argue that a lawful purpose does not "sanitize" conduct done "for an

4   illegitimate purpose." (Opp. at 15.)  This argument fails for the simple reason that Plaintiffs have

5   failed to allege that Oracle had an "illegitimate purpose" in mind.  (*Id.*; *see also* Mot. at 22-23.)

6   The Court has already settled this question:

7            Plaintiffs' attempt to invoke the crime-tort exception, requiring them to plead
             sufficient facts to show that 'the primary motivation or a determining factor in the
8            interceptor's actions has been to injure plaintiffs tortiously,' does not apply to a
             case such as this, where Defendant's 'purpose has plainly not been to perpetuate
9            torts on millions of Internet users, but to make money.'

10  (Ord. at 16 (citations omitted).)  Nothing in the FAC or Plaintiffs' opposition changes this result.

11       Indeed, by acknowledging that Oracle is a registered data broker (FAC ¶¶ 21, 26, 29, 39,

12  105, 117), Plaintiffs doom their own argument.  *See* Cal. Civ. Code § 1798.99.80(d) (defining

13  data broker as an entity permitted to collect and sell to third parties the personal information of

14  consumers with whom it has no direct relationship).  Plaintiffs' cases fail to rebut this and instead

15  stand only for the proposition that the crime-tort exception applies only when a defendant uses

16  wiretapped data for what it *knows* to be a tortious purpose.  (Opp. at 15.)[22]

17       Nevertheless, Plaintiffs argue *Brown* presents "identical circumstances" and requires

18  applying the exception.  (Opp. at 15-16 (citing *Brown*, 525 F. Supp. at 1067).)  Plaintiffs ignore

19  several key distinctions in that case: (i) Google, contrary to its representations to users, collected

20  the alleged data while plaintiffs "were using private browsing mode" and (ii) plaintiffs introduced

21  "internal Google communications" showing its employees "recognized" Google's disclosures

22  were "problematic." *Brown*, 525 F. Supp. at 1079.  Thus, when Google intercepted data from

23  plaintiffs' incognito browsers and combined it with preexisting data profiles, the court concluded

24

25       [22] The majority of the cases Plaintiffs cite declined to apply the crime tort exception and do
     not help Plaintiffs.  (Opp. at 15 (citing *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th
26   Cir. 1999); *United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012); *Deteresa v. Am.
     Broad. Cos.*, 121 F.3d 460, 467 n.4 (9th Cir. 1997); *In re Intuit Priv. Litig.*, 138 F. Supp. 2d 1272,
27   1279 (C.D. Cal. 2001)).)  *Planned Parenthood Federation of America, Inc. v. Center for Medical
     Progress*, the one case that applied the exception, is distinguishable because the defendants
28   wiretapped abortion providers with the intent to falsely portray them as violating federal law.
     214 F. Supp. 3d 808, 828 (N.D. Cal. 2016).

1    Google acted with the tortious intent to further invade plaintiffs' privacy.  No comparable

2    allegation exists here and Plaintiffs allege no new facts in the FAC that should alter the Court's

3    prior holding.  Plaintiffs' ECPA claim must therefore be dismissed.

4         **5.      Plaintiffs fail to state a quasi-contract claim for unjust enrichment and
                cannot establish that Oracle unjustly retained a benefit**

5

6              **a.      A standalone cause of action for unjust enrichment under
                      California law must be grounded in quasi-contract theory**

7              Contrary to Plaintiffs' arguments, an independent claim for unjust enrichment must be

8    construed as a quasi-contract claim for restitution under California law.  (*See* Ord. at 17); *see also*

9    *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Rutherford*

10   *Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)) (construing standalone

11   claim for unjust enrichment as quasi-contract claim seeking restitution).  To support their

12   preferred interpretation of the law, Plaintiffs attempt to read meaning into several opinions while

13   omitting crucial context.  (*See* Opp. at 10-12.)

14             For example, Plaintiffs rely on *Professional Tax Appeal v. Kennedy Wilson Holdings, Inc.*,

15   29 Cal. App. 5th 230, 240 (2018), but fail to mention that that case involved a plaintiff who had

16   *contracted* with a building's former owner to reduce the owner's tax liability, a benefit that was

17   passed on to the subsequent owner of the building without any remuneration to plaintiff.  *Id.* at

18   234.  This is a classic case of quasi-contract.  *Id.* at 239; *see Swafford v. Int'l Bus. Machs. Corp.*,

19   383 F. Supp. 3d 916, 931 (N.D. Cal. 2019) (quasi-contractual claim for unjust enrichment "is an

20   equitable remedy implied by the law under which a plaintiff who has rendered services

21   benefitting the defendant may recover the reasonable value of those services") (citation omitted).

