UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL KATZ-LACABE, et al.,

Plaintiffs,

v.

ORACLE AMERICA, INC.,

Defendant.

Case No. 22-cv-04792-RS

**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

On October 3, 2023, Oracle America, Inc.'s motion to dismiss was granted in part and denied in part. *See* Dkt. 77 ("10/3 Order"). The 10/3 Order, among other things, granted Oracle's motion to dismiss Plaintiffs' intrusion upon seclusion claim to the extent it sought to apply California law to the United States Class without leave to amend. *See also* Dkt. 49 ("4/6 Order") (reaching same result, but granting leave to amend, on Oracle's first motion to dismiss). Plaintiffs seek reconsideration of this portion of the 10/3 Order under Civil Local Rule 7-9(b)(3). This provision permits a motion for reconsideration where there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments." Civ. L.R. 7-9(b)(3). Plaintiffs argue the 10/3 Order erred by failing to consider how "the crux of Plaintiffs' intrusion upon seclusion claim is Oracle's compilation, analysis, and use of personal data into individual-specific profiles for commercial exploitation," and that this "last act" occurred in California for purposes of a governmental interest analysis. Dkt. 85, at 3. This argument, however, *was* considered;

indeed, it has been considered more than once.[1] For reasons set forth more fully below, Plaintiffs' motion is denied.

The 10/3 Order focused its analysis on where the "last act" necessary for liability to attach occurred based upon Plaintiffs' amended averments in their FAC.[2] Plaintiffs sought to overcome the 4/6 Order's dismissal of their intrusion upon seclusion claim (again, to the extent that claim sought to apply California law to the United States Class) by adding averments to the FAC that the "last act" determining the "place of the wrong" and the State with the predominant interest occurred in California. *See* Dkt. 67, at 19. The 10/3 Order explained why Plaintiffs' averments—even as amended—did not justify deeming California the locus of the last act necessary to a finding of liability for intrusion upon seclusion. It did so *after acknowledging* Plaintiffs' argument that "the 'last acts' necessary to make Oracle liable on an intrusion upon seclusion claim occurred in California because it was in California that Oracle compiled, analyzed, and sold their data." 10/3 Order, at 5. The order also pointed out how Plaintiffs seemed to concede Oracle's alleged data interception often occurs outside California. *Id*. This same acknowledgment is present in Plaintiffs' instant motion. *See* Dkt. 85, at 3 (referencing the fact that interception of *some* personal data occurs "*outside of [Golbeck's] device*" and, therefore, in California (emphasis added)). The implication here, of course, is that Plaintiffs do not dispute interception of data *on Golbeck's personal device* occurs in Florida.

That said, the 10/3 Order may have unnecessarily confused the issue when it appeared definitively to conclude the relevant last act for liability to attach to Oracle occurred in Florida, instead of merely explaining why Plaintiffs' amended averments failed to save their claim. It is

---

[1] *See* 10/3 Order, at 5 ("Plaintiffs argue the "last acts" necessary to make Oracle liable on an intrusion upon seclusion claim occurred in California because it was in California that Oracle compiled, analyzed, and sold their data."); 4/6 Order, at 21 (noting how "even if some of the challenged conduct allegedly emanated from California, it is not enough to establish California's interest").

[2] Plaintiffs added these factual averments after the 4/6 Order dismissed Plaintiffs' first attempt to plead intrusion upon seclusion under California law on behalf of the United States Class.

technically more accurate, in a case like this one involving alleged collection of data on the internet, to conclude (as the 4/6 Order did) that there is "no easily identifiable 'place of the wrong.'"[3] *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 604 (N.D. Cal. 2015). For instance, in *In re Yahoo Mail Litigation*, the court reasoned that while "the place of the wrong has the predominant interest," *id.* at 603 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (citation omitted)), it was not clear where that *place* was where emails could have been intercepted and/or scanned in a number of places "throughout the country," *id.* at 603–04. Given this uncertainty, the court considered the purported place of the wrong as one among several factors relevant to deciding which State's interests would be more impaired should another State's law be applied. *Id.* at 604.[4] This analysis was proper, especially considering that even when the place of the wrong is clear, it is not the be-all and end-all of choice-of-law analysis. *See, e.g.*, *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 168 (1978) (referring to the "situs of the injury" as a "relevant consideration"). The court then noted how "California's specific interest in applying its privacy laws to nonresidents under choice-of-law rules" was far from self-evident. *In re Yahoo Mail Litig.*, 308 F.R.D. at 604.

