1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  CHRISTIN HILL (CA SBN 247522)
   CHill@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone:    415.268.7000
5  Facsimile:     415.268.7522

6  PURVI G. PATEL (CA SBN 270702)
   PPatel@mofo.com
7  WHITNEY O'BYRNE (CA SBN 325698)
   WOByrne@mofo.com
8  ERIK MANUKYAN (CA SBN 340307)
   EManukyan@mofo.com
9  EMMA BURGOON (CA SBN 348097)
   EBurgoon@mofo.com
10 MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
11 Los Angeles, California 90017-3543
   Telephone:    213.892.5200
12 Facsimile:     213.892.5454

13 Attorneys for Defendant
   ORACLE AMERICA, INC.
14
   *Additional counsel on next page*
15

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18                  **SAN FRANCISCO DIVISION**

19

20 Michael Katz-Lacabe and Dr. Jennifer          Case No. 3-22-cv-04792-RS
   Golbeck, on behalf of themselves and all others
21 similarly situated,                           **DEFENDANT ORACLE
                                                 AMERICA, INC.'S MOTION TO
22              Plaintiffs,                       DISMISS PORTIONS OF PLAINTIFFS'
                                                 SECOND AMENDED COMPLAINT**
23       v.
                                                 Judge:  Hon. Richard Seeborg
24 ORACLE AMERICA, INC., a corporation
   organized under the laws of the State of      Date:   March 14, 2024
25 Delaware,                                      Time:  1:30 p.m.
                                                 Courtroom:  3
26              Defendant.
                                                 Date Action Filed:  August 19, 2022
27                                               SAC Filed:  November 17, 2023
                                                 Trial Date:  Not set
28

1  ZACHARY S. NEWMAN (NY SBN 5651518)
   Admitted *pro hac vice*
2  ZNewman@mofo.com
   MORRISON & FOERSTER LLP
3  250 West 55th Street
   New York, New York  10019-9601
4  Telephone:     212.468.8000
   Facsimile:     212.468.7900
5
   KYLE ZIPES (CA SBN 251814)
6  Kyle.Zipes@oracle.com
   NARGUES M. EDER (CA SBN 260289)
7  Nargues.M.Eder@oracle.com
   ORACLE AMERICA, INC.
8  500 Oracle Parkway
   Redwood Shores, CA 94065
9  Telephone:     650.506.7000

10 Attorneys for Defendant
   ORACLE AMERICA, INC.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 14, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, Defendant Oracle America, Inc. will and hereby does move this Court for an order dismissing the following causes of action in Plaintiffs' Second Amended Complaint for failure to state a claim, pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6):[1]

1.  Intrusion Upon Seclusion Under Florida Common Law (Third Cause of Action); and

2.  Violation of the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et. seq.* ("ECPA") (Sixth Cause of Action).

This motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this motion.

Dated:  December 22, 2023             MORRISON & FOERSTER LLP

By:   */s/ Purvi G. Patel*
            Purvi G. Patel

            ***Attorneys for Defendant***
            ***Oracle America, Inc.***

---

[1] On October 3, 2023, the Court granted in part and denied in part Oracle's motion to dismiss portions of Plaintiffs' First Amended Complaint ("FAC").  (ECF No. 77.)  With respect to those claims that survived Oracle's motion to dismiss, Oracle will answer 30 days after the Court rules on this motion, as stipulated and approved by the Court.  (ECF No. 83.)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 2

    A. The Florida Intrusion Upon Seclusion Claim Again Fails Under the Court's
    Prior Reasoning (Third Cause of Action) .............................................................. 2

        1. Golbeck still does not plausibly allege intrusion into a private place,
        whether electronic or physical ................................................................ 3

        2. Golbeck does not allege conduct that might be considered highly
        offensive to a reasonable person ............................................................ 5

    B. Plaintiffs Fail to Adequately Plead that ECPA's Crime-Tort Exception
    Applies (Sixth Cause of Action) ........................................................................... 6

        1. Plaintiffs' repeated allegations should be rejected again ....................... 6

        2. Plaintiffs' new allegations do not show that Oracle acted with
        tortious intent ......................................................................................... 8

            a. Oracle did not act contrary to its public representations, nor
            is doing so indicative of tortious intent .......................................... 8

            b. Plaintiffs cannot show that Oracle employees acted with
            tortious intent ............................................................................... 11

            c. Plaintiffs' allegation that Oracle subsequently used their
            data does not establish tortious intent ........................................... 12

III. CONCLUSION ........................................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Allstate Ins. Co. v. Ginsberg*,
   863 So. 2d 156 (Fla. 2003) .................................................................................................. 2

