Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorney for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Michael Katz-Lacabe and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>        Defendant. | Case No. 3:22-cv-04792-RS<br><br>**PLAINTIFFS' SURREPLY BRIEF IN OPPOSITION TO ORACLE'S [THIRD] MOTION TO DISMISS PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Richard Seeborg<br><br>Date: March 28, 2024<br>Time: 1:30pm<br>Courtroom: 3<br><br>Date Action Filed: August 19, 2022<br>Trial Date: None set |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

2958082.3

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................. 1

    A. Oracle's Delayed Production of Plaintiffs' Data is Relevant to the Motion to Dismiss. ............................................................................................................ 1

    B. Oracle Conceals and Misrepresents its Creation and Use of Sensitive Segments. ............................................................................................................ 3

    C. The Newly-Produced Evidence Confirms that Oracle's Further Tortious Use of the Fruits of the Interception Constitutes a "Tortious Purpose." ................ 6

    D. Oracle's Continued Concealment of and Misrepresentations About This Conduct Demonstrate Tortious Intent. ............................................................. 7

III. CONCLUSION ......................................................................................................... 10

2958082.3     - i -

PLAINTIFFS' SURREPLY IN OPPOSITION TO ORACLE'S MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT CASE NO. 3:22-CV-04792

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................................................. 6

*In re Nature's Sunshine Prods. Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah 2007) ................................................................................... 8

*McFadden v. United States*,
576 U.S. 186 (2015) .............................................................................................................. 8

*Rodriguez v. Google LLC*,
No. 20-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ............................................... 2

*United States v. Galecki*,
89 F.4th 713 (9th Cir. 2023) ................................................................................................. 8

**Statutes**

18 U.S.C. § 2511(2)(d) ..................................................................................................... 2, 6

Electronic Communications Privacy Act ................................................................... *passim*

**Other Authorities**

Op. No. 20-303, 2022 WL 815641, at *2 (Cal. A.G. Mar. 10, 2022) ..................................... 3

2958082.3

- ii -

PLAINTIFFS' SURREPLY IN OPPOSITION TO ORACLE'S
MOTION TO DISMISS PORTIONS OF THE SECOND
AMENDED COMPLAINT
CASE NO. 3:22-CV-04792

Pursuant to this Court's Order Granting Administrative Motion and Setting Briefing Schedule, ECF No. 95, Plaintiffs submit this surreply in opposition to Oracle's Motion to Dismiss Portions of the Second Amended Complaint, ECF No. 88.

## I.   INTRODUCTION

Plaintiffs submit this surreply in light of belatedly-produced evidence which conclusively refutes a central argument in Oracle's current Motion to Dismiss and undercuts its position that further amendment would be futile. Specifically, Oracle's vast store of personal data assembled about the Plaintiffs, including data and inferences from data about sensitive health, ethnic, and political attributes, produced just days after briefing closed on the final motion to dismiss, shows that, in addition to unlawfully intercepting personal data in violation of the Electronic Communications Privacy Act ("ECPA"), Oracle put that data to "further use" that is tortious, making the application of the "exception to the exception" appropriate.

Plaintiffs assert that the Second Amended Complaint, ECF No. 87 ("SAC"), as currently drafted, adequately pleads the ECPA claim and its "exception to the exception," and that no further amendment is necessary for that claim to go forward. However, Plaintiffs, out of an abundance of caution, submit this surreply to demonstrate how this information—which Oracle tactically withheld and should have been produced months ago while Plaintiffs were re-drafting their pleadings—could now be used to address any shortcomings in the pleadings should the Court determine any exist with respect to the ECPA claim. In short, this newly-produced evidence demonstrates that Oracle is and has been fully aware of the highly-invasive nature of its conduct and the fact that this conduct harms class members, but has sought to hide this information from the public, from Plaintiffs, and from the Court, thereby demonstrating its "culpable mind" for purposes of the ECPA claim.

