1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  CHRISTIN HILL (CA SBN 247522)
   CHill@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone:    415.268.7000
5  Facsimile:    415.268.7522

6  PURVI G. PATEL (CA SBN 270702)
   PPatel@mofo.com
7  WHITNEY O'BYRNE (CA SBN 325698)
   WOByrne@mofo.com
8  ERIK MANUKYAN (CA SBN 340307)
   EManukyan@mofo.com
9  EMMA BURGOON (CA SBN 348097)
   EBurgoon@mofo.com
10 MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
11 Los Angeles, California  90017-3543
   Telephone:    213.892.5200
12 Facsimile:    213.892.5454

13 Attorneys for Defendant
   ORACLE AMERICA, INC.
14
   *Additional counsel on next page*
15
                    **UNITED STATES DISTRICT COURT**
16
                 **NORTHERN DISTRICT OF CALIFORNIA**
17
                      **SAN FRANCISCO DIVISION**
18

19 MICHAEL KATZ-LACABE, ET AL.,          |  Case No. 3-22-cv-04792-RS

20          Plaintiffs,                   |  **DEFENDANT ORACLE
                                          |  AMERICA INC.'S RESPONSE TO
21      v.                                |  PLAINTIFFS' SUR-REPLY TO
                                          |  DEFENDANT'S MOTION TO DISMISS
22 ORACLE AMERICA, INC., a corporation    |  PORTIONS OF PLAINTIFFS' SECOND
   organized under the laws of the State of |  AMENDED COMPLAINT**
23 Delaware,
                                          |  Judge:  Hon. Richard Seeborg
24          Defendant.
                                          |  Date Action Filed:  August 19, 2022
25                                        |  Trial Date:  Not set

26
              **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**
27

28

ZACHARY S. NEWMAN (NY SBN 5651518)
(Admitted *pro hac vice*)
ZNewman@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone:     212.468.8000
Facsimile:     212.468.7900

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, California 94065
Telephone:     650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

1    **I.      INTRODUCTION**

2            Stripped of all the rhetoric, Plaintiffs' sur-reply amounts to little more than a repeat of

3    what they have already pled in the Second Amended Complaint and already argued in their

4    opposition to Oracle's pending motion to dismiss.  Plaintiffs put before the Court six data

5    spreadsheets Oracle produced after filing its reply (the "Discovery Material"), claiming that these

6    materials "show" that Oracle acted with a "tortious purpose" sufficient to trigger ECPA's crime-

7    tort exception.  Even if their portrayal of the data was accurate—and it is not—this purportedly

8    "new" "evidence" *is irrelevant to Oracle's Rule 12(b)(6) motion*.  It should not and cannot be

9    considered.

10           Seeking to avoid this result, Plaintiffs characterize their sur-reply as an anticipatory

11   request for leave to amend the Second Amended Complaint "to address any shortcomings in the

12   pleadings."  Plaintiffs' request for leave to amend should be denied as futile.  Even if accepted as

13   true, Plaintiffs' mischaracterizations of the Discovery Material add nothing new to the ECPA

14   claim that they have tried to advance (unsuccessfully) since the start of this lawsuit.  Nor is there

15   any merit to Plaintiffs' claim that Oracle "concealed" the Discovery Material or otherwise

16   delayed its production.  Rather, as Plaintiffs are well aware, Oracle was forced to expend

17   considerable resources to create the Discovery Material at Plaintiffs' behest for purposes of the

18   litigation.  It did so because Oracle *does not generate or use such records in the ordinary course*

19   *of business*.

