TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CHRISTIN HILL (CA SBN 247522)
CHill@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
WHITNEY O'BYRNE (CA SBN 325698)
WOByrne@mofo.com
ERIK MANUKYAN (CA SBN 340307)
EManukyan@mofo.com
EMMA BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:    213.892.5200
Facsimile:    213.892.5454

Attorneys for Defendant
ORACLE AMERICA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL KATZ-LACABE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware, <br><br> Defendant. | Case No. 3-22-cv-04792-RS <br><br> **JOINT LETTER BRIEF RE: ORDER TO COMPEL FORENSIC INSPECTION OF PLAINTIFFS' DEVICES** <br><br> Judge:  Hon. Richard Seeborg <br><br> Magistrate Judge:  Hon. Kandis Westmore <br><br> Date Action Filed:  August 19, 2022 <br> SAC Filed:  November 17, 2023 <br> Trial Date:  Not set |

**The parties attest that they met and conferred by videoconference on the issues raised herein.  The parties further attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to this filing.**

ZACHARY S. NEWMAN (NY SBN 5651518)
(Admitted *pro hac vice*)
ZNewman@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone:     212.468.8000
Facsimile:     212.468.7900

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, California 94065
Telephone:     650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

Attorneys for Plaintiffs and the Proposed Class

March 27, 2024

The Honorable Kandis A. Westmore
United States District Court, Northern District of California
1301 Clay Street, Oakland, CA 94612

    **Re:** *Katz-Lacabe et al v. Oracle America, Inc.*, **N.D. Cal. 3:22-cv-04792**

Dear Judge Westmore:

    Counsel have met and conferred to resolve this dispute, but Oracle understands the parties have now reached an impasse.  Below, each party has provided its position regarding the discovery dispute, and whether any relief is appropriate.

## I.    <u>ORACLE'S POSITION</u>

    At the heart of Plaintiffs' case is the allegation that Oracle collected their "Internet activity" without their consent.  (ECF No. 87 ¶¶ 146, 162.)  On February 8, 2023, Oracle served targeted document requests upon Plaintiffs seeking information necessary to analyze Plaintiffs' relevant "Internet activity" and defend against this core allegation.[1]  More than a year later, Plaintiffs ***still*** refuse to produce this highly relevant and responsive data.  Accordingly, Oracle requests that this Court compel Plaintiffs to provide a complete response to Oracle's RFPs, including a forensic inspection of Plaintiffs' devices.

    The information sought by Oracle's RFPs is critical to defending against Plaintiffs' privacy claims, including whether Plaintiffs had a reasonable expectation of privacy in their online data.  Specifically, Oracle seeks a targeted forensic inspection to:

- Obtain a full list of cookie IDs to (i) identify what online data (if any)[2] Oracle has regarding Plaintiffs and (ii) understand when and under what circumstances Plaintiffs have consented to the collection of their online data (RFP Nos. 1-8 and 10-16);
- Assess whether Plaintiffs have gained knowledge of online data collection practices by visiting privacy policy, terms and conditions, and opt-out pages on websites, and whether Plaintiffs proceeded to engage with those same websites without opting out of collection; and

---

[1] Oracle's **RFP Nos. 1-7** seek a "FORENSIC IMAGE of each DEVICE," that Plaintiffs used between August 19, 2018 through the present, to access websites that Plaintiffs allege used "COOKIES" (RFP No. 1); the "CORE TAG" (RFP No. 2); "TRACKING PIXELS" (RFP No. 3); "DEVICE IDENTIFIERS" (RFP No. 4); "CROSS-DEVICE TRACKING" (RFP No. 5); the "ADDTHIS tool" (RFP No. 6); and the "DATALOGIX tool" (RFP No. 7).  Oracle's **RFP No. 8** seeks Plaintiffs' "BROWSER HISTORY," from August 19, 2018 through the present, from their web-enabled devices.  Oracle's **RFP Nos. 10-16** request documents and ESI concerned with "each instance" Plaintiffs "OPTED IN" or "OPT[ED] OUT" of online data collection of their "PERSONAL INFORMATION" and related web technologies.  A critical subset of these documents and ESI can only be identified through the requested forensic images and web browsing history in RFP Nos. 1-8.

[2] Online data (unlike the *offline* data the Court has considered in Plaintiffs' Offline Access Request Response Reports (OARRRs); *see* ECF No. 87 Exs. A-B) is stored in Oracle's systems *only* in a pseudonymized format. Oracle requires a complete list of Cookie IDs to attempt to associate any of this online data with the Plaintiffs.

- Assess apparent gaps in Plaintiffs' document production and determine whether that highly relevant data is forensically recoverable by a data expert (RFP Nos. 1-7).

