# EXHIBIT A

**Oracle's Proposed Version of the Forensic Inspection Protocol**

1    Plaintiffs Michael Katz-Lacabe and Dr. Jennifer Golbeck and Defendant Oracle America,

2    Inc. (collectively, the "Parties"), by and through their attorneys of record, agree to the following

3    protocol for forensic inspection and analyses:

4    **1.    PURPOSE**

5    The purpose of this agreement is to govern discovery of Plaintiffs' internet-enabled

6    devices in connection with Plaintiffs' response to Oracle's first set of Requests for Production

7    ("RFP"s), where RFP Nos. 1-7 seeks forensic images of Plaintiffs' internet-enabled devices and

8    RFP No. 8 seeks browser history from those same devices. Plaintiffs have objected in part, and

9    produced data they believed to be responsive to Oracle's RFP Nos. 1-8.

10    The Parties subsequently met and conferred regarding Plaintiffs' responses to Oracle's

11    RFP Nos. 1-8, and agreed to appoint Control Risks Group, LLC ("Control Risks") as a neutral

12    third party to conduct forensic inspections and analysis with respect to all forensic images that

13    Plaintiffs provide to Control Risks pursuant to this agreement.

14    **2.    AGREEMENT**

15    **2.1    Third-Party Neutral.**  The Parties hereby appoint Control Risks as a neutral party

16    to conduct forensic inspections and analyses as described in this Agreement, and Control Risks

17    accepts such appointment.  Control Risks agrees to act as a neutral pursuant to this Agreement

18    and other instructions agreed to by the Parties.

19    (a)    Control Risks (or any successor to Control Risks) will not have any *ex*

20    *parte* communications with either party or either party's experts without the other side being

21    given reasonable notice of and an opportunity to be present for said communications.  All parties

22    must be copied on communications with Control Risks.

23    **2.2    Privacy Designations.**  The Parties' stipulated protective order, previously entered

24    as an order of this Court (ECF No. 28 ("Stipulated Protective Order")), applies to information

25    and/or documents produced pursuant to this Agreement.

26    (a)    *Redaction of Personal Health and Financial Information.*  In addition to

27    any redactions permitted by the Parties' Stipulated Protective Order, Plaintiffs may also redact

28

AGREEMENT REGARDING FORENSIC                    1                    CASE NO. 3-22-cv-04792-RS
INSPECTION PROTOCOL

sf-5654619

1   any Protected Health Information ("PHI")[1] or personal financial information represented in their

2   ESI.  By way of example only, Plaintiffs may redact the "path," "query," or "fragment" portions

3   of any Uniform Resource Locator ("URL") that convey their PHI or personal financial

4   information.  The time for redactions is set forth below in Section 2.6(c).

5           (b)     *Control Risks Bound by Stipulated Protective Order*.  Control Risks will

6   acknowledge and agree to be bound by the Parties' Stipulated Protective Order by signing the

7   agreement enclosed to the Stipulate Protective Order as Exhibit A.  Control Risks will keep all

8   inspections, analyses, and testing performed on the Devices, as well as the data pulled from the

9   Devices, strictly confidential as to non-parties as required by the Parties' Stipulated Protective

10  Order.

11          **2.3     Delivery of Forensic Images to Control Risks, or If Unsatisfactory, Devices.**

12  Plaintiffs represent that DISCO and Setec Investigations, forensics firms hired by Plaintiffs, have

13  forensically imaged all of Plaintiffs' relevant internet-enabled devices ("Devices"). [2]  Plaintiffs

14  will proceed with delivery to Control Risks as follows:

15          (a)     DISCO will produce the forensic images of Plaintiffs' Devices to Control

16  Risks no later than 14 calendar days following execution of this agreement.

17          (b)     Control Risks will then have another 14 calendar days from date of receipt

18  to confer with DISCO, evaluate the imaging methodology followed, and assess whether the chain

19  of custody is satisfactory.

20          (c)     If Control Risks finds the forensic images satisfactory, then the Parties

21  agree there is no reason to incur the cost of re-imaging the Devices and the images created by

22  Setec Investigations and DISCO will be used for carrying out this Agreement.

23          (d)     If, Control Risks finds the forensic images are not satisfactory, within 7

24  calendar days of Control Risks' written finding, the Parties shall meet and confer in good faith,

25  _____

26  [1] PHI is information that relates to Plaintiffs' or their family members' (i) past, present, or
    future physical or mental health or condition, (ii) receipt of health care, or (iii) past, present, or
    future payment for the receipt of health care.

