1  Michael W. Sobol (SBN 194857)
   msobol@lchb.com
2  David T. Rudolph (SBN 233457)
   drudolph@lchb.com
3  Jallé H. Dafa (SBN 290637)
   jdafa@lchb.com
4  John D. Maher (SBN 316157)
   jmaher@lchb.com
5  Nabila Abdallah (SBN 347764)
   nabdallah@lchb.com
6  Amelia A. Haselkorn (SBN 339633)
   ahaselkorn@lchb.com
7  LIEFF CABRASER HEIMANN
      & BERNSTEIN, LLP
8  275 Battery Street, 29th Floor
   San Francisco, CA  94111
9  Telephone:  415.956.1000
   Facsimile:  415.956.1008

10 *Attorney for Plaintiffs and the Class*

11

12              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13               **SAN FRANCISCO DIVISION**

14 Michael Katz-Lacabe and Dr. Jennifer    Case No. 3:22-cv-04792-RS
   Golbeck, on behalf of themselves and all
15 others similarly situated,              **PLAINTIFFS' MOTION TO CERTIFY
                                           INTERLOCUTORY APPEAL UNDER
16                Plaintiffs,              28 U.S.C. § 1292(b)**

17     vs.                                Judge: Hon. Richard Seeborg

18 ORACLE AMERICA, INC., a corporation    Date: May 30, 2024
   organized under the laws of the State of Time: 1:30 p.m.
19 Delaware,                              Courtroom: 3

20                Defendant.              Date Action Filed: August 19, 2022
21                                        Trial Date: None set

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on May 30, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Michael Katz-Lacabe and Dr. Jennifer Golbeck ("Plaintiffs") will, and hereby do, move the Court to certify for review under Rule 1292(b) this Court's April 3, 2024 Granting Oracle's Motion to Dismiss (Dkt. No 114). Specifically, this Court should certify for review the following question:

Whether the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq ("ECPA") crime-tort exception to a defendant's suggested affirmative defense of consent, 18 U.S.C. § 2511(2)(d), is adequately pled where a plaintiff has plausibly alleged that (1) the defendant obtained personal data by intentionally intercepting the contents of an electronic communication while in transit in violation of the ECPA, and (2) the defendant took the fruits of its interception for "the purpose of committing [a] tortious act" by putting those fruits to "further uses" which are themselves intentionally tortious, or whether the ECPA crime-tort exception additionally requires a plaintiff to allege the defendant had a particular *mens rea* amounting to an insidious motive to do harm to the plaintiff.

That question is a controlling question of law as to which there is and has been substantial ground for difference of opinion, and an immediate appeal from the Order would materially advance the termination of the lawsuit. *See* 28 U.S.C. § 1292(b).

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities in support thereof; all documents in the Court's file; and on such other arguments as may be presented to the Court.

1

2   Dated: April 22, 2024

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Michael W. Sobol
Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 5

    A.    Whether the Issue is A Controlling Question Of Law. ........................... 6

    B.    There Is A Substantial Ground For Difference Of Opinion................................... 7

    C.    Resolution Of The Question Will Materially Advance The Litigation. .............. 12

CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. Google LLC,*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ...................................................... 3, 4, 9, 11

*Camenisch v. Umpqua Bank,*
No. 20-CV-05905-RS, 2023 WL 2934934 (N.D. Cal. Apr. 12, 2023)
(Seeborg, J.) ........................................................................................................ 6

*Casas v. Victoria's Secret Stores, LLC,*
No. CV 14-6412-GW(VBKX), 2015 WL 13446989 (C.D. Cal. Apr. 9, 2015)..................... 12

*Coleman v. Sterling,*
No. 09-CV-1594 W (BGS), 2012 WL 12952831 (S.D. Cal. Feb. 21, 2012).......................... 7

*F.T.C. v. Swish Mktg.,*
No. C 09-03814 RS, 2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) ........................... 6

*Fed. Trade Comm'n v. Kochava, Inc.,*
No. 2:22-CV-00377-BLW, 2024 WL 449363 (D. Idaho Feb. 3, 2024) ..................... 2

*Flowers-Carter v. Braun Corp.,*
No. CV-18-03836-PHX-DWL, 2021 WL 2416805 (D. Ariz. June 14, 2021)..................... 7

