TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CHRISTIN HILL (CA SBN 247522)
CHill@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

PURVI G. PATEL (CA SBN 270702)
PPatel@mofo.com
WHITNEY O'BYRNE (CA SBN 325698)
WOByrne@mofo.com
ERIK MANUKYAN (CA SBN 340307)
EManukyan@mofo.com
EMMA BURGOON (CA SBN 348097)
EBurgoon@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
ORACLE AMERICA, INC.

*Additional counsel on next page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MICHAEL KATZ-LACABE, ET AL.,

Plaintiffs,

v.

ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,

Defendant.

Case No. 3-22-cv-04792-RS

**DEFENDANT ORACLE AMERICA INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Judge: Hon. Richard Seeborg

Date: May 30, 2024
Time: 1:30 p.m.
Courtroom: 3

Date Action Filed: August 19, 2022
Trial Date: Not set

ZACHARY S. NEWMAN (NY SBN 5651518)
(Admitted *pro hac vice*)
ZNewman@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, California 94065
Telephone: 650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The April 3 Order Does Not Present a Controlling Question of Law ........ 2

B. There Is No Substantial Ground for Difference of Opinion as to the Crime-Tort Exception's *Mens Rea* Requirement ........ 3

C. Interlocutory Appeal Would Not Materially Advance the Litigation ........ 9

III. CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosio v. Cogent Commc'ns, Inc.*,
No. 14-cv-02182-RS, 2016 WL 777775 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.) .................... 2

*Brodsky v. Apple, Inc.*,
No. 19-cv-00712-LKH, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .................................. 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................ 5, 6, 7

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ........................................................ 2, 3

*CornerStone Staffing Sols., Inc. v. James*,
No. C 12-1527 RS, 2014 WL 1364993 (N.D. Cal. Apr. 7, 2014) (Seeborg, J.) .............. 1, 2, 3

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ........................................................ 2, 3, 5, 9

*Deteresa v. Am. Broad. Cos.*,
121 F.3d 460 (9th Cir. 1997) ........................................................ 4

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........................................................ 4, 7, 8

*F.T.C. v. Swish Mktg.*,
C 09-03814 RS, 2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) ............................................... 2

*In re Fontem US, Inc. Consumer Class Action Litig.*,
No. SACV 15-01026 JVS (RAOx), 2017 WL 10402988 (C.D. Cal. Mar. 8, 2017) ........................................................ 3

*In re Google Referrer Header Priv. Litig.*,
No. 10-cv-04809-EJD, 2020 WL 5545155 (N.D. Cal. Sept. 16, 2020) .................................. 4

*In re Grp. Health Plan Litig.*,
No. 23-cv-267 (JWB/DJF), 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ............................. 7

*Hanni v. Am. Airlines, Inc.*,
No. C 08-00732 CW, 2008 WL 5000237 (N.D. Cal. Nov. 21, 2008) ...................................... 5

*Hunt v. Bloom Energy Corp.*,
No. 19-cv-02935-HSG, 2022 WL 1122835 (N.D. Cal. Apr. 14, 2022) ................................... 9

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996)........................................................................................ 2

*Lovett v. Omni Hotels Mgmt. Corp.*,
No. 14-cv-02844-RS, 2016 WL 7732622 (N.D. Cal. Apr. 18, 2016).................................... 10

*Mekhail v. N. Mem'l Health Care*,
No. 23-CV-00440 (KMM/TNL), 2024 WL 1332260 (D. Minn. Mar. 28, 2024)..................... 7

*NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*,
488 F.3d 1065 (9th Cir. 2007)....................................................................................... 5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ....................................................................... 8, 9

*Planned Parenthood Fed'n of Am., Inc.*,
51 F.4th 1125 (9th Cir. 2022) ....................................................................................... 9

*Roberts v. C.R. England, Inc.*,
No. C 11-2586 CW, 2012 WL 711903 (N.D. Cal. Mar. 5, 2012)................................... 10, 11

*Rollins v. Dignity Health*,
No. 13-CV-01450-TEH, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ............................... 10

*S.E.C. v. Mercury Interactive, LLC*,
No. 5:07-cv-02822-JF, 2011 WL 1335733 (N.D. Cal. Apr. 7, 2011).................................... 10

