Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Katz-Lacabe, and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(e)**<br><br>Judge: Hon. Richard Seeborg<br><br>Date: August 8, 2024<br>Time: 1:30 p.m.<br>Courtroom: 3<br><br>Date Action Filed: August 19, 2022<br>Trial Date: Not set<br><br>(Declaration of David T. Rudolph including Settlement Agreement, and Declaration of Steven Weisbrot, filed concurrently herewith) |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on August 8, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard,[1] in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Michael Katz-Lacabe and Dr. Jennifer Golbeck ("Plaintiffs") will, and hereby do, move the Court for an order pursuant to Rule 23(e)(1) granting Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement[2] and for Direction of Notice Under Rule 23(e), and:

    a.  Granting preliminary approval of the proposed Settlement Agreement entered between the parties;

    b.  Determining that the Court, at the final approval stage, will likely certify the Settlement Class as defined in the Settlement Agreement;

    c.  Appointing Plaintiffs as Class Representatives of the proposed Settlement Class;

    d.  Appointing Michael W. Sobol and David T. Rudolph of Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") as Class Counsel for the proposed Settlement Class;

    e.  Approving the parties' proposed Notice Plan outlined herein, including the proposed Email Notice, Detailed Notice, and Media Notice, and directing that notice be disseminated pursuant to the Notice Plan;[3]

    f.  Appointing Angeion Group, LLC as Settlement Administrator, and directing that it carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement Agreement; and

    g.  Setting a Fairness Hearing and certain other dates in connection with the final approval of the Settlement Agreement.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of David T. Rudolph in Support of Preliminary Settlement Approval, with supporting exhibits; the Declaration of Steven Weisbrot of Angeion Group, LLC with supporting exhibits; the argument of counsel, all papers and records on file in this matter;

---

[1] Dkt. 131, Order Granting Joint Administrative Motion to Set Preliminary Approval Hearing Date.

[2] The Settlement Agreement is attached as Exhibit 1 to the concurrently filed Declaration of David T. Rudolph in Support of Preliminary Settlement Approval.

[3] *See* Declaration of Steven Weisbrot and proposed notices attached as Exhibits B (Email Notice) and C (Detailed Notice) to the Settlement Agreement.

1  and such other matters as the Court may consider.

2  **STATEMENT OF ISSUES TO BE DECIDED**

3      Pursuant to Rule 23(e), this Motion raises the following issues:

4      1.  Whether the proposed Settlement Agreement entered between the parties should

5          be preliminary approved;

6      2.  Whether the Settlement Class as defined in the Agreement is likely to be certified
        at the final approval stage;

7

8      3.  Whether Michael Katz-Lacabe and Dr. Jennifer Golbeck have adequately
        represented the proposed Class and thereby merit appointment as Class

9          Representatives of the proposed Class;

10      4.  Whether Lieff Cabraser has adequately represented the proposed Class and thereby
        merits appointment as Class Counsel for the proposed Class;

11

12      5.  Whether the parties' proposed Notice Plan outlined herein is the best notice
        practicable under the circumstances and the Notice contents is clear; and

13      6.  Whether the Court should appoint Angeion Group, LLC as Settlement
        Administrator and direct it to carry out the duties and responsibilities of the

14          Settlement Administrator specified in the Agreement.

15

16  Dated: July 18, 2024          */s/ Michael W. Sobol*

17            Michael W. Sobol (SBN 194857)
          msobol@lchb.com

18            David T. Rudolph (SBN 233457)
          drudolph@lchb.com

19            Jallé H. Dafa (SBN 290637)
          jdafa@lchb.com

20            John D. Maher (SBN 316157)
          jmaher@lchb.com

21            Amelia A. Haselkorn (SBN 339633)
          ahaselkorn@lchb.com
          Nabila Abdallah (SBN 347764)

22            nabdallah@lchb.com
          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

23            275 Battery Street, 29th Floor
          San Francisco, CA  94111-3339

24            Telephone:  415.956.1000
          Facsimile:  415.956.1008

25            *Attorneys for Plaintiffs and the Class*

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 2

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 3

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

I.     Factual Background ...................................................................................... 2

II.    Procedural Background ................................................................................. 2

     A.     Pleadings ............................................................................................ 2

     B.     Discovery ............................................................................................ 4

     C.     Mediation ........................................................................................... 5

III.   SUMMARY OF SETTLEMENT TERMS ...................................................... 6

     A.     The Settlement Class and Release ...................................................... 6

     B.     The Non-Reversionary Settlement Fund ............................................ 6

     C.     Non-Monetary Relief ......................................................................... 7

     D.     Notice Plan and Settlement Administration Costs ............................. 9

     E.     Attorneys' Fees and Expenses, and Class Representative Service Awards ............ 9

     F.     The Proposed Settlement Administrator ............................................. 9

LEGAL STANDARD FOR PRELIMINARY APPROVAL ................................................ 9

ARGUMENT ..................................................................................................................... 10

I.     The Settlement Satisfies the Northern District's Guidance. ........................ 10

     A.     Guidance 1(a) – (b): Changes to the Settlement Class Definition. ...... 10

     B.     Guidance 1(c): The Settlement Recovery Outweighs the Costs, Risks, and Delay of Trial and Appeal. ........................................ 11

     C.     Guidance 1(e) – (g): The Settlement Benefits Will Be Equitably Distributed Through a Simple, Straightforward Settlement Claims Process. ........ 13

     D.     Guidance 2: The Proposed Settlement Administrator Should be Appointed. ........ 14

     E.     Guidance 3: The Proposed Notice Plan Should Be Approved. ............ 14

     F.     Guidance 4 and 5: The Processes for Exclusions from and Objections to the Settlement are Straightforward. ...................................... 15

     G.     Guidance 6: Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses. ........................................................ 15

     H.     Guidance 7: Plaintiffs Will Request a Service Award for Class Representatives. ................................................................ 16

     I.     Guidance 8: The Parties Will Propose Appropriate *Cy Pres* Recipients. ............ 16

     J.     Guidance 9: The Court Should Schedule a Fairness Hearing and Related Dates. ................................................................. 17

     K.     Guidance 10: The Requirements of the Class Action Fairness Act Will Be Met. ................................................................. 18

**TABLE OF CONTENTS**
**(continued)**

| | | | Page |
|---|---|---|---|
| | L. | Guidance 11: This Outcome Exceeds the Relief Obtained in Comparable Data Privacy Cases. | 18 |
| II. | | The Proposed Settlement is Fair, Reasonable, and Adequate. | 20 |
| | A. | The Settlement is the Product of Arm's Length Negotiations and is Supported by Experienced Counsel. | 20 |
| | B. | The Stage of the Proceedings and the Discovery Conducted Support Approval. | 20 |
| III. | | The Court Will be Able to Certify the Proposed Settlement Class. | 21 |
| | A. | The Class Satisfies Rule 23(a)'s Prerequisites. | 21 |
| | B. | Plaintiffs Satisfy Rule 23(b)(3)'s Requirements. | 23 |
| | C. | The Court Should Appoint the Named Plaintiffs as Class Representatives. | 24 |
| | D. | The Court Should Appoint Class Counsel as Settlement Class Counsel. | 24 |
| IV. | | CONCLUSION | 24 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 21

*Brinkley v. Monterey Fin. Servs., LLC*,
    No. 16-cv-1103, 2020 WL 12991079 (S.D. Cal. Jan. 17, 2020) ............................ 11

*Campbell v. Facebook Inc.*,
    No. 13-CV-05996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd,* 951
    F.3d 1106 (9th Cir. 2020) ................................................................................. 13

