Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
Nabila Abdallah (SBN 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Michael Katz-Lacabe, and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>**DECLARATION OF DAVID T. RUDOLPH IN SUPPORT OF PRELIMINARY SETTLEMENT APPROVAL** |

I, David T. Rudolph declare:

1. I am a partner at the law firm of Lieff Cabraser Heimann & Bernstein, LLP, counsel for Plaintiffs in this matter. I am a member in good standing of the State Bar of California. I have personal knowledge of the matters set forth herein, or am informed and believe them to be true, and if called to testify thereto, I could and would do so competently. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement.

1    2.        Pursuant to the terms of the Settlement, defendant Oracle America Inc. ("Oracle") has agreed to establish a $115 million non-reversionary Settlement Fund and implement meaningful changes to its business practices. I believe these commitments are substantial and will provide meaningful relief to the Class in exchange for the release provided to settle this litigation.

**PRE-LITIGATION INVESTIGATION AND PLEADINGS**

3.        Lieff Cabraser began investigating Oracle's privacy-invasive conduct in early 2020. The investigation involved analyzing the vast public record, including complaints filed by consumer organizations and government regulators, academic articles, news reports, books, web pages, marketing materials, privacy policies, and disclosures. Prior to filing this lawsuit, Plaintiffs obtained from Oracle their "Offline Access Request Response Reports" ("OARRRs"), which show the nature of personal data that Oracle maintains on people and have been central to this litigation. Lieff Cabraser consulted with a privacy law scholar and with two computer science experts who performed forensic research and analysis of Oracle's publicly-available technical documentation. After an extensive two-year investigation, Plaintiffs commenced this action.

4.        The complaint and amended complaints faced three rounds of motions to dismiss that raised potentially dispositive issues including Plaintiffs' standing, the reasonable expectation of privacy, choice of law, and applicability of state and federal wiretapping statutes. Dkts. 23, 63, 88. Plaintiffs researched and drafted thorough oppositions to Oracle's motions, and in response to the Court's rulings, amended the complaint twice. Each iteration of the complaint required extensive additional research. Plaintiffs also moved for leave to file a motion for partial reconsideration, which was denied. Dkts. 85, 86.

5.        Four days after Oracle filed its reply brief in support of its third motion to dismiss (ECF No. 92), Oracle produced spreadsheets reflecting certain data in its records that Oracle represented may have been associated with Plaintiffs. Dkt. 98.

6.        Following Oracle's third motion to dismiss, the Court allowed seven of the nine

claims alleged in Plaintiffs Second Amended Complaint to proceed.[1] Following the Court's dismissal with prejudice of their Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA") claim, Plaintiffs filed a motion under 28 U.S.C § 1292(b) to certify for interlocutory review the question of whether a defendant's intentional further, tortious use of intercepted data is sufficient to show that its interception meets the crime-tort exception to the ECPA's consent exception. Dkt. 120.

## DISCOVERY

7. The parties engaged in extensive discovery efforts. The parties met and conferred on the terms of the ESI and protective order, as well as the parameters of the proposed forensic inspection protocol to search Plaintiffs' imaged devices for their internet activity. Plaintiffs served—and Oracle responded to—four sets of substantive document requests, comprised of 73 individual requests, along with two sets of interrogatories. Plaintiffs also took the deposition of an Oracle employee.

8. The parties contested the scope and relevance of discovery topics implicated in Plaintiffs' requests as well as Oracle's pace of production. This led to vigorously adversarial video meet and confer conferences and the exchange dozens of discovery dispute letters and correspondence. Throughout this process, Plaintiffs sent several motion to compel letter brief drafts to Oracle's counsel, one of which was resolved by compromise between the parties. The parties each filed one motion to compel with Magistrate Judge Westmore, which helped advance the pace of discovery. Dkts. 102, 110.

