**Katz-Lacabe et al v. Oracle America, Inc., 3:22-cv-04792-RS**

The undersigned Class Member, Christopher L. Williams, hereby objects to the Proposed Settlement. There are countless reasons why the Proposed Settlement is unfair and therefore it would take hundreds of hours (and hundreds of pages) to address them all completely. Nonetheless, the undersigned has spent about 25 hours of my own time scouring the Katz Settlement Administrator's website and reviewing the available legal documents, and preparing this Objection.[1]

**OBJECTION TO SETTLEMENT BY CLASS MEMBER
CHRISTOPHER L. WILLIAMS**

I am all for attorneys being compensated well for their hard work. But the Proposed Settlement appears to provide no benefits for the proposed class, but instead appears to be a money grab by Leif Cabraser Heimann & Bernstein, LLP ("Leif"). Indeed, this Court has held that the only possible claims (and even then, "barely") involve California state law claims for California. Residents. Yet – in violation of their fiduciary duties to the class – a few attorneys at Leif attempt to

---

[1]  This in addition to the relatively nominal amount of money paid to run the PACER docket and review the other legally significant documents that have <u>not</u> been made publicly available to class members.  *Cf.* <u>Website for PACER Fees class action,</u> which provides free access to the entire docket for class members and the general public, available at:  https://www.pacerfeesclassaction.com/court-documents.aspx. Although Lief request astronomical attorney's fees, it has not even provided all of the publicly filed documents at the Settlement Administrator's website, thereby making it even more difficult for class members to evaluate their legal rights.

1

release the claims of 220+ million people across the United States who may well have a myriad of unasserted state-law claims of their own.

This is the type of settlement that gives lawyers – and plaintiff-side attorneys in particular – a bad name. The undersigned respectfully submits that the Court should not countenance such behavior and should categorically reject Lef's attempt to waive the rights of 220+ million people.

## PRELIMINARY MATTERS

- I believe I am a class member because I received notification of the settlement via email, Notice ID # KATL0148046439.

- I wish to appear at the Final Approval Hearing via Zoom or other audiovisual means. Given the paltry amount of money provided to class members (estimated at $15-25 even with a meager 1.5%-2.5% claim submission rate as estimated by Leif), it is cost prohibitive for me to fly to San Francisco and appear in person. For the same reason, it is cost prohibitive to retain a private attorney to appear in person to represent my interests.[2]

---

[2] I also do not wish to be represented by a so-called "professional objector" attorney because practicing law in such a manner is just as distasteful as Leif's willingness to give a broad release of claims for 220+ million people to get nearly $30 million for 1 year of litigation work. And even if I did wish to engage such an attorney – which I do not – surely Leif would attack me for doing so. *See, e.g.* https://www.reuters.com/article/world/lieff-professional-objectors-are-a-scourge-but-settling-isnt-unethical-idUS894580852/ (quoting Lieff partner Jonathan Selbin, who said he deplores professional objectors "who advance baseless, often irrelevant and sometimes cut-and-paste objections, and notice appeals solely for purposes of extorting money from class counsel" in a $75.5 million class action settlement with Capital One over debt collection robcalls). Notably, despite Leif's professed hostility to so-called professional objectors, it paid $25,000 to one of the professional objectors in the Capital one case so it could collect its own attorney's fees.

- My home address is 1006 West Confederate Avenue, Columbia, SC, 29201. My email is chris@williamslitigation.com

- I have never objected to a class action settlement before – this is the first time I have done so in 21 years of legal practice and in 46+ years of being alive.³

## OBJECTIONS

**A. The settlement is unfair and unreasonable to class members. Further, the information provided to class members – and the Court – is inadequate to make an informed decision as to the reasonableness of the settlement.**

With the apparent goal of hiding important details from the class members, Leif has buried the actual important information regarding the settlement in a mountain of paper. As a practicing attorney for over 21 years, it was incredibly laborious and time consuming for me to read through the legal documents. Having done what I can in the limited time I have, I have identified the following issues that jump out as being particularly troublesome:

1) Leif itself admits that approximately 20% of class members who will be releasing claims against Oracle will <u>not</u> be receiving notice of the lawsuit. Yet these approximately 44 million unnotified class members will giving up their legal right to sue without notice of the settlement or the legal rights they are giving up. (Doc. # 132, p. 23).

2) That approximately 44 million people will <u>not</u> receive notice of lawsuit also demonstrates that the 49-day notice period is way too short to provide adequate notice and the opportunity to object.⁴ Indeed, it is

---

³ Admittedly, this litigation is the first time that I, even as an attorney and somewhat well-read person, have heard of Lief's shenanigans.

