```
                 IN THE UNITED STATES DISTRICT COURT

               FOR THE NORTHERN DISTRICT OF CALIFORNIA

                         SAN FRANCISCO DIVISION


    KATZ-LACABE, ET AL,              )   CV-22-4792-RS
                                     )
                   PLAINTIFFS,       )   SAN JOSE, CALIFORNIA
                                     )
                 VS.                 )   AUGUST 8, 2024
                                     )
    ORACLE AMERICA, INC.,            )   PAGES 1-16
                                     )
                   DEFENDANT.        )
                                     )
    _____)

                  TRANSCRIPT OF PROCEEDINGS BY ZOOM
                BEFORE THE HONORABLE RICHARD SEEBORG
                    UNITED STATES DISTRICT JUDGE


    A P P E A R A N C E S:

    FOR THE PLAINTIFF:      BY:   DAVID TAYLOR RUDOLPH
                                  JOHN MAHER
                                  MICHAEL SOBOL
                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                            275 BATTERY STREET, 29TH FLOOR
                            SAN FRANCISCO, CA 94111


    FOR THE DEFENDANT:      BY:   TIFFANY CHEUNG
                            MORRISON & FOERSTER LLP
                            425 MARKET STREET
                            SAN FRANCISCO, CA 94105




    OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185


          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1          SAN JOSE, CALIFORNIA                    AUGUST 8, 2024
 2                      P R O C E E D I N G S
 3          (COURT CONVENED AT 1:30 P.M.)
 4              THE CLERK:  CALLING CASE 22-4792.  KATZ-LACABE VERSUS
 5     ORACLE AMERICA.
 6          COUNSEL, PLEASE COME FORWARD AND AND STATE YOUR
 7     APPEARANCES.
 8              MR. RUDOLPH:  GOOD AFTERNOON, YOUR HONOR.
 9          DAVID RUDOLPH FROM LIEFF CABRASER HEIMANN AND BERNSTEIN
10     FOR THE PLAINTIFFS, AND WITH ME ARE MY COLLEAGUES MICHAEL SOBOL
11     AND JOHN MAHER.
12              MS. CHEUNG:  GOOD AFTERNOON, YOUR HONOR.
13          TIFFANY CHEUNG FROM MORRISON & FOERSTER ON BEHALF OF THE
14     DEFENDANT.
15              THE COURT:  GOOD AFTERNOON.
16          SO WE ARE HERE FOR CONSIDERATION OF PRELIMINARY APPROVAL
17     FOR THE PROPOSED RESOLUTION OF THIS MATTER.  I HAVE GONE OVER
18     WHAT YOU PROVIDED TO ME AND I JUST HAVE A FEW QUESTIONS.
19          MY UNDERSTANDING IS YOU'VE GOT A COMMON FUND OF 115
20     MILLION; IS THAT RIGHT?
21              MS. CHEUNG:  YES, YOUR HONOR.
22              MR. RUDOLPH:  THAT'S CORRECT, YOUR HONOR.
23              THE COURT:  AND YOU ESTIMATE THAT WOULD TRANSLATE
24     INTO $15, $25 PER CLASS MEMBER RECOVERY.
25              MR. RUDOLPH:  BASED ON OUR PREDICTIONS OF THE CLAIMS
```