22   No such scenario exists here—Plaintiffs were not in privity with Oracle's customers or Oracle,

23   nor did they render any sort of contractual performance.

24             Plaintiffs also cherry-pick single words from other cases to support their argument, but in

25   each case, the court explicitly construed a freestanding unjust enrichment claim as a quasi-

26   contract claim.  (*See* Opp. at 10-11 (relying on expansive readings of "or," "may," and

27   ///

28   ///

1    "typical").)[23]  Plaintiffs do not point to a single case that affirmatively finds a freestanding cause

2    of action for unjust enrichment is grounded in anything other than quasi-contract.

3            Because their claim sounds in quasi-contract, Plaintiffs must show that they "directly

4    expended their own resources" or "that their property has become less valuable."  (Ord. at 17.)

5    Merely alleging that Oracle violated their privacy rights is insufficient to state a claim.  (*See id.*)

6    The Court has already rejected Plaintiffs' interpretation of the only case they cite.  (*Id.*)

7    ("Plaintiffs' appeal to *Facebook Tracking* misses the opinion's full context .… Here, Plaintiffs

8    and putative class members have neither directly expended their own resources, nor shown that

9    their property has become less valuable.")[24]  Moreover, because Plaintiffs' supplemental authority

10   (ECF No. 69-1 (attaching *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, ECF No.

11   222 (N.D. Cal. Aug. 10, 2023)), relies on *Facebook Tracking*, it does not help them.  (*See id.* at

12   13.)  Further, it is distinguishable because the defendant in *Brooks* permitted removal of sensitive

13   personal information under extremely limited circumstances (*id*. at 4), while Oracle readily and

14   broadly allows opt-outs (Mot. at 2, 17-18.)  This ability to opt out also distinguishes this case

15   from the Restatement illustration on which Plaintiffs rely where pharmacy customers were given

16   no opportunity to object to the "disclosure of confidential information."  (Opp. at 12.)  In contrast,

17   Oracle relied on its customers to give notice or obtain consent and allowed Plaintiffs to opt out of

18   the collection of their personal data.  (Mot. at 2, 17-18.)

19           **b.    Oracle's alleged retention of the benefit conferred is not unjust**

20           Plaintiffs fail to squarely address the Court's finding that Oracle has not *unjustly* retained

21   any benefit Plaintiffs allegedly conferred because they have received a benefit in the form of free

22

23   [23] *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("[T]his Circuit
     has construed the common law to allow an unjust enrichment cause of action through quasi-
24   contract."); *Astiana*, 783 F.3d at 762 (describing standalone cause of action for unjust enrichment
     as an action in quasi-contract); *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) (same);
     *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015) (same); *Siegelman v.*
25   *Salimi*, 2023 WL 4721212, at *14 (Cal. Ct. App. July 25, 2023) (same); *In re Gen. Motors LLC*
     *CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 882 (N.D. Cal. 2019) (describing quasi-contract
26   scenario where no privity existed between car purchasers and manufacturer, but privity existed
     between purchasers and dealership).
27   [24] Even if *Facebook Tracking* were found to support the argument that a violation of privacy
     rights could support a claim for unjust enrichment, it is distinguishable because Facebook's
28   profits were unjustly retained because it acted directly contrary to its disclosures.  *In re Facebook,*
     *Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020); *see* Section II(B)(5)(b).

1  access to the websites they visit.  (*See* Mot. at 23-24; Ord. at 17, 18 n.11.)  Instead, Plaintiffs

2  argue that they could not receive any benefit if they did not consent to or have knowledge of

3  entering into a bargain with Oracle.[25]  (*See* Opp. at 13-14.)  The Court already explicitly rejected

4  Plaintiffs' consent argument.  (Ord. at 17 ("Plaintiffs here were at no time in direct privity with

5  Oracle.  As a result, Defendant did not collect information from Plaintiffs in a manner contrary to

6  expectations created by the consent process.").)  Furthermore, failing to recognize a bargain does

7  not inherently give rise to an unjust enrichment claim.  *See Hammerling v. Google LLC*, 615 F.

8  Supp. 3d 1069, 1096 (N.D. Cal. 2022) (dismissing unjust enrichment claim where plaintiffs

9  alleged collection of personal information without their knowledge or consent).

10        **6.    Golbeck fails to show she conferred a direct benefit on Oracle, which
              disqualifies her unjust enrichment claim under Florida law**

11

12        Golbeck claims the presence of "intermediaries" is no hurdle to finding a "direct benefit"

13  under Florida unjust enrichment.  (Opp. at 20-21, 24.)  That misunderstands Oracle's argument.