Plaintiffs contend that under their theory of this case, Oracle was not liable for intrusion upon seclusion when it collected user data in the first instance, and their intrusion upon seclusion claim is therefore distinguishable from their wiretapping claims in determining the location of a "last act." Dkt. 85, at 4. Plaintiffs allege Oracle became liable for intrusion upon seclusion only when it synchronized, analyzed, and monetized user data. *Id.* This essentially boils down to an

---

[3] The 4/6 Order walked through how some challenged conduct occurred in California while other challenged conduct, based on Plaintiffs' own allegations, occurred elsewhere. 10/6 Order, at 21. It then explained the need to consider how "privacy is an evolving area of law that is inherently tied to community standards." *Id.* In other words, the "place of the wrong"—which could not be clearly identified—was not dispositive.

[4] That court concluded it was not clear California had a compelling interest in applying its privacy laws to nonresidents but that other States had clear interests in calibrating their preferred balance between a "favorable business climate" and protecting residents' privacy interests. *In re Yahoo Mail Litig.*, 308 F.R.D. at 605 (quoting *Mazza*, 666 F.3d at 592).

attempt to make the "place of the wrong" determination less murky and, accordingly, more instructive to a choice-of-law analysis. At least one other court—albeit in the consumer protection context—has rejected this type of attempt to engineer a choice-of-law outcome at odds with the reasoning in *Mazza*. *See Shuman v. SquareTrade Inc.*, No. 20-cv-2725, 2020 WL 7458001, at *6 (N.D. Cal. Dec. 18, 2020) (declining to apply California law where plaintiff argued liability did not attach until defendant later changed policy). *Mazza* recognized that "each foreign state has an interest in applying its law to transactions within its borders" because they would otherwise be "impaired in their ability to calibrate liability to foster commerce." 666 F.3d at 593. Both the 4/6 Order and the 10/3 Order (in adopting the reasoning of the 4/6 Order) recognize privacy law to be an evolving area and the fact that States take different approaches in attempting to protect data privacy rights. Where, as here, a defendant has met its burden to show a foreign State's interests would be more impaired by applying California law, it would be improper to apply California law nationwide.

    Plaintiffs' argument that data compilation, analysis, and monetization takes place in California has now been twice considered by this Court. Other factors considered include California's interest in enforcing its privacy laws in Florida and Florida's interest in setting its preferred equilibrium between attracting out-of-state business and protecting consumers. *See, e.g.*, 10/3 Order, at 6 ("Plaintiffs' amended averments in their FAC do not warrant a different conclusion than the one reached in this Court's 4/6 Order); 4/6 Order, at 20 (referencing Oracle's argument that "'Florida's laws have not stretched to reach' claims premised on the collection of online data," as Florida has taken less-aggressive steps to confer substantive data privacy rights on its citizens); *see id.*, at 21 ("[P]rivacy is an evolving area of law that is inherently tied to community standards."). It is incorrect, therefore, to read the 10/3 Order as dismissing the intrusion upon seclusion claim applying California law to the United States Class solely on the basis that the "last act" necessary for liability occurred in Florida. Rather, the 10/3 Order declined to apply California law to nonresidents on the basis of new averments in the FAC while referencing the 4/6 Order and coming to the same conclusion that it did. For the aforementioned

reasons, Plaintiffs' motion is denied.

**IT IS SO ORDERED**.

Dated: October 30, 2023

_____
RICHARD SEEBORG
Chief United States District Judge