6

7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 2

8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 2

9

10

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................ 12

11

*Caro v. Weintraub*,
   618 F.3d 94 (2d Cir. 2010) ............................................................................................ 8, 10

12

13

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) .......................................................................................... 2, 3

14

15

*Celestine v. Cap. One*,
   No. 17-20237-Civ-Scola,
   2017 WL 2838185 (S.D. Fla. June 30, 2017) .................................................................... 5

16

17

*Cohen v. Casper Sleep Inc.*,
   No. 17cv9325,
   2018 WL 3392877 (S.D.N.Y. July 12, 2018) ......................................................... 10, 12-13

18

19

*In re DoubleClick Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................................ 10, 12

20

21

*In re Google Inc. Gmail Litig.*,
   No. 13-MD-02430-LHK,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ................................................................. 12

22

23

*Hammer v. Sorensen*,
   824 F. App'x 689 (11th Cir. 2020) ..................................................................................... 2

24

25

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-000947-CA-01,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ............................................................... 4

26

27

*Keith v. City of San Diego*,
   No. 22-cv-1226-MMA (DEB),
   2023 WL 3689611 (S.D. Cal. May 26, 2023) .................................................................... 7

28

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988)................................................................................. 2

*In re Nickelodeon Consumer Priv. Litig.*,
  No. 12-07829,
  2014 WL 3012873 (D.N.J. July 2, 2014)..................................................... 12, 13

*Oppenheim v. I.C. Sys., Inc.*,
  695 F. Supp. 2d 1303 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010) ............... 5

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
  51 F.4th 1125 (9th Cir. 2022).............................................................................. 8

*Post-Newsweek Stations Orlando, Inc. v. Guetzloe*,
  968 So. 2d 608 (Fla. Dist. Ct. App. 2007) ........................................................... 5

*Regions Bank v. Kaplan*,
  No. 17-15478,
  2021 WL 4852268 (11th Cir. Oct. 19, 2021)........................................................ 5

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................. 6, 12

*Spilfogel v. Fox Broad. Co.*,
  433 F. App'x 724 (11th Cir. 2011) ............................................................. 3, 4, 5

*Stasiak v. Kingswood Co–Op, Inc.*,
  No. 8:11-cv-1828-T-33MAP,
  2012 WL 527537 (M.D. Fla. Feb. 17, 2012) ..................................................... 5, 6

*United States v. Trader*,
  981 F.3d 961 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296 (2021) ....................... 4

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................... 6

*Yaron v. Intersect ENT, Inc.*,
  No. 19-cv-02647-JSW,
  2012 WL 12103005 (N.D. Cal. Jan. 22, 2021) ...................................................... 7

**Statutes & Rules**

18 U.S.C.
  § 2511(1)(a)...................................................................................................... 6
  § 2511(2)(d) ..................................................................................................... 6

Cal. Civ. Code § 1798.99.80 ........................................................................... 8, 10

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 2

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2

The motion raises the following issues:

3

4

5

**1. Intrusion Upon Seclusion Under Florida Law (Third Cause of Action).** Whether Plaintiff Jennifer Golbeck's Florida intrusion upon seclusion claim should again be dismissed because (a) she does not plausibly allege an intrusion into a private place, whether electronic or physical, and (b) Oracle's alleged conduct does not constitute a highly offensive intrusion.

6

7

8

**2. Federal Wiretap Act (ECPA) (Sixth Cause of Action).** Whether Plaintiffs' ECPA claim should, for the third time, be dismissed because Plaintiffs have not plausibly alleged that Oracle was motivated by an independent tortious purpose necessary for ECPA's "crime-tort" exception to apply.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        On October 3, 2023, the Court dismissed Plaintiff Jennifer Golbeck's intrusion upon

4   seclusion claim under Florida law and Plaintiffs' Electronic Communications Privacy Act claim.

5   In their Second Amended Complaint ("SAC"), Plaintiffs attempt to revive these claims, but fail to

6   cure the numerous defects identified in the Court's October 3 Order.

7        Plaintiffs' theory of the case remains unchanged: they allege that Oracle America, Inc.

8   ("Oracle"), through Oracle Advertising ("OA"), purportedly violates consumers' privacy by

9   compiling and selling "dossiers" of their personal information.  This allegation is still

10  unsupported: OA does not compile and sell "dossiers" on individuals based on their online

11  activity.  It sells access to anonymized "interest segments" of online identifiers likely to be

12  associated with groups of people that may be interested in certain topics.  Plaintiffs' own cited

13  source undermines their characterizations; it refers to these data sets as nothing more than

14  "sanitized" and "anonymous audience[s]" reflecting interests like "in [the] market for cars."[1]

15  Indeed, the only purported "dossiers" Plaintiffs point to are the "Offline Access Request

16  Response Reports" that Oracle prepares pursuant to its obligations under California law.

17       In repleading their previously dismissed claims, Plaintiffs put forward only implausible

18  allegations and unreasonable inferences bearing little relationship to Oracle or the legal landscape

19  in which it operates.  Specifically, as to the Florida intrusion upon seclusion claim, Golbeck now

20  alleges that Oracle's purported collection of her web browsing history amounts to surveillance of

21  the protected *contents of her devices* and of *her home*.  These allegations lack any basis in fact.