## II.   ARGUMENT

### A.   Oracle's Delayed Production of Plaintiffs' Data is Relevant to the Motion to Dismiss.

A central issue in Oracle's Motion to Dismiss is whether the "exception to the exception" to Plaintiffs' ECPA claim applies here. The ECPA provides that "consent" to the otherwise

2958082.3

-1-

unlawful interception of the contents of an electronic communication provides no defense where "such communication is intercepted for the purpose of committing any criminal or tortious act…." 18 U.S.C. § 2511(2)(d). As this Court has noted, to successfully plead this so-called "exception to the exception" (*i.e.*, the tort exception to the consent exception), Plaintiffs must allege "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Rodriguez v. Google LLC*, No. 20-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (citations omitted).

Plaintiffs' SAC alleges that Oracle's "culpable mind" is in part demonstrated by the fact that Oracle has continued to collect, analyze, and use class members' sensitive personal information despite representing to the world (and this Court) that it does not. SAC ¶¶ 128–131.[1] The SAC further alleges that Oracle was well aware of the invasive and harmful nature of its conduct, but chose to continue with it. SAC ¶¶ 119–133. Thus, Oracle did not act under the "mere possibility [that] Oracle's data collection activities could at some future date be deemed tortious," it acted with a "culpable mind." *See* Pls.' Opp'n Br., ECF No. 90 ("Opp'n"), at 8.

Given these allegations, evidence of Oracle's handling of sensitive personal information is directly relevant to the question of Oracle's tortious intent, and Plaintiffs have diligently pursued such evidence throughout the course of this litigation. In its Reply brief filed on February 12, 2024—prior to the production of any data in its possession related to the Plaintiffs—Oracle denied it traffics in personal data about people's politics in an attempt to support its argument that Plaintiffs' allegations insufficiently demonstrate Oracle's "culpable mind." *See* ECF No. 92 at 5–6, 12 n.12 (Oracle stating that "Plaintiffs attempt to bolster their allegations by insinuating that Oracle misrepresented its sale of these interest segments to the Court," and then stating that "Oracle stands by its prior representation that it 'does not use any data it receives from customers to create sensitive interest segments, including . . . political [] orientation.'").

---

[1] SAC ¶ 131 ("Oracle's duplicitousness on this issue is not a product of happenstance or misunderstanding—Oracle deliberately conceals from the public that it creates profiles of them based on sensitive information such as their political orientations, and then further associates data it surreptitiously intercepts when Class members communicate with websites with those profiles. It deliberately conceals these facts because it knows the conduct it engages in is harmful and invasive of Class members' privacy and would be immediately recognized as such once publicly revealed.").

PLAINTIFFS' SURREPLY IN OPPOSITION TO
ORACLE'S MOTION TO DISMISS PORTIONS OF
THE SECOND AMENDED COMPLAINT
CASE NO. 3:22-CV-04792

However, the next day, on February 13, 2024, Oracle generated records from its systems (and produced them a few days later) showing tens of thousands of data points about Plaintiffs, collected over many years.[2] Some of these data are highly sensitive, including specific health-related purchases and inferences related to gender, race, and sexual or reproductive decisions. Also in this production are political data and inferences, some of which were created as recently as during the course of this litigation.[3]

**B.      Oracle Conceals and Misrepresents its Creation and Use of Sensitive Segments.**

This newly-produced data demonstrates that Oracle continues to buy, sell, and/or create sensitive information and inferences about Plaintiffs, informed by the fruits of its wiretapping conduct as alleged in the SAC, despite publicly representing to the world and this Court it does not. These documents thus show Oracle acted with and continues to act with a "culpable mind," sufficient to demonstrate tortious intent, and is therefore liable under the ECPA "exception to the exception."

As early as December 24, 2019, Oracle publicly represented that it does not create sensitive "interest segments" based on personal data.[4] "Interest segments" (or sometimes just "segments") is the industry term for "inferences" drawn from people's personal data which describe their respective personal attributes—such "segments" or "inferences" are by law, themselves personal data. Op. No. 20-303, 2022 WL 815641, at *2 (Cal. A.G. Mar. 10, 2022) ("inferences" such as segments constitute "personal information"). As of that date, Oracle purported not to "create any online interest segments that reflect personal information that we

---

[2] Thus far, Plaintiffs have identified the following documents produced by Oracle as containing data related to them: ORCL_KATZ000160573, ORCL_KATZ000160571, ORCL_KATZ000160572ORCL_KATZ000160578, ORCL_KATZ000160574, ORCL_KATZ000160575, ORCL_KATZ000160577, ORCL_KATZ000082493, ORCL_KATZ000090677.  The metadata for these documents reflect they were created on February 13, 2024.