20           Finally, Plaintiffs' sur-reply makes plain that they fundamentally misunderstand the

21   documents they cite.  Had Plaintiffs investigated Oracle's policies and practices in relation to

22   "sensitive personal information," they would be well aware that the Discovery Material does *not*

23   suggest that Oracle sells advertising segments based on such data.  For all these reasons, the

24   Court should dismiss Plaintiffs' ECPA claim without leave to amend.

25   **II.     ARGUMENT**

26           **A.      The Discovery Material Is Irrelevant to the Pending Motion to Dismiss**

27           Plaintiffs contend that the Discovery Material shows that Oracle creates advertising

28   segments based on "highly sensitive" data, contrary to its privacy policy and to its representations

1    before this Court.  (ECF No. 98-3 ("Sur-Reply") at 2-3.)  Even accepting this inaccurate

2    characterization as true, it is ***entirely irrelevant*** to Oracle's motion to dismiss because Plaintiffs

3    already ***alleged*** that Oracle does what they claim the Discovery Material purportedly ***shows***, and

4    the Court accepts those allegations as true in ruling on Oracle's motion to dismiss.  *See Rowe v.*

5    *Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (courts must "accept all

6    factual allegations in the complaint as true" when evaluating a motion to dismiss); (*see also* SAC

7    ¶ 130 ("despite Oracle's representations to the public, Oracle has continued to offer 'sensitive

8    interest segments' for sale"); *see also* Opp. at 14 (discussing same allegations).)  As the Ninth

9    Circuit has held, when "determining the propriety of a Rule 12(b)(6) dismissal, a court ***may not***

10   look beyond the complaint . . . such as a memorandum in opposition to a defendant's motion to

11   dismiss," or, in this case, Plaintiffs' sur-reply.  *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194,

12   1197 n.1 (9th Cir. 1998) (emphasis in original).  As such, Plaintiffs' attempt to put forward

13   supposed "new evidence" to "address any shortcomings in the pleadings" should be flatly

14   rejected.  *Cf. In Re Cloudera, Inc.*, No. 19-CV-03221-LHK, 2021 WL 2115303, at *8 n.2 (N.D.

15   Cal. May 25, 2021) (denying motion for leave to file a sur-reply where proposed sur-reply would

16   offer new evidence in support of motion to dismiss); *see also ex rel. Garrett v. Elk Grove Unified*

17   *Sch. Dist.*, No. 2:17-cv-00729-TLN-KJN, 2018 WL 1726646, at *2 (E.D. Cal. Apr. 10, 2018) (it

18   is "axiomatic" that factual averments in a "complaint may not be amended by the briefs"); (Sur-

19   Reply at 1).  Because the Court "may not look beyond [the SAC,]" Plaintiffs' request to

20   preemptively "address any shortcomings in the pleadings" through their sur-reply should be

21   denied.  *Schneider*, 151 F.3d at 1197 n.1; (Sur-Reply at 1.)

22          **B.    A Third Amended Complaint Again Repleading an ECPA Claim Would Be**
                    **Futile**

23
24          Recognizing the impropriety of their offered "evidence" in opposition to Oracle's motion

25   to dismiss, Plaintiffs present their sur-reply as an anticipatory request for leave to try to plead

26   their ECPA claim a fourth time through a ***Third*** Amended Complaint.  The request for leave to

27   amend should be denied.  Plaintiffs offer two supposed bases for their request for leave: (1) the

28   Discovery Material supposedly "shows" that Oracle "did in fact" create "sensitive" profiles,

1   contrary to Oracle's representations (Sur-Reply at 9); and (2) the timing of Oracle's production

2   somehow amounts to "concealment" and thereby reflects Oracle's "tortious purpose." (Sur-Reply

3   at 7-10.)  But neither allegation in any way advances Plaintiffs' assertion that Oracle operates its

4   business with an "'insidious' intent to harm [P]laintiffs or others." *In re DoubleClick Inc. Priv.*

5   *Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001).  Because Plaintiffs' proposed amendments

6   would not cure the deficiencies of the prior complaints and the parties would be in the exact same

7   place as they are today, the ***Third*** Amended Complaint "would immediately be 'subject to

8   dismissal.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 328 F.

9   Supp. 3d 963, 983 (N.D. Cal. 2018) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293,

10   1298 (9th Cir. 1998)).  Plaintiffs' request for leave to amend should therefore be denied as futile.

11   *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) ("[f]utility alone" is sufficient grounds

12   to deny leave to amend).