Because Oracle cannot conduct these inquiries without a forensic image of Plaintiffs' devices, the information sought goes to the core of Plaintiffs' privacy claims, and producing forensic images of relevant devices would impose no additional burden on Plaintiffs, Oracle's RFPs are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); see In re Apple Inc. Device Performance Litig., No. 5:18-md-02827-EJD, 2019 WL 3973752, at *2-3 (N.D. Cal. Aug. 22, 2019) (permitting forensic inspection where devices at issue were "closely connected with the claims and/or defenses in the litigation"); Est. of Logan v. City of S. Bend, No. 3:19-CV-495-DRL-MGG, 2021 WL 389412, at *4 (N.D. Ind. Feb. 3, 2021) ("Courts are more likely to grant forensic exams when the sought-after information goes to the heart of the case."); ML Fashion, LLC v. Nobelle GW, LLC, No. 3:21-cv-499 (JCH), 2022 WL 1658845, at *7 (D. Conn. May 25, 2022) (granting forensic inspection where the request was "relevant to [the] claims" at issue and the moving party had "no access to this information on [its] own").

To date, Plaintiffs have only produced a handful of spreadsheets purporting to be select browser data from three (out of five) of Plaintiffs' internet-enabled devices.[3]  Plaintiffs' production is facially deficient because it excludes the vast majority of their responsive web histories, including visits to privacy policy, terms and conditions, and opt-out pages, which may establish Plaintiffs' knowledge and consent to online data collection.  Plaintiffs' production also omits a complete list of all of their cookie identifiers or mobile advertising identifiers (collectively, "cookie IDs") stored on their browsers.[4]  By withholding that information, Plaintiffs prevent Oracle from investigating bedrock allegations in this lawsuit, including whether Oracle captured Plaintiffs' online data at all.

Plaintiffs' primary objection to providing the forensic images appears to be privacy. Specifically, Plaintiffs contend that Oracle seeks unfettered access to their devices, which will only serve to further invade their privacy interests.  That is simply not true.  Oracle's request for forensic inspection is narrowly targeted at their web browsing applications and associated files. Oracle does not seek access to irrelevant information like Plaintiffs' "text messages[,] email[,] photos, audio recordings, video[s], contacts," or other non-web-browsing-related files.  See, e.g., Apple, 2019 WL 3973752, at *2 (compelling forensic inspection where Apple's request for forensic inspection was narrowly targeted and did not seek "irrelevant information such as electronic communications").  Moreover, Plaintiffs' privacy and confidentiality concerns are addressed by the parties stipulated protective order in this case, (ECF No. 28), and present no basis to withhold discovery.  See Apple, 2019 WL 3973752, at *2 (compelling forensic inspection because the parties' "Stipulated Protective Order provide[d] robust protections" against any privacy concerns); see also Belcastro v. United Airlines, Inc., No. 17 C 1682, 2019 WL 7049914, at *4 (N.D. Ill. Dec. 23, 2019) (granting forensic exam where plaintiff's privacy concerns were addressed by confidentiality protocols).

---

[3] Despite confirming for Oracle that as of December 19, 2023, the two remaining devices had also been forensically imaged, Plaintiffs have yet to make a production of those forensic images, or any ESI saved on those devices.
[4] Plaintiffs' June 29, 2023 production selectively provides cookie IDs from Katz-Lacabe's Opera browser, while wholly excluding cookie IDs from others—i.e. Google Chrome, Safari, Firefox, and Edge.  Golbeck, meanwhile, produced no cookie IDs from her imaged phone.

In any event, to further address Plaintiffs' privacy concerns, Oracle proposed a neutral forensic expert to perform a targeted inspection of Plaintiffs' devices pursuant to a negotiated forensic inspection protocol.  (Oracle's Version, **Ex. A**.)  Plaintiffs have conceded that most of the browser information contemplated in Oracle's proposed protocol is relevant to this litigation and responsive to Oracle's RFPs.  (*See* Plaintiffs' Latest Version, **Ex. B**.)  Plaintiffs now dispute only one component of Oracle's proposed protocol: Plaintiffs refuse to allow the neutral expert to notify the parties if he / she discovers evidence of deleted data.  This is unacceptable.  Oracle is entitled to know if Plaintiffs have deleted browser files that bear on the completeness of their production.  That information would be available to Oracle from the full "forensic image[s]" sought by RFP Nos. 1-7.  Moreover, questionable data gaps in Plaintiffs' June 29 production raise concerns about the completeness of Plaintiffs' data.  Specifically, Plaintiffs' June 29 production showed (i) *years* of seemingly missing browsing history within the alleged class period, (ii) what appeared to be lists of hand-selected websites, and (iii) some cookie names, but with the vast majority accompanied with blank values for the associated cookie identifiers.  Courts (including this one) routinely grant forensic inspection where there are "serious questions" as to the "reliability and the completeness of materials produced," and in doing so expressly allow for the identification and recovery of deleted files.  *See, e.g.*, *Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006) (Seeborg, M.J.) (ordering forensic inspection and recovery of "deleted documents").