27  [2] Devices are Plaintiffs' internet-enabled devices that can connect to the internet and support
    web browsing functionality, such as desktop computers, laptop computers, smartphones, mobile

28  phones, and tablets that contain information responsive to RFP Nos. 1-8.

1 | and in consultation with both Control Risks and DISCO, regarding Control Risks' findings and

2 | the necessity for any potential reimaging of the Devices. In the event the parties fail to reach

3 | agreement on the necessity of any reimaging, they may present that dispute to the Court using the

4 | applicable discovery resolution procedures.  (ECF No. 34).

5 |      **2.4**     **Forensic Imaging & Duration of Custody**.  If Control Risks must reimage the

6 | Devices pursuant to the resolution procedure in Section 2.3(d), Control Risks and the Parties will

7 | proceed as follows:

8 |      (a)     Control Risks shall image the Devices in a forensically-sound manner

9 | using industry-standard hardware and software.

10 |      (b)     Control Risks shall retain custody over the Devices until imaging is

11 | complete, but in no event shall its custody exceed 3 days, unless with a written request for

12 | extension submitted to the Parties and their approval.

13 |      (c)     To mitigate any inconvenience to Plaintiffs in the event of an extension

14 | pursuant to Section 2.4(b), Plaintiffs may propose to Oracle a reasonable imaging schedule,

15 | where individual Devices are imaged and returned on a staggered basis.  Such a proposed

16 | scheduled would be subject to Oracle's approval.

17 |      **2.5**     **Forensic Recovery and Analysis of the Images**.  The relevant time period for

18 | purposes of forensic recovery and analysis pursuant to this Section of the Agreement, is August

19 | 19, 2018 to the August 19, 2022 ("Relevant Time Period").  Control Risks will analyze the

20 | forensic images obtained from the Devices according to the following:

21 |      (a)     *Forensic Recovery*.  Control Risks shall attempt to recover on each image

22 | and through reasonable means any deleted files it anticipates may be responsive, or contain

23 | responsive data, pursuant to Sections 2.5(b).  Control Risks will maintain a list of all deleted files

24 | and artifacts that it was able to recover.  Control Risks will also notify the parties, if in

25 | investigating Plaintiffs' browser applications, it finds evidence that data was deleted.

26 |      (b)     *Responsive Data*.  Where possible, Control Risks shall perform an analysis

27 | of each image to identify files, artifacts, data, or other ESI ("Data").  Responsive Data includes

28 | only the following:

AGREEMENT REGARDING FORENSIC INSPECTION PROTOCOL

3

CASE NO. 3-22-cv-04792-RS

sf-5654619

(i)    Data indicating visits to websites on domains that feature Oracle technology, such as cookies, pixels, core tags, or plug-ins;

(ii)    Independent of whether the domains feature Oracle technology, Data indicating visits to website privacy policy pages, terms and conditions pages, and opt-out pages and forms;

(iii)    Data indicating web searches for privacy scanning tools or other privacy-protective interventions before or after accessing a website;

(iv)    Browser usage statistics, such as how frequently Plaintiffs cleared cookies or opted for a private browser over a public browser;

(v)    Browser settings;

(vi)    Privacy-protective browser extensions or plug-ins;

(vii)    System registry keys and temporary files associated with Plaintiffs' browsers saved on their Devices;

(viii)    Cookies, cookie identifiers, and MAIDs stored in Plaintiffs' browsers or broader system files; and

(ix)    Data related to the use or storage of Plaintiffs' browser applications or browser data as enumerated in subsections (i)-(viii) of this section.

Responsive Data will also include any other Data identified as responsive by Control Risks and agreed to by the parties.