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1981)........................................................................ 6

*In re DoubleClick Inc. Priv. Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001)................................................... 3, 4, 10, 11

*In re Google Inc. Gmail Litig.,*
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ..................... 4, 10

*In Re: Group Health Plan Litig.,*
No. 23-CV-267 (JWB/DJF), 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ..................... 4, 8

*In re Toys R Us, Inc., Priv. Litig.,*
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)................................. 9, 10, 11

*Kuehner v. Dickinson & Co.,*
84 F.3d 316 (9th Cir.1996)........................................................................ 6, 12

*Leite v. Crane Co.,*
749 F.3d 1117 (9th Cir. 2014)........................................................................ 7

*Mekhail v. N. Mem'l Health Care,*
No. 23CV00440KMMTNL, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) ................. 4, 9, 11

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................................ 10

4

5

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ............................................................................. 7, 12

6

7

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ...................... 3, 4, 10

8

*Rollins v. Dignity Health*,
No. 13-CV-01450-TEH, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ...................... 12

9

10

*S.E.C. v. Mercury Interactive*,
LLC, No. 07–cv–02822–JF, 2011 WL 1335733 (N.D. Cal. Apr. 7, 2011) ................. 12

11

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ............................................................................... 12

12

13

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........................................................................ 8, 10

14

15

*TLS Mgmt. v. Rodriguez-Toledo*,
260 F. Supp. 3d 154 (D.P.R. 2016) ..................................................................... 10

16

17

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959) ................................................................................. 6

18

**Statutes**

19

18 U.S.C. § 2511(2)(d) ........................................................................................... 1

20

28 U.S.C. § 1292(b) ...................................................................................... 5, 6, 7, 12

21

Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq ............................. 1

22

**Court Rules**

23

Local Rule 7-4(a)(3) ............................................................................................... 1

24

Rule 1292(b) ............................................................................................... *passim*

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Local Rule 7-4(a)(3), this Motion raises the following issue:

Whether this Court should certify for interlocutory review under Rule 1292(b) the following question:

Whether the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq ("ECPA") crime-tort exception to a defendant's suggested affirmative defense of consent, 18 U.S.C. § 2511(2)(d), is adequately pled where a plaintiff has plausibly alleged that (1) the defendant obtained personal data by intentionally intercepting the contents of an electronic communication while in transit in violation of the ECPA, and (2) the defendant took the fruits of its interception for "the purpose of committing [a] tortious act" by putting those fruits to "further uses" which are themselves intentionally tortious, or whether the ECPA crime-tort exception additionally requires a plaintiff to allege the defendant had a particular *mens rea* amounting to an insidious motive to do harm to the plaintiff.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

For over two decades, an unresolved controlling question of law regarding the application of the crime-tort "exception to the exception" to the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act") has been repeatedly adjudicated in conflicting ways by district courts across the country and within this District.  That question of law is whether a defendant's intentional further, tortious use of intercepted data is sufficient to show that the interception was for "the purpose of committing [a] tortious act," and thus the exception to the exception under 18 U.S.C. § 2511(2)(d) applies, or whether a plaintiff must additionally allege the defendant had an "insidious" intent to harm the plaintiff.

The ECPA provides that "consent" to the otherwise unlawful interception of the contents of an electronic communication provides no defense where "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This case presents the subtle but important question of whether this statutory provision requires an intent to harm *in addition to* an intent to engage in specific conduct that constitutes an independent tortious act via

further use of the intercepted content.  Here, the Court has held that Plaintiffs sufficiently stated a claim that Oracle's further use of the fruits of its wiretapping conduct is tortious.  However, the Court also held that this further, tortious use is insufficient to trigger the crime-tort exception.  While this decision is consonant with some authority, it straightforwardly contradicts others.  Because this controlling issue of law has been and continues to be resolved in opposing and incompatible ways by district courts across the country—even within the last month—interlocutory review under Rule 1292(b) is appropriate.