*Shimota v. Wegner*,
No. 15-1590, 2016 WL 5109138 (D. Minn. Sept. 19, 2016)..................................................... 3

*Sonoda v. Amerisave Mortg. Corp.*,
No. C-11-1803 EMC, 2011 WL 3957436 (N.D. Cal. Sept. 7, 2011)................................. 9, 10

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012)....................................................................................... 10

*TLS Mgmt. v. Rodriguez-Toledo*,
260 F. Supp. 3d 154 (D.P.R. 2016)................................................................................. 8

*In re Toys R Us, Inc., Priv. Litig.*,
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)......................................... 7, 8

*United States v. Woodbury*,
263 F.2d 784 (9th Cir. 1959)....................................................................................... 10

*Vaughn v. Regents of Univ. of Cal.*,
504 F. Supp. 1349 (E.D. Cal. 1981)................................................................................. 3

**Statutes**

18 U.S.C.
§ 2511(2)(d) .......... 4, 5
§ 2520(c)(2)(B) .......... 10

28 U.S.C. § 1292(b) .......... 1, 2, 3, 9

Cal. Pen. Code
§ 502(c)(2) .......... 6
§ 637.2(a)(1) .......... 10-11

## I. INTRODUCTION

On April 3, 2024, the Court dismissed Plaintiffs' Electronic Communications Privacy Act claim for a third time. (ECF No. 114.) As in its two prior Orders, the Court based its dismissal on Plaintiffs' failure to allege that Oracle acted with the tortious purpose required to apply ECPA's crime-tort exception to the statute's one-party consent rule. In particular, the Court again considered and rejected Plaintiffs' argument that Oracle's alleged "further use" of web user data for advertising is itself sufficient to establish a tortious purpose under the statute.

Plaintiffs now move to certify an interlocutory appeal of the April 3 Order pursuant to 28 U.S.C. § 1292(b), arguing that the Ninth Circuit should address their claim that the mere "further use" of collected web user data may be sufficient to apply the crime-tort exception, even absent any plausible allegations that a defendant intended to cause harm. Yet Plaintiffs fail to show that their inability to plead a viable ECPA claim presents the "rare" or "exceptional" circumstance in which an interlocutory appeal is appropriate under any of § 1292(b)'s three mandatory criteria.

***First***, Plaintiffs' argument regarding the crime-tort exception's pleading requirements does not present a "controlling question of law," as piecemeal appeals on the issue would not have any immediate effect on the course of the litigation and would, at most, avoid a second trial limited to Plaintiffs' ECPA claim and courts routinely hold this does not suffice under the statute. ***Second***, Plaintiffs ignore binding Ninth Circuit precedent and fail to identify grounds for substantial difference of opinion on ECPA's pleading requirements. The district court decisions they cite simply applied different facts to reach different conclusions. ***Third***, Plaintiffs' requested appeal would not "materially advance" the termination of the litigation as it would only implicate a portion of Plaintiffs' class-wide claims and would not encourage a quick end to the lawsuit. Because Plaintiffs cannot satisfy any one of these prongs, much less all three, their motion should be denied.

## II. ARGUMENT

"As a general rule, a party may seek review of a district court's rulings only after the entry of final judgment." *CornerStone Staffing Sols., Inc. v. James*, No. C 12-1527 RS, 2014 WL

1364993, at *1 (N.D. Cal. Apr. 7, 2014) (Seeborg, J.) ("*CornerStone*"). Certification for an interlocutory appeal, however, may be appropriate in the "rare" and "exceptional" circumstance in which: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* (citing 28 U.S.C. § 1292(b)); *see also In re Cement Antitrust Litig*., 673 F.2d 1020, 1027 (9th Cir. 1981) ("this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases"). "[T]he party pursuing the interlocutory appeal bears the burden of [] demonstrating [that it has satisfied these requirements]." *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010). Further, "[t]he decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court" such that "[e]ven when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Ambrosio v. Cogent Commc'ns, Inc*., No. 14-cv-02182-RS, 2016 WL 777775, at *2 (N.D. Cal. Feb. 29, 2016) (Seeborg, J.) (citations omitted).