*Carlotti v. ASUS Computer Int'l*,
    No. 18-cv-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ................................... *passim*

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................ 14

*Cummings v. Connell*,
    402 F.3d 936 (9th Cir. 2005) ............................................................................ 11

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ...................... 20

*Fleming v. Impax Lab'ys Inc.*,
    No. 16-CV-06557, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ...................... 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. 21, 23, 24

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) .............................................................................. 6

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................... 23

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 20

*In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Pracs, and Prods. Liab. Litig.*,
    No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ......................... 11

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) .............................................................. 20

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    No. 3:18-MD-02843, 2023 WL 8443230 (N.D. Cal. Oct. 10, 2023) ................... 19

*In re Google Inc. Street View Elec. Commc'n. Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ........................................................................... 13

*In re Google Location Hist. Litig.*,
    No. 5:18-CV-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ................ 13, 19

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Illumina, Inc. Sec. Litig.*,
    No. 3:16-CV-3044, 2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ....................... 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)..................................................................................... 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    No. MDL 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)................................... 22

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ..................................................................... 16

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012).............................................................................. 7, 18

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014).................................................................................... 22

*Rodriguez v. W. Pub. Corp.*,
    563 F.3d 948 (9th Cir. 2009).................................................................................... 16

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996).............................................................................. 23, 24

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)......................... 20

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023) ..................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................. 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010).................................................................................. 23

**Statutes**

18 U.S.C. § 2520(c)(2) .................................................................................................. 12

28 U.S.C § 1292(b) .......................................................................................................... 4

28 U.S.C. § 1715 ............................................................................................................ 18

Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................................... 3

California Invasion of Privacy Act, Cal. Penal Code § 630............................................ *passim*

Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* .................................. 3, 4, 12

Florida Security of Communications Act ("FSCA"), Fla. Stat. Ann. §934.03 .............. 1, 3, 12, 18

**Court Rules**

Fed. R. Civ. P. § 23 ................................................................................................ *passim*

**Treatises**

Judicial Council of California Civil Jury Instructions (2023), CACI No. VF-1800.................... 11

Restatement (Second) of Torts § 652H (Am. L. Inst. 1977)....................................... 11

- iv -

Rutter Group, CAL. PRAC. GUIDE: CIV. PROC. TRIAL CLAIMS & DEF.,
   Chapter 4(IV)-E ............................................................................................................ 11

**Constitutions**

California Constitution ................................................................................................... 1, 2

**<u>INTRODUCTION</u>**

After nearly two years of hard-fought litigation encompassing three rounds of motion to dismiss briefing addressing privacy rights issues, and eight months of well-informed, arm's length settlement negotiations aided by experienced mediators, Plaintiffs have reached an outstanding settlement with Oracle America Inc. ("Oracle") that is fair, reasonable, and adequate.[4] The proposed Settlement delivers substantial relief to the Settlement Class, providing that Oracle will pay $115 million into a non-reversionary cash fund to be distributed evenly among Settlement Class Members. The settlement also provides meaningful non-monetary relief addressing the alleged privacy violations through binding promises that Oracle will, for as long as it continues to offer the products and services described in the operative complaint, (i) not capture certain complained-of electronic communications and (ii) will implement an audit program to review its customers' compliance with contractual consumer privacy obligations. Shortly after the parties reached an agreement in principle for this non-monetary relief, Oracle publicly announced the imminent shut down of its ad tech business. The Settlement thus demarcates a new era for Oracle's relationship with class members, offers substantial benefits, and at the same time eliminates the risk and uncertainty of continued litigation.

Plaintiffs request that the Court preliminarily approve this proposed nationwide class action settlement, resolving numerous claims against Oracle including claims for invasion of privacy under the California Constitution (Article I, Section I); intrusion upon seclusion under California common law; violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*; violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. Ann. § 934.03; unjust enrichment under California and Florida common law; declaratory judgment that Oracle wrongfully accessed, collected, stored, disclosed, sold, and otherwise improperly used Plaintiffs' private data; and injunctive relief. *See* Dkts. 87, 114.

This Settlement was reached at a critical juncture in the litigation, after extensive motion

---

[4] The Settlement Agreement (the "Settlement" or "SA") is attached as Exhibit 1 to the concurrently filed Declaration of David T. Rudolph in Support of Preliminary Settlement Approval ("Rudolph Decl."). Unless otherwise noted, capitalized terms herein refer to and have the same meanings as in the Settlement.

practice and discovery, but before Plaintiffs would face the risks of class certification, summary judgment, and trial. Given the substantial and meaningful relief provided by this proposed Settlement and in light of the risks of continuing and protracted litigation, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement to immediately provide substantial monetary and injunctive relief to the proposed Class.

**BACKGROUND**

## I.      Factual Background

After an extensive two year investigation, Plaintiffs commenced this novel privacy action on behalf of all persons whose personal data Oracle allegedly collected. *See* Rudolph Decl. ¶ 3. The investigation commenced in early 2020 and involved analyzing the vast public record, including complaints filed by consumer organizations and government regulators, academic articles, news reports, books, web pages, marketing materials, privacy policies and disclosures. Prior to filing this lawsuit, Plaintiffs obtained from Oracle their "Offline Access Request Response Reports" ("OARRRs"), which have been central to this litigation. *Id.* Lieff Cabraser also consulted with a privacy law scholar and with two computer science experts who performed forensic research and analysis of Oracle's publicly-available technical documentation. *Id.* On August 19, 2022, three Plaintiffs filed suit against Oracle alleging that its data brokering business violates internet users' right to privacy under the California Constitution as well as various state and federal privacy statutes. Dkt. 1.

## II.     Procedural Background

### A.      Pleadings

The complaint and amended complaints faced three rounds of motions to dismiss that raised potentially dispositive issues including Plaintiffs' standing, the reasonable expectation of privacy, choice of law, and applicability of state and federal wiretapping statutes. Rudolph Decl. ¶ 4; Dkts. 23, 63, 88. Plaintiffs researched and drafted thorough oppositions to Oracle's motions and, in response to the Court's rulings, amended the complaint twice. *Id.* Each iteration of the complaint required extensive additional research. *Id.*

In their initial complaint, Plaintiffs sought to represent five potential classes, including a

Worldwide Class. Oracle filed a motion to dismiss Plaintiffs' initial complaint on November 7, 2022. Dkt. 23. On April 6, 2023, the Court granted in part Oracle's motion, dismissing without prejudice Plaintiffs' claims under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; and for unjust enrichment under California common law. Dkt. 49. Meanwhile, the Court maintained Plaintiffs' constitutional invasion of privacy, intrusion upon seclusion (for the California subclass), CIPA (same), declaratory judgment, and equitable relief claims, "albeit some barely." *Id.* at 23. Following the Court's choice of law ruling, finding that it could not apply California law to European privacy claims, the foreign named Plaintiff voluntary dismissed his claims. *Id.*; Dkt. 56.

On May 22, 2023, the two U.S. Plaintiffs filed a First Amended Complaint ("FAC") repleading their Federal Wiretap Act and unjust enrichment claims, and adding Florida common law and wiretap claims, attaching this time copies of the OARRRs to provide greater detail on the nature of personal data Oracle maintains on people. Dkt. 54.