9. Oracle ultimately produced over 160,000 pages of responsive documents and ESI to Plaintiffs, as well as over 283 videos, largely consisting of internal discussions of the technical

---

[1] The claims that survived Oracle's motions to dismiss were as follows: (1) Invasion of Privacy Under the California Constitution (on behalf of the proposed California Class), (2) Intrusion Upon Seclusion Under California Common Law (on behalf of the proposed California Class), (3) Violation of the California Invasion of Privacy Act (on behalf of the proposed CIPA Sub-Class), (4) Violation of the Florida Security of Communications Act (on behalf of the proposed FSCA Class), (5) Unjust Enrichment under California Common Law (on behalf of the proposed California Class), (6) Unjust Enrichment under Florida Law (on behalf of the proposed Florida Class), and (7) Declaratory Judgment that Oracle Wrongfully Accessed, Collected, Stored, Disclosed, Sold, and Otherwise Improperly Used Plaintiffs' Private Data and Injunctive Relief (on behalf of all proposed Classes). *See* Dkts. 87, 114.

1  operation of Oracle's data collection and use practices, spanning approximately 173 hours. To
2  accurately analyze the materials that Oracle produced, our team had to grasp complex ad tech
3  software technologies and processes. Plaintiffs retained technical experts to ensure meaningful and
4  accurate analysis of these documents, which included lines of computer code. Plaintiffs obtained
5  key information about Oracle's business practices and policies during the relevant period, strategic
6  decisions, agreements, clients, the extent of personal data Oracle had collected, and the inferred
7  personal data resulting from its data processing.

8      10.    Plaintiffs also conducted an early deposition of an Oracle employee exploring
9  Oracle's document-retention systems and internal organizational structure. This deposition led to
10 the discovery of key document repositories from which Oracle subsequently produced documents.
11 Given the slow pace of document productions throughout the course of the litigation, Plaintiffs had
12 not yet conducted further depositions, however, by the time of settlement, Oracle had produced
13 sufficient documents to conduct substantive depositions and Plaintiffs were preparing to depose
14 many more Oracle employees.

15     11.    Class Counsel responded to defensive discovery. Plaintiffs responded to Oracle's
16 document requests (26 requests to Plaintiff Ryan, 27 requests to Plaintiff Katz-Lacabe, and 28
17 requests to Plaintiff Golbeck) and conducted thorough searches for documents and responsive ESI.
18 This required engaging a forensics consultant who imaged Plaintiffs' personal laptops and cell
19 phones, a process that required extensive safeguards before Plaintiffs could agree to it. Each
20 Plaintiff produced responsive documents and provided detailed responses to Oracle's
21 interrogatories, including supplemental responses at Oracle's request. Plaintiffs also provided
22 detailed responses to Oracle's requests for admission.

23     12.    This extensive factual record informed our understanding of the strengths and
24 weaknesses of Plaintiffs' claims and of Oracle's defenses.

25 **SETTLEMENT**

26     13.    After exchanging an initial demand and response, on April 24, 2024, the parties
27 engaged in an extended day of in-person mediation with Professor Eric D. Green and Fouad Kurdi
28 of Resolutions, LLC. Prior to the mediation, the parties prepared detailed mediation briefs

outlining their positions on the strengths and weaknesses of the case.

14. By the close of the mediation session, the parties had exchanged draft term sheets. During the next two weeks, the parties continued negotiations through emails and phone calls with the mediators. On May 8, 2024, the parties executed a binding settlement term sheet which outlines the essential settlement terms.

15. Over the next ten weeks, the parties negotiated a long-form settlement agreement, including the precise terms and implementation of non-monetary relief. These arm's length negotiations resulted in the Settlement Agreement, which was executed on July 8, 2024. **Exhibit 1** is a true and correct copy of the parties' Settlement Agreement.

16. The Settlement secures a non-reversionary Settlement Fund of $115 million and meaningful business practice commitments from Oracle to, for as long as it continues to offer the products and services described in the operative complaint, (1) not capture user-generated electronic information within referrer URLs (*i.e.*, the URL of the previously-visited page) associated with a website user or any text entered by a user in an online web form other than through Oracle's own websites; and (2) implement an audit program to reasonably review customer compliance with its contractual consumer privacy obligations.