⁴ At a bare minimum, the Court should extend the time period for distributing Notice to class members – and for submitting objections – to ensure many more of

shocking that Leif has imposed such a short timeframe for class members to evaluate their rights and the allegations in this litigation while, at the same time, it seeks to justify its exorbitant attorney's fees by pointing to 2+years of pre-litigation investigation (while conducting only one deposition).

3) Even assuming a meager 1.5%-2.5% claims submission rate as estimated by Leif, each class member will only receive $15-25. (Doc. # 136, p. 10).⁵

4) Using the 1.5%-2.5% claims submission rate estimated by Leif, this means that more than <u>210</u> million of the <u>220</u> million class members will receive <u>no</u> monetary compensation whatsoever. Thus, Leif's repeated reference to a 220 million+ person class to claim "exceptional results"

---

the 44 million people excluded by the Notice process are able to become aware the rights Leif purports to give up on their behalf. If it took the sophisticated attorneys at Leif to investigate the claims before commencing this litigation, 49 days for class members (presumably nearly all of whom are not lawyers) is patently insufficient.

⁵     I only found this information because I engaged in a detailed review of the 33-page motion for settlement approval after the Settlement Administrator explicitly declined to answer my question about this issue. When I contacted the settlement administrator and asked "do you have <u>*any idea whatsoever*</u> what the estimated monetary recovery will be for each class member," the response was, *inter alia*, "it is not possible to provide the <u>precise amount</u> of the payment for each valid claim before the deadline to file claims." The Settlement Administrator's non-responsive answer to my very specific question is particularly troublesome given that Leif submitted an approximation of the estimated monetary payout to the Court subject to the requirements of Rule 11 and subject to the duties of candor imposed on all attorneys by their respective state bar organizations. It remains unclear why the Settlement Administrator – who was tasked with answering class member questions – professed to have no idea of the estimated monetary payout when Leif submitted an estimate amount in seeking court approval of the settlement and its attorney's fees.

for its churning[6] is misleading at best. In reality, Leif has done nothing by litigating this case except to attempt to enrich itself.

5) It appears that, at the time of settlement, the Court had dismissed any claims purporting to be brought on behalf of a nationwide class, leaving only claims for California residents and Florida residents under those state laws. Accordingly, it is perplexing how Leif purports to claim legal authority to release the claims of 220 million people – including the approximately 44 million people that Leif itself acknowledges will not receive notice of this lawsuit.

> (Email Notice) and C (Detailed Notice). Notice will be disseminated through a highly robust, targeted digital media campaign designed to reach more than 80 percent of the potential Settlement Class. SA ¶ 7.2.4; Weisbrot Decl. ¶ 18–36. Supplemental notice will also be

(Doc. # 132, p. 23). To reiterate, while characterized as "robust," the proposed Notice method explicitly concedes that approximately 44 million people will give up their legal rights without ever being told about it.

- o The ECPA class claims appear to have been dismissed by this Court on April 3, 2024. (Doc. # 114).

- o Moreover, Leif has only spent 59.9 hours (out of 13,100+ alleged hours) on class certification issues. (Doc. # 136-2)(lodestar summary noting time spent on class certification issues).

- o If I am incorrect as to their being a nationwide class with non-dismissed claims at the time of the settlement agreement, I sure as heck cannot find anything to show it. And if overlooked it, I sure as heck have spent a lot of time trying. Although there appears to have been an interlocutory appeal filed, I do not see how that is enough to allow a few lawyers at Lief to release the claims of 220 million people when

---

[6] In the context of a law firm billing unnecessary hours, "churning" can be defined as stirring and stirring and stirring the pot, continually running up the tab, thereby increasing attorney's fees.

the Court has already held that no viable claims exist on behalf of these people.

6) Thus, it appears that Leif seeks to bind 220 million people to a legally binding settlement so that Oracle can obtain a broad release[7] of claims and Leif can obtain a windfall in attorney's fees. In so doing, Leif is engaging in the same type of conduct that it accuses Oracle[8] of engaging in, *i.e.*, it is taking unilateral actions unbeknownst to class members without notifying them – with the goal of putting money in its own pocket. This is the opposite of diligently representing the interests of class members.[9]

7) Leif has accomplished nothing in this litigation. As Leif's own brief acknowledges, Oracle has voluntarily exited the advertising business and stopped engaging in the complained-of practices, citing failing revenues

---

[7] The Settlement Agreement states that it is intended to "resolve all claims asserted or that could have been asserted in the Action relating to the allegations made against Oracle." (Doc. # 132-2, p. 5). The claims covered by the broad release agreement include "and all claims, demands, rights, damages, arbitrations, liabilities, obligations, suits, debts, liens, and causes of action (including, without limitation, claims for attorneys' fees and expenses and costs) pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation) of every nature and description whatsoever, ascertained or unascertained, <u>suspected or unsuspected, existing or claimed to exist</u>, including unknown claims as of the execution date of the Settlement that have been or could have been asserted in the Action, including any such claims the Releasing Parties may have against the Released Parties arising out of, in whole or in part, <u>the conduct of any other third party</u>." (Doc. # 132-2).