```
 1              RATE.
 2                   THE COURT:  OKAY.
 3          NOW WE HAD SOME LITIGATION ABOUT WHETHER OR NOT YOU COULD
 4     HAVE A NATIONWIDE CLASS AND YOU'VE PROPOSED A SETTLEMENT THAT
 5     DOES HAVE A NATIONWIDE CLASS.  YOU DIDN'T PREVAIL ON THAT
 6     ISSUE.  JUST -- I KNOW THERE IS CASE AUTHORITY FOR THE
 7     PROPOSITION THAT YOU CAN, EVEN IN THE FACE OF NOT BEING ABLE TO
 8     PROCEED ON THAT BASIS, SETTLE IT ON THAT BASIS, BUT WHY DON'T
 9     YOU SUMMARIZE THAT FOR ME.
10          WHY CAN WE SETTLE THIS ON A NATIONWIDE BASIS AFTER I HAD
11     CONCLUDED THAT YOU WEREN'T GOING TO BE ABLE TO PROCEED THAT
12     WAY?
13                   MR. RUDOLPH:  RIGHT.
14          SO THE CASE LAW YOU ARE REFERRING TO IS VERY CLEAR AT
15     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES THAT THE COURT
16     DOESN'T NEED TO ENGAGE IN A CHOICE OF LAW ANALYSIS AND THAT IT
17     CAN FIND PREDOMINANCE EVEN WHERE THERE MIGHT BE ISSUES --
18     DIFFERENCES IN THE LAW OF THE VARIOUS STATES.
19          HERE WE HAVE A SITUATION WHERE WHAT WAS ALLEGED WERE
20     CALIFORNIA CLAIMS, FLORIDA CLAIMS AND A NATIONWIDE CLASS.  WE
21     DIDN'T PREVAIL ON THE NATIONWIDE CLAIM FOR THE ECPA CLAIM BUT
22     UNDER CARLOTTI AND HANLON, THE COURT CAN LOOK TO THE FEDERAL
23     CLAIM AS SOMETHING THAT BINDS TOGETHER THE CLASS EVEN THOUGH
24     THERE MIGHT BE DIFFERENCES AMONG STATE LAW WITH RESPECT TO THE
25     OTHER CLAIMS.
```

1     SO FOR THE PURPOSES OF SETTLEMENT, THE COURT DOESN'T NEED
2     TO ENGAGE IN THAT ANALYSIS AND THE ECPA CLAIM IS REALLY -- CAN
3     BIND TOGETHER THE NATIONWIDE CLAIMS.
4             THE COURT:  OKAY.  IN TERMS OF THE OVERALL VALUATION
5     OF YOUR CLAIMS AND YOUR JUSTIFICATION FOR THE REDUCTION OFF OF
6     THOSE -- OF THE VALUE, IN TERMS OF WHAT YOU'VE NEGOTIATED FOR A
7     SETTLEMENT, GIVE ME SOME IDEA OF HOW YOU CAME UP WITH THE
8     OVERALL VALUE OF THE CLAIMS, BECAUSE YOU HAVE NON-MONETARY
9     ASPECTS TO IT AND MONETARY ASPECTS TO IT.  BUT GO THROUGH YOUR
10    VALUATION ANALYSIS AND THEN YOUR REASONING FOR WHY THE 115
11    MILLION FUND IS APPROPRIATE HERE WHERE I THINK YOUR CLAIMS WERE
12    VALUED AT SOMEWHERE IN THE BILLION.
13            MR. RUDOLPH:  THE BILLIONS, POTENTIALLY.
14       SO WHAT WE HAVE HERE IS A SET OF COMMON LAW CLAIMS, STATE
15    WIRE TAP CLAIMS AND A FEDERAL WIRE TAP CLAIM.  VALUING THE
16    COMMON LAW CLAIMS IS DIFFICULT.  PRIVACY CLAIMS HAVE NOT GONE
17    TO TRIAL ON A CLASS BASIS, IT'S HARD TO KNOW WHAT THE JURY
18    VERDICT WOULD BE, PLAINTIFFS ARE AT LEAST ENTITLED TO NOMINAL
19    DAMAGES, AT LEAST FOR THE STATE CLASSES, THAT COULD BE IN THE
20    RANGE OF 40 MILLION.
21       FOR THE WIRE TAP CLAIMS, THOSE ARE -- THOSE HAVE STATUTORY
22    DAMAGES.  FOR THE CALIFORNIA CLAIM IT'S, I BELIEVE $5,000 PER
23    VIOLATION, AND FOR THE FLORIDA CLAIMS, $1,000 PER VIOLATION.
24    THOSE TRANSLATE TO VERY, VERY LARGE NUMBERS, IN THE BILLIONS,
25    AND IF IT'S APPLIED NATIONWIDE, POTENTIALLY IN THE TRILLIONS.