14  Oracle's alleged benefit (revenue) could not have been conferred *directly* by Golbeck because

15  Oracle had to "derive[]" it from her data through its own labor by transforming it into generalized

16  interest segments for advertisers' use.  (Mot. at 8; *see also* FAC ¶¶ 15, 57, 64, 74-76 (alleging

17  Oracle "compiled" Golbeck's information into "a data profile" through proprietary technology,

18  like the ID Graph, and transformed that data into "segments").)

19        While most of Golbeck's cases are inapplicable, she cites one case that directly supports

20  Oracle's position.[26]  In *In re Takata Airbag Product Liability Litigation*, 2017 WL 2406711, at

21  *10 (S.D. Fla. June 1, 2017), the court dismissed consumers' Florida unjust enrichment claims for

22        _____

23        [25] The sole case cited by Plaintiffs, *Brooks v. Thomson Reuters Corp.*, is inapplicable here.
     2021 WL 3621837, at *1 (N.D. Cal. Aug. 16, 2021).  The court's decision in that case was limited
24   to the discrete issue of whether the plaintiff could raise a standalone unjust enrichment claim; the
     court did not address whether retention of the benefit was unjust or whether consent to or
     knowledge of the bargain bore on the claim.  *Id.* at *11.
25        [26] In Golbeck's remaining cases (Opp. at 21, 24), unlike Oracle, the defendants did not have
     to transform the input (data) to obtain a benefit (revenue), either through labor or sale on a
26   separate market.  *See Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *5 (S.D. Fla.
     Oct. 14, 2011) (Wells Fargo received monetary "commissions" and "kickbacks" as a result of
27   plaintiffs' insurance premium overpayments); *Romano v. Motorola, Inc.*, 2007 WL 4199781, at
     *2 (S.D. Fla. Nov. 26, 2007) (money plaintiffs paid retailers passed through to Motorola);
28   *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1369 (S.D. Fla. 2015)
     (defendant received plaintiff's "single payment" through a "payment intermediary").

1  failure confer a direct benefit on defendant airbag manufacturer.  *Id.*  Critical to the court's

2  conclusion was the fact that the defendant sold its airbags to intermediary car manufacturers,

3  rather than to the consumers directly.  *Id.*  Just like Oracle's revenue from its advertising

4  technology products and services, the court found Takata's revenue was "not contingent on any

5  [particular] consumer's decision to purchase a vehicle."  *Id.*  Because Oracle's revenue is derived

6  from intermediary customers who would have bought its services regardless of any internet user's

7  decision to provide data through a website, Golbeck did not confer a "direct benefit" to Oracle by

8  entering data on a website.  *Id.*

9           **7.      Plaintiffs' declaratory judgment claim fails alongside the rest**

10         Plaintiffs do not address Oracle's argument that they seek nothing in this claim beyond the

11  relief from their underlying claims.  (*See* Opp. at 24-25; Mot. at 25); *see also Tech & Intell. Prop.*

12  *Strategies Grp. PC v. Fthenakis*, 2011 WL 3501690, at *10 (N.D. Cal. Aug. 10, 2011).  They

13  therefore concede this point.  *See Yee v. Select Portfolio, Inc.*, 2018 WL 6173886, at *6 (N.D.

14  Cal. Nov. 26, 2018) (where plaintiff fails to oppose arguments in favor of dismissing a claim, the

15  plaintiff has abandoned that claim).[27]

16  **III.    CONCLUSION**

17         Plaintiffs have not cured the deficiencies in their original Complaint as to their claims for

18  a violation of CIPA and ECPA, California unjust enrichment, and declaratory judgment.  Nor

19  have they shown that their new Florida causes of action for intrusion upon seclusion, violation of

20  the FSCA, and unjust enrichment can be amended.  As such, Oracle respectfully asks the Court to

21  grant Oracle's motion to dismiss, with prejudice.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

22  876, 893 (9th Cir. 2010).

23  Dated:   August 29, 2023                    MORRISON & FOERSTER LLP

24                                             By:   */s/ Purvi G. Patel*
                                                    _____
25                                                   Purvi G. Patel
                                                     ***Attorneys for Defendant***
26                                                   ***Oracle America, Inc.***

27         [27] Plaintiffs incorrectly claim that Oracle's attempt to preserve an argument under *Sonner* has
    been rejected by the Court. (Opp. at 25 n.21.)  The Court did not reject the argument; it deferred
28  deciding whether Plaintiffs are entitled to equitable relief to a later stage of litigation.  (Ord. at
    23.)  Thus, Oracle's *Sonner* argument has been properly preserved.