22  And they are completely incongruous with her allegations that she freely communicates and

23  transacts on the web through third party channels, eliminating any expectation of privacy under

24  Florida law.  As to their ECPA claims, Plaintiffs attempt to minimize their longstanding

25  allegation that Oracle's purpose for the alleged interception was profit by adding allegations

26  regarding Oracle's purported intent to "perpetuate torts on millions of Internet users" in running

27  _____

28       [1] *See* Declaration of Purvi G. Patel ("Patel Decl.") Ex. B at 8 (web forum posts by alleged
former Oracle employee commenting on Oracle's alleged data collection practices).

its ad tech business.  None of their new allegations support their tort theory or lead to the inference that Oracle conducted its business with nefarious intent.

For the reasons provided herein, the Court should grant Oracle's motion, dismissing Plaintiffs' Third and Sixth causes of action without leave to amend.

## II.    ARGUMENT

A court must dismiss a claim under Rule 12(b)(6) if the plaintiff (1) fails to state a cognizable legal theory or (2) has not alleged sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations, without more, are insufficient to defeat a motion to dismiss.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). The Court must not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations.  *See Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555 (plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); Fed. R. Civ. P. 8(a)(2).

The Court must dismiss Plaintiffs' Third and Sixth causes of action for the second and third time, respectively, because Plaintiffs fail to put forward plausible, fact-based allegations to support these claims.  Furthermore, the Court should deny Plaintiffs leave to amend because they have "fail[ed] to cure deficiencies by amendments previously allowed." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

### A.    The Florida Intrusion Upon Seclusion Claim Again Fails Under the Court's Prior Reasoning (Third Cause of Action)

Intrusion upon seclusion under Florida law follows the Restatement's two-prong approach, requiring (1) an intrusion that (2) would be highly offensive to a reasonable person. *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020).  The Supreme Court of Florida, however, has construed the claim "even more narrowly"—requiring "an intrusion into a private *place* and not merely a private *activity*." *Id.* (citing *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 n.3, 162 (Fla. 2003) (emphasis added).

In the October 3 Order, the Court dismissed the Florida intrusion upon seclusion claim,

1   finding that Golbeck had failed to plausibly allege an intrusion into a private place under Florida

2   law.  (ECF No. 77 at 7.)  The SAC fails to cure this deficiency.  Additionally, Golbeck does not

3   plausibly allege conduct that would be highly offensive to a reasonable person.  Given Golbeck's

4   "repeated failure to cure [the] deficiencies" in pleading either element of her claim, dismissal is

5   warranted without leave to amend.  *Carvalho*, 629 F.3d at 892.

### 1. Golbeck still does not plausibly allege intrusion into a private place, whether electronic or physical

8       Under the first prong, Golbeck must plausibly allege intrusion "into a 'place' in which

9   there is a reasonable expectation of privacy."  *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 726

10  (11th Cir. 2011) (citation omitted).  In the October 3 Order, the Court found that Golbeck failed

11  to make this showing.  Specifically, the Court held, "Plaintiffs do not plausibly point to any

12  particular 'electronic space' where Plaintiff Golbeck had a reasonable expectation of privacy into

13  which Oracle intruded.  Nor do Plaintiffs plausibly aver Oracle intruded into Plaintiff Golbeck's

14  home."  (ECF No. 77 at 7.)  In the SAC, Golbeck puts forward two theories of intrusion with

15  respect to collection of her online data:[2] (1) Golbeck's devices are "password protected," and

16  Oracle intruded into the devices by allegedly intercepting the contents of her communications and

17  otherwise surveilling her activities on those devices (SAC ¶ 180); and (2) Oracle's alleged

18  interception of her communications while she was in her home amounted to surveillance of the

19  physical residence itself (*id*. ¶ 183).  Both theories fail as a matter of law.