[3] Because this evidence was only recently produced and is voluminous (the Excel spreadsheets at issue collectively print out to over ten thousand standard pages), Plaintiffs are continuing to analyze it.

[4] *See* Oracle Data Cloud Privacy Policy, at § 14. DOES THE ORACLE DATA CLOUD COLLECT SENSITIVE PERSONAL INFORMATION?, https://www.oracle.com/legal/privacy/marketing-cloud-data-cloud-previous-privacy-policy-122419.html.

PLAINTIFFS' SURREPLY IN OPPOSITION TO ORACLE'S MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT CASE NO. 3:22-CV-04792

consider sensitive," giving the following as examples of "sensitive" information: "precise health, biometric, or genetic information, such as a certain medical condition like cancer or diabetes[;] certain aspects linked to personal life, such as religious, political, or sexual orientation[;] interest in 'adult' activities, such as alcohol or drug use, gambling, an interest in weapon [sic], or pornographic material[; and] information considered sensitive based on applicable law."[5]

The language of Oracle's disclosures has evolved over the last four years, increasingly providing more detail about the types of information Oracle considers sensitive.[6] Oracle's current disclosures, updated in June of last year (*i.e.*, during the course of this litigation), state that Oracle considers the following types of personal information sensitive: "precise mental or physical health, biometric, or genetic information, such as a certain sensitive medical condition like cancer or diabetes[;] pregnancy, such as pregnancy choices, pregnancy termination, reproductive rights, and traveling to exercise reproductive rights[;] [and] certain aspects linked to personal life, such as racial or ethnic, religious, political, citizenship, immigration status, or sexual orientation[.]"[7]

Oracle also represented to the Court in prior motion to dismiss briefing in June of last year that it "does not use any data it receives from customers to create sensitive interest segments, including those related to medical diagnoses, pregnancy, racial, religious, political or sexual orientation, citizenship or immigration status, and prohibits its customers from doing the same." Motion to Dismiss Portions of the First Amended Complaint, ECF No. 63 ("First Mot."), at 3. As such, according to Oracle "[c]onsumers are not and cannot be harmed by Oracle's practices[.]" *Id.*; SAC ¶ 128.

The data produced by Oracle on February 16, 2024 contradict these representations. The data Oracle produced from the profiles it maintains on Plaintiffs in the ordinary course of business is staggeringly voluminous: the data contain over 39,000 "audiences," or combinations of "interest segments," which are unique "inferences" about Dr. Golbeck drawn from her personal data, and over 60,000 such "audiences" for Mr. Katz-Lacabe. Much of this inferential personal

---

[5] *Id.*

[6] It appears Oracle removed interest in alcohol as sensitive information in May of 2022.

[7] Oracle Advertising Privacy Policy, at § 14. DOES ORACLE ADVERTISING COLLECT SENSITIVE PERSONAL INFORMATION?, https://www.oracle.com/legal/privacy/advertising-previous-privacy-policy-062023.html.

data are, and are also based on, highly sensitive information, including specific physical and mental health-related purchases[8] and conditions,[9] and also include inferences related to gender,[10] race,[11] and sexual or reproductive decisions.[12] The production also includes political[13] and religious[14] data and inferences—all of which were created and/or maintained by Oracle *during the*

[8] *See* ORCL_KATZ000160571 at Row 37733 (showing audience: ███████████████ ); *see also* ORCL_KATZ000160574 at Row 53457 (showing audience: ████████████████████████████ ); ORCL_KATZ000160571 at Row 34955 (showing audience: █████████████████████████ ); ORCL_KATZ000160574 at Row 53460 (showing audience: █████████ ); ORCL_KATZ000160571 at Row 34957 (showing audience: █████████████████████ ); ORCL_KATZ000160574 at Row 52399 (showing audience: ██████████████████████ ); ORCL_KATZ000160571 at Row 16830 (showing audience: ████████ █████████████████ ); *see also* ORCL_KATZ000160574 at Row 51888 (showing audience: ███████████████████ ).