13          **1.      Plaintiffs' allegations based on the Discovery Material are identical to**
14                 **those the Court previously found insufficient to apply ECPA's crime-**
                  **tort exception and to the allegations in the SAC**

15          The sur-reply makes clear that Plaintiffs' "new" allegations based on the Discovery

16   Material are not actually new.  Even if Plaintiffs' allegations as to the contents of the Discovery

17   Material were accurate, they are ***substantively identical*** to the allegations that the Court has thus

18   far found insufficient to apply ECPA's crime-tort exception and to the defective allegations at the

19   center of the SAC.  Plaintiffs have alleged, ***since the start of this lawsuit***, that:

20     •   "Oracle's Health and Wellness segments reveal sensitive, health-related types of personal
           information Oracle collects on Class members[,] . . . [with] segments includ[ing]
21           individuals struggling with insomnia . . . acne ("Acne Treatments"), weight issues[,]
           [etc.]" (Complaint ¶ 61, First Amended Complaint ("FAC") ¶ 76);
22
       •   Oracle "boasts a dataset that includes 'extensive political identification, coalition and
23           membership information'" (Complaint ¶ 65(c), FAC ¶ 80(c));

24     •   Oracle offers "segments such as . . . 'Pro Marriage Same Sex,' 'Pro Traditional
           Marriage,' 'Democratic Voters,' [and] 'Independent Voters, [among others]" (Complaint
           ¶ 65(c), FAC ¶ 80(c)); and
25
       •   ***Contrary to Oracle's privacy policy,*** "data brokers on the Data Marketplace sell data on
26           individuals' politics." (Complaint ¶ 98, FAC ¶ 113.)

27   The Court has already considered these allegations.  Indeed, the Court's prior ruling on Plaintiffs'

28   California intrusion upon seclusion claims that Plaintiffs refer to in the sur-reply ***explicitly cites to***

1    ***these exact allegations*** in the Complaint.  (*See* Sur-Reply at 7 (citing ECF No. 49 at 12); ECF

2    No. 49 at 12 (citing Complaint at 14-15, 27, 31-32, 44).)  But, critically, the Court dismissed

3    Plaintiffs' ECPA claim in the same Order, concluding that "[Oracle's] 'purpose has plainly not

4    been to perpetuate torts on millions of Internet users, but to make money.'"  (ECF No. 49 at 16

5    (quoting *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal.

6    May 21, 2021)); *see also* ECF No. 77 at 11 n.11 (similar).)  Plaintiffs' "Discovery Material"

7    allegations, substantially identical to those the Court has already considered, do not warrant any

8    departure from the Court's prior ruling.

9           Plaintiffs' Discovery Material-based assertions are also coextensive with their allegations

10   in the SAC.  Seeking to replead their ECPA claim, Plaintiffs added allegations in the SAC for the

11   proposition that, "despite Oracle's representations to the public, Oracle has continued to offer

12   'sensitive interest segments' for sale."  (SAC ¶ 130 (citing a "nonprofit news publication").)

13   Now, Plaintiffs attempt to put before the Court supposedly "new" "evidence" that they say

14   "shows" that these same allegations are true.  (*See* Sur-Reply at 9 ("this data definitively resolves

15   'whether Oracle plausibly did collect and aggregate information to reveal' sensitive information")

16   (quoting ECF No. 49 at 12).)  Though Plaintiffs' allegations ***are untrue***, the truth of the

17   allegations is of course beside the point.  (*See* ECF No. 49 at 5 ("[w]hen evaluating [a Rule

18   12(b)(6)] motion, the court must accept all material allegations in the complaint as true and

19   construe them in the light most favorable to the non-moving party").)  The point is, even if true,

20   "such allegations would still fail to plausibly allege that Oracle intended to harm web users."

21   (ECF No. 88 ("Mot.") at 9; ECF No. 92 ("Reply") at 12.)  That's because, as discussed in

22   Oracle's opening brief, "Oracle's alleged conduct in creating and selling the [] purportedly

23   sensitive segments is lawful and [(as Plaintiffs themselves claim)] motivated by the company's

24   profit incentive."  (Mot. at 10; *see also* SAC ¶¶ 42, 268, 275 (discussing Oracle's "plan to profit

25   from" putative class members' data); Mot. at 8-11; Reply at 12-13.)  Additional documents

26   purportedly showing Oracle's "inferences" about Plaintiffs' politics, health, gender, race, and

27   sexual reproductive decisions will not change that analysis.  As such, Plaintiffs' proposed

28   amendments concerning the Discovery Material's contents would not cure the deficiencies of the

1    prior complaint and would "immediately be 'subject to dismissal.'" *In re Volkswagen*, 328 F.