Accordingly, Oracle requests that the Court enter an order compelling Plaintiffs to provide a complete response to Oracle's RFP Nos. 1-7 and 10-16 within 14 days, with forensic imaging to be performed by Control Risks Group LLC.  In the alternative, Oracle requests that the Court enter an order adopting Oracle's proposed forensic inspection protocol in full.

## II.    PLAINTIFFS' POSITION

After months of compromise by Plaintiffs, the parties were about to execute a forensic inspection protocol selecting a third-party neutral to conduct searches of Plaintiffs' fully imaged devices, when Oracle raised two spurious issues, seemingly to thwart agreement.  Plaintiffs have yielded on one issue (*i.e.*, searches for cookie IDs) though it is irrelevant to this case.  *See* Ex. B ¶¶ 2.5(b)(vii), (viii).  Thus, the *sole* dispute to resolve here concerns Oracle's request, which Plaintiffs strongly oppose, that the Court allow the forensic expert to forage for spoliation of data in a manner untethered to the parties' search terms.  Oracle has no reasonable basis to suspect possible spoliation, but to be clear, if searches properly conducted pursuant to the proposed protocol show evidence of spoliation, then the forensic neutral will so report.  *See id.* ¶ 2.5(a).  Accordingly, the Court should deny Oracle's motion to give the forensic neutral free range to conduct inquisitions into Plaintiffs' data.  Such authority would exceed the scope of permissible discovery under Rules 26 and 34 by failing to state with reasonable particularity the documents requested, and amounts to a sweeping, unsubstantiated inquiry into Plaintiffs' personal data.

As Oracle raises issues not disputed by the parties, Plaintiffs clarify the current status of disputes so that the Court not be misled.[1]  At the outset of this case, Plaintiffs diligently imaged

---

[1] So, for example, when Oracle argues that the protocol won't give the forensic expert "unfettered access," it cites the provisions that the parties have agreed to, rather than the provision at issue.  *Supra*, at 2; *infra*, n.2.

their devices.  On June 29, 2023, Plaintiffs produced forensically extracted data from three of these images in response to Oracle's RFP Nos. 1–7.  This expansive data included information about Plaintiffs' browsing histories reflecting visits to websites with Oracle tracking mechanisms, recorded IP and MAC addresses associated with their network interface, and where available, browser extensions associated with ad-blockers.  This data spanned years of Plaintiffs' browsing histories, thousands of website visits, and cookies relevant to those websites.

On September 15, 2023, Oracle raised the concept of having a protocol for a neutral forensic to conduct searches of Plaintiffs' data.  While Plaintiffs maintained that seeking further data was unnecessary, they agreed in principle to avoid burdensome motion practice.  On October 27, 2023, Oracle proposed a draft protocol that was devoid of any mention of spoliation.  During a November 16, 2023 "meet and confer," Oracle made no mention of searching for evidence of spoliation.  On November 28, 2023, the parties conferred about a *separate* discovery dispute over Oracle's acknowledgement that it deleted from its systems all "raw" or "intake" data predating the filing of the Complaint, in violation of paragraph V.1 of the parties' ESI Protocol (Dkt. 48).  Sure enough, on January 9, 2024, Oracle offered more revisions which first introduced a spoliation provision.[2]

This was also the first time Oracle added another term demanding that Plaintiffs produce cookies beyond those from Oracle-related websites. Plaintiffs maintain that cookies deposited on Plaintiffs' devices related to non-Oracle browsing history have no bearing on their reasonable expectation of privacy and are irrelevant.  Once again, Plaintiffs have, in the spirit of compromise, agreed to allow the forensic expert to search for this data, but in doing so, reserve all their objections.  (Oracle engages in rhetorical distortion by stating that Plaintiffs have "conceded" the relevancy of this material. *Supra* at 3.) Thus, Plaintiffs have agreed to proceed with the protocol as it appears in Exhibit B, *i.e.*, the same protocol Oracle seeks but without the Spoliation Provision.