(c)    *Unresponsive Data*.  Data that is not Responsive Data, pursuant to Section 2.5(b), will be deemed unresponsive ("Unresponsive Data").  Unresponsive Data includes but is not limited to the following:

(i)    Any data relating to any web browsing history or internet usage not included in subsections 2.5(b)(i)-(vi)

(ii)    iMessages;

(iii)    text messages;

(iv)    emails;

(v)    photos; and

AGREEMENT REGARDING FORENSIC INSPECTION PROTOCOL

4

CASE NO. 3-22-cv-04792-RS

sf-5654619

1      (vi)    videos.

2   Unresponsive Data will also include any other Data identified as unresponsive by Control Risks

3   and agreed to by the parties.

4           (d)     **Attachment A** details the list of file types and file extensions that Control

5   Risks shall include in its search efforts for Responsive Data and any forensic recovery.  For

6   avoidance of doubt, the list of file types and extensions contained within **Attachment A** is non-

7   exhaustive.  At any time, either party may request that Control Risks add to the list of file types

8   and extensions in **Attachment A**.

9           **2.6**     **Control Risks' Production of Responsive Data to the Parties.**  The procedure

10  for Control Risks' production of Responsive Data is as follows:

11          (a)     For each image individually, on a rolling basis, as quickly as practicable,

12  Control Risks shall prepare a complete file listing categories of Responsive Data Control Risks

13  intends to export from Cellebrite Inspector, together with the metadata fields identified in

14  **Attachment B**, and Control Risks shall provide the list to the Parties.

15          (b)     For each image individually, on a rolling basis, as quickly as practicable,

16  Control Risks shall generate a production set of Responsive Data that includes the metadata fields

17  identified in **Attachment B.**  As a part of that production set of Responsive Data, Control Risks

18  shall compile system logs and forensic artifacts concerning the use of Plaintiffs' web browsers,

19  which are defined in **Attachment C**.

20          (c)     Control Risks shall then provide the Responsive Data production set to

21  Plaintiffs' Counsel, notifying Oracle's Counsel of the production.  Plaintiffs' Counsel will have

22  30 calendar days from receipt of the production set to assert any privilege claims and make any

23  confidentiality designations and redactions pursuant to the Parties' Stipulated Protective Order

24  and Section 2.2(a) of this Agreement.  If Plaintiffs' Counsel has privilege claims, Plaintiffs'

25  Counsel must, within 45 calendar days of receipt of the Responsive Data from Control Risks,

26  provide a privilege log to Oracle consistent with the requirements of Federal Rule of Civil

27  Procedure 26.

28

AGREEMENT REGARDING FORENSIC                    5                    CASE NO. 3-22-cv-04792-RS
INSPECTION PROTOCOL

1          (d)      Plaintiffs' Counsel will provide the Responsive Data production set, with

2    any confidentiality designations and redactions, to Oracle's Counsel on the 30th calendar day after

3    receipt from Control Risks.

4          **2.7      Resolution of RFP Nos. 1-8.**  Production under this Agreement resolves

5    Plaintiffs' discovery obligations as to Oracle's RFP Nos. 1-8.  This Agreement and the protocols

6    herein shall apply only to the discovery sought by Oracle's RFP Nos. 1-8.  To the extent Oracle

7    seeks any further discovery beyond RFP Nos. 1-8, the protocols in this Agreement shall not apply

8    to that discovery. The parties may, at their discretion, negotiate and enter into a new forensic

9    protocol agreement with respect to any additional discovery requests. Neither the existence nor

10   terms of this Agreement shall be referred to or used by Oracle in any argument seeking to compel

11   further discovery from Plaintiffs.

12         **2.8      Modification of Deadlines**.  The deadlines described in this Agreement may be

13   modified only with advance written notice and the consent of the Parties.

14         **2.9      Meet and Confer**.  The Parties agree that, if any disputes develop between the

15   Parties regarding the matters described in this Agreement, the Parties will first discuss and

16   attempt to resolve those difference by meeting and conferring in good faith.  To the extent the

17   parties fail to resolve their differences, they may present that dispute to the Court using the

18   applicable discovery resolution procedures.  (ECF No. 34.)

19         **2.10     Responsibility for Fees**.  The Parties shall split the cost of Control Risks' services

20   pursuant to this Agreement.

21

22

23

24

25

26

27

28

AGREEMENT REGARDING FORENSIC                              6                          CASE NO. 3-22-cv-04792-RS
INSPECTION PROTOCOL

sf-5654619