This Court determined in its order denying in part Oracle's first motion to dismiss that Plaintiffs' allegations regarding Oracle's further use of the fruits of its wiretapping activities sufficiently state a claim for the tort of intrusion upon seclusion. April 6, 2023 Order on Motion to Dismiss, Dkt. No. 49 at 11-13 ("April 6 Order").  The Court held that "Oracle's accumulation of a vast repository of personal data—from compiling Plaintiffs' browsing activity, online communications, and offline activity—is what contravenes the reasonable expectation of privacy." *Id.* at 12 (internal quotation marks and citations omitted, emphasis in original); *accord Fed. Trade Comm'n v. Kochava, Inc.*, No. 2:22-CV-00377-BLW, 2024 WL 449363, at *5 (D. Idaho Feb. 3, 2024) (allegations that data broker Kochava collects and sells "vast amounts of 'highly granular' personal information about millions of people" that "can reveal a person's political and religious affiliations, sexual orientation, medical conditions, and much more" sufficiently plead that "Kochava arguably invades consumers' privacy and exposes them to significant risks of secondary harms.").  Because Plaintiffs allege Oracle intercepted this personal data "for the purpose" of making a "further use" of the data, i.e., compiling personal profiles that contravene a reasonable expectation of privacy, Plaintiffs alleged and argued that they need not plead any additional "tortious" or "insidious" intent. *See e.g.*, SAC ¶¶ 245-51 (Oracle "intercepted communications to create detailed profiles," and "for the purpose of associating their data with preexisting profiles").

Oracle moved to dismiss on the grounds that "the crime-tort exception [is] inapplicable where the alleged interception is for the purpose of further 'enriching' preexisting internet user profiles" because "an allegation that conduct 'amounted to a tort' falls far short of an allegation that the alleged tortfeasor *intended to commit* a tort."  Dkt. No. 88 at 12-13 (emphasis in original).

Plaintiffs argued in opposition that the crime-tort exception does not require allegations that Oracle had "a specific *mens rea* to *cause harm*, as opposed to the intention to commit a 'tortious act'"— such as invading a plaintiffs' privacy through extensive online and offline surveillance," and that the goal of "making money" does not immunize from application of the crime-tort exception.  Dkt. No. 90 at 7. Oracle argued in reply that Oracle's goal of monetizing this conduct demonstrates—as a matter of law—that its intent was not tortious as required by the statute.  Dkt. No 92 at 5-8.

In ruling on Oracle's motion, this Court held that for the exception to the exception to apply, Plaintiffs must plead "tortious intent" beyond the intentional, further tortious use of the intercepted data; the Court determined that Plaintiffs must additionally plead *a mens rea or intent to harm* beyond the intent to use the fruits of the interception.  Dkt. No. 114 at 5-6 ("April 3, 2024 Order"). This Court relied on *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) ("*DoubleClick*") in holding that because Plaintiffs "fail plausibly to allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue," the exception the exception does not apply. *Id.* This was consistent with this Court's ruling on Oracle's second motion to dismiss, rejecting Plaintiffs' argument that "the goal of 'making money' cannot sanitize tortious conduct," and holding that the "mere possibility Oracle's data collection activities could at some future date be deemed tortious does not justify application of the crime-fraud exception in these circumstances."  Dkt. No. 77 ("October 3, 2023 Order") at 11, fn. 11.  Moreover, in its first ruling on the ECPA claim, this Court held that the crime-tort exception "does not apply to a case such as this, where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." Dkt. No. 49 ("April 6, 2023 Order") at 16 (quoting *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n. 8 (N.D. Cal. May 21, 2021)).

Plaintiffs respectfully disagree with the Court's resolution of this issue.  However, Plaintiffs recognize that other jurists have, and continue to, disagree on the answer to this question.  For example—as explained in Plaintiffs' opposition to Oracle's motion to dismiss—in *Brown v. Google*, the plaintiffs alleged that Google "intercepted their communications for the purpose of associating their data with preexisting user profiles," which Judge Koh held sufficiently alleged

1   that the "primary motivation or a determining factor in [the interceptor's] actions has been to injure

2   plaintiffs tortiously," thereby satisfying the requirements of the exception to the exception. 525 F.