### A. The April 3 Order Does Not Present a Controlling Question of Law

Only "controlling questions of law" may be certified. To be "controlling," the question of law must "materially affect the outcome of the litigation in the district court.'" *CornerStone*, 2014 WL 1364993, at *2 (quoting *In re Cement Antitrust Litig*., 673 F.2d at 1026). As this Court has observed, "the challenged issue need not be dispositive of the entire lawsuit to be controlling." *Id.* (citing *Kuehner v. Dickinson & Co*., 84 F.3d 316, 319 (9th Cir. 1996)). However, the "first step of § 1292(b) analysis 'should, at a minimum, require that reversal have some immediate effect on the course of litigation and result in some savings of resources.'" *Id.* (quoting *F.T.C. v. Swish Mktg*., C 09-03814 RS, 2010 WL 1526483, at *2 (N.D. Cal. Apr. 14, 2010)).

Plaintiffs contend that whether litigants must plead a "*mens rea* or intent to harm beyond the intent to use the fruits of an interception" to satisfy ECPA's crime-tort exception presents a "controlling issue of law" because a ruling in their favor after trial "would necessitate a second trial on the[ir] ECPA claim." (ECF No. 120 ("Mot.") at 6.) Their argument that piecemeal appeals should be allowed anytime they could avoid a second trial would make certification of

orders dismissing only some claims virtually automatic. *See In re Fontem US, Inc. Consumer Class Action Litig*., No. SACV 15-01026 JVS (RAOx), 2017 WL 10402988, at *6 (C.D. Cal. Mar. 8, 2017) ("[T]he possibility of conducting a second trial occurs in every case that parties appeal."); *see also Vaughn v. Regents of Univ. of Cal.*, 504 F. Supp. 1349, 1355 (E.D. Cal. 1981) (possibility of a second trial not "significant enough to except the case sub judice from the strong federal policy against piecemeal appeals"); *Shimota v. Wegner*, No. 15-1590 (JRT/KMM), 2016 WL 5109138, at *3 (D. Minn. Sept. 19, 2016) (possibility of a second trial "alone cannot be sufficient to justify certification, as certification is appropriate only in 'extraordinary cases'") (citations omitted). Consistent with this weight of authority, this Court has explicitly rejected the position that avoidance of a second trial constitutes the "exceptional circumstances" in which an interlocutory appeal is appropriate. *See CornerStone*, 2014 WL 1364993, at *2. In *CornerStone*, counterclaimant sought to "appeal an order finding that he is precluded from pursuing several of his counterclaims." *Id*. Rejecting the argument that an early appeal would "save [the] litigation from needless expense and delay," the Court found that "interlocutory review would further delay the upcoming trial" and that, if the Ninth Circuit did ultimately reverse the counterclaim order, "a second trial [could] be held at that time." *Id.*

Plaintiffs' desire for a fourth attempt to plead their ECPA claims does not transform ECPA's *mens rea* requirement into a "controlling question of law." 28 U.S.C. § 1292(b). Nor does it satisfy Plaintiffs' burden to establish the "exceptional circumstances" necessary for an interlocutory appeal. *In re Cement Antitrust Litig*., 673 F.2d at 1026.

### B. There Is No Substantial Ground for Difference of Opinion as to the Crime-Tort Exception's *Mens Rea* Requirement

Plaintiffs also fail to show a substantial ground for difference of opinion. Courts will find a substantial ground for difference of opinion where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (citation omitted). But "[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Id.* Here, Plaintiffs ignore

entirely that the Court's rulings are consistent with how the Ninth Circuit has articulated the *mens rea* requirement for Plaintiffs' ECPA claim. Plaintiffs' cited cases do not put forward any conflicting standard.

***First, contrary to Plaintiffs' argument, the Ninth Circuit has addressed the question of the* mens rea *requirement applicable to ECPA's crime-tort exception.*** *See Deteresa v. Am. Broad. Cos.*, 121 F.3d 460 (9th Cir. 1997); (*Contra* Mot. at 11 (claiming that "the Ninth Circuit has never explicitly addressed th[e] question")). Plaintiffs argue that "reasonable jurists [] disagree" as to whether the ECPA's crime-tort exception requires a "subjective intent to cause harm" or merely an "intentional, further use of the fruits of the interception for a tortious (if commercial) purpose." (Mot. at 7, 9.) But, the Ninth Circuit has addressed this exact issue in *Deteresa* and clearly adopted the former "subjective intent" standard over the latter. *See Deteresa*, 121 F.3d at 467 n.4; (*see also* ECF No. 92 at 5-6 (citing *Deteresa*).)