On June 28, 2023, Oracle moved to dismiss portions of the FAC. Dkt. 63. On October 3, 2023, the Court (1) dismissed with leave to amend Plaintiffs' intrusion upon seclusion under Florida law, unjust enrichment under California law (on behalf of a United States class), and ECPA claims; (2) dismissed without leave to amend Plaintiffs' intrusion upon seclusion claim under California law (on behalf of a United States class); and (3) maintained Plaintiffs' intrusion upon seclusion under California law (on behalf of a California subclass), invasion of privacy, CIPA, FSCA, unjust enrichment, declaratory judgment, and injunctive relief claims. Dkt. 77. Plaintiffs moved for leave to file a motion for partial reconsideration, which was denied. Dkts. 85, 86.

Plaintiffs filed their operative Second Amended Complaint ("SAC") on November 17, 2023. Dkt. 87. On December 22, 2023, Oracle filed its third motion to dismiss, moving only against Plaintiffs' intrusion upon seclusion claim under Florida law and ECPA claim under the Federal Wiretap Act. Dkt. 88. With its motion to dismiss portions of the SAC, Oracle also requested that the Court consider documents outside of the Complaint (Dkt. 89), which Plaintiffs

1    opposed (Dkt. 91).

2           Four days after Oracle filed its reply brief in support of its third motion to dismiss (Dkt.

3    92), Oracle produced spreadsheets reflecting certain data in its records that may have been

4    associated with Plaintiffs. Rudolph Decl. ¶ 5. Plaintiffs filed a motion for leave to file a surreply

5    in order to proffer new allegations stemming from this newly-produced information. *See* Dkt. 94.

6    The Court granted Plaintiffs' request to file a surreply and allowed Oracle a response. Dkt. 95.

7    Plaintiffs moved to seal portions of the surreply brief, arguing that it contained sensitive personal

8    data and inferences from Oracle's production. Dkt. 98. Oracle did not oppose the motion to seal,

9    and the Court granted it. Dkt. 114. On April 3, 2024, the Court dismissed with prejudice

10   Plaintiffs' intrusion upon seclusion claim under Florida law and ECPA claim, and ordered Oracle

11   to answer the SAC. *Id.*

12          Following the Court's dismissal with prejudice of their ECPA claim, Plaintiffs filed a

13   motion under 28 U.S.C § 1292(b) to certify for interlocutory review the question of whether

14   defendant's alleged intentional, further tortious use of intercepted data is sufficient to show that

15   its interception meets the crime-tort exception to the ECPA's consent exception. Dkt. 120;

16   Rudolph Decl. ¶ 6. Oracle thereafter filed its opposition to Plaintiffs' motion to certify for

17   interlocutory appeal. Dkt. 122.

18          **B.    Discovery**

19          The parties engaged in extensive discovery efforts. The parties met and conferred on the

20   terms of the ESI and protective order, as well as the parameters of the proposed forensic

21   inspection protocol to search Plaintiffs' imaged devices for their internet activity. Rudolph Decl.

22   ¶ 7. Plaintiffs served—and Oracle responded to—four sets of substantive document requests,

23   comprised of 73 individual requests, along with two sets of interrogatories. Rudolph Decl. ¶ 7.

24   Plaintiffs also took the deposition of an Oracle employee. *Id.* ¶ 7, 10.

25          The parties contested the scope and relevance of discovery topics implicated in Plaintiffs'

26   requests as well as Oracle's pace of production. This led to frequently contentious video meet and

27   confer conferences and the exchange of dozens of discovery dispute letters and correspondence.

28   Rudolph Decl. ¶ 8. Throughout this process, Plaintiffs sent several motion to compel letter brief

drafts to Oracle's counsel, one of which was resolved by compromise between the parties. *Id.* The parties each filed one motion to compel with Magistrate Judge Westmore, which helped advance the pace of discovery. Dkts. 102, 110.

Oracle ultimately produced over 160,000 pages of responsive documents and ESI to Plaintiffs, as well as over 283 videos consisting largely of internal discussions of the technical operation of Oracle's data collection and use practices, spanning approximately 173 hours. Rudolph Decl. ¶ 9. To analyze the materials that Oracle produced, Class Counsel had to grasp complex ad tech software technologies and processes. Plaintiffs retained technical experts to ensure meaningful and accurate analysis of these documents which included lines of computer code. *Id.* Plaintiffs obtained key information about Oracle's business practices and policies during the relevant period, strategic decisions, agreements, clients, the extent of data Oracle had received, and the inferred data resulting from its data processing. *Id.*

Class Counsel responded to defensive discovery. *Id.* ¶ 11. Plaintiffs responded to Oracle's document requests (26 requests to Plaintiff Ryan, 27 requests to Plaintiff Katz-Lacabe, and 28 requests to Plaintiff Golbeck) and conducted thorough searches for documents and responsive ESI. *Id.* This required engaging a forensics consultant who imaged Plaintiffs' personal laptops and cell phones, a process that required extensive safeguards before Plaintiffs could agree to it. *Id.* Each Plaintiff produced responsive documents and provided detailed responses to Oracle's interrogatories, including supplemental responses at Oracle's request. Plaintiffs also provided detailed responses to Oracle's requests for admission. *Id.*

**C.   Mediation**

After exchanging an initial demand and response, on April 24, 2024, the parties engaged in an extended day of in-person mediation with Professor Eric D. Green and Fouad Kurdi of Resolutions, LLC. *Id.* ¶ 13. Prior to the mediation, the parties prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the case. *Id.* By the close of the mediation session, the parties had exchanged draft term sheets. *Id.* ¶ 14. During the next two weeks, the parties continued negotiations through emails and phone calls with the mediators. *Id.* On May 8, 2024, they executed a binding settlement term sheet outlining the basic terms of a

settlement. *Id.* Over the next ten weeks, the parties negotiated a long-form settlement agreement, including the precise terms and implementation of non-monetary relief. *Id.* ¶ 15. These arm's length negotiations resulted in the Settlement Agreement, which was executed on July 8, 2024. *Id.* **Exhibit 1** to the Declaration of David T. Rudolph in Support of Preliminary Settlement Approval is a true and correct copy of the parties' Settlement Agreement.

### III.   SUMMARY OF SETTLEMENT TERMS

#### A.   The Settlement Class and Release

The Agreement provides for a Settlement Class of all United States residents "whose personal information, or data derived from their personal information, was acquired, captured, or otherwise collected by Oracle Advertising technologies or made available for use or sale by or through Oracle's ID Graph, Data Marketplace, or any other Oracle Advertising product or service from August 19, 2018 to the date of final judgment in the Action." SA ¶ R.

In exchange for the Settlement's benefits, members of the Settlement Class will release any claims against Oracle and the Released Parties that are based on, or arise from, one or more of the same factual predicates or theories of liability as alleged in the operative complaint (Dkt. 87). SA ¶¶ 10.2, 10.3. The scope of the Release is consistent with this Circuit's governing standards. *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a . . . released claim [that] is 'based on the identical factual predicate as that underlying the claims in the settled class action.'") (citation omitted). Pursuant to Rule 23(e)(3), there are no agreements that would modify any term of the Settlement Agreement.