17. From the Settlement Fund, the proposed Settlement delivers substantial cash payment to any Settlement Class Member who submits a valid claim. At the close of the claims period, the Settlement Fund (after deducting Court-approved attorneys' fees, expenses, service awards, and notice and administration costs) will be divided evenly on a per-capita basis among all Settlement Class Members for which a valid claim form is received.

18. Assuming the Court awards the requested attorneys' fees and costs, and subtracting the anticipated settlement administration costs, Plaintiffs anticipate distributing approximately $81.2 million to Settlement Class members. With a projected claims rate of 1.5–2.5%, as explained in the Declaration of Steven Weisbrot filed herewith[2] each Settlement Class Member

---

[2] *See* Declaration of Steve Weisbrot, ¶¶ 48-50.

1  that filed a valid claim would be allocated approximately $15 to $25.

2      19.    If any funds remain in the Settlement Fund after all valid, completed, and timely
3  claims are paid, the parties anticipate a redistribution of the remaining funds to Settlement Class
4  Members unless and until it is economically infeasible to do so. Finally, subject to Court approval,
5  the parties have initially identified as a potential *cy pres* beneficiary the Privacy Rights
6  Clearinghouse (PRC)[3] to promote its privacy protection efforts. PRC is "a nonprofit organization
7  focused on increasing access to information, policy discussions and meaningful rights so that data
8  privacy can be a reality for everyone."[4] PRC advocates for strong privacy protections, including in
9  connection with data brokers.[5] This ensures that all of the money secured by the Settlement will
10 inure to the benefit of the Settlement Class and the privacy interests advanced in this litigation.
11 These funds will never revert to Oracle.

12     20.    In my opinion, based on years of experience in plaintiffs' complex class action
13 litigation, prior successful resolutions of numerous similar litigations at this scale, and settlements
14 comparable to the claims involved in the present action, this is an excellent result for the
15 Settlement Class—particularly given the stage of the proceedings and the material risks and
16 expenses from continued litigation. A representative summary of prior settlements, distributions,
17 and claims rates in recent non-data breach privacy cases comparable to this action is attached
18 hereto as **Exhibit 2**.

19     21.    Counsel for Plaintiffs are aware of no other cases that will be affected by this
20 Settlement.

21         **COUNSEL'S ASSESSMENT OF RISK**

22     22.    This is a novel case, predicated on the innovative application of legal theories and
23 privacy rights against one of the world's largest data brokers. While Plaintiffs' claims are based on
24 long-standing Constitutional, common law, and statutory rights, the application of those rights to
25 parties not in privity to the alleged offender, based in part on the mere aggregation of data, is

---

[3] The parties and their counsel have no relationship with the proposed *cy pres* recipient.
[4] *See* https://privacyrights.org/about.
[5] *See, e.g.,* https://privacyrights.org/search?terms=data%20brokers.

1  completely novel and therefore risky.

2      23.    While Plaintiffs are confident in the merits of their case, they recognize that success at class certification, summary judgment, trial, and on appeal is far from certain. While the Court maintained Plaintiffs' claims at the pleading stage, it made clear that "some [had] barely [survived]." Dkt. 49 at 23. Trial presented risks including whether the Court would allow the presentation of Plaintiffs' damages models and whether a jury would award the damages sought. In addition to the usual risks, delays, and expenses inherent in litigating against a well-funded corporation facing substantial exposure, Oracle's recent announcement that it is shutting down its ad tech business—and the associated reductions in staff —may make it difficult to obtain key witnesses for future depositions and for trial. Absent settlement, Plaintiffs' Counsel anticipates that Oracle would continue to defend this action aggressively, including opposing class certification and moving for summary judgment. In contrast, the Settlement before the Court provides $115 million in a guaranteed, immediate, and substantial cash recovery, plus significant non-monetary relief addressing the alleged invasive practices.