[8] To be clear, the undersigned in no way condones Oracle's practices as alleged in the Complaint. But Oracle's apparent bad conduct does not justify the absurdity of the attorney's fees requested by Leif in the instant case. Nor does it justify Leif's attempt to bind a nationwide class of 220+ million people when only the only remaining claim is under California law.

[9] If individualized inquiries did not make Rule 23 claims for legal malpractice or breach of fiduciary duty a practical impossibility, then perhaps Leif (or its error and omissions carrier) would think twice about purporting to release the claims of 220+ million people.

6

for the decision. Plaintiffs' rank speculation that they "believe the filing of this lawsuit contributed to its decision" is nonsensical and unsupported by any evidence whatsoever. I am sure that there are many other companies engaging in similar practices anytime someone accesses the internet. Of course, that is an incredibly disturbing fact, but it is an unfortunate reality that is not changed by anything Leif has done here.

### B. The Named Plaintiffs are not adequate class representatives.

The undersigned knows nothing about the named Plaintiffs and could care less about a $10,000 service award to them. But I don't see how any reasonable person could agree to such a paltry monetary settlement on behalf of 220 million people when (1) only 1.5%-2.5% will receive any money, and (2) 44 million people will waive legal rights without being notified, and (3) Leif will be the only real beneficiary of this litigation. If privacy rights are a passion project for the named Plaintiffs, then good for them – but they should not be allowed to waive the rights of 220+ million people in pursuing their interests.

Indeed, Mt. Katz-Lacabe just recently stated on his Twitter feed that he has no clue how Lief intends to notify the 220+ million people purportedly bound by the Settlement Agreement, conclusively demonstrating that he is not an adequate class representative:



Mr. Katz-Lacabe's (frankly surprising) public admission[10] that he has no idea how (or apparently whether) class members will be notified of their legal rights is, standing alone, proof enough to show that he is not an adequate class representative.

The other named Plaintiff is a Florida resident and has no ability to assert – or release – the legal claims of 220+ million people. This is because as this Court has held, the nationwide claims under the ECFA fail to state a cognizable claim and only California claims exist. (Doc. # 77 and 114). Thus, a Florida resident with no cognizable claim under California law can represent the interests of class members here.

    C. **The requested attorney's fees are unreasonable and unsupported. Moreover, Leif has not diligently represented the class members.**

        1) The requested hourly rates using the lodestar method are unreasonable and unsupported.

---

[10]    Available at: https://x.com/mlacabe/status/183153199039662097 1

2) After including the 2.83 multiplier requested by Leif, the hourly rates are absurd and have no basis in reality.

Below is a chart showing the hourly rates sought by Leif under the lodestar method and with a 2.83 multiplier[11]

| *Timekeeper* | *Requested Hourly Rate - Lodestar* | *Requested Hourly Rate with 2.83 multiplier* |
|---|---|---|
| Non-Attorney Litigation Support Staff | $535/hour | $1,514.05/hour |
| Staff Attorneys performing <u>only</u> Document Review | $525/hour | $1,4875.75/hour |
| Partner David Rudolph | $1.015.00/hour | $2,872.45/hour |
| Partner Michael Sobol | $1,380.00/hour | $3,905.4/hour |

The highest-billing lawyers in the United States are less than $2,500/hour.[12] None of the attorneys purporting to represent the interests of the class have submitted

---

[11]    The undersigned has not included the specific names of staff attorneys, associates, support staff, and other legal personnel on the belief that they, like most working folks, are just doing their jobs. Nonetheless, there is no competent evidence – via declaration or otherwise – to justify the exorbitant hourly rates (even excluding the 2.83 multiplier) sought for the work performed by these legal professionals in the instant case.

[12]    https://www.reuters.com/legal/litigation/jj-bankruptcy-trustee-balks-neal-katyals-2465-hourly-rate-2022-05-23/ (noting objection in Johnson & Johnson bankruptcy litigation to the $2,465/hourly rate of Neal Katyal); *see also*

9

evidence via declaration or otherwise showing why they deserve the rates requested.[13] And their attempt to bind 220+ million people when the Court has held that the only cognizable claims are under California law shocks the conscience.

  3) The billing descriptions provided by Leif are vague and incomprehensible. Generally, attorneys seeking attorney's fees via statute or otherwise must submit line-by-line contemporaneous billing records. Leif has failed to do this here.