1         BUT OF COURSE YOUR HONOR, IN RULING ON OUR CLAIMS, HAD
2    NOTED THAT SOME OF THEM, INCLUDING THE WIRE TAP CLAIMS, BARELY
3    SURVIVED.  AND OF COURSE THE ECPA CLAIM WAS DISMISSED THREE
4    TIMES WITH PREJUDICE, ALTHOUGH WE WERE OF COURSE TRYING TO
5    PROVIDE IT THROUGH THE APPEAL PROCESS.
6         SO -- IN ADDITION TO THAT THERE IS THE QUESTION OF UNJUST
7    ENRICHMENT AND WHAT THE VALUATION FOR THAT WOULD BE, OR
8    ORACLE'S REVENUES WERE VERY, VERY LARGE INITIALLY, IN THE
9    ADVERTISING SPACE, THEY HAVE PLUMMETED PRECIPITOUSLY.  SO IT'S
10   VERY, VERY HARD TO KNOW EXACTLY WHAT THAT IS, ALTHOUGH WE
11   MENTIONED IN THE BRIEF WE THOUGHT IT COULD BE IN THE HUNDREDS
12   OF MILLIONS.
13        REALLY, WHILE WE OBVIOUSLY BELIEVE OUR CASE -- OUR CLAIMS
14   ARE VERY, VERY STRONG, THIS IS A VERY INNOVATIVE SET OF CLAIMS
15   IN A CHALLENGING ENVIRONMENT.  EVEN THOUGH THE CLAIMS ARE BASED
16   ON TRADITIONAL COMMON LAW AND STATUTORY RIGHTS, IT'S BEING
17   ALLEGED AGAINST A TYPE OF CONDUCT WHERE THOSE LAWS HAVE NEVER
18   BEEN APPLIED BEFORE.  THERE HAS NEVER BEEN A CASE LIKE THIS.
19   THE PLAINTIFFS HAVE BEEN IN PRIVITY WITH THE DEFENDANT, AND IN
20   FACT MOST PLAINTIFFS HAVE NEVER EVEN HEARD OF, AND DON'T HAVE
21   ANY SORT OF UNDERSTANDING OF THE CONDUCT THAT'S ENGAGED IN.
22        SO WHILE WE DID PREVAIL ON A NUMBER OF CLAIMS AT THE
23   DISMISSAL STAGE, SORT OF PROCEEDING TO TRIAL AND OF COURSE
24   CLASS CERTIFICATION IS ALWAYS A MASSIVE ISSUE, ORACLE HAS
25   PREVIEWED ITS ARGUMENTS ON THAT GROUND AND ITS INTENT TO FIGHT