20      **"Intrusion into Devices."**  Golbeck first contends that Oracle intruded into her "password

21  protected" devices by "intercepting the contents of her communications with websites."  (*Id.*

22  ¶ 180.)  But Golbeck conflates the locally saved contents of her devices' files and her browsing

23  history.  Golbeck makes no allegation that Oracle accessed any locally saved content on her

24  "password protected" devices.  And her suggestion that her browsing activity represents a

25  "private quarter" is expressly contradicted by the Eleventh Circuit's statement of law in *Spilfogel*

26

27      [2] Golbeck's allegations with respect to the purported collection of her *offline* data in the SAC
    are unchanged from the FAC.  (*See* FAC and SAC ¶¶ 16-17.)  As such, the Court has already

28  found them insufficient to support Golbeck's intrusion upon seclusion claim.  (ECF No. 77 at 7.)

1    that "Florida law explicitly requires an intrusion into *a private place* and *not merely into a private*

2    *activity*." 433 F. App'x at 727 (emphasis added).  As the Court has already observed, "Golbeck

3    seems to [have already] acknowledge[d] the lack of cases finding collection of browsing data

4    constitutes an intrusion into a private quarter."  (ECF No. 77 at 7 (citing ECF No. 67 at 23).)

5            Even if the web browsing activity on Golbeck's devices could be deemed a "place" under

6    Florida law—and it cannot—Golbeck has no reasonable expectation of privacy as to her browsing

7    data.  Golbeck's browsing data is, by definition, shared with website operators and her internet

8    service provider.  (*See* SAC ¶ 44 (describing allegedly collected data as "communications that

9    users have with websites").)  As such, neither the domain (public website) nor the data (browsing

10   history, click events, and metadata such as IP address) can be considered private.  *See Jacome v.*

11   *Spirit Airlines Inc*., No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17,

12   2021) (no expectation of privacy with respect to "mouse clicks and movements, keystrokes,

13   search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff"); *see*

14   *also United States v. Trader*, 981 F.3d 961, 967 (11th Cir. 2020), *cert. denied*, 142 S. Ct. 296

15   (2021) (no expectation of privacy as to email address and IP address).

16           **"Intrusion into the Home."**  Golbeck next contends that Oracle's alleged interception of

17   her data while she was at home was so pervasive that it amounted to an intrusion into the home

18   itself.  (*See* SAC ¶ 183.)  Her only new allegation is that "Oracle openly touts its ability to surveil

19   and manipulate Florida Class members within the confines of their homes."  (*Id*. ¶ 182.)  ***First***,

20   this allegation is essentially identical to the allegations in the FAC that the Court previously found

21   insufficient to state a claim.  (*Compare id*. ¶ 183 (interception equivalent to a "listening device or

22   'bug'") *with* FAC ¶ 163 (Oracle's business practices "tantamount to erecting a camera in her

23   home as she browses the internet").)  The Court's prior ruling is clear: Golbeck did not "plausibly

24   aver [that] Oracle intruded into [her] home."  (ECF No. 77 at 7.)  ***Second***, Golbeck's support for

25   this allegation is unhelpful.  She cites to OA marketing material claiming that advertisers can

26   "target households within a radius."  (SAC ¶ 64(c).)  The representation means only that Oracle

27   can identify browsing data by an internet user's IP address; it does not support a reasonable

28   inference that Oracle conducts surveillance of individuals' activities in the home beyond their

web browsing activities.

Without any plausible allegations that Oracle intruded into a "private place," Golbeck's claim must fail. *Spilfogel*, 433 F. App'x at 726.

### 2. Golbeck does not allege conduct that might be considered highly offensive to a reasonable person

Independent of Florida's private place requirement, the alleged intrusion must also be "highly offensive to a reasonable person" such that it was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309-10 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (citation omitted). Golbeck fails to allege anything new that could possibly clear this high hurdle. (*See* SAC ¶¶ 47, 177-181, 188 (again premising intrusion upon seclusion claim on browsing the internet, online data such as URLs, website titles, and click events, and offline data such as brick-and-mortar store purchases).) Florida courts routinely deny intrusion upon seclusion and related common law privacy claims involving the collection of data *more* sensitive than what Golbeck alleges:

- **Financial information found in a credit report.** *Celestine v. Cap. One*, No. 17-20237-Civ-Scola, 2017 WL 2838185, at *4 (S.D. Fla. June 30, 2017); *see also Stasiak v. Kingswood Co–Op, Inc.*, No. 8:11-cv-1828-T-33MAP, 2012 WL 527537 (M.D. Fla. Feb. 17, 2012) (obtaining credit report without permission does not rise to the level of outrageousness required for invasion of privacy).

- **Unredacted social security number.** *See Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *13 (11th Cir. Oct. 19, 2021) (applying same outrageousness standard to publication of private facts and dismissing claim).

- **Private medical records.** *See Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007) (dismissing publication of private facts claim).

- **Attorney-client communications.** *See id.* (publication of attorney-client communications not highly offensive "merely because of their nature").