[9] *See* ORCL_KATZ000160571 at Row 37437 (showing audience: ██████████ ); *see also* ORCL_KATZ000160574 at Row 56193 (showing audience: ████████ ); ORCL_KATZ000160574 at Row 57415 (showing audience: "██████████████ ████████████████ " with audience description ████████████████████ ); *see also id.* at Row 57410 (showing audience: "████████ ████████████████ " with audience description ████████████████ ).

[10] *See* ORCL_KATZ000160572 at Cell EB5 (showing gender: "█ "); *see also* ORCL_KATZ000160571 at Row 11439 (showing audience: ████████████████████ ); *id.* at Row 7767 (showing audience: ███████████████████ ); *id.* at Row 18797 (showing audience: ████████████████████ ); *id.* at Row 37725 (showing audience: ████████████ ).

[11] *See* ORCL_KATZ000160571 at Row 27398 (showing ethnicity: ████ ); *see also* ORCL_KATZ000160577 at Cell AS3 (showing ethnicity: "███████████ "); ORCL_KATZ000160574 at Row 16112 (showing ethnicity: "████████████ ").

[12] *See, e.g.*, ORCL_KATZ000160571 at Row 27002 (showing audience: ████████ ); *see also* ORCL_KATZ000160574 at 29198 (showing audience: ████████ ).

[13] *See, e.g.*, ORCL_KATZ000160571 at Row 25401 (showing audience: ████████████ ); *see also* ORCL_KATZ000160574 at Row 57632 (showing audience: ████████████ ); ORCL_KATZ000160571 at Row 36033 (showing audience: ████████████████ ); *see also id.* at Row 22276 (showing audience: ████████ ); *id.* at Row 1245 (showing audience: "████████████ " with audience description ████████████ ).

[14] *See, e.g.*, ORCL_KATZ000160571 at Row 35996 (showing audience: ████████ ); *see also* ORCL_KATZ000160574 at Row 59138

*time period during which it said it did not engage in this conduct*; indeed, some were even created as recently as during the course of this litigation.[15]

Given the volume of this data, Plaintiffs continue to analyze it, but in addition to these specific examples, this data appears to contain further segments related to politics, health issues, finances, and other sensitive categories. For example, the data appear to contain many dozens of references to health-related conditions or treatments, in some instances apparently based on purchases for related medications. Both because Plaintiffs are in the process of analyzing these 100,000 inferential personal data points produced about Plaintiffs, and out of respect for Plaintiffs' privacy, Plaintiffs have not endeavored to list all sensitive information produced by Oracle in this brief, but to instead apprise the Court of the type of information Plaintiffs could amend their Complaint to include.[16]

### C. The Newly-Produced Evidence Confirms that Oracle's Further Tortious Use of the Fruits of the Interception Constitutes a "Tortious Purpose."

This new evidence confirms Oracle's further, tortious use of intercepted data shows that the interception was for "the purpose of committing [a] tortious act," and thus the exception to the exception applies. 18 U.S.C. § 2511(2)(d). As Plaintiffs explain in their opening brief, here, as in *Brown v. Google*, Oracle's own "association of Plaintiffs' data with preexisting user profiles" is a "further use of Plaintiffs' data that satisfies this exception." Opp'n at 4–8 (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021).

(showing audience: ██████████████████████████ ██████████████ ).

[15] Oracle also appeared to have created alcohol-related segments on Plaintiffs during the period it publicly disclaimed engaging such conduct (*i.e.*, December 24, 2019 to May 5, 2022). *See* ORCL_KATZ000160571 at Row 5399 (showing audience: ████████████████████ ██████████████████ ); *see also* ORCL_KATZ000160574 at Row 19427 (showing audience: ████ ████████████████████████████████ ).