2    Supp. 3d at 983 (citation omitted).  As a result, Plaintiffs' anticipatory request for leave to amend

3    should be rejected as futile.  *See id.* at 983 (amendment futile where "there is no reason to believe

4    that 'the deficiencies can be cured with additional allegations'") (citing *United States v.*

5    *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)).

6                    **2.      The timing of Oracle's production does not plausibly suggest any**
                             **tortious intent**
7
         Looking beyond the four corners of the SAC (and the produced documents), Plaintiffs
8
     suggest that the timing of Oracle's production somehow further supports their position that Oracle
9
     conducts its business with a "culpable mind."  (*See* Sur-Reply at 9.)  Not so.  Oracle has diligently
10
     responded to Plaintiffs' overly burdensome discovery requests over the last fifteen months.  Even
11
     so, Plaintiffs refer to a February 28, 2023 letter from Oracle's counsel to imply that Oracle has
12
     previously taken the position that it did not have in its possession the Discovery Material
13
     Plaintiffs now put before the Court.  (*See* Sur-Reply at 8 (claiming Oracle represented that "it had
14
     no data in its possession related to Plaintiffs beyond what was contained in [Plaintiffs'] OARRRs
15
     [attached to the complaint]").  The portion of the letter Plaintiffs raise in the sur-reply concerns
16
     their request for all "personal data about the Plaintiffs in this action" (Plaintiffs' RFP No. 2).
17
         Contrary to Plaintiffs' characterization, Oracle never suggested that the Discovery
18
     Material ***did not exist***.  Instead, as Oracle represented in the very letter Plaintiffs cite, Oracle "can
19
     only tie the advertising segments associated with an individual's identifiers at the time an
20
     individual makes a[n] [OARRR]."  (Declaration of Christin J. Hill ("Hill Decl.") Ex. A at 4
21
     (February 28, 2023 Letter from W. O'Byrne to Plaintiffs' Counsel).)  Oracle generates reports of
22
     segments associated with an individual's offline identifiers—or "OARRRs"—following a request
23
     from a consumer, as is required under the California Privacy Rights Act (previously, California
24
     Consumer Privacy Act).  Plaintiffs allege as much.  (*See* SAC ¶¶ 4, 20.)  As Oracle has repeatedly
25
     represented to Plaintiffs, Oracle ***does not employ a process in the ordinary course of business*** to
26
     gather all information over time that may be associated with a given individual's identifiers
27
     outside of this specialized OARRR process.  (*See, e.g.,* Hill Decl. Ex. A at 2 ("Oracle can only
28

1  create a[n] [OARRR] tying an individual's identifiers to advertising segments upon individual

2  request and after tha[t] individual has verified their identity.").)  Following the parties' meet and

3  confers on the request, the parties turned their attention to other discovery matters and briefing on

4  Oracle's motion to dismiss the First Amended Complaint.  Plaintiffs did not return to this issue

5  until November 2023—nine months after Oracle's February 2023 letter—and did so only after

6  meeting and conferring on an entirely different set of document requests (*i.e.*, Plaintiffs' second

7  set).  (Hill Decl. ¶¶ 9-11.)

8       Oracle worked in good faith to generate the Discovery Material in response to Plaintiffs'

9  second set of document requests notwithstanding technical challenges.  Plaintiffs served their

10  second set of requests on September 12, 2023—months after the parties last communicated

11  regarding Plaintiffs' request for "personal data" (RFP No. 2).  Plaintiffs' second set included a

12  request for "data in native format . . . Oracle used or relied on to produce the OARRRs" (RFP No.