Oracle's proposed Spoliation Provision must be rejected.  First, it simply is unnecessary: Plaintiffs have already agreed that the neutral forensic expert "shall attempt to recover on each [device's] image and through reasonable means all deleted files it anticipates may be responsive, or contain responsive data," and "will maintain a list of all deleted files and artifacts that it was able to recover."  Ex. B ¶ 2.5(a).  This agreed-upon provision already ensures that a reasonable effort will be made to identify and recover deleted files should any be found.

Second, "[D]istrict courts across the country have consistently held that mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support . . . an intrusive [forensic] examination.  Thus, a requesting party's desire to confirm the completeness of the responding party's production is insufficient." *Juul Labs, Inc. v. Chou*, No. 21-03056, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022) (internal citations and quotations omitted); *see also Johns v. Chemtech Servs., Inc.*, No. 20-7299, 2021 WL 4498651, at *3 (N.D. Ill. Aug. 27, 2021) ("[A] clear showing of discovery misconduct is needed to make a compelled forensic examination permissible.").  Oracle's desire to confirm

---

[2] The provision at issue reads in full: "Control Risks [*i.e.*, the forensic neutral] will also notify the parties, if in investigating Plaintiffs' browser applications, it finds evidence that data was deleted in violation of Plaintiffs' preservation obligations since their filing of this lawsuit." Ex. B ¶ 2.5(b) ("Spoliation Provision").

"the completeness of [Plaintiffs'] production," *supra* at 3, is insufficient to warrant a forensic search for spoliation—especially when Plaintiffs have not yet had the chance to complete their production as Oracle continues to hold up the execution of its own forensic inspection protocol. *See Moser v. Health Ins. Innovations, Inc.*, No. 17-1127, 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018) (denying a forensic inspection of plaintiff's electronic devices, finding testimony that his computer automatically deleted his browsing history was "not sufficient to warrant [such a] drastic discovery measure[]," (citations omitted)). Oracle fails to present any basis for concern that Plaintiffs have violated their preservation duty or otherwise failed to cooperate in the discovery process. In fact, Plaintiffs diligently imaged their devices at the beginning of this litigation to prevent the concerns that Oracle now imagines.

Third, Oracle would pervert Rule 34 by failing to identify with "reasonable particularity" the specific information or documents the forensic neutral would search for. Fed. R. Civ. P. 34(b)(1)(A) (requiring requests "describe with reasonable particularity each item or category of items to be inspected"); Manual for Complex Litig. § 11.443, at 75 (encouraging courts to "forbid sweeping requests"). Accordingly, Oracle is not entitled "to engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance." *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012). The Spoliation Provision fails to identify with "reasonable particularity" what information it seeks, and therefore must be stricken from the draft protocol.

Fourth, Oracle would have this Court enter an order granting the equivalent of a Colonial-era "writ of assistance," *i.e.*, the unbounded authority to search through Plaintiffs' private possessions in the hopes of finding some infraction without any reasonable suspicion therefor. Oracle's brazen proposal is to grant the third party neutral unfettered discretion to fashion any type of search whatsoever to see if something can found that may assist its effort to avoid accountability for its conduct. Long before Rule 34's "reasonable particularity" was adopted, in 1970, the Supreme Court recognized the need for some legitimate investigative purpose to which the production demand must be reasonably relevant and for reasonable definiteness in the demand. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186 (1946). The Court has stated that subpoenas so broad or indefinite "approach in this respect the character of a general warrant or writ of assistance, odious in both English and American history." *Id*. at 207. Justice Holmes condemned such demands to "search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." *FTC v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924) (concluding that Congress did not intend to authorize "fishing expeditions into private papers on the possibility that they may disclose evidence of crime").

In sum, Oracle grossly overreaches in ways that would undermine the basic principles of equity and fairness that serve as a foundation for the Rules of Civil Procedure. The object of Oracle's Spoliation Provision—to launch limitless searching into Plaintiffs' private devices— would also undermine the very values and interests Plaintiffs seek to protect through this litigation. Indeed, the nature and circumstances of Oracle's request is so extreme that it can only be seen as an effort to intimidate and harass Plaintiffs for having engaged in a civil process to protect themselves and others from like treatment. *See* N.D. Cal. Guidelines for Professional Conduct. Accordingly, Plaintiffs respectfully request that the Court deny Oracle's motion.

Respectfully submitted,

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**

By:  */s/ David T. Rudolph*

David T. Rudolph
drudolph@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
Fax: (415) 956-1008

*Attorney for Plaintiffs and*
*the Proposed Class*


**MORRISON & FOERSTER LLP**

By:  */s/ Christin Hill*

Christin Hill
chill@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorney for Oracle America, Inc.*

## **ATTESTATION**

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.


Dated:  March 27, 2024                          By:  ___*/s/ Christin Hill*_____

                                                Christin Hill

7