3   Supp. 3d 1049, 1067 (N.D. Cal. 2021).   Critically, the court in *Brown* did not—as this Court did

4   in resolving Oracle's motion—interpret the Wiretap Act to require any "tortious intent," or specific

5   intent to cause harm, *beyond* the intent to "associat[e] their data with preexisting user profiles." *Id.*

6   Plaintiffs cited numerous decisions, including some within this District, that likewise interpreted

7   the Wiretap Act to only require an intent to commit a further act that is tortious, as opposed to an

8   "insidious" *mens rea* to intentionally harm the plaintiff.  *See* Dkt. No. 90 at 4-5.

9       Plaintiffs acknowledge, however, that the Eastern District of New York in *DoubleClick*,

10  and numerous cases that have followed it, have interpreted the statute differently.  *Rodriguez*, 2021

11  WL 2026726 at *6 n.8; *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL

12  1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *see also* Oracle's motion to dismiss reply brief,

13  Dkt. No 92, at 5-8 (citing cases).

14      The split among district courts on this issue has been recently explicitly recognized: in

15  December of last year, a court in the District of Minnesota expressly disagreed with this Court's

16  ruling in its April 6, 2023 Order on this issue, stating that "unlike the [Northern District of

17  California], this district has not found that the crime-tort exception to the Wiretap Act is

18  inapplicable where the defendant's primary motivation was to make money." *In Re: Grp. Health*

19  *Plan Litig.*, No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023).[1]  Other

20  courts have as recently as the last several weeks resolved this question consistent with *In Re: Group*

21  *Health Plan Litigation* and Plaintiffs' interpretation of the statute, demonstrating a straightforward

22  difference of opinion on this controlling pure question of law. *See Mekhail v. N. Mem'l Health*

23  *Care*, No. 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (allegations

24  that "the interceptions were made to access and [tortiously] monetize [the plaintiff's] private and

25  protected health data" were sufficient to invoke the crime-tort exception).

26      An appeal of this question is inevitable if this case proceeds to judgment.  Oracle's conduct

27  _____

[1] As explained below, the defendant in *In Re: Group Health Plan Litigation* argued the crime-tort
exception did not apply to its commercial use of the fruits of its alleged wiretapping interception
28  for advertising purposes, relying on and citing to this Court's April 6, 2023 Order.  *Infra*, at 9.

extends to residents of all 50 States. A favorable ruling on this issue would significantly affect the scope of this case, and importantly determine whether *all* U.S. residents subject to Oracle's wiretapping conduct are able to seek a remedy for that conduct through this lawsuit, or whether they need to seek redress through a multitude of state-specific wiretap cases for each of the remaining 48 States.

Plaintiffs respectfully request that the Court certify this question for interlocutory review under Rule 1292(b). Rule 1292(b) authorizes interlocutory review of controlling questions of law as to which there is a substantial ground for difference of opinion, where resolution of the question would materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b). That standard is met here. The Court held that Plaintiffs were required to allege an *intent to harm* beyond an intent to engage in profit-driven (but tortious) surveillance and profiling. April 3, 2024 Order at 5-6. That is a controlling question of law as to which there is a substantial ground for difference of opinion, and a resolution of that question *in either parties' favor* would materially advance the litigation. Because Plaintiffs will appeal the Court's ruling on this issue, on its present posture this case will proceed to judgment with a central legal issue that dramatically affects the scope of the case unresolved; a ruling in Plaintiffs' favor may necessitate a re-do of both class certification and the merits stages of this case. Clarity on this issue may also help promote settlement, a factor courts recognize as supporting interlocutory review under Rule 1292(b).

This Court should accordingly certify the question of the proper interpretation of the crime-tort exception for review under Rule 1292(b).

## **ARGUMENT**

There are three requirements for interlocutory review under Section 1292(b): (1) the appeal "involves a controlling question of law," (2) "there is substantial ground for difference of opinion" as to the legal issues involved in the order sought to be appealed, and (3) interlocutory review "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Here, all three requirements are met. The proper interpretation of the crime-tort exception in the Wiretap Act is a pure question of law. There is a substantial ground for difference of opinion, as demonstrated by several district court opinions reaching different conclusions on that question within the past year—

1    including a district court opinion expressly disagreeing with this Court's ruling. Interlocutory

2    review may materially advance the termination of this litigation because it will both obviate

3    burdensome and time-consuming proceedings—including a potential second trial on issues closely

4    related to the first trial—and because expedited clarity on this issue will contribute to the potential

5    settlement and ultimate resolution of this case.