Plaintiffs invoke ECPA's crime-tort exception here in the same way the *Deteresa* plaintiff did: the plaintiff in *Deteresa* alleged that the defendant broadcasting company illegally recorded her as part of a larger tortious scheme that constituted fraud and an unfair business practice under California law. *See Deteresa*, 121 F.3d at 462-63. The Ninth Circuit affirmed judgment for defendant on the wiretap claim concluding that whether defendant "commit[ed] the aforesaid crimes and torts . . . beg[ged] the question." *Id.* at 467 n.4. Because plaintiff failed to show that defendant "taped the conversation for the purpose of [committing said torts]," plaintiff's ECPA claim could not survive. *Id.*; *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (analyzing *Deteresa* and concluding that "[c]ourts applying § 2511(2)(d) have consistently ruled that a plaintiff cannot establish that a defendant acted with a 'criminal or tortious' purpose simply by proving that the defendant committed any tort or crime"). Under binding Ninth Circuit precedent, therefore, there is no substantial ground for difference of opinion as to Plaintiffs' proffered question for an appeal. *See In re Google Referrer Header Priv. Litig.*, No. 10-cv-04809-EJD, 2020 WL 5545155, at *2 (N.D. Cal. Sept. 16, 2020) (no "substantial ground for difference of opinion" where the "'controlling law' from the Ninth Circuit . . . was clear").

***Second, Plaintiffs' cited district court decisions do not reflect a substantial ground for difference of opinion.*** The fact "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633. Stated another way, "[t]hat different district courts in different circuits ruled differently on Rule 12(b)(6) motions does not provide a substantial ground for difference of opinion on controlling questions of law." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 5000237, at *6-7 (N.D. Cal. Nov. 21, 2008). Moreover, another "district court['s] opinion does not have binding precedential effect." *NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007). Plaintiffs urge the Court to find a "substantial ground for difference of opinion" based on the same cases already featured in their opposition to Oracle's motion to dismiss, with one recently decided addition. In each case, however, the court applied the same legal standard applied by this Court and, based on facts not alleged here, came to a different conclusion.

***Brown v. Google.*** *Brown v. Google* remains Plaintiffs' primary support for their argument that "reasonable jurists disagree" on ECPA's crime-tort exception. (*See* Mot. 3.) But Plaintiffs continue to vastly overstate the relevance of *dicta* in *Brown* to the Court's analysis of ECPA's crime-tort-exception in this case.[1] As Oracle noted in its reply brief on the motion to dismiss, "[t]he Court has already expressly considered and rejected Plaintiffs' invocation of *Brown*, ruling that their earlier allegations—concerning collection of their browsing activity on the open internet—failed to show tortious intent." (ECF No. 92 at 7.) *Brown* involved Google's alleged collection of web user information while users were in Chrome's Incognito mode—a feature used for the express purpose of shielding the user's activities. *See Brown*, 525 F. Supp. 3d at 1055-61. As alleged, "internal Google communications" showed that its employees

[1] The *Brown* court's discussion of the crime-tort exception there was not even relevant to its analysis of the ECPA claims in that case. The crime-tort exception applies only when one party to the communication has consented. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) ("consent is not a defense where the 'communication is intercepted for the purpose of committing any criminal or tortious act'") (quoting 18 U.S.C. § 2511(2)(d)). Because the *Brown* court found that neither end users nor the websites they communicated with consented to the interception, Google's alleged tortious purpose was irrelevant to the court's analysis of the ECPA claims. *See id.* at 1068 ("Google does not demonstrate that websites consented to, or even knew about, the interception of their communications with users who were in private browsing mode.").