#### B.   The Non-Reversionary Settlement Fund

Oracle has agreed to pay $115 million to create a non-reversionary cash Settlement Fund for the benefit of Settlement Class Members, who will receive a claims-made *pro rata* payment from the Net Settlement Fund (*i.e.*, after the deduction of settlement-related costs, including the costs of Notice and Settlement administration, any Court-awarded attorneys' fees and expenses, and Class Representative Service Awards). SA ¶¶ H, O, W, 3.2.5, 3.2.15. The Net Settlement Fund will be distributed among Valid Claimants within 40 days after the Effective Date. *Id.* ¶

3.1.2. No portion of the Settlement Fund will revert to Oracle. *Id.* ¶¶ T, 3.2.1.

Unclaimed funds (if any) will go through a second distribution, if feasible, but if not feasible, the residual funds will be distributed *cy pres*. The parties have initially identified as a potential *cy pres* beneficiary the Privacy Rights Clearinghouse (PRC). *Id.* ¶¶ 3.2.15.4 and 3.2.15.5.[5] The work of this organization has the requisite nexus to this action, the goals of the underlying statutes and claims, and the interests of this Settlement Class. *See Lane v. Facebook*, 696 F.3d 811, 821 (9th Cir. 2012). *See* Rudolph Decl. ¶ 19.

## C.   <u>Non-Monetary Relief</u>

Oracle must implement meaningful business practices designed to address the alleged privacy violations and protect Plaintiffs' privacy moving forward. There are two aspects of the non-monetary relief. One, Oracle has agreed that it will not capture (a) user-generated electronic information within referrer URLs (*i.e.*, the URL of the previously-visited page) associated with a website user or (b) any text entered by a user in an online web form other than through Oracle's own websites. As such, Oracle has agreed it will not engage in the alleged conduct which is central to Plaintiffs' wiretap claims. SA ¶ 3.5; *see* Dkt. 77 at 9 (limiting electronic "content" for Plaintiffs' CIPA claim to referrer URLs and data entered into forms). Two, Oracle has agreed to implement an audit program to reasonably review customer compliance with contractual consumer privacy obligations. SA ¶ 3.5. Oracle has agreed to comply with these provisions for as long as it offers the products and services described in the SAC (Dkt. 87). *Id.*

These significant business practice changes herald a new era in the relationship between Oracle and the Settlement Class as further reflected in business changes with a nexus to this lawsuit. As described in Plaintiffs' amended pleadings, Oracle ceased operation of its "AddThis" tracking mechanism only *after* Plaintiffs' initial pleadings alleged that Oracle's collection of data through AddThis violated Plaintiffs' privacy rights.[6] *See* Dkt. 87, ¶ 56. Plaintiffs had alleged that

---

[5] The need for final determination of the proper *cy pres* recipient(s) is several months in the future. Once the size of any residual appropriate for *cy pres* distribution is determined, the parties will submit their final recommendation of the appropriate recipient for the Court's approval.

[6] Allison Schiff, *Oracle To Shut Down AddThis – Completely This Time*, AdExchanger (May 25, 2023), https://www.adexchanger.com/data-exchanges/oracle-to-shut-down-addthis-completely-this-time/ [https://perma.cc/6LWB-X75U].

1    AddThis was a highly privacy-invasive data collection mechanism in their initial and amended

2    complaints, and the data collection practices through AddThis partially underlie Plaintiffs'

3    intrusion upon seclusion and unjust enrichment claims. *See* Dkt. 1, ¶ 41; Dkt. 54, ¶ 56. Oracle

4    shut down AddThis on May 31, 2023—a week after Plaintiffs filed their First Amended

5    Complaint on May 22, 2023.

6            On June 11, 2024, just over thirty days after committing to the business practice changes

7    in the parties' May 8, 2024 binding term sheet, Oracle's CEO announced that it would be exiting

8    the ad tech business altogether.[7] Specifically, Oracle has confirmed that its ad tech products—

9    including Oracle Cloud Data Management Platform (comprising the BlueKai business, including

10   the BlueKai "Core Tag" tracking mechanism and associated cookies and pixels, Datalogix, and

11   the Data Marketplace); Digital Audiences (including OnRamp, the primary Oracle service

12   utilizing Oracle's ID Graph); and Cross-Device tracking—will no longer exist as of September

13   30, 2024.[8] Oracle has also announced that it will automatically delete its customers' data "once

14   [its] obligations are met," and will "end relationships with data providers."[9] Thus, after the

15   execution of the Settlement Agreement, Oracle announced it would shut down the business units

16   responsible for virtually all of the conduct that is at issue in this case.

17           While Oracle's CEO cited falling revenues for its decision, media reports stated that

18   "there is a near-universal view that [this decision] also reflects the impact of" "strengthening

19   privacy rules around the world."[10] Plaintiffs believe the filing of *this lawsuit* may have

20

21   [7] Tim Cross, *Oracle Quietly Exits the Advertising Business*, VideoWeek (June 12, 2024),
     https://videoweek.com/2024/06/12/oracle-quietly-exits-the-advertising-business/
22   [https://perma.cc/7ECF-FXXB].

23   [8] *Oracle Advertising End-of-Life Frequently Asked Questions*, Oracle (June 17, 2024),
     https://www.oracle.com/contracts/docs/oracle-advertising-end-of-life-faqs.pdf?download=false
24   [https://perma.cc/WFL3-ARU8]; *see also* Catherine Perloff, *Exclusive: Oracle will end all of its
     ad products by Sept. 30*, Adweek (June 17, 2024),
25   https://www.adweek.com/programmatic/exclusive-oracle-will-end-all-of-its-ad-products-by-sept-
     30/ [https://perma.cc/GR5N-V4PC].

26   [9] *Oracle Advertising End-of-Life Frequently Asked Questions*, Oracle at 3 (June 17, 2024), *supra*
     n. 7.

27   [10] Andrew Birmingham and Nadia Cameron, *$1.7bn wipeout: Oracle's adtech exit follows 'gross
     miscalculation' as industry 'also rans' squeezed out by privacy pincer, outgunned by bigger tech*
28   Mi3 (June 17, 2024), https://www.mi-3.com.au/17-06-2024/oracles-ad-tech-retreat-suggests-
     gross-miscalculation-also-speaks-volumes-about-state [https://perma.cc/H27Q-E7LV].

contributed to its decision.[11, 12, 13]

### D. Notice Plan and Settlement Administration Costs

Class Members will be notified through a program implemented by Angeion Group, LLC ("Angeion"), a highly experienced third-party administrator. As independently supported by the Declaration of Steven Weisbrot in Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice under Rule 23(e) ("Weisbrot Decl.") ¶¶ 18–36, the proposed Class Notice and notice program meets all applicable standards, as set forth below in Section I.E.

### E. Attorneys' Fees and Expenses, and Class Representative Service Awards

Class Counsel will file a motion for an award of reasonable attorneys' fees and expenses, and service awards for the Class Representatives, at least 50 days prior to the Exclusion and Objection Deadline. The amounts requested (*see infra* Section I.A.H) will be disclosed in the Class Notice. Rudolph Decl. ¶ 35, Ex. C at Question 10. Any approved attorneys' fees and expenses, and service awards, will be paid out of the Settlement Fund. SA ¶ B, 3.2.5, 8.1. The Settlement is not conditioned upon the Court's approval of any service award, attorneys' fees, or expenses, and Oracle may oppose these applications. *Id.* ¶ 8.3.

### F. The Proposed Settlement Administrator

The parties propose Angeion as the Settlement Administrator after a competitive selection process. Rudolph Decl. ¶ 28; *see infra* Section I.D. The settlement administration costs will be paid directly from the Settlement Fund. Rudolph Decl. ¶ 30.

### LEGAL STANDARD FOR PRELIMINARY APPROVAL

At the preliminary approval stage, the Court must determine that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment

---

[11] *Supra* n. 6 (noting this lawsuit "put extra pressure" on Oracle to close its ad business).