    24.    The Settlement Class encompasses the class definitions in the operative SAC, with three divergences. First, it adds a temporal restraint on the class definition to ensure that no claims arising after the date of final judgment are released, and aligns with the longest statute of limitations of the claims at issue. Second, it is modified to encompass persons from whom Oracle "acquired, captured, or otherwise collected" personal data "through ID Graph, Data Marketplace, or any other Oracle Advertising product or service," to reflect Plaintiffs' current understanding of the nature of Oracle's business activities. *Compare* **Exhibit 1** (SA) at R[6] *with* Dkt. 87 ¶ 134.[7]

---

[6] The proposed Settlement Class is defined as:
    "All natural persons residing in the United States whose personal information, or data derived from their personal information, was acquired, captured, or otherwise collected by Oracle Advertising technologies or made available for use or sale by or through ID Graph, Data Marketplace, or any other Oracle Advertising product or service from August 19, 2018 to the date of final judgment in the Action."

[7] The operative complaint defines the putative California and Florida Constitutional and common law claim classes as:
    All natural persons located in [California or Florida] whose personal information, or data derived from their personal information, was used to create a profile and made available

1    Third, Plaintiffs do not seek certification for settlement purposes of the four California and Florida

2    subclasses remaining in the SAC because the Settlement encompasses them in a single, nationwide

3    class. This class definition also provides relief for all United States residents who were subject to

4    the alleged conduct, and provides finality to the litigation. While the Court dismissed Plaintiffs'

5    claims on behalf of the nationwide classes, Plaintiffs intended to pursue those claims on appeal, as

6    evidenced by their motion to certify the ECPA claim dismissal for interlocutory appeal.

## THE PROPOSED CLASS AND CLASS REPRESENTATIVES

25.    Class Counsel estimates there are likely 220 million Class Members. Class Counsel derived that estimate from public reports.

26.    Mr. Katz-Lacabe and Dr. Golbeck's interests are aligned with, and are not antagonistic to, the interests of the other Class Members as they both are equally interested in obtaining relief from Oracle's alleged surveillance and invasion of their privacy, and ensuring that Oracle reforms its business practices.

27.    Plaintiffs have actively participated in this litigation from its inception through the date of the Settlement. Each of them worked with counsel to evaluate the terms of the proposed Settlement Agreement and has endorsed the Settlement's terms. Each Plaintiff has expressed their willingness to continue to vigorously advance Settlement Class Members' interests in overseeing the Settlement administration and through any appeals, as they have done throughout this litigation. Plaintiffs intend to request that Court award each $10,000 in service awards for this work.

## SELECTION OF ANGEION GROUP, LLC AS SETTLEMENT ADMINISTRATOR

28.    Pursuant to the terms of the Settlement Agreement, the parties jointly selected Angeion Group, LLC ("Angeion") as the settlement administrator based on a competitive selection process involving the solicitation of proposals from three leading class action settlement administration firms and notice providers. While the three firms all proposed similar forms of

---

for sale or use through Oracle's ID Graph or Data Marketplace.
The California and Florida wiretap statute claim classes are defined in the SAC as:
    All members of the [California or Florida Classes] whose contents of their electronic communications were intercepted by the use of Oracle's bk-coretag.js functionality.

1  notice (media notice in conjunction with direct email notice) and payment (via electronic or paper
2  means), Angeion offers sophisticated and tailored methods for notice and payment, a best-in-class
3  approach for reaching class members through a digital media campaign, and an overall cost-
4  effective proposal. Additionally, Angeion was the only firm to propose a hard cap on its
5  administrative costs.

6      29. Lieff Cabraser's history of engagements with Angeion over the last two years
7  include the following:

8      a. *Guida v. Gaia Inc.*, Case No. 1:22-cv-02350 (D. Colo.),
9      b. *Chabak v. Somnia, Inc.*, Case No. 7:22-cv-09341 (S.D.N.Y)
10     c. *Vela et al. v. AMC Networks Inc.*, Case No.1:23-cv-02524 (S.D.N.Y.).
11     d. *Vianu et al. v. AT&T Mobility LLC*, Case No. 19-cv-03602 (N.D. Cal.)
12     e. *Jenkins v. National Grid USA Service Company Inc.,* Case No. 2:15-cv-
13 0121 (E.D.N.Y.)