  4) It also is troublesome that Leif has settled this case after taking only one solitary deposition. And at the risk of being repetitive, Leif's professed ability to unilaterally release the claims of 220 million people when there appear to be no viable nationwide claims based on one deposition is just as scary as Oracle's apparent privacy intrusions.

  5) To the extent that Leif claims it should excessively high attorney's fees because it took the case on a contingency basis, binding Supreme Court precedent dictates otherwise. *See, e.g., Burlington v. Dague,* 505 U. S. 557 (1992).

  6) Lief continually seeks to justify its attorney's fees request on the grounds that this litigation was "risky." That is not sufficient to justify the fees sought. To the contrary, the term "risky" can certainly have a negative connotation, as well.

---

https://www.abajournal.com/news/article/this-former-attorney-general-now-bills-for-biglaw-at-nearly-2300-an-hour#google_vignette (noting hourly rate of former US Attorney General Eric Holder as $2,295/hour)

[13] To be clear, by any objective measure it appears that the Leif attorneys purporting to represent the interests of the class are very smart lawyers. In fact, had they actually represented the interests of class members and sought <u>reasonable</u> compensation for their work, I would have no objection to their being compensated – and compensation handsomely – for their efforts. But they have done neither.

10

## **CONCLUSION**

The undersigned understands that the Court has a busy docket and the easiest thing to do is to approve this egregiously unfair settlement so that it may focus on other cases and more important issues. But I respectfully submit that the Court should not take the easy way out. As a plaintiffs-side attorney, I think that Rule 23 class actions can serve an important function and I take no pleasure in the fact that the United States Supreme Court has issued numerous holdings undermining the efficacy of class actions. *See, e.g,, Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228 (2013).

But the Supreme Court's hostility to class actions and any resulting unfairness does not in any manner justify Leif's abdication of its duties to class members and its exorbitant request for attorney's fees. If anything, Leif's conduct is even worse because the law firm purports to characterize itself as a protector of consumers and the "little guy" while, at the same time, it seeks to obtain attorney's fees at hourly rates from everyday class members well exceeding what billionaires would agree to pay.[14] And again, it is baffling to me how a few lawyers at one law firm have the

---

[14] Indeed, there apparently are a relatively small number of big fish at Leif who will reap the benefits of the attorney's fees award since, according to its website, it has approximately 42 partners, only around 26 associates, but around 37 staff attorneys who are not on partnership track (*Cf.* Doc. # 136-1, Rudolph declaration at ¶ 57 noting that Leif staff attorneys' "legal work concentrates on the factual analysis of a case, and they are not presumptively on partner track."). This is certainly an

ability to release the claims of 220 million Americans – nearly all of whom will receive <u>no</u> monetary compensation – and approximately 44 million of whom will not receive any notice that they have given up their legal rights in exchange for nothing but Lief being paid a lot of money.[15] This is particularly so since the Court has dismissed all nationwide claims and only permitted California law claims to proceed.

I recognize that I am exposing myself to attack by the very smart attorneys at Leif. I also realize that this Objection is less-than-perfect work product, but I have other responsibilities and an incredibly limited time to learn about this litigation. But I submit this Objection with full awareness of that fact, and I do not seek any money or attorney's fees for the time spent filing the objection. I am one person and realize that I am not going to change the way the world works.  Although I am a lawyer and have done Rule 23 class-action work, I do not profess to know everything.  But it seems insane to me that a few lawyers at Lief have the ability to

---

atypical business model for a  law firm – and, on its face, appears to be the opposite of "sharing the wealth" amongst legal personnel who put effort into this litigation.

[15]    As noted above, Oracle already has stopped the complained-of practices and Leif has not obtained an admission of liability in connection with the settlement.

release claims for 220+ million people for next to nothing – and that 44 million people will release claims without even being notified about it.[16]

Anyways, I have said my piece – at least for the time being. Hopefully, this Objection will at least slow the process down some before the rights of 220+ million people are altogether forfeited by a couple of lawyers at one law firm with a mere 49-days notice.

The undersigned reserves the right to supplement this objection as more information comes to light.

_____ /s/ Christopher Williams _____

Christopher L. Williams
1006 West Confederate Avenue,
Columbia, SC, 29201
chris@williamslitigation.com

Dated: September 8, 2024

---

[16] To be clear, I will not be bought off by Leif or anyone else. *Cf.* Reuters article entitled "Lieff: Professional objectors are a scourge but settling isn't unethical" (noting that in a 7th Circuit case, Lief paid $25,000 to buy off a class member but asserted that it was ethical because "the money it paid came from the firm, not from the class fund…") available at: https://www.reuters.com/article/world/lieff-professional-objectors-are-a-scourge-but-settling-isnt-unethical-idUS894580852/.