```
 1        THAT VERY AGGRESSIVELY.
 2             SO GIVEN THE POTENTIAL CHALLENGES THAT THE CASE FACED,
 3   EVEN IN THE LIGHT OF THESE POTENTIALLY VERY, VERY LARGE
 4   STATUTORY DAMAGES, WHICH OF COURSE CAN BE REDUCED ON DUE
 5   PROCESS GROUNDS, EVEN IF THERE ARE -- EVEN IF WE WIN ON THEM,
 6   THAT THIS SETTLEMENT, WHICH IS STILL VERY, VERY LARGE, AS WE
 7   NOTE, WE THINK IT'S ACTUALLY POTENTIALLY THE THIRD LARGEST OF
 8   ANY NON DATA BREACH PRIVACY CLASS ACTION, IT'S STILL A
 9   PHENOMENAL RESULT IN A CASE COMBINED WITH THE INJUNCTIVE
10   RELIEF.
11             THE COURT:  DO YOU -- THE INJUNCTIVE RELIEF, DO YOU
12   INCLUDE THAT IN SOME SORT OF ASPECT OF WHAT YOU ARE VALUING THE
13   CLAIM AND HOW DOES THAT EQUATE TO YOUR REQUEST FOR ATTORNEY'S
14   FEES.
15             MR. RUDOLPH:  WE DON'T PUT A MONETARY VALUE, THAT'S
16   NOT PART OF OUR CALCULUS HERE.  BUT IT IS -- WE THINK IT'S
17   VERY, VERY IMPORTANT, IT'S ESSENTIALLY CESSATION OF THE CONDUCT
18   THAT THE COURT FOUND IS THE WIRE TAPPING CONDUCT AT ISSUE IN
19   THIS CASE, IT REQUIRES THE -- A MONITORING OF CONTRACTUAL
20   OBLIGATIONS.
21             THE COURT:  ISN'T ORACLE GETTING OUT OF THE --
22             MR. RUDOLPH:  THAT'S EXACTLY RIGHT.
23        AND IT'S AGAINST THE BACKDROP OF THE ENTIRE BUSINESS
24   SHUTTING DOWN, AND AS WE NOTED IN OUR PAPERS WE BELIEVE THAT
25   THIS SETTLEMENT AND THIS CASE CONTRIBUTED TO THAT.
```

1    SO THAT IS -- OVERALL IT'S -- BUT EVEN ON TOP OF THAT, WE
2    THINK THAT THE INJUNCTIVE RELIEF HAS VALUE.  IN THE EVENT THAT
3    ORACLE ENGAGES IN THIS CONDUCT AGAIN, STARTS TO RESTART UP THE
4    BUSINESS, IT WILL STILL BE BOUND TO NOT ENGAGE IN THIS CONDUCT.
5         THE COURT:  THE FACT THAT WE HAVE GOT CLASS MEMBERS
6    FROM DIFFERENT STATES, AND THOSE -- SOME OF THOSE STATES HAVE
7    DIFFERENT STATUTORY DAMAGE AMOUNTS, HOW DO WE -- HOW DOES THAT
8    THEN RELATE TO THE IDEA THAT THE CLASS MEMBERS ARE ALL GOING TO
9    BE TREATED THE SAME FOR PURPOSES OF THEIR RECOVERY.
10         MR. RUDOLPH:  RIGHT.  SO THERE'S TWO PARTS TO THAT.
11    SO THERE ARE STATE STATUTORY DAMAGES BUT THERE'S ALSO THE
12    FEDERAL CLAIM THAT APPLIES TO EVERYONE WHICH ACTUALLY IS
13    SIGNIFICANTLY LARGER THAN THE OTHER STATES, IT'S 10,000 PER
14    VIOLATION VERSUS 5,000.  AND IT'S ALSO THE CASE THAT UNDER, I
15    BELIEVE IT'S <u>LANE V. FACEBOOK</u>, THAT THERE ISN'T A REQUIREMENT
16    THAT ALL CLASS MEMBERS BE TREATED EQUALLY EVEN IF THEY HAVE
17    CLAIMS THAT MIGHT DIFFER.  SORT OF THE PURPOSE OF THE OPT OUT
18    PROCESS IS TO ALLOW PLAINTIFFS WHO THINK THAT THEY MIGHT HAVE
19    STRONGER CLAIMS TO OPT OUT OF THE SETTLEMENT AND PROCEED.
20         SO WE DON'T THINK THAT THE FLORIDA AND CALIFORNIA
21    PLAINTIFFS SHOULD GET SOME SORT OF PREFERENTIAL TREATMENT IN
22    THIS SETTLEMENT.
23         THE COURT:  <u>LANE</u> WAS MY CASE, I BELIEVE.
24         MR. RUDOLPH:  I BELIEVE THAT'S RIGHT.
25         THE COURT:  JUST COINCIDENTALLY.