The types of information on which Golbeck bases her claim—web browsing history, credit card purchases, and select data regarding retail store visits (SAC ¶¶ 12-18)—are a far cry from the sort of intrusions that Florida courts have found highly offensive. None of the online

1    information allegedly collected (URLs, page visits, and interactions on a website) even

2    approaches the sensitivity of information that courts have found outrageous.  *Stasiak*, 2012 WL

3    527537, at *3.  The Florida intrusion upon seclusion claim, therefore, must be dismissed.

4         **B.    Plaintiffs Fail to Adequately Plead that ECPA's Crime-Tort Exception
              Applies (Sixth Cause of Action)**
5

6         To plead a violation of ECPA, Plaintiffs must show an "intentional interception of the

7    contents [of] any wire, oral, or electronic communication through the use of a device." (SAC

8    ¶ 232); 18 U.S.C. § 2511(1)(a).  As a general matter, "the consent of one party is a complete

9    defense to a Wiretap Act claim."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal.

10   2014).  The exception to this one-party consent rule exists only where "the primary motivation or

11   a determining factor in [a defendant's] actions has been to injure plaintiffs tortiously."  *Rodriguez*

12   *v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021)

13   (citation omitted); *see also* 18 U.S.C. § 2511(2)(d) (exception applied when "communication is

14   intercepted for the purpose of committing any criminal or tortious act").  The Court has *twice*

15   found that this crime-tort exception "*does not apply to a case such as this*, where Defendant's

16   'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make

17   money.'"  (ECF No. 49 at 16 (quoting *Rodriguez*, 2021 WL 2026726, at *6 n.8) (emphasis

18   added)); ECF No. 77 at 11 (holding that Plaintiffs "have not pled sufficient facts here to show

19   Oracle had tortious motivation").)

20        As with their two prior attempts, "Plaintiffs have [still] not alleged sufficient facts that

21   Oracle intercepted data with the primary motivation or purpose of committing torts on internet

22   users." (ECF No. 77 at 11.)  Plaintiffs repeat the allegations that the Court has already considered

23   and found lacking, and their new allegations similarly fail to show that Oracle acted with tortious

24   intent.  As before, the Court should deny Plaintiffs' attempt to apply the crime-tort exception and

25   dismiss their ECPA claim, this time without leave to amend.

26              **1.    Plaintiffs' repeated allegations should be rejected again**

27        Many of the allegations Plaintiffs make in purported support of their "tortious intent"

28   theory are repeats of the FAC allegations the Court has already found insufficient to show that

1    Oracle acted with tortious motivation.  (*Compare* SAC, Section VI(F) *with* ECF No. 77 at 11.)

2    This alone merits dismissal.  *See Keith v. City of San Diego*, No. 22-cv-1226-MMA (DEB),

3    2023 WL 3689611, at *2 (S.D. Cal. May 26, 2023) (dismissal appropriate where amended

4    complaint "supplie[d] no additional facts" to cure "previously noted deficiencies"); *Yaron v.*

5    *Intersect ENT, Inc.*, No. 19-cv-02647-JSW, 2012 WL 12103005, at *7 (N.D. Cal. Jan. 22, 2021)

6    (dismissing claims where plaintiff did not "meaningfully amend[] the [previously dismissed]

7    claims").  Regardless, these repeated allegations are no more persuasive than they were in

8    Plaintiffs' earlier complaints.

9        ***First***, Plaintiffs again point to an out-of-context quote from Oracle's CEO in 2016 made

10   during a *public* announcement to investors and the media concerning new products and services.

11   (SAC ¶ 122.)  Talking about the power of machine learning in the ad tech space, Mr. Ellison

12   claimed that it was possible to combine users' web-browsing history and location information to

13   inform predictions about future purchases.  (*Id*. ¶ 122 n.158.)  In context, the lawful purpose of

14   the statements and the described technologies is self-evident: Oracle intended to sell its

15   technologies to potential customers.  Moreover, the Court has already expressly considered and

16   rejected this allegation, concluding that "[w]ithout more, Plaintiffs have not alleged sufficient

17   facts that Oracle intercepted data with the primary motivation or purpose of committing torts on

18   internet users."  (ECF No. 77 at 11.)

19       ***Second***, Plaintiffs again refer to Oracle's criticisms of certain data collection practices by

20   Google, arguing that such criticism shows that Oracle knew its own conduct was wrongful.

21   (*Compare* FAC ¶ 98 *with* SAC ¶ 123 (alleging that "[w]ithout a trace of irony," Oracle has argued

22   that Google wrongfully builds "shadow profiles").)  But Plaintiffs' unreasonable inference should

23   be rejected, as Plaintiffs plainly misconstrue the document they cite.  Specifically, Plaintiffs rely

24   on a 2019 submission by Oracle Corporation to the Australian Competition and Consumer

25   Commission advocating for a review of Google's business practices *in Australia* and *under*

26   *Australian law* and for amendments to that nation's privacy laws.  (*See* SAC ¶ 123 nn.159, 162.)