[16] Additionally, to not burden the Court with an extremely voluminous under seal filing (which would consist of thousands of pages of sealable personal information), Plaintiffs have not lodged the documents containing Plaintiffs' data with the Court. While these documents will likely be introduced as evidence at a later stage in these proceedings (*e.g.*, at summary judgment or trial), in the event the Court would find it helpful to review the full documents at issue here Plaintiffs will lodge them with the Court at the Court's request. Relatedly, Plaintiffs continue to investigate whether the data produced by Oracle is the full scope of the data related to the Plaintiffs in Oracle's possession; the parties are currently negotiating the production of yet more large volumes of personal data on class members.

The massive data sets extracted from Oracle's preexisting user profiles confirm that Oracle's compilation, analysis, and sale of these data is a further tortious act. Among the voluminous and highly detailed personal data assembled by Oracle about Plaintiffs are data about Plaintiffs' health, politics, and sexual choices. As with the Online Access Response Reports ("OARRRs") attached to the SAC and discussed in this Court's October 3, 2023 Order, "[m]any pieces of information in [the newly produced data] indicate more than simple likes or dislikes and instead communicate intimate details of Plaintiffs' daily lives." ECF No. 77 at 17. Moreover, as the Court noted in its April 6, 2023 Order, Plaintiffs' allegations extend to "'sensitive health and personal safety information['] . . . and race and politics," and that "such allegations of data collection would go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements." ECF No. 49 ("April 6 Order"), at 12. This newly-produced data thus *confirms* that Oracle's conduct goes "well beyond . . . 'routine commercial behavior'" and that Oracle tortiously invades Plaintiffs' constitutional and common law rights by engaging in this conduct. *Id*. at 11–13 (denying motion to dismiss Plaintiffs' claims for Invasion of Privacy under the California Constitution and Intrusion Upon Seclusion). This intentional, tortious conduct is sufficient to trigger the exception to the exception to the ECPA claim. *See* Opp'n at 4–8. To the extent the Court requires further detail regarding the tortious nature of Oracle's conduct as alleged in the SAC in order to find for Plaintiffs on their ECPA claim, Plaintiffs should be granted leave to amend to describe this new evidence.

**D.      Oracle's Continued Concealment of and Misrepresentations About This Conduct Demonstrate Tortious Intent.**

The SAC further alleges that Oracle deliberately conceals from the public that it creates profiles of them based on sensitive information such as their political orientation, which are informed by the fruits of its wiretaps, "because it knows the conduct it engages in is harmful and invasive of Class members' privacy and would be immediately recognized as such once publicly revealed," demonstrating the requisite tortious intent under the ECPA. SAC ¶ 131. Indeed, Oracle's denial before this Court of trafficking in sensitive personal data was made in the context of arguing "*[c]onsumers are not and cannot be harmed* by Oracle's practices[.]" First Mot. at 3

PLAINTIFFS' SURREPLY IN OPPOSITION TO ORACLE'S MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT
CASE NO. 3:22-CV-04792

(emphasis added). If Oracle "stands by" this statement, it must also stand by the logical consequences of it: if Oracle does traffic in sensitive personal data, consumers *can be* and *are* harmed by Oracle's practices—and Oracle knows it.

The SAC incorporates information demonstrating Oracle's prior representations regarding its maintenance and sale of political segments were false, which information was made public after the filing of Plaintiffs' First Amended Complaint. SAC ¶¶ 131. Now, after the filing of the SAC, Oracle has produced internal, non-public information demonstrating the falsity of its more recent representations on this issue. The most reasonable inference from this pattern of conduct— let alone the one most favorable to Plaintiffs, as is the standard on Oracle's Motion—is that Oracle has knowingly engaged in conduct that it recognizes is harmful, *i.e.*, tortious.