13  28), which Oracle interpreted as distinct from RFP No. 2.  Indeed, the parties met and conferred

14  on Plaintiffs' second set of document requests on November 9, 2023 and at no point discussed

15  RFP No. 2.  (Hill Decl. ¶ 9; *see also id.* Ex. C at 4 (November 22, 2023 Letter from C. Hill to

16  Plaintiffs' Counsel).)  Rather, after months of inactivity, Plaintiffs re-raised RFP No. 2 in a letter

17  sent on November 14, 2023—five days after the parties' meet and confer.  (*Id.* Ex. B at 4.)  Once

18  Oracle received the letter, it continued to meet and confer with Plaintiffs on both RFP Nos. 2 and

19  28 into the new year, while Oracle simultaneously investigated the feasibility of Plaintiffs'

20  request that Oracle ***prepare*** the information not available in the ordinary course of business.  (*Id.*

21  ¶¶ 12-13.)

22       Oracle explored Plaintiffs' requests and ultimately produced the Discovery Material

23  showing audience segments and other available information associated with Plaintiffs' online

24  identifiers.  Simply put, Oracle did not "conceal" anything in its responses to Plaintiffs' discovery

25  requests.  Rather, Oracle's production is in keeping with the manner in which litigation

26  progresses as the parties met and conferred on discovery and, at times, turned their attention to

27  other activities in this case, like briefing.  As such, Plaintiffs' allegations of delay and of Oracle's

28

1   purported "tortious intent" are unfounded, and their preemptive request for leave to amend the

2   complaint should be denied.[1]

3   **C.      Plaintiffs Fundamentally Misunderstand the Discovery Material they Put
            Before the Court**

4

5       Plaintiffs' characterizations of the Discovery Material—and their associated claim that

6   Oracle "misrepresented" its privacy practices to the Court—are irrelevant to Oracle's motion to

7   dismiss and to Plaintiffs' request for leave to amend.  Even so, in light of Plaintiffs' heated

8   rhetoric, it bears emphasizing that Plaintiffs lack even a basic understanding as to how Oracle

9   handles "highly sensitive" data pursuant to its privacy policy.  As a result, Plaintiffs

10  fundamentally misunderstand the contents of the Discovery Material, and their accusation that

11  Oracle "misrepresented its sale of these interest segments to the Court" is baseless.  (Sur-Reply at

12  2.)

13      ***First***, Plaintiffs' argument is premised on a gross mischaracterization of the Discovery

14  Material, evidencing a vital gap in their knowledge of how Oracle handles "highly sensitive"

15  data.  This gap in knowledge is a direct result of Plaintiffs' failure to engage in even the most

16  basic discovery.  Indeed, Plaintiffs waited until November 2023 to seek discovery regarding

17  Oracle's alleged "collection, purchase, sale or use of 'sensitive personal information'" and

18  Plaintiffs have yet to agree to search terms for that discovery, which have been pending with

19  Plaintiffs for more than two weeks now.[2]

20      More critically, in more than fifteen months of discovery, Plaintiffs have yet to take the

21  deposition of a corporate witness regarding alleged "sensitive" advertising segments or on any

22  other matter.  In fact, Plaintiffs have taken only one deposition of a relatively low-level Oracle

23      [1] Plaintiffs' cited cases are inapposite as neither deal with alleged discovery delays, and
    therefore cannot support Plaintiffs' bold assertion that the alleged "delays" reflect a tortious

24  purpose under the ECPA's crime-tort exception.  *See United States v. Galecki*, 89 F.4th 713, 728
    (9th Cir. 2023) (finding requisite scienter to support conviction under Controlled Substances Act

25  given defendants' false labeling of a cannabinoid as "potpourri" and "incense"); *In re Nature's
    Sunshine Prod. Sec. Litig.*, 486 F. Supp. 2d 1301, 1311 (D. Utah 2007) (allegation that defendants

26  misrepresented fraudulent activities to auditors satisfied scienter requirement for Rule 10b–5(b)
    claim).

27      [2] Plaintiffs have yet to respond as to Oracle's proposed terms for ***any*** of Plaintiffs' RFP Set
    Two and Three requests to be included in Oracle's document review during this time.  (Hill Decl.

28  at ¶ 14.)