6         **A.    Whether the Issue is A Controlling Question Of Law.**

7         For interlocutory review to be appropriate, the proposed appeal must "involve[] a

8    controlling question of law." 28 U.S.C. § 1292(b). The Ninth Circuit has held that a question of law

9    is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation

10   in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). "[T]he

11   issue need not be dispositive of the lawsuit[.]" *F.T.C. v. Swish Mktg.*, No. C 09-03814 RS, 2010

12   WL 1526483, at *1 (N.D. Cal. Apr. 14, 2010) (citing *United States v. Woodbury*, 263 F.2d 784,

13   787 (9th Cir. 1959)). An issue may be the subject of interlocutory appeal if immediate resolution

14   would avoid "needless expense and delay." *Kuehner v. Dickinson & Co*., 84 F.3d 316, 319 (9th

15   Cir.1996). Additionally, "[u]nder this formulation, the first and third prongs of the test substantially

16   overlap." *Camenisch v. Umpqua Bank*, No. 20-CV-05905-RS, 2023 WL 2934934, at *1 n. 2 (N.D.

17   Cal. Apr. 12, 2023) (Seeborg, J.).

18        Because the application of the exception to the exception is dispositive of Plaintiffs' ECPA

19   claim, it is by definition a controlling issue of law. Section 1292(b) does not necessarily require

20   that the question be a "pure" question of law. *See, e.g., Camenisch*, 2023 WL 2934934, at *1

21   (discussing Ninth Circuit authority permitting interlocutory appeal under § 1292(b) to address

22   mixed questions of law and fact).  However, the issue presented here is such a pure question of law:

23   the Ninth Circuit will not need to review the record or the specifics of Plaintiffs' allegations

24   regarding Oracle's *mens rea*—it need only address the threshold question of whether Plaintiffs need

25   to plead such *mens rea* at all.

26        Here, interlocutory appeal may avoid "needless expense and delay" (*Kuehner*, 84 F.3d at

27   319) because a ruling in Plaintiffs' favor by the Ninth Circuit after a trial on the merits before this

28   Court would necessitate a second trial on the ECPA claim—one which would inefficiently overlap

1    with much of the same documentary evidence and testimony at issue in Plaintiffs' California and

2    Florida state wiretap claims. *See Flowers-Carter v. Braun Corp.*, No. CV-18-03836-PHX-DWL,

3    2021 WL 2416805, at *3 (D. Ariz. June 14, 2021) (agreeing issue presented was controlling

4    question of law where "if the Ninth Circuit were to disagree with the Court's interpretation of [the

5    statute at issue] and reverse, another trial might need to be conducted to determine the scope of

6    Plaintiffs' [] damages, [which] could materially affect the outcome of this case."). Because

7    resolution of the merits of all three wiretap claims will involve the same evidence regarding the

8    operation and use of Oracle's "Core Tag" JavaScript interception mechanism (*compare* Second

9    Amended Complaint (Dkt. No 87) ¶¶ 198-230 (California and Florida wiretap claims) *with* ¶¶ 231-

10   252 (ECPA claim)), a second trial would require presentation of largely overlapping if not identical

11   evidence. It will be far more efficient to resolve this issue now and obviate the need for a

12   burdensome, expensive, and time-consuming second trial on a claim that could (and should) be

13   tried with Plaintiffs' other substantively nearly identical claims.

14          **B.    There Is A Substantial Ground For Difference Of Opinion.**

15          There is also a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This

16   requirement is satisfied where an appeal would "involve[] an issue over which reasonable judges

17   might differ and such uncertainty provides a credible basis for a difference of opinion on the issue."

18   *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation marks

19   omitted). "A substantial ground for difference of opinion exists where reasonable jurists might

20   disagree on an issue's resolution, not merely where they have already disagreed." *Id.* "Stated

21   another way, when novel legal issues are presented, on which fair-minded jurists might reach

22   contradictory conclusions, a novel issue may be certified for interlocutory appeal." *Id.* A

23   substantial ground for difference of opinion is demonstrated where district courts are divided on an

24   issue. *See, e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1120 n.1 (9th Cir. 2014) (granting interlocutory

25   review of question that divided three district courts in different circuits); *Coleman v. Sterling*, No.