"recognized" Google's disclosures relating to this practice were "problematic." *Id.* at 1079. Plaintiffs here have failed to make any similar showing sufficient to plausibly "allege Oracle had tortious motivation in collecting data." (ECF No. 114 at 8 (noting that "a culpable mind does not accompany every tortious act").) As the Court observed in the April 3 Order, Plaintiffs' allegations support, "[a]t most," "the unremarkable proposition that an Oracle employee thought the company could be investing more resources into protecting users' privacy." (*Id.* at 5.) To the extent *Brown*'s *dicta* may constitute persuasive authority at all, it has no place here.

Plaintiffs persist, arguing these distinct facts in *Brown* were not relevant to the court's discussion of the crime-tort exception there. (Mot. at 9 n.2 (claiming that the *Brown* court's discussion of Google's "problematic" privacy disclosures came in the context of its analysis of the "highly offensive" element of plaintiffs' privacy claims).) But regardless of where in its decision the court analyzed plaintiffs' "problematic" allegations, Plaintiffs are wrong that "Google's subjective *mens rea* played no role in the *Brown* court's crime-tort exception analysis." (*Id.*) Rather, among other factors, the *Brown* court explicitly based its application of ECPA's crime-tort exception on its determination that plaintiffs adequately stated a claim under the California Comprehensive Computer Data Access and Fraud Act (CDAFA), a statute that premises liability on "***knowing***" access of a "computer system" done "***without permission***." *See Brown*, 525 F. Supp. 3d at 1067, 1074 ("Plaintiffs have adequately alleged that Google's association of their data with preexisting user profiles violated state law, including CDAFA") (emphasis added); *see also* Cal. Pen. Code § 502(c)(2) (providing that a person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data" is guilty of a public offense under the CDAFA). As the *Brown* court reasoned, plaintiffs there adequately stated a CDAFA claim because their allegations showed that Incognito mode "was designed in such a way to render ineffective any barriers that [the plaintiffs] must wish to use to prevent access to their information." *Brown*, 525 F. Supp. 3d at 1075 (quoting *Brodsky v. Apple, Inc.*, No. 19-cv-00712-LKH, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019)). In other words, the *Brown* court found Google acted with a tortious purpose based on allegations that its (a) "hidden" software "render[ed] ineffective" users' barriers to "prevent access" while (b) internal employees

subjectively understood that the practice was "problematic." 525 F. Supp. 3d at 1075. Plaintiffs' allegations here—that Oracle collects activity on the open internet and combines it with brick-and-mortar purchase information for advertising—do not similarly support any plausible inference of tortious intent.

***In re Grp. Health Plan Litig. and Mekhail.*** Plaintiffs rely on one new case—*Mekhail*—and reintroduce another—*In re Grp. Health Plan Litig.* (ECF No. 90 at 5.) In both of these cases, the plaintiffs alleged that defendants, healthcare service providers, intentionally placed tracking technologies on their password-protected patient portals and provided their patients' activities there to Meta for advertising. *See In re Grp. Health Plan Litig*., No. 23-cv-267 (JWB/DJF), 2023 WL 8850243, at *1 (D. Minn. Dec. 21, 2023); *Mekhail v. N. Mem'l Health Care*, No. 23-CV-00440 (KMM/TNL), 2024 WL 1332260, at *1 (D. Minn. Mar. 28, 2024). Here, by contrast, Oracle's alleged conduct is nowhere comparable to the healthcare providers' decision to profit off of private doctor-patient communications in a password-protected portal by disclosing them to a third-party advertiser, as was at issue in *Group Health Plan Litigation* and *Mekhail*. Here, the Court has concluded that even accepting Plaintiffs' allegations that Oracle's compilation of health-related advertising segments is "invasive" it is "insufficient[ly] plausibl[e] to allege Oracle had tortious motivation." (ECF No. 114 at 8 (citing *DoubleClick*, 154 F. Supp. 2d at 518-19 to support that conclusion).)