[12] Stephanie Liu, Mo Allibhai, and Xiaofeng Wang *Oracle Exits the Advertising Business*, Forrester (June 19, 2024), https://www.forrester.com/blogs/oracle-exits-the-advertising-business/ [https://perma.cc/35CB-QYU2]. ("In Oracle's case, consumer privacy awareness manifested as a class-action lawsuit alleging that Oracle built 'digital dossiers' on millions of people without their consent. While a judge dismissed some of the claims in the original lawsuit, it is still proceeding through the legal system and remains unresolved.")

[13] *Supra* n. 9 (noting that given "the legal baggage of the Datalogix class action lawsuit," made it necessary for Oracle to "convince the market its solutions are viable").

on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Specifically, in evaluating a proposed settlement, the Court should consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Through this analysis, courts are guided by a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

<u>**ARGUMENT**</u>

**I.      <u>The Settlement Satisfies the Northern District's Guidance.</u>**

The proposed Settlement satisfies the requirements of the Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance").

**A.      <u>Guidance 1(a) – (b): Changes to the Settlement Class Definition.</u>**

A class has not yet been certified. The proposed Settlement Class is: "all natural persons residing in the United States whose personal information, or data derived from their personal information, was acquired, captured, or otherwise collected by Oracle Advertising technologies or made available for use or sale by or through ID Graph, Data Marketplace, or any other Oracle Advertising product or service from August 19, 2018 to the date of final judgment in the Action." SA ¶ R. The Settlement Class encompasses the class definitions in the operative SAC, with three divergences. First, it adds a temporal restraint on the class definition to ensure that no claims arising after the date of final judgment are released, and aligns with the longest statute of limitations of the claims at issue. Second, it is modified to encompass persons from whom Oracle "acquired, captured, or otherwise collected" personal data "through ID Graph, Data Marketplace, or any other Oracle Advertising product or service," to reflect Plaintiffs' current understanding of the nature of Oracle's business activities. Third, Plaintiffs do not seek certification for settlement purposes of the four California and Florida subclasses remaining in the SAC, because the Settlement encompasses them in a single, nationwide class. Rudolph Decl. ¶ 24; *see* SAC ¶ 134. Courts routinely approve similar or even more extensive departures from proposed litigation classes. *See, e.g., Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2019 WL 6134910, at *14

(N.D. Cal. Nov. 19, 2019) (approving settlement class narrower than class in complaint); *In re Chrysler-Dodge-Jeep Ecodiesel Mktng, Sales Pracs, and Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at *3(N.D. Cal. Feb. 11, 2019) (approving settlement with "simpler" class definition).

### B.  Guidance 1(c): The Settlement Recovery Outweighs the Costs, Risks, and Delay of Trial and Appeal.

The proposed $115 million recovery and non-monetary relief is a substantial recovery, even when compared with the potential recovery had Plaintiffs prevailed at trial.

**Intrusion Upon Seclusion and California Constitutional Privacy.** Plaintiffs' common law and constitutional privacy claims allow for compensatory damages, restitution, punitive damages, nominal damages, and injunctive relief. *See, e.g.*, Judicial Council of California Civil Jury Instructions (2023), CACI No. VF-1800; Restatement (Second) of Torts § 652H (Am. L. Inst. 1977); Rutter Group, CAL. PRAC. GUIDE: CIV. PROC. TRIAL CLAIMS & DEF., Ch. 4(IV)-E; *Cf. Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005). Calculating class-wide damages under the claims asserted here is an imprecise exercise and would have drawn significant challenges from Oracle. Nevertheless, while difficult to estimate, damages could be substantial given the large number of class members, even when limited to those residing in California and Florida; at minimum, the approximately 40 million members of the proposed California and Florida classes would be entitled to nominal damages of at least one dollar each.

**Violation of the California Invasion of Privacy Act.** Plaintiffs' CIPA claim sought monetary "damages for the greater of $5,000 or three times the amount of actual damages." SAC ¶ 210. "[T]he 2017 amendment to section 637.2 clarified that damages are available on a per-violation basis." *Brinkley v. Monterey Fin. Servs., LLC*, No. 16-cv-1103, 2020 WL 12991079, at *13 (S.D. Cal. Jan. 17, 2020). Had Plaintiffs' CIPA claim proceeded to trial, Oracle would have been exposed to statutory damages of $5,000 per violation for nearly every person in California. While the potential recovery on such massive aggregated statutory damages would be enormous (likely over a billion dollars), it could face challenges reducing recovery. *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1121 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 1756 (2023) ("[A]ggregated

- 11 -

statutory damages awards are, in certain extreme circumstances, subject to constitutional due process limitations.").

**Violation of the Florida Security of Communications Act.** Success of Dr. Golbeck's FSCA claim could have resulted in "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher," for class members residing in Florida. Fla. Stat. Ann. § 934.10(b). This claim would have also entitled Dr. Golbeck and proposed FSCA Class Members to "reasonable attorney's fees and other litigation costs reasonably incurred." Fla. Stat. Ann. § 934.10(d). Therefore, as with the CIPA claim, had Plaintiffs prevailed on their FSCA claim, their potential class recovery would have been substantial (potentially hundreds of millions of dollars).

**Unjust Enrichment.** Both California and Florida law recognize a right to disgorgement of ill-gotten profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. While the scope of Oracle's profits from the conduct at issue was the subject of ongoing discovery, Plaintiffs valued Oracle's ill-gotten gains from its collection and use of their data to be likely in the hundreds of millions of dollars. *See* SAC ¶ 273, n. 202.

**Electronic Communications Privacy Act.** The ECPA provides that "the court may assess as damages whichever is the greater of: (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). The Court dismissed Plaintiffs' nationwide ECPA claim. Plaintiffs had sought interlocutory appeal of this claim, but may have had to wait for a final judgment and then faced the uncertainty of a ruling on appeal.

Because Oracle's exposure in this litigation is substantial, the only certainty for Plaintiffs was that Oracle would stage vigorous defenses throughout the litigation. Plaintiffs faced substantial pretrial risks such as whether the Court would grant class certification or enter summary judgment against them. And while the Court maintained Plaintiffs' claims at the pleading stage, it made clear that "some [had] barely [survived]." Dkt. 49 at 23. Trial of course presented the usual risks including whether the Court would allow the presentation of Plaintiffs'

damages models and whether a jury would award the damages sought. Similar uncertainties exist in many privacy class actions.[14] And Oracle's recent announcement that it is shutting down its ad tech business—and the associated reductions in staff—may make it difficult to obtain key witnesses for future depositions and for trial. Finally, while Plaintiffs' claims are based on long-standing Constitutional, common law, and statutory rights, the application of those rights to parties not in privity to the alleged offender, based in part on the mere aggregation of data, is completely novel and therefore risky.

With years remaining before any prospect of trial and uncertain, pivotal hurdles yet to come, Plaintiffs faced significant risk. In contrast, the Settlement before the Court provides $115 million in a guaranteed, immediate, and substantial cash recovery, plus significant non-monetary relief addressing the alleged invasive practices.

## C.   Guidance 1(e)[15] – (g): The Settlement Benefits Will Be Equitably Distributed Through a Simple, Straightforward Settlement Claims Process.