14     30. As set out in the Declaration of Steven Weisbrot, Angeion has agreed to provide the
15 notice and administration services for a total amount not to exceed $4,800,000. The settlement
16 administration costs will be reimbursed through the common fund. In relation to the value of the
17 Settlement, these costs are reasonable as they represent only 4.2 percent of the common fund. The
18 Weisbrot Declaration explains Angeion's procedures for securely handling class member data and
19 its acceptance of responsibility and maintenance of insurance in case of errors.

20     31. Class Counsel recommends appointing Angeion as Settlement Administrator
21 because we believe it will adequately and professionally discharge its duties. Angeion's
22 qualifications, along with the proposed Notice Program, are set out in the Declaration of Steven
23 Weisbrot submitted concurrently with Plaintiffs' Motion for Preliminary Approval of the Class
24 Action Settlement.

25     **ATTORNEYS' FEES AND EXPENSES**

26     32. Proposed Class Counsel has vigorously litigated all aspects of this case, including
27 investigations forming the three filed complaints, briefing three oppositions to Oracle's motion to
28 dismiss, multiple rounds of sealing motions, discovery, work with expert consultants, document

1  analysis, mediation, and negotiation of the Settlement Agreement. This work allowed us to
2  adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of
3  settlement against the risks of further litigation.

4  33.  Lieff Cabraser litigated this case independently, led by my colleague Michael Sobol
5  and me. Our firm resume is attached hereto as **Exhibit 3**. Based on our experience, we are capable
6  of serving the interests of the class through the settlement phase of this litigation. *See id.*

7  34.  With their motion for final settlement approval, proposed Settlement Class Counsel
8  will move for an award of reasonable attorneys' fees and reimbursement of their litigation
9  expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii).

10  35.  At this time, proposed Class Counsel has expended 12,901.80 hours litigating this
11  case, amounting to a lodestar of $9.62 million. We currently anticipate requesting that the Court
12  award up to one-quarter of the cash value of the Settlement Fund ($115 million), which would
13  result in a multiplier of 3. As of this filing, Lieff Cabraser has expended $217,503.60 in costs,
14  including $146,198.21 in expert fees. The sums requested will be included in disclosed in the
15  Class Notice. *See* Exhibit C of the Settlement Agreement at Question 10.

16                    *     *     *

17  36.  For nearly two years since the filing of this case, Lieff Cabraser has been dedicated
18  to achieving the best possible outcome for the proposed Class throughout this litigation. This
19  Settlement not only provides significant monetary and non-monetary relief for class members, but
20  holds Oracle accountable for its business practices. Based on our experience in complex litigation,
21  class actions, and this case, we believe this Settlement warrants preliminary approval. We remain
22  committed to dedicating the necessary resources for the benefit of the Class.

23  I declare under penalty of perjury that the foregoing is true and correct. Executed in San
24  Francisco, California, this 18th day of July 2024.

25
26                              */s/ David T. Rudolph*
                                 David T. Rudolph
27
28

**EXHIBITS**

| Exhibit | Description |
|---|---|
| Exhibit 1 | Settlement Agreement |
| Exhibit A | Claim Form |
| Exhibit B | Email Notice |
| Exhibit C | Detailed Notice |
| Exhibit D | [Proposed] Order Granting Preliminary Settlement Approval |
| Exhibit 2 | Chart of Comparable Outcomes |
| Exhibit 3 | Lieff Cabraser Heimann & Bernstein, LLP Firm Resume |

**ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest that all signatories above have concurred in the filing of this document.

Dated: July 18, 2024                                  By:   */s/ Michael W. Sobol*
                                                                    Michael. W. Sobol