1    OKAY. THE OPT OUT PROCEDURE, NOW I'VE GOT SOME PARTICULAR
2    QUESTIONS TO ASK ABOUT. IT SEEMS LIKE IT'S A FAIRLY CUMBERSOME
3    OPT OUT PROCEDURE, THERE'S NO E-MAIL OPTION. AS I READ IT, YOU
4    HAVE TO SIGN SOME DOCUMENT, DOCUSIGN IT AND SEND IT IN IN A
5    MORE RETRACTED WAY. WHY ISN'T IT -- WHY AREN'T WE MAKING OPT
6    OUTS A LITTLE EASIER?
7         MR. RUDOLPH: I BELIEVE THIS WAS FOR THE PURPOSES OF
8    COMPLYING WITH THE GUIDELINES AND MAKING SURE THAT ALL THE
9    INFORMATION THAT NEEDS TO BE PROVIDED IS PROVIDED.
10        THERE'S A --
11        THE COURT: IT'S A BIT DIFFERENT THAN A CASE -- I
12   MEAN, IF THE PER CLASS MEMBER RECOVERY WERE QUITE SUBSTANTIAL,
13   YOU WOULD WANT TO MAKE SURE THAT THE OPT OUT PROCEDURE WAS ONE
14   THAT CAUSED APPROPRIATE THOUGHT TO GO INTO IT, NOT TO SUGGEST
15   THAT THIS ISN'T ONE WHERE A CLASS MEMBER SHOULD THINK ABOUT IT
16   BUT IT'S A FAIRLY SMALLER AMOUNT OF RECOVERY, POTENTIALLY.
17        SO TO MAKE THE OPT OUT A LITTLE EASIER WOULD MAKE SOME
18   SENSE TO ME. WHEN THE AMOUNT THAT YOU ARE GOING TO GET IF YOU
19   STAY IN IS PROBABLY BETWEEN $15 AND $25, YOU KNOW, TO MAKE YOUR
20   OPT OUT MORE CUMBERSOME DOESN'T REALLY MAKE SENSE TO ME.
21        MR. RUDOLPH: WELL, THERE IS A FORM THAT THEY
22   DOWNLOAD AND FILL OUT. AND THAT'S IT, THAT'S THE PROCESS.
23        THE COURT: WELL THEY CAN'T DO IT BY E-MAIL, CAN
24   THEY?
25        MR. RUDOLPH: IT NEEDS TO BE MAILED PHYSICALLY.

|   |   |
|---|---|
| 1 | THE COURT: WHY? |
| 2 | MR. RUDOLPH: I THINK THAT'S JUST TO MAKE SURE THAT |
| 3 | IT'S ORDERLY AND THAT THEY ARE NOT BEING DONE IN A MASS |
| 4 | FASHION, WHICH IS AN ISSUE AND IT'S SOMETHING THAT THE |
| 5 | SETTLEMENT AGREEMENT SPECIFICALLY ADDRESSES THAT THEY HAVE TO |
| 6 | BE SIGNED BY THE INDIVIDUAL. THEY CAN BE DOCUSIGNED, SO THEY |
| 7 | CAN BE SIGNED ELECTRONICALLY, BUT MASS OPT OUTS ARE AN ISSUE. |
| 8 | AND, YOU KNOW, OBJECTORS AND OBJECTORS' COUNSEL TRYING TO |
| 9 | ORCHESTRATE THAT IS AN ISSUE, AND THAT IS ONE OF THE ISSUES |
| 10 | THAT WE ARE TRYING TO ADDRESS HERE. |
| 11 | THE COURT: OKAY. ALTHOUGH TO SOME EXTENT WHEN I |
| 12 | HEAR THAT ARGUMENT, MY ATTITUDE IS TO THE EXTENT ONE GROUP |
| 13 | WANTS TO TRY TO EXERT LEVERAGE ON ANOTHER, THAT'S NOT MY |
| 14 | PROBLEM, I'M NOT HERE TO PROTECT ONE GROUP OVER ANOTHER. IF |
| 15 | YOU ARE A PUTATIVE CLASS MEMBER AND YOU THINK YOU'VE GOT |
| 16 | CERTAIN LEVERAGE BY VIRTUE OF, SAY, WHATEVER THE -- IF MORE |
| 17 | THAN TEN PERCENT OPT OUT, THE DEAL IS DONE, THAT KIND OF THING. |
| 18 | I'M NOT CONCERNED ABOUT THAT, THAT'S FINE. |
| 19 | SO BUT WHAT I AM CONCERNED ABOUT IS JUST THAT CLASS |
| 20 | MEMBERS, PUTATIVE CLASS MEMBERS HAVE A PROCESS THAT IS EASY AND |
| 21 | DOESN'T HAVE HURDLES THAT ARE REALLY NOT NECESSARY. |
| 22 | AND I HEAR YOU, I STILL HAVE SOME QUESTION ABOUT |
| 23 | WHETHER -- I MEAN, IT'S NOT A MAJOR ISSUE, IT'S NOT GOING TO, |
| 24 | AT THE END OF THE DAY FROM MY PERSPECTIVE, HANG UP A |
| 25 | SETTLEMENT, BUT I WOULD ENCOURAGE YOU TO THINK THROUGH THIS A |