27   Contrary to Plaintiffs' contention, the submission does not reflect any acknowledgement by

28   Oracle as to its own lawful business practices.  (*Id.*)  Rather, the submission merely reflects

1    concerns that Google's misrepresentations about the extent of its data collection practices

2    amounted to barriers to competition in light of Google's substantial market power.  (Patel Decl.

3    Ex. A at 1 ("Google, by acting in an unconstrained manner, creates barriers to competition that

4    need to be addressed").)  Simply put, the submission cannot support an inference that Oracle

5    acted with tortious intent when carrying out its own business practices, especially since those

6    actions are expressly contemplated and permitted by statute.  (*See* SAC ¶¶ 21, 26, 39, 89, 105

7    (citing Cal. Civ. Code § 1798.99.80, which defines "data broker" as an entity permitted to collect

8    and sell to third parties the personal information of consumers with whom it has no direct

9    relationship).)

10            **2.      Plaintiffs' new allegations do not show that Oracle acted with tortious
                         intent**

11

12           Plaintiffs' new allegations also do not plausibly suggest that "Oracle was aware that its

13   conduct of profiling Class members was tortious."  (*See* SAC ¶¶ 119-21, 125-33.)  Plaintiffs

14   broadly allege that (1) Oracle purportedly identifies and sells certain, allegedly problematic,

15   interest segments contrary to its public representations (*see id.* ¶ 127 (alcohol-based interest

16   segments); *id.* ¶¶ 128-31 (segments based on political views)); (2) that one supposed former

17   Oracle employee was "aware that Oracle's privacy practices [were] highly problematic" (*id.*

18   ¶ 133); and (3) that Oracle intercepted Plaintiffs' data "for the purpose of associating [it] with

19   preexisting profiles" (*id.* ¶ 250).  None of Plaintiffs' new allegations support applying ECPA's

20   crime-tort exception here because none show that Oracle's activities constituted legally

21   cognizable harms, much less that Oracle *intended* to harm web users in running its business.  *See*

22   *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (for

23   crime-tort exception to apply, "[a]t the time of the recording the offender must intend to use the

24   recording to commit a criminal or tortious act") (quoting *Caro v. Weintraub*, 618 F.3d 94, 99 (2d

25   Cir. 2010)).

26                    **a.      Oracle did not act contrary to its public representations, nor is
                              doing so indicative of tortious intent**

27

28           Plaintiffs contend that Oracle's alleged tortious purpose can be inferred from its purported

Case 3:22-cv-04792-RS   Document 88   Filed 12/22/23   Page 16 of 20

failure to disclose its sale of alcohol-based and political orientation segments to the public.  (SAC

¶¶ 127-31.)  But Plaintiffs fail to allege facts giving rise to a plausible inference of

misrepresentation.  Even if they did, such allegations would still fail to plausibly allege that

Oracle intended to harm web users.  As with Plaintiffs' earlier allegations, their new allegations

merely support the proposition that Oracle is a for-profit business acting in its commercial

interests by selling interest segments to advertisers.

*Plaintiffs do not plausibly allege that Oracle misrepresented its data collection practices*

*generally or to Plaintiffs themselves.*  Plaintiffs first allege that Oracle "purported to cease"

alcohol-based advertising in 2019, but continued to keep the line of business open through as late

as July 2022.  (*Id.* ¶ 127.)  Plaintiffs' only basis for this allegation is a September 2019 article in

the industry publication "Ad Exchanger," which neither Plaintiff alleges they read.  (*Id.*)  The

article reports, without citation, that Oracle would discontinue selling alcohol-based segments that

fall.  There is no statement in the article that Oracle itself represented to consumers that it would

cease selling alcohol-based segments.  Nor do Plaintiffs plausibly allege that Oracle made such a

representation.

Similarly, Plaintiffs allege that Oracle has sold "'sensitive interest segments' based on

political orientation" and imply that it simultaneously represented in its Privacy Policy that it did

not do so.  (*Id.* ¶ 128.)  They point to (1) Oracle's "2019 Data Directory" (*id.* ¶ 129); (2) Oracle's

2016 "Audience Playbook" (*id.* ¶ 128 n.174); and (3) an article that "demonstrate[d] that Oracle

appears to continue (or at least continued as of *May 2021*) to offer political interest advertising

segments for sale" (*id.* ¶ 130 (emphasis added)).  At the same time, they admit that the language

in the Privacy Policy stating that "Oracle does not create any online interest segments that reflect .