Oracle's prior and ongoing attempts to conceal this conduct are blatant, prototypical evidence of a culpable mind and tortious intent. *See United States v. Galecki*, 89 F.4th 713, 728 (9th Cir. 2023) (scienter properly inferred where defendants took steps to "'conceal[ ],' to the extent that they could, the nature of their 'activities.'" (quoting *McFadden v. United States*, 576 U.S. 186, 192 n.1 (2015)); *In re Nature's Sunshine Prods. Sec. Litig.,* 486 F. Supp. 2d 1301, 1311 (D. Utah 2007) ("Evidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter") (citation omitted). Oracle represented early on in this litigation that it had no data in its possession related to Plaintiffs beyond what was contained in the OARRRs that Oracle sent to Plaintiffs prior to initiation of this litigation. For example, on February 28, 2023, Oracle stated without qualification that "the [OARRRs] for Mr. Katz-Lacabe and Dr. Jennifer Golbeck include all the personal data associated with Plaintiffs in Oracle's possession when the reports were requested." February 23, 2023 Letter from W. O'Byrne to Plaintiffs' Counsel. Plaintiffs did not accept that nonsensical representation and instead, diligently pursued the production of the data Oracle eventually disclosed on February 16, 2024, only after Plaintiffs commenced motion practice seeking that data. The data Oracle has produced is massively more voluminous than the data contained in the OARRRs (the OARRRs contained approximately 1,900 segments related to Plaintiffs, whereas its latest data production contains approximately 100,000 such segments), and based on current investigation, Plaintiffs anticipate there is yet more data related to them in

Oracle's possession that has not yet been produced.

Oracle's conduct throughout the course of this lawsuit demonstrates that it sought to conceal its use of sensitive information from both Plaintiffs and the Court.[17] Had Oracle timely produced this data, Plaintiffs could have incorporated it into the SAC to bolster allegations regarding Oracle's "culpable mind" as relevant to the ECPA claim, and also to apprise the Court of the scope and character of Oracle's conduct.[18] Among other things, this data definitively resolves "whether Oracle plausibly did collect and aggregate information to reveal" sensitive information, the plausibility of which the Court had previously characterized as a "close question." April 6 Order at 12. The question is no longer a close one—Oracle did in fact engage in that conduct.

Plaintiffs reiterate that the question of intent is a paradigmatic factual issue that cannot be resolved at the pleadings stage. *See* Opp'n at 3–4. However, Plaintiffs submit that, based on the newly-produced evidence described herein, a reasonable factfinder could determine that Oracle's misrepresentations regarding its practices were deliberate and designed to conceal from the public that Oracle makes use of such sensitive information, which is evidence of its requisite tortious intent under the ECPA. As this Court previously noted, "Plaintiffs allege that Defendant's practices are actually contrary to the reasonable reader's inference, from reading the policy, that Oracle would not facilitate the sale of their political views." April Order at 4. Plaintiffs allege that Oracle misrepresented its conduct—building and maintaining profiles containing sensitive personal information informed by its wiretapping—because it knows that conduct is tortious. SAC § VI.F. The recently-produced evidence directly supports these allegations, as described

---

[17] Plaintiffs requested the Plaintiffs' personal data in Oracle's possession in November 2022. Over the course of the last year and a half, Oracle first denied the existence of this data, and then, after finally acknowledging its existence, refused to produce it. Only after Plaintiffs initiated a motion to compel, sending Oracle a draft discovery dispute letter on February 12, 2024, pursuant to this Court's Scheduling Order, did Oracle produce some responsive data. As the metadata from this production shows, it was on the next day, February 13, 2024, that Oracle internally assembled the data, revealing that it had been sitting on it for months.

[18] Given the year-long delay in the production of this central data, as well as substantial delays by Oracle in responding to many other of Plaintiffs' discovery requests, Plaintiffs intend to seek an extension of the May 1, 2024 class certification deadline. Plaintiffs have requested Oracle stipulate to such an extension and the parties continue to meet and confer on this issue; however, as of this filing Oracle has not indicated it will stipulate to an extension.

above. If the Court finds Plaintiffs' current ECPA allegations regarding tortious intent lacking, Plaintiffs should be granted leave to amend to include these newly-discovered but highly-relevant facts.

## III.   CONCLUSION

Accordingly, Plaintiffs respectfully request that if the Court is inclined to dismiss Plaintiffs' ECPA allegations, Plaintiffs be granted leave to amend in order to plead facts related to this evidence belatedly-produced by Oracle.

Dated: March 11, 2024

*/s/ Michael W. Sobol*
Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Michael W. Sobol, certify that I caused the foregoing document to be served on all counsel for all parties to this action by filing it through the Court's ECF system.

Dated: March 11, 2024                                       */s/ Michael W. Sobol*
                                                          Michael W. Sobol

2958082.3                         -11-