1  employee (in his individual capacity), seemingly picked at random, with little knowledge of the

2  products at issue in the litigation and no knowledge at all regarding Oracle's processes for

3  updating or enforcing its privacy policy.  (Hill Decl. at ¶ 5.)  In meet and confer, Oracle has

4  repeatedly implored Plaintiffs to take a Rule 30(b)(6) deposition to address their obvious

5  information gaps, but Plaintiffs have refused.[3]  (*Id*.)  Having failed to reasonably investigate the

6  matters they now put before the Court, Plaintiffs cannot substantiate their claims as to what the

7  Discovery Material "shows."

8           ***Second***, had Plaintiffs investigated these issues, they would have learned that their claims

9  as to what the Discovery Material "shows" are entirely wrong.  As an initial matter, the

10  documents ***do not support*** Plaintiffs' claim—repeated since the early days of this litigation—that

11  Oracle maintains "profiles" on individuals.  (Sur-Reply at 4.)  Rather, the Discovery Material—

12  some six spreadsheets of data ***generated solely for purposes of litigation***—reflects offline and

13  third-party data sets that are associated with identifiers that Oracle believes ***may*** be (but cannot be

14  sure is) associated with Plaintiffs.  More fundamentally, the Discovery Material ***does not show***

15  that "Oracle continues to buy, sell, and/or create sensitive information and inferences about

16  Plaintiffs."  (*Contra* Sur-Reply at 3.)  To the contrary, had Plaintiffs investigated the matters

17  raised in the sur-reply, they would have learned that:

18  •   ***Nearly half*** of the segments Plaintiffs identify in the sur-reply have previously been
           identified by Oracle's compliance team during routine audits, have been deprecated, ***and***
19         ***have not since been sold to any Oracle customer***;

20  •   ***More than half*** of the segments Plaintiffs identify on the topic of health specifically
           concern the purchase of over-the-counter treatments and do not, therefore, reflect "precise
21         health, biometric, or genetic information" under Oracle's privacy policy;

22  •   The political segments Plaintiffs identify—such as a segment for individuals likely to
           "████████████"[4]—merely reflects civic engagement generally and are
23         not considered by Oracle's compliance team to reflect "political orientation" under the
           privacy policy; and

24

25      [3] Because Plaintiffs have failed to take such basic discovery or to seriously advance their case
    in the fifteen months it has been pending, Oracle is concerned about Plaintiffs' attempt to move
26  the class certification deadlines (again).  The parties continue to meet and confer about the case
    schedule, however.  (*See* Sur-Reply at 9 n.18.)

27      [4] Oracle files the foregoing interest segment under seal pursuant to Plaintiffs' Administrative
    Motion to File Under Seal.  (*See* ECF No. 98; *see also* Sur-Reply at 5 n. 13 (referring to interest
28  segment).)  Oracle does not oppose Plaintiffs' sealing motion.

- Alcohol segments targeting individuals of legal drinking age do not violate Oracle's privacy policy.

Once Plaintiffs choose to undertake meaningful discovery, that discovery will show that Plaintiffs' claims arising from the Discovery Material are simply wrong.

*Third*, Oracle rejects Plaintiffs' allegation that Oracle misrepresented its sale of these interest segments to the Court.  (*Contra* Sur-Reply at 3.)  As stated in its reply, "Oracle stands by its prior representation that it 'does not use any data it receives from customers to create sensitive interest segments.'" (Reply at 12 n.12 (quoting ECF No. 63 at 3).)  The Discovery Material Plaintiffs now put before the Court in no way undermines that representation.  Plaintiffs' claims to the contrary are entirely speculative and lack any factual basis.

## III.  CONCLUSION

For the foregoing reasons, Oracle respectfully asks the Court to decline Plaintiffs' invitation to consider their "new evidence" in resolving Oracle's motion to dismiss and to deny Plaintiffs' request for leave to amend to replead their ECPA claim as futile.  *See Nunes*, 375 F.3d at 808.

Dated: March 18, 2024

MORRISON & FOERSTER LLP

By:   */s/ Purvi G. Patel*
        Purvi G. Patel

**Attorneys for Defendant**
**Oracle America, Inc.**