26   09-CV-1594 W (BGS), 2012 WL 12952831, at *4 (S.D. Cal. Feb. 21, 2012) (finding substantial

27   ground for disagreement where "two reasonable jurists have already disagreed on this question, and

28   the Court recognizes room for further disagreement.").

With respect to the question presented here, reasonable jurists not only might disagree, they have in fact disagreed. As noted above, in *In Re: Group Health Plan Litigation,* the District of Minnesota expressly disagreed with this Court's prior ruling on this issue.  In that case, the plaintiffs alleged that the defendant, HealthPartners, intentionally and unlawfully intercepted and transmitted personal information about Plaintiffs to third parties in violation of the ECPA.  The plaintiffs alleged that the crime-tort exception applied because the primary motivation for HealthPartners' interception of their personal information was to commit subsequent and separate tortious acts for commercial purposes, "namely, the use of patient data for advertising in the absence of express written consent," where the use "for marketing and revenue generation was in violation of HIPAA and an invasion of privacy." 2023 WL 8850243, at *8.

HealthPartners argued that the plaintiffs had not alleged sufficient facts to show that HealthPartners had an "evil" intent to harm when engaging in the wiretapping conduct, and that "[a]t most, the alleged intent of Defendant's conduct was to advance its advertising services to users of its websites, which is not sufficient under the crime-tort exception," citing to this Court's April 6, 2023 Order for the proposition that "defendant's desire to 'make money' through use of pixels is not sufficient under the crime-tort exception." *In Re: Group Health Plan Litig., Case No. 23-cv-00267-JWB-DJF,* Dkt. No. 67 at 34-35 (D. Minn. Aug. 28, 2023).

The *In Re: Grp. Health Plan Litigation* court rejected this argument.  The court first pointed to the Ninth Circuit's language in *Sussman v. Am. Broad. Companies, Inc*., 186 F.3d 1200, 1202 (9th Cir. 1999)), that "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." 2023 WL 8850243, at *8. The court then noted that the plaintiffs had had separately stated viable claims for the tort of invasion of privacy and violations of the Minnesota Health Records Act based on the defendant's further (commercial) use of the fruits of the interceptions.  *Id.* The court considered this Court's April 6, 2023 ruling finding the crime-tort exception inapplicable in analogous circumstances, but declined to follow it, observing that "unlike the other districts HealthPartners cites to [i.e., this Courts' April 6, 2023 decision], this district has not found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money," explicitly recognizing the split among district

1    courts on this issue. *Id.*

2          Last month, another decision within the District of Minnesota concurred that allegations

3    that "the interceptions were made to access and monetize" the plaintiffs' data, which subsequent

4    use of the data potentially violated state and common law rights, were sufficient to invoke the

5    crime-tort exception.  *Mekhail*, 2024 WL 1332260, at *5.  That court again rejected the defendant's

6    argument, which relied on and cited to this Court's April 6, 2023 order, that "[w]here an offender's

7    primary purpose for the alleged interception is based in financial gain—and not to tortiously injure

8    the plaintiff—the crime-tort exception does not apply." *See Mekhail v. N. Mem'l Health Case, No.

9    23-cv-00440-KMM-TNL,* Dkt. No. 31 at 9 (D. Minn. July 25, 2023) (Defendant's Memorandum in

10   Support Of Motion to Dismiss Plaintiff's Amended Complaint).

11         These very recent rulings directly disagreeing with this Court's interpretation of the crime-

12   tort exception are consistent with the authorities Plaintiffs cited in their opposition to Oracle's

13   motion, which hold that a plaintiff need only allege the intentional, further use of the fruits of the

14   interception for a tortious (if commercial) purpose, and not an additional, subjective, intent to cause

15   harm. *See* Dkt. No. 90 at 5-6; *Brown,* 525 F. Supp. 3d at 1067[2]; *In re Toys R Us, Inc., Priv. Litig.*,

16   No. 00-CV-2746, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (applying crime-tort

17   exception where "plaintiffs allege [defendant] intercepted plaintiffs' communications with Web