***In re Toys R Us.*** Plaintiffs repeat their argument from their opposition to Oracle's motion to dismiss that the facts of *Toy R Us* are "saliently identical" to the facts of this case. (Mot. at 10; ECF No. 90 at 6.) Not so. As Oracle explained, "in *Toys R Us*, the plaintiffs alleged that defendants 'spied on' users and 'misappropriate[d] [their] personalty' by collecting *personally identifying information* . . . that could be sold to third parties." (ECF No. 92 at 13-14 (discussing *In re Toys R Us, Inc., Priv. Litig*., No. 00-CV-2746, 2001 WL 34517252, at *2, *8 (N.D. Cal. Oct. 9, 2001).) Here, Plaintiffs allege that Oracle builds "audiences" of consumer interest trends using device identifiers, an allegation far closer to the allegations in *DoubleClick*—concerning the creation of anonymous web-user profiles—than to those made in *Toys R Us*. Plaintiffs completely ignore these key distinctions that Oracle has previously raised. Their insistence that

*Toys R Us* is "saliently identical" to this case, without more, does not meet their burden of showing a "substantial ground for difference of opinion."

***TLS Management v. Rodriguez-Toledo.*** Plaintiffs assert that *TLS Management* supports their argument, but in fact that court adopted the opposite position and applied the crime-tort exception's subjective intent requirement. *TLS Mgmt. v. Rodriguez-Toledo*, 260 F. Supp. 3d 154, 165 (D.P.R. 2016). Plaintiffs in *TLS Management* alleged that defendants intercepted confidential business files for the purpose of stealing plaintiff's clients—a motive that manifests the *mens rea* needed to satisfy ECPA's exception to the exception. *Id.* Indeed, the court quoted *DoubleClick* for the proposition that "[ECPA's] legislative record suggests that the element of 'tortious' or 'criminal' *mens rea* is required to establish a prohibited purpose." *Id.* (quoting *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 515). Here, by comparison, Plaintiffs make no plausible allegation that Oracle acted with any similar intent to cause harm.

***Planned Parenthood Federation of America, Inc. v. Newman.*** *Planned Parenthood*, which Plaintiffs have relied on before, also fails to support their position. In stark contrast to this case, in *Planned Parenthood,* Defendants' "culpable mind" at the time of the alleged interception is readily apparent throughout the decision. *See generally Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808 (N.D. Cal. 2016). Planned Parenthood alleged that defendants formed a "complex criminal enterprise" to publicly—and misleadingly—discredit the organization. *See id.* at 816-19. As alleged, defendants wrongfully gained access to Planned Parenthood facilities under false pretenses, secretly recorded private conversations with staff about the organization's workings, and thereafter published misleading videos "[leading] people to believe that Planned Parenthood had violated the law and acted improperly." *Id.* at 818. Applying these facts, the court concluded that "the public release of the videos (the fruits of the interception), including allegedly misleading summary videos" showed defendants had the necessary culpable mind when breaking into Planned Parenthood's facilities and recording the staff's conversations. *Id.* at 828. Considered in context, the court's ruling does not reasonably support the position that a plaintiff need only allege a "further tortious use" of collected data in

order to invoke ECPA's crime-tort exception because defendants had a clear tortious motive for their conduct.[2]

In sum, Plaintiffs' cited district court decisions involving allegations of plainly tortious conduct have no bearing on this case, where Plaintiffs do not "plausibly [] allege Oracle had tortious motivation." (ECF No. 114 at 8.) Their "strong disagreement" with the Court's application of settled law to the particular allegations in this case does not satisfy their burden to justify an interlocutory appeal. *See Couch*, 611 F.3d at 633.

**C. Interlocutory Appeal Would Not Materially Advance the Litigation**

Plaintiffs' proposed appeal—concerning just one of their three wiretapping claims[3] and none of their remaining privacy, unjust enrichment, or declaratory judgment claims—would not "materially advance" the litigation. Plaintiffs argue that piecemeal appeals "materially advance" a litigation when they resolve "uncertainty" on *any* "class action claim." (*See* Mot. at 12 ("[U]ncertainty regarding the viability of a class action claim . . . is enough to satisfy the 'may materially advance' clause of section 1292(b).") (citation omitted).) But that argument, if successful, would "appl[y] in every case where a court dismissed fewer than all claims." *Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2022 WL 1122835, at *3 (N.D. Cal. Apr. 14, 2022) (rejecting the same argument because "Section 1292(b) . . . is only intended for 'exceptional cases'"); *see also Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 WL 3957436, at *1 (N.D. Cal. Sept. 7, 2011) (appeal would not "materially advance" the litigation where it "would, at best, eliminate only a portion of Plaintiffs' class-wide claims").