Each Settlement Class Member who timely submits a Valid Claim shall receive the same *pro rata* portion of the Net Settlement Fund. *See* SA ¶ 3.1. This allocation is inherently fair given that each Settlement Class Member suffered the same injury—having a dossier logged about them by Oracle. If any funds remain in the Settlement Fund after all valid claims are paid, the parties anticipate a redistribution of the remaining funds to Settlement Class Members unless it is economically infeasible to do so. Finally, subject to Court approval, any final balance will be directed in *cy pres* to PRC's privacy protection efforts. SA ¶ 3.2.15.5. This ensures that all of the money secured by the Settlement will inure to the benefit of the Settlement Class and the privacy interests advanced in this litigation. The funds will never revert to Oracle. The proposed Settlement Administrator advises the parties that based on a variety of factors, including its

---

[14] *See, e.g.*, *In re Google Location Hist. Litig.*, No. 5:18-CV-05062, 2024 WL 1975462, at *6–7 (N.D. Cal. May 3, 2024) (approving *cy pres* monetary award and injunctive relief settlement); *In re Google Inc. Street View Elec. Commc'n. Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) (affirming approval of settlement providing for injunctive relief and *cy pres* monetary award); *Campbell v. Facebook Inc.*, No. 13-CV-05996, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *McDonald, et al. v. Kiloo A/S, et al.*, No. 17-CV-04344, Dkt. 406 (N.D. Cal. Apr. 12, 2021) (granting final approval to 16 injunctive relief-only settlements).

[15] Pursuant to Guidance 1(d), counsel for Plaintiffs are not aware of any other cases that will be affected by this Settlement. Rudolph Decl. ¶ 21.

1  review of outcomes in similar data privacy cases, the estimated claims rate in this matter is likely

2  to be between 1.5% and 2.5%. Weisbrot Decl. ¶¶ 48–50; *see supra* Section III.D.

3  **D.      Guidance 2: The Proposed Settlement Administrator Should be Appointed.**

4  Before deciding to recommend Angeion as Settlement Administrator (*see supra* Section

5  III.D), Class Counsel sought bids from three leading class action settlement administration firms

6  and notice providers. *See* Rudolph Decl. ¶ 28. Angeion offered a cost-effective proposal including

7  sophisticated and tailored methods for notice and distribution of payments and a best-in-class

8  approach for reaching class members through a digital media campaign. It will provide these

9  services while committing to a hard cap on its fees. *See* Weisbrot Decl. ¶¶ 18–36, 59.

10  Lieff Cabraser's engagements with Angeion over the last two years include the following:

11  *Guida v. Gaia Inc.*, No. 1:22-CV-02350 (D. Colo.); *Chabak v. Somnia, Inc.*, No. 7:22-CV-09341

12  (S.D.N.Y); *Vela et al. v. AMC Networks Inc.*, No. 1:23-CV-02524 (S.D.N.Y.); *Vianu et al. v.*

13  *AT&T Mobility LLC*, No. 19-cv-03602 (N.D. Cal.); and *Jenkins v. National Grid USA Service*

14  *Company Inc.*, No. 2:15-cv-0121 (E.D.N.Y.). To securely handle potential Settlement Class

15  Member data, Angeion will comply with the Joint Stipulated Protective Order (Dkt. 28),

16  including keeping identities and contact information of potential members of the Settlement Class

17  confidential, using them only for purposes of administrating this Settlement. Weisbrot Decl. ¶ 14.

18  Further information regarding Angeion's procedures for securely handling Class Member data

19  and acceptance of responsibility and maintenance of insurance in case of errors is provided in the

20  Weisbrot Declaration. Weisbrot Decl. ¶¶ 13–17.

21  **E.      Guidance 3: The Proposed Notice Plan Should Be Approved.**

22  The Court "must direct notice in a reasonable manner to all class members who would be

23  bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it generally

24  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

25  investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d

26  566, 575 (9th Cir. 2004).

27  The proposed forms of notice here readily meet the Rule 23 standards. They inform Class

28  Members, in clear and concise terms, about the nature of this case, the Settlement, their rights,

and includes all applicable requirements set out in paragraph 3 of the Guidelines. *See* SA, Exs. B (Email Notice) and C (Detailed Notice). Notice will be disseminated through a highly robust, targeted digital media campaign designed to reach more than 80 percent of the potential Settlement Class. SA ¶ 7.2.4; Weisbrot Decl. ¶ 18–36. Supplemental notice will also be disseminated directly to each potential Settlement Class Member whom Oracle has an available email address; this currently comprises approximately 840 million email addresses for an estimated 220 million class members. *Id.* ¶ 7.2.3; Weisbrot Decl. ¶¶ 18–36. A Settlement Website will provide access to relevant case documents such as the Second Amended Complaint; the Settlement Agreement; the Preliminary Approval Order; any application for attorneys' fees, expenses, or service awards; any brief filed by the parties in support of the Settlement; and once issued, the Final Approval Order and Final Judgment. *Id.* ¶ 7.2.1. A toll-free telephone number, email, and physical mailing address will be available for potential Settlement Class Members to contact the Settlement Administrator directly. *Id.* ¶ 7.2.2. All settlement notice and administrative costs will be paid from the Settlement Fund. *Id.* ¶ 7.4. The Notice Plan is the best practicable notice under the circumstances, meets due process requirements, and will reach at least 80 percent of the potential Settlement Class. Weisbrot Decl. ¶¶ 18–36.

**F.**       **Guidance 4 and 5: The Processes for Exclusions from and Objections to the Settlement are Straightforward.**

The proposed Notice Plan complies with Rule 23(e)(5) by instructing Settlement Class Members who wish to opt out of or object to the Settlement how to do so. The Notice Plan clearly apprises Settlement Class Members of the (1) deadlines to opt out or exclude themselves from the Settlement; (2) method to opt out; and (3) consequence of opting out. *See* SA, Ex. C (Detailed Notice). Likewise, pursuant to Rule 23(e)(5), the proposed Notice Plan instructs Settlement Class Members of their right to object to the Settlement and the deadline to submit an objection. As seen in Exhibits B and C to the Settlement Agreement, the notices make clear that the Court can only approve or deny the Settlement and cannot change the terms of the Settlement.

**G.**       **Guidance 6: Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses.**

Settlement Class Counsel will apply for an award of attorneys' fees based on a percentage

of the common fund, up to the amount of the Ninth Circuit's benchmark percentage of 25% of the Settlement Fund (*i.e.*, up to $28.75 million), plus reimbursement of reasonable out-of-pocket expenses currently totaling approximately $217,000. Rudolph Decl. ¶ 35. Settlement Class Counsel will support its request with a lodestar cross-check. Plaintiffs' Counsel's total lodestar, through July 17, 2024 (the day before this filing), totals approximately $9,624,251 million for approximately 12,902 hours of work. Rudolph Decl. ¶ 35. Settlement Class Counsel will likely incur further lodestar before reporting its final, audited lodestar in the fee motion, but based on the current lodestar figure, an award of 25% of the common fund would represent a reasonable multiplier of 3. *Id.* Settlement Class Counsel will detail the work, hours, lodestar, and expenses in their fee and expense motion. Oracle may oppose Settlement Class Counsel's request for fees and expenses. SA ¶ 8.1. The Settlement Agreement provides that Oracle agrees not to appeal this Court's determination of the attorneys' fee and expense award. *Id.* The Settlement Agreement provides that final approval of the Settlement is independent of any award of fees and expenses to Settlement Class Counsel. SA ¶ 8.3.

### H. <u>Guidance 7: Plaintiffs Will Request a Service Award for Class Representatives.</u>

Plaintiffs will request Service Awards of up to $10,000 to compensate the Settlement Class Representatives for the time and effort they spent pursing the matter on behalf of the Settlement Class. Rudolph Decl. ¶ 27. Such awards "are fairly typical in class action cases." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (granting $25,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff). The anticipated service awards do not raise any equitable concerns about the Settlement itself. *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (service awards "are not per se unreasonable").