1    LITTLE BIT BECAUSE IN THE NATURE OF THIS SETTLEMENT, I WOULD
2    THINK YOU WOULD WANT TO MAKE IT A LITTLE EASIER IF SOMEBODY DID
3    WANT TO OPT OUT.  BUT LET ME MOVE ON TO THE NEXT ISSUE.
4         THIS IS JUST TO TELL YOU WITH RESPECT -- I DID SPEND TIME
5    GOING THROUGH YOUR PROPOSED ORDER.  I APPRECIATE IT, IT'S
6    HELPFUL, OBVIOUSLY STREAMLINES THE PROCESS; I DO, HOWEVER
7    THOUGH, RESERVE THE RIGHT TO MAKE SOME ADJUSTMENTS TO IT
8    OBVIOUSLY, AND I THINK IT WAS PAGE 5 ON THE PROPOSED ORDER, IT
9    HAS SOME FINDINGS ABOUT HOW THE LANGUAGE IS PLAIN ENGLISH AND
10   SOME OTHER THINGS THAT SOUNDED TO ME LIKE THEY WERE NOT
11   NECESSARY.
12        I THINK THAT'S -- IN YOUR CASE, IT I MIGHT BE CONFUSING,
13   THE NEXT CASE -- ACTUALLY, NO, I THINK IT'S THIS CASE, SO I'M
14   GOING TO CHANGE IT A LITTLE BIT, BUT I DON'T THINK IN ANY
15   MATERIAL WAY.
16        OKAY.  I HAVE A QUESTION ABOUT THE TIMING OF THE
17   ATTORNEY'S FEE PETITION.  I THINK UNDER OUR GUIDELINES THERE'S
18   A PERIOD OF TIME -- OH, THAT'S IN A DIFFERENT CASE, THAT'S IN
19   THE NEXT ONE.  HOW MUCH TIME DO YOU HAVE BETWEEN THE FILING OF
20   YOUR ATTORNEY'S FEE PETITION AND THE FINAL OPT OUT?
21             MR. RUDOLPH:  THE GUIDELINES SAY 35 DAYS, WE HAVE
22    50 DAYS.
23             THE COURT:  OKAY.  SO YOU WILL FILE YOUR ATTORNEY'S
24    FEE PETITION 50 DAYS BEFORE THE FILING OF THAT DEADLINE?
25             MR. RUDOLPH:  THAT'S RIGHT.