. . [political] orientation" was current "[a]s of the filing of this action in *August 2022*."  (*Id.* ¶ 128

n.172 (emphasis added).)  Plaintiffs allege no facts as to what Oracle represented with regard to

segments based on political orientation in 2016, 2019, or 2021.  As such, Plaintiffs' allegations do

not support any reasonable inference that Oracle's practices at any point were inconsistent with

its stated policies.  Absent any factual support, Plaintiffs' conclusory allegation that Oracle

"conceal[ed]" its sale of political interest segments should be rejected.  (*Id.* ¶ 131.)

1

***Oracle's alleged misrepresentations do not support an inference of tortious intent***.

2   Irrespective of any claimed misrepresentation, Oracle's alleged conduct in creating and selling the

3   two purportedly sensitive segments is lawful and motivated by the company's profit incentive.

4   As an initial matter, Plaintiffs point to no statute that makes creating or selling anonymized

5   interest segments concerning alcohol or political views unlawful—nor can they.[3]  Even the recent

6   *proposed* bills aimed at data brokers that Plaintiffs reference would not implicate the alleged

7   conduct on which Plaintiffs now focus.  (*Id*. ¶¶ 91-93 (describing two proposed bills that would

8   bar the export of Americans' personal data and prohibit the sale of personal data to law

9   enforcement and intelligence agencies); *id*. ¶ 96 (describing introduced bill that would ban the

10   sale of health and location data).)  Though the conduct Plaintiffs now allege may be inconsistent

11   with their own public policy preferences, it is not unlawful.

12   Further, Plaintiffs plainly allege that Oracle's intent *at the time of the alleged data*

13   *collection* was to further its commercial interests, dooming their attempt to invoke ECPA's crime-

14   tort exception with respect to the new allegations.  *See Caro*, 618 F.3d at 99-100 ("If, at the

15   moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious

16   purposes, there is no violation.").  As the Court previously observed, "[t]he mere possibility [that]

17   Oracle's data collection activities could *at some future date* be deemed tortious does not justify

18   application of the crime-fraud exception."  (ECF No. 77 at 11 n.11 (citing *In re DoubleClick Inc.*

19   *Priv. Litig*., 154 F. Supp. 2d 497, 518-19 (S.D.N.Y. 2001))); *see also Cohen v. Casper Sleep Inc*.,

20   No. 17cv9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) ("[Plaintiff] fails to

21   demonstrate that Defendants' *primary purpose* was to commit a tort.  Instead, he claims that

22   Defendants' conduct amounted to a tort.") (emphasis added).

23   Plaintiffs' allegations of Oracle's commercial purpose behind the alleged interception run

24   throughout the SAC, alleging that:

25

26

27   _____

[3] On the contrary, as Plaintiffs acknowledge in the SAC, current legislative policy permits registered data brokers like Oracle to collect and sell consumer personal information to third parties.  (SAC ¶¶ 21, 26, 39, 89, 105 (citing Cal. Civ. Code § 1798.99.80, defining

28   aforementioned activities of a registered data broker).)

1

2

- Oracle "profited from disclosing users' browsing histories, internet activity, and real world activity" (SAC ¶ 268);

3

- "Oracle CEO Larry Ellison described in detail Oracle's plan to profit from its acquisition and use of California Class members' data" (*Id.* ¶ 275);

4

5

- Oracle "trafficked in … personal information and other personal data … for substantial profits" (*Id.* ¶ 280);

6

- "Oracle … monetizes [web users'] data" (*Id.* ¶ 42).

7

8

In light of Plaintiffs' allegations of Oracle's commercial purpose, Plaintiffs cannot invoke the crime-tort exception to save their ECPA claim.

9

10

        **b.**     **Plaintiffs cannot show that Oracle employees acted with tortious intent**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs implausibly allege that Oracle employees were aware "that the company's privacy practices were problematic." (*Id.* ¶ 133.)  In support, they cite to a single message board comment from an "anonymous [purported] former Oracle employee" who claimed that one of Oracle's privacy tools for consumers was "purposefully never updated and knowingly inaccurate."  (*Id.*)  Setting aside the fact that Plaintiffs do not allege that they made any effort to verify the authenticity of this anonymous comment, the comment itself does not support Plaintiffs' position.  As noted on the message board, the allegedly "inaccurate" tool is not intended to provide consumers a copy of all of the information associated with them.  (Patel Decl. Ex. B at 6 (message board post cited in SAC ¶ 133 n.184).)  Rather, its purpose is limited to consumer requests for a copy of interest data associated with the browser used when accessing the tool.  (*See id.*)  And it is not the only privacy tool Oracle makes available to consumers.  For example, the commenter is silent on Oracle's separate tool for retrieving consumers' *offline* data.  (SAC ¶ 4 (discussing "Offline Access Request Response Report[s]").)  And the commenter does not, as Plaintiffs allege, make any representation about the efficacy of Oracle's tool to opt out of data collection altogether.  Nor does the comment pertain to Oracle's privacy practices at large.