18   sites for tortious purposes, specifically 'to spy' on plaintiffs and collect their personal information

19   without consent or compensation, and to misappropriate plaintiffs' 'personal[i]ty, thereby obtaining

20

21   _____
[2] This Court distinguished *Brown* in its October 3, 2023 Order on the grounds that "the plaintiffs
     in *Brown* had identified internal Google communications referring to the company's privacy

22   practices as problematic," thereby sufficiently alleging Google "had tortious motivation." Dkt. No.
     77 at 11. In their Second Amended Complaint, Plaintiffs amended their allegations specifically to

23   address the Court's distinguishing of *Brown*—amendments which the Court found unpersuasive.
     However, Plaintiffs respectfully disagree with the Court's analysis of this aspect of *Brown*.  Judge

24   Koh's observation that "Plaintiffs also allege that internal Google communications show that the
     company's employees recognized that its privacy disclosures were problematic" was made in the

25   context of ruling on Plaintiffs' intrusion-upon-seclusion claim, and went to the element of whether
     the conduct was "highly offensive" pursuant to that tort's elements. 525 F. Supp. 3d at 1079.  The

26   issue of whether Google "recognized that its privacy disclosures were problematic" played no role
     at all in the *Brown* court's analysis of the application of the crime-tort exception; instead, the court

27   found that the exception applied because "Plaintiffs have adequately alleged that Google's
     association of their data with preexisting user profiles violated state law, including CDAFA,

28   intrusion upon seclusion, and invasion of privacy."  *Id.* at 1067. Google's subjective *mens rea*
     played no role in the *Brown* court's crime-tort exception analysis.

PLAINTIFFS' NOTICE OF MOTION AND MOTION
                                                TO CERTIFY INTERLOCUTORY APPEAL UNDER
                                                28 U.S.C. § 1292(b); CASE NO. 3:22-CV-04792

1    detailed, free market research and consumer analysis rather than paying for it.'"); *In re Grp. Health*

2    *Plan Litig.*, 2023 WL 8850243, at *8 (Plaintiffs properly alleged the defendants' primary

3    motivation for interception was to commit tortious acts, "namely, the use of patient data for

4    advertising in the absence of express written consent," where the use "for marketing and revenue

5    generation was in violation of HIPAA and an invasion of privacy."); *TLS Mgmt. v. Rodriguez-*

6    *Toledo*, 260 F. Supp. 3d 154, 165 (D.P.R. 2016) (allegation that defendants "benefit[ed]

7    economically from the confidential information they intercepted" was sufficient to apply

8    exception). *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808,

9    828 (N.D. Cal. 2016) (applying exception where subsequent use of the "fruits of the interception

10    . . . could constitute the further tortious act.").

11         On the other hand, as Oracle argued, *DoubleClick* and cases following it have come to the

12    opposite conclusion. *See* Dkt. No. 92 at 5-6 (citing cases); *DoubleClick*, 154 F. Supp. 2d at 516 ("a

13    plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by

14    proving that the defendant committed any tort or crime"); *Rodriguez*, 2021 WL 2026726, at *6 n.8

15    (declining to apply exception where interceptor's purpose was "plainly not [] to perpetuate torts on

16    millions of Internet users, but to make money") (quoting *DoubleClick.*, 154 F. Supp. 2d at 518); *In*

17    *re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (same). The split on this issue is

18    compounded by the fact that *DoubleClick* relied on the Ninth Circuit's holding in *Sussman* that a

19    lawful purpose alone does not "sanitize a[n interception] that was also made for an illegitimate

20    purpose" (186 F.3d at 1202), yet interpreted it in a manner directly contrary to this District's

21    contemporaneous ruling in *In re Toys R Us*, in which Judge Chesney held that "[e]ven if such

22    purposes [for the interception] are assumed to be lawful [i.e. commercial], the presence of a lawful

23    purpose does not end the discussion," and applied the crime-tort exception on saliently identical

24    facts. 2001 WL 34517252, at *8 n. 17 (citing *Sussman*, 186 F.3d at 1202).