Rather, "[s]ection 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if

[2] In any case, as Oracle noted in its reply on the motion to dismiss, the Ninth Circuit ultimately rejected application of the crime-tort exception and reversed the jury's verdict on the ECPA claim because the defendants' interception and later RICO violations shared the same tortious purpose of "destroying Planned Parenthood." (*See* ECF No. 92 at 8 n.8 (discussing *Planned Parenthood Fed'n of Am., Inc.*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (statute "requires that the criminal or tortious purpose be independent of and separate from the purpose of the recording")).)

[3] Plaintiffs' two other wiretapping claims—under the California Invasion of Privacy Act (CIPA) and the Florida Security of Communications Act—remain in the case.

decided in favor of the appellant, would *end the lawsuit*." *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2016 WL 7732622, at *2 (N.D. Cal. Apr. 18, 2016) (quoting *United States v. Woodbury,* 263 F.2d 784, 787 (9th Cir. 1959) (emphasis added)). The standard is met when reversal of the district court's opinion would (1) eliminate parties or whole sets of claims against groups of defendants from the lawsuit; or (2) preserve a key claim easier to prove than remaining claims, thus improving plaintiffs' overall chance of success, *Roberts v. C.R. England, Inc.*, No. C 11-2586 CW, 2012 WL 711903, at *2 (N.D. Cal. Mar. 5, 2012); or (3) dispose of "[t]he bulk of the damages sought against" defendant and thereby encourage settlement. *S.E.C. v. Mercury Interactive, LLC*, No. 5:07-cv-02822-JF, 2011 WL 1335733, at * 3 (N.D. Cal. Apr. 7, 2011); *Rollins v. Dignity Health,* No. 13-cv-01450-TEH, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014) ("encourag[ing] a negotiated settlement . . . would not just materially but completely advance the termination of this litigation").

Plaintiffs' requested appeal on the crime-tort exception's *mens rea* requirement would not "materially advance" the litigation under any of these criteria. ***First***, a successful appeal of the April 3 Order would not eliminate any parties or whole sets of claims from the lawsuit or dispose of a set of claims against defendant. Instead, it "would, at best [implicate only one] of Plaintiffs' [wiretapping] claims." *Sonoda*, 2011 WL 3957436, at *1. ***Second***, Plaintiffs' ECPA claim is not central to Plaintiffs' lawsuit in that it is not "substantially easier to prove compared to the others." *Roberts*, 2012 WL 711903, at *2. Plaintiffs admit as much, arguing that a second trial on the ECPA claim following appeal would "overlap with much of the same documentary evidence and testimony at issue in Plaintiffs' California and Florida state wiretap claims." (Mot. at 6-7); *cf. Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (certification on dismissed claim "materially advanced" litigation where remaining claims were "just a life jacket"). ***Third,*** the "bulk of the damages sought against [Oracle do not] arise from the [ECPA] claim[]." *Cf. Mercury Interactive*, 2011 WL 1335733, at *3. In fact, damages available under Plaintiffs' remaining CIPA claim dwarf potential recovery under ECPA: where ECPA allows for statutory damages of the greater of $10,000 or $100 ***a day for each violation*** (18 U.S.C. § 2520(c)(2)(B)), CIPA provides for statutory damages of $5,000 ***per violation*** (Cal. Penal Code §

637.2(a)(1)). Depending on the Court's ultimate determination as to the relevant conduct that constitutes a CIPA "violation," any damage award attributable to the CIPA claim could be many times that of damages attributable to the ECPA claim.

All told, Plaintiffs' requested appeal will not "materially advance the ultimate termination of the litigation" but will merely affect "Plaintiffs' ability to pursue their [ECPA] claim." *Roberts*, 2012 WL 711903, at *2. Without more, Plaintiffs have not shown that this is an "exceptional circumstance" in which interlocutory appeal is appropriate.

## III. CONCLUSION

Plaintiff cannot satisfy any one of the three criteria necessary to justify the extraordinary remedy they seek. As such, their motion to certify the April 3 Order for appeal should be denied.

Dated: May 6, 2024

MORRISON & FOERSTER LLP

By: */s/ Purvi G. Patel*
Purvi G. Patel

***Attorneys for Defendant Oracle America, Inc.***