### I. <u>Guidance 8: The Parties Will Propose Appropriate *Cy Pres* Recipients.</u>

Pursuant to section 3.3 of the Settlement, the parties will identify potential *cy pres*

recipients in the event that any residual funds remaining after the initial distribution of the Net Settlement Fund become too small to make a secondary distribution economically viable. *See* SA ¶ 3.2.15.4. The parties propose the *cy pres* recipient described above at Section III.B.

**J.      Guidance 9: The Court Should Schedule a Fairness Hearing and Related Dates.**

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, then allow Class Members to file comments or objections or to opt out, and finally to hold a Fairness Hearing.

The parties respectfully request that the Court adopt a schedule that allows for a Final Approval hearing on November 14, 2024. As set forth in the proposed Order, Exhibit D of the Settlement Agreement, the parties propose the following general timeline below:

| Event | Relevant Provisions of Settlement Agreement and Parties' Proposal |
|---|---|
| Deadline for Class Counsel's Motions for Attorneys' Fees, Expenses, and Service Awards | Per ¶ 5.5 of the Settlement Agreement, at least 50 days prior to Exclusion and Objection Deadline |
| Notice Date | Per Definitions, ¶ J of the Settlement Agreement, 21 days after issuance of Preliminary Approval Order |
| Request for Exclusion (Opt-Out) or Objection Deadline | Per ¶¶ 5.2, 6.3 of the Settlement Agreement, 49 days after Notice Date |
| Responses to Objections | Per ¶ 5.6 of the Settlement Agreement, 14 days after Objection Deadline |
| Deadline to Submit Claim Form | Per ¶ 3.6 of the Settlement Agreement, 49 days after Notice Date |
| Deadline for Motion for Final Approval | (estimate of 14 days after Claim Form Deadline) |
| Fairness Hearing | (estimate 7 days after submission of Plaintiffs' Motion for Final Approval, or as soon thereafter as is convenient for the Court) |

Assuming the Court enters an order granting preliminary approval on August 15, 2024, the resulting schedule would be as follows:

| Event | Date |
|-------|------|
| Deadline for Class Counsel's Motions for Attorneys' Fees, Expenses, and Service Awards | September 4, 2024 |
| Notice Date | September 5, 2024 |
| Request for Exclusion (Opt-Out) or Objection Deadline | October 24, 2024. |
| Deadline to Submit Claim Form | October 24, 2024. |
| Responses to Objections | November 7, 2024 |
| Deadline for Motion for Final Approval | November 7, 2024 |
| Fairness Hearing | November 14, 2024 |

### K. Guidance 10: The Requirements of the Class Action Fairness Act Will Be Met.

The Administrator will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing. *Id.* ¶ 4.2. No other notices to government entities are required or have been provided.

### L. Guidance 11: This Outcome Exceeds the Relief Obtained in Comparable Data Privacy Cases.

Pursuant to the Guidelines, Plaintiffs provide information regarding a selection of outcomes and distributions in comparable data privacy class settlements in a detailed, yet easy-to-read chart. *See Carlotti*, 2019 WL 6134910, *16–17 (quoting Guidelines ¶ 11); Rudolph Decl., ¶ 20, Ex. 2. The outcomes obtained in these cases demonstrate that this Settlement compares favorably to other class settlements alleging consumer privacy violations in that it provides both substantial monetary and non-monetary relief. For example:

- *Facebook, Inc. Internet Tracking Litig.* was a privacy class action brought on behalf of an estimated 124 million consumers alleging claims arising from Facebook's use of tracking cookies on other websites through the Facebook "Like" button, including federal Wiretap Act claims and common law privacy claims. *Facebook, Inc. Internet Tracking Litig.*, No. 5:12-md-2314, Dkt. 289, *2–3 (N.D.

Cal. Nov. 10, 2022). The settlement included a $90 million fund to be distributed via a claims program and Facebook's agreement to delete certain user data. *Id.* at *3–4.

- *In re Google Location History Litig.* arose from Google's tracking of 247.7 million mobile device users' location, despite having their "Location History" setting disabled. *In re Google Location History Litig.*, No. 5:18-CV-05062, Dkt. 367, *2 (N.D. Cal. May 3, 2024). The court approved a settlement of $62 million (distributed *cy pres*) paired with injunctive relief requiring Google to send a notification to all Google users who have Location History and Web & App Activity settings enabled (a) explaining how those features collect Location Information, (b) instructing them how to disable those settings, and (c) directing them to new web pages. *Id.* at *3–4.

- *TikTok, Inc. Consumer Privacy Litig.* alleged invasions of privacy through the TikTok application by collecting, using, and transmitting users' data. *TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-CV-4699, Dkt. 195, *10–11 (N.D. Ill. Mar. 31, 2022). Plaintiffs alleged claims similar to those alleged in this case, including the California Constitutional Right to Privacy, California UCL, intrusion upon seclusion, and unjust enrichment. *Id.* at *11. For a nationwide class consisting of 89 million members, the court approved a settlement of $92 million in monetary relief and injunctive relief requiring that TikTok not collect, store, or transmit the data at-issue as well as implement privacy compliance trainings. *See TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-CV-4699, Dkt. 122-1, *12, *14 (N.D. Ill. Feb. 25, 2021).

- *In re Google Referrer Header Privacy Litigation* was a data privacy class action alleging that Google improperly shared 193 million users' search queries with third-party websites and companies. *In re Google Referrer Header Privacy Litigation*, No. 5:10-CV-04809, Dkt. 193, *2–3 (N.D. Cal. Oct. 16, 2023). The court approved a $23 million settlement paired with injunctive relief where Google agreed to maintain certain disclosures concerning search inquiries on Google's FAQ webpage. *Id.* at *4.

The only two privacy class action settlements larger than this one not involving a data breach that Plaintiffs are aware of both involved Facebook and had different profiles from this case. *In re: Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 3:18-md-02843 (N.D. Cal.) ($750 million common fund settlement) involved a watershed privacy scandal that was the subject of congressional hearings and a $5 billion fine by the FTC. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843, 2023 WL 8443230 (N.D. Cal. Oct. 10, 2023). *In re: Facebook Biometric Information Privacy Litigation*, No. 3:15-CV-03747 (N.D. Cal.) ($650 million common fund settlement) involved Illinois's uniquely powerful Biometric

Information Privacy Act, went through multiple rounds of appeals including to the Supreme Court, and was on the eve of trial when it settled. *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617 (N.D. Cal. 2021). Reviewing the outcomes of comparable data privacy cases demonstrates that Plaintiffs have obtained significant monetary relief in comparison to most other data privacy cases.

## II.     The Proposed Settlement is Fair, Reasonable, and Adequate.

### A.     The Settlement is the Product of Arm's Length Negotiations and is Supported by Experienced Counsel.

This Settlement was reached at arm's length without any indicia of collusion, including the absence of a "clear sailing provision." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); Rudolph ¶ 15. It took over eight months of contentious negotiations to reach the agreement currently before the Court. Courts recognize that the opinion of experienced counsel supporting settlement after arm's length negotiations "is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981). Settlement Class Counsel extensively investigated the claims and diligently prosecuted the case in the face of an unwavering defense mounted by Oracle. The parties' contentious negotiations included the determined assistance of experienced mediators. *See* Rudolph Decl. ¶ 13. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"). The parties remained zealous adversaries throughout negotiations, and Settlement Class Counsel support the settlement as fair, reasonable, and adequate. Rudolph Decl. ¶¶ 13–21.