1          THE COURT:  THAT'S WHAT I NEED TO KNOW.
2     AND YOU'VE GOT A 25 PERCENT, AT THIS POINT IT LOOKS LIKE
3  YOU ARE GOING TO BE REQUESTING THE NINTH CIRCUIT BENCHMARK.
4          MR. RUDOLPH:  THAT'S CORRECT.
5          THE COURT:  OKAY.  DID YOU HAVE A DATE FOR THE FINAL
6  APPROVAL HEARING IN MIND?
7          MR. RUDOLPH:  YES.  WE DID PUT IN A CHART IN THE
8  BRIEFING, BUT WE ARE LOOKING TO ATTEMPT TO SCHEDULE IT ON
9  NOVEMBER 14TH.  NOVEMBER 14TH WOULD BE THE PREFERRED DATE.
10         THE COURT:  AND WOULD YOU THEN -- YOU'VE GOT SOME
11 BLANKS OBVIOUSLY IN YOUR PROPOSED ORDER.  IF WE USE TODAY AS
12 THE DATE OF PRELIMINARY APPROVAL, CAN YOU THEN PLUG IN THE
13 DATES FOR ME?
14         MR. RUDOLPH:  YES.
15         THE COURT:  AND RESUBMIT IT?
16         MR. RUDOLPH:  YES.
17         THE COURT:  OKAY.  AND YOU WANTED NOVEMBER 14TH.  I
18 THINK THAT WORKS.
19         MR. RUDOLPH:  GREAT.
20         THE COURT:  SO MS. CHEUNG, ANYTHING YOU WANT TO SAY?
21         MS. CHEUNG:  JUST IN RESPONSE TO YOUR QUESTION,
22 YOUR HONOR, ABOUT MASS OPT OUTS AND THE OPT OUT PROCESS.
23     WE DID WANT TO NOTE THAT OUR UNDERSTANDING IS ONE CONCERN
24 IS TO DISCOURAGE COUNSEL FROM DRIVING OPT OUTS ON A MASS BASIS
25 ON BEHALF OF THE PUTATIVE CLASS MEMBERS WHERE UNFORTUNATELY WE

1    HAVE SEEN THERE ARE SITUATIONS WHERE OPT OUTS ARE DRIVEN BY
2    COUNSEL RATHER THAN THE INDIVIDUALS.
3            THE COURT:  BUT SHOULD I PROTECT AGAINST THAT?
4        I MEAN, I UNDERSTAND WHY YOU DON'T WANT IT, BUT AT A
5    CERTAIN LEVEL IT'S AN OPEN MARKET OUT THERE.  IF COUNSEL-DRIVEN
6    OR OTHERWISE RECRUIT PEOPLE TO OPT OUT AND THERE ARE PUTATIVE
7    CLASS MEMBERS, SHOULD I, YOU KNOW, SIGN OFF ON AN AGREEMENT TO
8    SOMEHOW PROTECT YOU AGAINST THAT?  I GUESS THAT'S THE QUESTION.
9    I UNDERSTAND WHY YOU DON'T WANT IF, BUT THAT DOESN'T MEAN I
10   NECESSARILY SIGN OFF ON IT.
11           MS. CHEUNG:  ONE OF THE CHALLENGES WE HAVE SEEN IS
12   THAT WHEN UNDER THOSE SITUATIONS, WE ARE SEEING SITUATIONS
13   WHERE THE OPT OUTS ARE UNFORTUNATELY NOT VALID.  SO IT DOES
14   CREATE MORE COST IN TERMS OF ADMINISTRATION AND FRAUDULENT OPT
15   OUTS THAT NEED TO BE ADDRESSED.
16       THAT IS SOMETHING THAT WE WOULD TAKE A CLOSE LOOK AT AND
17   THE ADMINISTRATOR WOULD CERTAINLY TAKE A CLOSE LOOK AT, BUT IT
18   IS UNFORTUNATELY A REALITY OF RECENT CLASS ACTION SETTLEMENTS.
19       AND SO ONE OF THE ISSUES, AND WE DON'T BELIEVE THAT THE
20   OPT OUT PROCESS IS OVERLY BURDENSOME BUT IT IS A CONCERN IN
21   TERMS OF FRAUDULENT OPT OUTS THAT WE DID WANT TO AT LEAST TRY
22   TO ADDRESS.
23           THE COURT:  AND YOU THINK IF THE OPTION WAS AVAILABLE
24   TO THE PUTATIVE CLASS MEMBER TO OPT OUT BY WAY OF AN E-MAIL, IF
25   THEY HAVE TO DOCUSIGN IT AND PERHAPS THEN SEND IT IN

| | |
|---|---|
| 1 | ELECTRONICALLY, THAT THAT WOULD ACTUALLY BE DANGEROUS SOMEHOW? |
| 2 | MS. CHEUNG:  IT DOES INCREASE THE RISK JUST BECAUSE |
| 3 | IT DOES MAKE IT EASIER FOR SOMEONE TO FABRICATE AN OPT OUT |
| 4 | RATHER THAN HAVING SOMEONE PERSONALLY SIGN AND MAIL IT. |
| 5 | THE COURT:  WELL I CERTAINLY DON'T WANT FABRICATED |