26

27

While Plaintiffs claim the comment reveals Oracle's broader knowledge that its privacy practices were "problematic," they ignore the same anonymous commenter's endorsement of

28

1   Oracle's privacy regime and practices.  Responding to others' data privacy concerns, the

2   commenter noted that such concerns "confus[ed] how [Oracle's systems] operate[]."  (Patel Decl.

3   Ex. B at 8.)  Rather than trafficking "first party data" identifying individuals and their purchases,

4   Oracle's business was focused on "sanitized huge anonymous audience [data]" noting trends

5   associated with online identifiers (*i.e.*, "in-market for cars").  (*Id.*)  Taken in context, the

6   comments do not show that this purported employee (or any others) were "deliberately and

7   intentionally invad[ing] Class members' privacy." (SAC ¶ 133.)  Rather, they reflect Oracle's

8   efforts to safeguard sensitive data and prevent its use for prohibited applications.  This

9   anonymous post, hardly an indictment of Oracle's practices, falls far short of supporting an

10  inference that "[Oracle's] employees recognized that its privacy [practices] were problematic" as

11  would be necessary to invoke the crime-tort exception.  *See Brown v. Google LLC*, 525 F. Supp.

12  3d 1049, 1079 (N.D. Cal. 2021) (crime-tort exception applied to allegations that employees

13  "recogniz[ed] that Google's privacy disclosures [were] a 'mess'").

14              **c.      Plaintiffs' allegation that Oracle subsequently used their data**
                          **does not establish tortious intent**
15

16          Finally, Plaintiffs contend that Oracle's alleged "further use" associating intercepted data

17  with "preexisting user profiles" establishes a tortious intent.  (SAC ¶ 250.)  Not so.  Rather, courts

18  regularly find the crime-tort exception inapplicable where the alleged interception is for the

19  purpose of further "enriching" preexisting internet user profiles.  *See Rodriguez*, 2021 WL

20  2026726, at *6 n.8 (declining to apply exception where Google allegedly intercepted data from

21  apps to save individuals' activity in their "Google Account"); *In re Google Inc. Gmail Litig.*, No.

22  13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (exception

23  inapplicable where Google allegedly intercepted metadata and further associated the data with

24  "secret user profiles"); *Cohen*, 2018 WL 3392877, at *4 (exception inapplicable to retailer's

25  practice of collecting, de-anonymizing, and disclosing customers' de-anonymized data to third

26  parties); *In re Nickelodeon Consumer Priv. Litig.*, No. 12-07829, 2014 WL 3012873, at *2, 13

27  (D.N.J. July 2, 2014) (exception inapplicable to defendant's interception of children's online data

28  to compile profiles of individual children); *DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 515

1    (inapplicable to interception of online advertising data to build "detailed profiles" of internet

2    users).  That's because, again, an allegation that conduct "amounted to a tort" falls far short of an

3    allegation that the alleged tortfeasor *intended to commit* a tort.  *See Cohen*, 2018 WL 3392877, at

4    *4; *see also Nickelodeon,* 2014 WL 3012873, at *14 ("There are no facts pleaded to indicate that

5    the interceptions in this case were motivated by anything other than Defendants' desire to

6    monetize Plaintiffs' internet usage[.]").

7          The SAC—Plaintiffs' third attempt to state a claim under ECPA—contains no allegation

8    that Oracle intercepted Plaintiffs' data with the intent to cause harm.  The claim should therefore

9    be dismissed without leave to amend.

10   **III.    CONCLUSION**

11         For all the reasons stated above, Oracle respectfully asks the Court to dismiss the SAC's

12   (1) Florida intrusion upon seclusion claim (Third cause of action) and (2) ECPA claim (Sixth

13   cause of action).  Moreover, because Plaintiffs have already had ample opportunity to amend,

14   Oracle respectfully requests dismissal without leave to amend.

15

16   Dated: December 22, 2023              MORRISON & FOERSTER LLP

17                                         By:   */s/ Purvi G. Patel*
                                                 Purvi G. Patel

18                                         **Attorneys for Defendant**
                                           **Oracle America, Inc.**
19

20

21

22

23

24

25

26

27

28