25         *DoubleClick* instead interpreted the crime-tort exception to require an "'insidious' intent to

26    harm plaintiffs" beyond the intent to use the fruits of the wiretapping for purposes that, while

27    perhaps tortious, were conducted with "licit and commercial" goals:

28

> If any of its practices ultimately prove tortious, then DoubleClick may be held liable for the resulting damage. However, a culpable mind does not accompany every tortious act. In light of the abundant evidence that DoubleClick's motivations have been licit and commercial and the utter lack of evidence that its intent has been tortious, we find as a matter of law that plaintiffs have failed to allege that DoubleClick has acted with a "tortious" purpose.

154 F. Supp. 2d at 518-519. Plaintiffs acknowledged and wrestled with this adverse authority in their opposition brief, arguing *DoubleClick* was incorrectly reasoned and conflicted with authority within this District. *See* Dkt. No. 90 at 7-8 ("*DoubleClick* incorrectly injected into the plain language of the ECPA a judgement call about the *level of insidiousness* of the tortious act. Respectfully, *DoubleClick*'s logic is infirm . . . rulings in this District [e.g., *Brown v. Google* and *In re Toys R Us*] have wisely not grafted such an extra-statutory requirement on to the exception to the exception, and Plaintiffs respectfully submit this Court should not do so either."). The Court ultimately rejected this argument, instead holding that that the crime-tort exception requires Plaintiffs "to allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue," relying on *In re DoubleClick* and *In re Google Inc. Gmail Litigation*. Dkt. No. 114 at 6.

The divergent rulings of district courts over the course of many years demonstrates that reasonable jurists differ on the question presented for interlocutory review and that it is time for the Ninth Circuit to explicitly resolve this issue. Plaintiffs pled and argued for their ECPA claim based on a good-faith interpretation of the statute, relying on the statute's plain language and cases that support Plaintiffs' position. Given these differing views by reasonable jurists, as evident in the intra-circuit disagreement between this Court and the *Brown* and *In re Toys R Us* decisions, as well as the express disagreement between this Court's decision and recent out-of-circuit precedent in *In Re: Group Health Plan Litigation* and *Mekhail*, this question is ripe for appellate review,

The Ninth Circuit has never explicitly addressed this question. It evidently arises on a regular basis at the district court level (having been addressed by courts at least three times in just the last few months) and is central to the proper application of an important, nationwide privacy statute. Thus, the Ninth Circuit is likely to address it directly, and this case presents the issue as a well-positioned, question of law for the Circuit court to address.

### C.    Resolution Of The Question Will Materially Advance The Litigation.

The final requirement of Rule 1292(b) asks whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To meet that requirement, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688.

Judge Posner observed that uncertainty regarding the viability of a class action claim can delay settlement and protract litigation, which is "enough to satisfy the 'may materially advance' clause of section 1292(b)." *Sterk v. Redbox Automated Retail, LLC,* 672 F.3d 535, 536 (7th Cir. 2012) ("[U]ncertainty about the status of the [class action] claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b)."). Courts in this and sister Districts routinely concur. *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015) ("[T]he Court agrees with the Seventh Circuit's pragmatic approach in *Sterk v. Redbox Automated Retail, LLC*, where Judge Posner reasoned that, especially in class actions, uncertainty over a key claim's status 'may delay settlement . . . and by doing so further protract the [case].'"); *Rollins v. Dignity Health*, No. 13-CV-01450-TEH, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014) (increased certainty on disputed issues in class action could "encourage a negotiated settlement, which would not just materially but completely advance the termination of this litigation.")*; see also S.E.C. v. Mercury Interactive*, LLC, No. 07–cv–02822–JF, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011) ("A final resolution as the scope of the statute would have a significant effect on the trial of this action, and perhaps upon the parties' efforts to reach settlement.").  As noted above, interlocutory resolution of this question will also potentially avoid a burdensome and arguably wasteful second trial on a claim that will rely on essentially the exact same evidence as the first trial (save for evidence regarding the scope of the class). *Kuehner*, 84 F.3d at 319.

In short, all of the requirements of Rule 1292(b) are satisfied, and this Court should certify the question presented for interlocutory review.

1

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the question

for appeal presented above for interlocutory review under Rule 1292(b).

Dated: April 22, 2024

/s/ Michael W. Sobol
Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Class*