### B.     The Stage of the Proceedings and the Discovery Conducted Support Approval.

As discussed above, Settlement Class Counsel engaged in extensive investigation, research, and analysis of the Settlement Class's claims. The parties engaged in over a year and a half of discovery, including: serving discovery requests and written responses; meeting and conferring; and engaging in discovery motion practice, where necessary. *See* Rudolph Decl. ¶¶ 7–12. Oracle produced, and Plaintiffs reviewed a substantial portion of more than 160,000 pages of

responsive documents, as well as over 283 videos, spanning approximately 173 hours. *Id.* ¶ 9. In addition, Settlement Class Counsel consulted with several technical experts throughout the course of the case, deposed an Oracle employee and, after substantial document production, began preparations to depose many more. *Id.* ¶¶ 3, 9–10. This discovery allowed Plaintiffs to adequately evaluate the merits of their claims.

### III.  The Court Will be Able to Certify the Proposed Settlement Class.

Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "[I]f a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be met, and at least one of the three requirements listed in Rule 23(b). The proposed Settlement Class meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3) for settlement purposes. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem*, 521 U.S. at 620.

### A.  The Class Satisfies Rule 23(a)'s Prerequisites.

#### 1.  Numerosity is satisfied.

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Settlement Class Counsel estimates there are likely 220 million Class Members based on public reports. Rudolph Decl. ¶ 25. The numerosity requirement is easily satisfied.

#### 2.  Commonality is satisfied.

Rule 23(a)(2) requires that there be one or more questions common to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) "The common question 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Carlotti*, 2019 WL 6134910, at *17 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 350 (2011)). Plaintiffs readily meet this standard, as the primary proof focuses on Oracle's acts and practices generally directed toward the class as a whole to determine whether its conduct constituted unlawful collection, aggregation, and use of the Settlement Class's personal data.

### 3.    Typicality is satisfied.

The typicality requirement is satisfied when the representative parties' claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under this 'permissive' rule, 'representative claims are "typical" if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. MDL 2672, 2017 WL 672727, at *13 (N.D. Cal. Feb. 16, 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). Named Plaintiffs' claims stem from the same course of conduct and alleged wrongdoing as the Settlement Class they seek to represent. Plaintiffs and Settlement Class Members all allegedly had their personal data intercepted, collected, analyzed, and sold without their knowledge or consent. Plaintiffs' claims are typical because they were subject to the same conduct as the other Settlement Class Members and are alleged to have suffered the same injury as a result.

### 4.    Adequacy of representation is satisfied.

The adequate representation requirement is satisfied when the representative party is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also* Fed. R. Civ. P. 23(g). "Courts engage in a dual inquiry to determine adequate representation and ask: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Carlotti*, 2019 WL 6134910, at *18 (quoting *Volkswagen*, 2017 WL 672820, at *7)). Both requirements are satisfied here.

Settlement Class Counsel has extensive experience litigating, trying, and settling class actions, including consumer data privacy cases. *See* Rudolph Decl. ¶ 33, Ex. 3 (firm resume). Settlement Class Counsel has vigorously litigated the Action and had sufficient information at their disposal before entering into settlement negotiations. With this information, Settlement Class Counsel was able to adequately assess the strengths and weaknesses of Plaintiffs' case and

balance the benefits of settlement against the risks of further litigation. *See id.* ¶¶ 7–12, 22–24. Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the other Settlement Class Members as they both are equally interested in obtaining relief from Oracle's alleged surveillance and invasion of their privacy, and for ensuring that Oracle reforms its business practices. *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each . . . plaintiff has the same problem").

### B.        Plaintiffs Satisfy Rule 23(b)(3)'s Requirements.

Rule 23(b)(3) requires the Court to find that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). "Certification under Rule 23(b)(3) is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Carlotti*, 2019 WL 6134910, at *18 (quoting *Hanlon*, 150 F.3d at 1022).

#### 1.        Common questions of law predominate over individual issues.

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. Plaintiffs allege that every Settlement Class Member was subjected to the same conduct—invasions of their privacy by Oracle's alleged interception, collection, analysis, and wrongful use of their personal data without their knowledge or consent. Plaintiffs allege this conduct uniformly injured Plaintiffs' and the Settlement Class Members' legally protected interests. The overarching questions at issue in this case are common ones that can be resolved for all members of the proposed Settlement Class in a single adjudication. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

#### 2.        Class treatment is a superior method of adjudication.

Whether a settlement class action is the superior method for the adjudication of claims "requires the court to determine whether maintenance of [the] litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). Specifically, "[a] class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir.

1996). Furthermore, a class action is superior where, as here, classwide litigation of common

issues "reduce[s] litigation costs and promote[s] greater efficiency." *Id.* at 1234. Individual

litigation is not a realistic alternative to a class action due to the size of the Settlement Class and

the risks of this novel litigation. *See* Rudolph Decl. ¶¶ 22–23, 25. The maximum amount of

recovery for an individual Settlement Class Member would likely be a fraction of the cost of

bringing a lawsuit. *See Hanlon*, 150 F.3d at 1023 ("There would be less litigation or settlement

leverage, significantly reduced resources and no greater prospect for recovery."). Moreover, the

prosecution of separate actions by individual Settlement Class Members would create the risk of

inconsistent adjudications, establishing incompatible standards of conduct for Oracle.

Accordingly, for settlement purposes, this Court "will likely be able to . . . certify the class for

purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### C.    The Court Should Appoint the Named Plaintiffs as Class Representatives.

The Court should appoint the named Plaintiffs as Class Representatives because they have

no conflicts with the Settlement Class and are represented by qualified counsel who will

vigorously prosecute the Settlement Class's interests. Rudolph Decl. ¶¶ 26–27; *In re Online

DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

### D.    The Court Should Appoint Class Counsel as Settlement Class Counsel.

Considering counsel's collective expertise and experience in handling similar actions, the

resources they have committed to vigorously representing the proposed Class over the last two

years, and the result they have achieved, they should be appointed as Settlement Class Counsel

for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

Rudolph Decl. ¶¶ 3–20.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court (1) grant preliminary approval of the

proposed Settlement; (2) appoint Michael Katz-Lacabe and Jennifer Golbeck as interim

Settlement Class Representatives; (3) appoint Angeion Group, LLC as Settlement Administrator

and direct notice to the Settlement Class through the proposed Notice Plan; (4) appoint Michael

Sobol and David Rudolph of Lieff Cabraser as interim Settlement Class Counsel to conduct the

1   necessary steps in the settlement approval process; (5) schedule a fairness hearing under Rule

2   23(e)(2); and enter an order consistent with the proposed order filed herewith.

3   Dated: July 18, 2024                    Respectfully submitted,

4

5                                           */s/ Michael W. Sobol*
                                            Michael W. Sobol (SBN 194857)
                                            msobol@lchb.com
6                                           David T. Rudolph (SBN 233457)
                                            drudolph@lchb.com
7                                           Jallé H. Dafa (SBN 290637)
                                            jdafa@lchb.com
8                                           John D. Maher (SBN 316157)
                                            jmaher@lchb.com
9                                           Amelia A. Haselkorn (SBN 339633)
                                            ahaselkorn@lchb.com
10                                          Nabila Abdallah (SBN 347764)
                                            nabdallah@lchb.com
                                            LIEFF CABRASER HEIMANN & BERNSTEIN,
11                                          LLP
                                            275 Battery Street, 29th Floor
12                                          San Francisco, CA  94111-3339
                                            Telephone:  415.956.1000
13                                          Facsimile:  415.956.1008

                                            *Attorneys for Plaintiffs and the Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28