| 6 | OPT OUTS, SO IF THAT'S A REAL CONCERN, THAT'S ONE THAT I WOULD |
| 7 | BE CONCERNED ABOUT.  IF, HOWEVER, THE PROCESS IS BEING |
| 8 | IMPLEMENTED IN ORDER TO DISCOURAGE OPT OUTS, THAT'S WHAT CAUSES |
| 9 | ME SOME PROBLEMS.  I DON'T WANT TO MAKE IT -- I DON'T WANT TO |
| 10 | PUT OBSTACLES IN THE PATH OF PEOPLE WHO SAY, I DON'T WANT TO |
| 11 | OPT OUT OF THIS, I DON'T LIKE -- YOU KNOW, FOR ALL SORTS OF |
| 12 | REASONS, I DON'T WANT TO BE PART OF THIS.  I WANT TO GIVE THEM |
| 13 | AN OPTION TO DO THAT AND MAYBE THERE'S SOME PLACE IN BETWEEN TO |
| 14 | PROTECT AGAINST SOME SORT OF FRAUDULENT PRACTICE, WHICH OF |
| 15 | COURSE I DON'T THINK WE WANT TO SANCTION, BUT MAKING IT HARD. |
| 16 | AS I SAY, I'M NOT -- IT'S NOT A MAJOR PIECE OF THIS, SO |
| 17 | IT'S -- I'M NOT PROPOSING THIS IS GOING TO HANG ANYTHING UP, |
| 18 | BUT I MAY THINK ABOUT IT A BIT FURTHER. |
| 19 | OKAY.  SO ANYTHING ELSE? |
| 20 | MS. CHEUNG:  NO, YOUR HONOR.  THANK YOU. |
| 21 | THE COURT:  OKAY.  SO I DO FIND THIS SETTLEMENT |
| 22 | CERTAINLY FALLS WITHIN THE PARAMETERS OF WHAT'S FAIR REASONABLE |
| 23 | AND ADEQUATE AND I WILL PRELIMINARILY APPROVE IT AND APPROVE IT |
| 24 | AS OF THIS DATE. |
| 25 | I WILL ASK COUNSEL THEN TO GIVE ME A NEW PROPOSED ORDER |

1     THAT HAS SOME DATES PUT IN THERE.  AND AS I SAY, I THINK I WILL
2     GO BACK AND LOOK, BUT I THINK IT WAS ON PAGE 5 WAS WHERE I WAS
3     GOING TO OMIT A COUPLE OF SENTENCES, BUT I DON'T HAVE IT HANDY
4     HERE.  THAT WAS MY -- YEAH.  I THINK SO, BUT I DON'T HAVE IT.
5         ANYWAY, LET ME LOOK AT ONE MORE PLACE.  OKAY.  THERE'S THE
6     PROPOSED ORDER.  YEAH.  THE SENTENCE THAT SAYS -- IT'S ON
7     PAGE 5 OF YOUR PROPOSED ORDER, AND YOU CAN STREAMLINE IT FOR ME
8     BY TAKING IT OUT ON THE NEW ONES, THE NEW ONE YOU ARE GOING TO
9     GIVE ME, THE SENTENCE THAT STARTS, "THE COURT FURTHER FINDS THE
10    NOTICES ARE WRITTEN IN PLAIN LANGUAGE, USE SIMPLE TERMINOLOGY
11    AND ARE DESIGNED TO BE READILY UNDERSTOOD.  THE COURT FURTHER
12    FINDS THAT THE NOTICE FULLY COMPLIES WITH THE U.S. DISTRICT
13    COURT FOR THE NORTHERN DISTRICT'S PROCEDURAL GUIDELINES FOR
14    CLASS ACTION SETTLEMENTS."  I DON'T THINK WE NEED THOSE TWO
15    SENTENCES, SO TAKE THOSE OUT.
16        AND LET ME SEE IF THERE WAS ANOTHER -- I THINK THAT WAS
17    THE ONLY CHANGE.
18        FOR SOME REASON YOU TOLD ME NOW IT'S 50 DAYS, WHICH IS
19    FINE WITH ME BUT I PUT A NOTE HERE THAT I HAD SOME CONCERN IT
20    WAS ONLY 14 DAYS BEFORE THE FINAL HEARING THAT THE ATTORNEY'S
21    FEE PETITION WOULD BE FILED, BUT MAYBE I MISREAD THAT.
22            MR. RUDOLPH:  THE OPT OUT DEADLINE IS 14 DAYS BEFORE
23    THE HEARING.
24            THE COURT:  THE OPT OUT, THEY HAVE TO OPT OUT WITHIN
25    14 DAYS BUT THEY WILL HAVE HAD THE PETITION FOR 50.

| | |
|---|---|
| 1 | MR. RUDOLPH: THAT'S RIGHT. |
| 2 | THE COURT: OKAY. THAT'S FINE WITH ME. |
| 3 | OKAY. VERY GOOD. THANK YOU. |
| 4 | MR. RUDOLPH: THANK YOU, YOUR HONOR. |
| 5 | MS. CHEUNG: THANK YOU, YOUR HONOR. |
| 6 | (THE PROCEEDINGS WERE CONCLUDED AT 1:54 P.M.) |

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATE: 10/10/24