**Katz-Lacabe et al v. Oracle America, Inc., 3:22-cv-04792-RS**

The undersigned Class Member, Christopher L. Williams, hereby submits this <u>supplemental</u> objection to the Proposed Settlement. (*See also* Doc. # 137).

## PRELIMINARY MATTERS

- I believe I am a class member because I received notification of the settlement via email, Notice ID # KATL0148046439.

- I wish to appear at the Final Approval Hearing via Zoom or other audiovisual means. Given the paltry amount of money provided to class members (estimated at $15-25 even with a meager 1.5%-2.5% claim submission rate as estimated by Leif), it is cost prohibitive for me to fly to San Francisco and appear in person. For the same reason, it is cost prohibitive to retain a private attorney to appear in person to represent my interests. (Doc. # 137, footnote 1).

- My home address is 1006 West Confederate Avenue, Columbia, SC, 29201. My email is chris@williamslitigation.com

## ARGUMENT

### A. LEIF HAS ACCOMPLISHED NOTHIING.

1. As noted in my initial objection, Lief has accomplished nothing in this litigation since Oracle voluntary stopped the complained-of practices.

2. Two days after the undersigned's objection was filed, Oracle submitted a response to Plaintiff's Motion for Attorney's Fees specifically noting that "the announcement was made during a regularly scheduled quarterly earnings call and contemplated well in advance." (Doc. # 138) Of course, Oracle did not object to the <u>amount</u> of attorney's fees sought because it wants a nationwide release of claims.

3. The undersigned also notes that Oracle did <u>not</u> comment on the assertion in Plaintiff's Motion for Preliminary Settlement Approval that "Plaintiffs believe the filing of this lawsuit may have contributed to" Oracle stopping its

1

practices. (Doc. # 132, pp. 7-8).[1] I do not know if that is because Oracle did not have the opportunity to review the Motion or if it neglected to see Class Counsel's unsupported speculation. But after I pointed it out in my objection, Oracle promptly addressed Class Counsel's rank conjecture less than 2 days later.

4. Even if this litigation had some effect on Oracle's decision to change its practices, the "catalyst" theory has been rejected by the United States Supreme Court. *Buckhannon Board Care Home v. West Va. D.H.H.R*, 532 U.S. 598, 121 S. Ct. 1835 (2001).[2]

5. Leif does not even know which individuals are members of the proposed class, noting that "Settlement Class Counsel estimates there are <u>likely</u> 220 million Class Members based on <u>public reports</u>." It is unclear what unidentified public reports Leif is relying on to obtain this estimate, but its ethical duty to the class would seem to encompass, at a minimum, finding out who is a class member beyond "public reports."

6. Further illustrating Class Counsel's non-understanding of who is a class member – or what Oracle is even doing – it has modified the class definition "to encompass persons from whom Oracle 'acquired, captured, or otherwise collected" personal data "through ID Graph, Data Marketplace, or any other Oracle Advertising product or service,' to reflect <u>Plaintiffs' current understanding</u> of the nature of Oracle's business activities.

---

[1] Presumably, the Court's Order preliminary approving the settlement relied on this rank speculation, at least to some degree. But I may be dead wrong on this – it is impossible to tell. *Cf,* Doc. # 133 (noting that the hearing on the motion for preliminary settlement approval lasted 24 minutes). Class Counsel requested a transcript of the hearing on the motion for preliminary settlement approval on October 7 (Doc. # 144) so it will not be available on PACER until January 8, 2025 (nearly 3 months after the deadline to submit objections).

[2] I personally disagree with the Supreme Court's decision on this issue, but it is binding precedent.

### B. THE MONETARY PAYMENT IS UNREASONABLE AS A MATTER OF LAW.

1. If – and only if – a class member submits a claim form, then they will receive between approximately $15-25.[3]

2. The ECPA claims (which have been dismissed) allows for statutory damages of the greater of $10,000 or $100 a day for each violation. Using the $10,000 maximum, the 1.5%-2.5% of class members who submit a claim form will be receiving **0.25%** of their maximum damages. The remaining 97-98% of class members will receive nothing.[4]

3. Damages available under Plaintiffs' remaining CIPA claim dwarf potential recovery under ECPA. Doc. # 122, p. 10. Thus, the California class is receiving substantially less than 0.25% of their potential damages.[5]

### C. THE ATTORNEY'S FEES SOUGHT ARE UNREASONABLE.

7. My initial objection noted the absurdity of the attorney's fees sought by Class Counsel. (Doc. # 137), but a few additional points.

8. ECPA Class members who are willing to spend the time to submit a claim are receiving 0.25% of their maximum damages. Accordingly, an appropriate

---

[3] Leif's 1-page "lodestar summary" supporting its purported right to the exorbitant attorney's fees sought is 1-page less than the 2-page claim form required for a class member to obtain an estimated $15-25 (assuming a paltry 1.5%-2.5% submission rate as estimated by Class Counsel). *Cf.* Doc. # 136-2). As noted in my initial objection, the Settlement Administrator declined to answer my question when I asked about the estimated monetary recovery. (Doc. # 137, fn 5).

[4] Class Counsel' has stated that "Delivering tangible monetary payments to individuals subjected to Oracle's practices is an impressive feat for a Class of roughly 220 million people, where the Class Members had no out-of-pocket damages." But again, only somewhere between 1.5-2.5% of the class will receive any money. This is not an "impressive feat" by any means.

[5] I am not a California class member so maybe I do not have standing to assert an objection on behalf of those class members. But if Lief and two named Plaintiffs can bind 220+ million people to a settlement, then I certainly should have standing to make an objection on behalf of the California Class. But even if I do not, the Court should still consider this issue when evaluating the fairness of the settlement for California Class members, who apparently have much more valuable claims than the ECPA nationwide class. *Cf. Johnson v. Nissan N. Am., Inc.,* 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017)

attorney's fees award is 0.25% of the supported lodestar (although there is no evidentiary support for the lodestar – no billing records, just a 1-page bare-bones summary).

9. But even assuming the $9+ million lodestar was supported (and it is not), then the proper attorney's fee award should be no more than percentage amount of the monetary relief that 1.5%-2.5% of class will receive, or 0.25% of the lodestar.  This equates to $24,060.62 (a little over $24,000).

10. Leif has done nothing to substantively advance the case. Leif implicitly acknowledges its abdication of their duties to the class with their ridiculous assertion that Oracle's "recent announcement that it is shutting down its ad tech business—and the associated reductions in staff—<u>may make it difficult to obtain key witnesses for future depositions and for trial</u>." (Doc. # 132, p. 13).  Even routine litigation cases often require an attorney to go through the somewhat tedious process of subpoenaing a non-party for a deposition.  That Leif finds it difficult to do this fairly routine task (while seeking attorney's fees of $28.75 million) is ridiculous – and outright lazy – to say the least.

11. And again, Leif has only taken one deposition – a deposition that I apparently am not allowed to read as the Settlement Administrator has stated it cannot provide to me as a class member.[6] (Exhibit A, Email Correspondence attached in globo).

### D. THE $4.8 MILLION AMOUNT PAID TO THE SETTLEMENT ADMINISTRATOR IS UNREASONABLE.

1. The Motion for Preliminary Settlement Approval states that the Settlement Administrator will provide its "services while committing to a hard cap on its fees." (Doc. # 132, p. 22). (citing Weisbrot Decl. ¶¶ 18–36, 59.)

2. But buried in footnote in the Settlement Administrator's declaration is the real truth – <u>that there is no hard cap</u> on the Settlement Administrator's fees:

---

[6]   According to Leif, it "deposed an Oracle employee and, after substantial document production, <u>began preparations to depose many more [unidentified deponents]</u>." (Doc. # 132, p. 29).

4

> "The not-to-exceed estimate was premised on certain specifications provided to Angeion, such as the approximate size of the potential Settlement Class and issuing payments in a single distribution. Deviations from these underlying specifications may result in additional costs, as the costs of administration are based on the underlying assumptions. <u>Out of-scope services not called for in the Settlement Agreement are not included in the not-to-exceed amount.</u>
>
> (Doc. 132-5, ¶ 59 fn 12.)

3. Because the Settlement Administrator's compensation is being paid out of the class fund, class members have a right to know the <u>total</u> compensation that the Settlement Administrator will receive before making an informed decision on the merits of the Settlement.

4. Despite being paid at least $4.8 million, the Settlement Administrator refuses to provide class members with the documents on PACER, thereby requiring anyone who wishes to object to pay out of pocket to see the relevant documents. I asked the Settlement Administrator "is it possible for the settlement administrator to include all filings made in this case that are available on PACER?" (Exhibit A, Email Correspondence). The response of the Settlement Administrator who is being at least $4.8 million (with no hard cap – *see* supra, Section D(3) r was:

   We unfortunately cannot provide documentation that is not already available on the Settlement Website; however, attached are the Plaintiff's Unopposed Motion and the Second Amended Complaint.[7]

5. Thus, the Settlement Administrator and Leif have refused to post all of the publicly-available documents available on PACER despite that they collectively are seeking at least $33.5 million in compensation and fees.

6. The Settlement Administrator has provided inaccurate information to class members. For example, I asked "can someone tell me what claims were

---

[7] *Cf.* Website for PACER Fees class action, which provides free access to the entire docket for class members and the general public, available at: https://www.pacerfeesclassaction.com/court-documents.aspx.

5

dismissed by the district court and which claims were *not* dismissed by the district court?" (Exhibit A – email correspondence attached *in globo*).

7. In response, the Settlement Administrator made the following inaccurate statement (underlined for the Court's convenience):

   The Claims <u>not</u> dismissed by the District Court were the Plaintiff's claims of (1) intrusion upon seclusion under California law on behalf of the California SubClass, (2) <u>invasion of privacy</u>, <u>CIPA, FSCA</u>, (3) <u>unjust enrichment</u>, (4) <u>declaratory judgment</u>, and (5) <u>injunctive relief</u>. The Plaintiff's remaining claims were dismissed: (1) intrusion upon seclusion claim on behalf of the Florida Sub-Class under Florida law, (2) intrusion upon seclusion claim under California law on behalf of the United States Class, (3) unjust enrichment claim under California law on behalf of the United States Class, and (4) Plaintiff's ECPA claim

8. The invasion of privacy, CIPA, and FSCA claims that survived dismissal appear to be brought on behalf of very limited subclasses and therefore do not apply to nearly all of the approximately 220+ million class members, including the undersigned.

9. The Settlement Administrator did *not* note this critical distinction, *i.e.*, that these non-dismissed claims are not applicable to the overwhelming majority of class members.

10. The Court held that "Plaintiffs' unjust enrichment claim under California law on behalf of the United States Class is dismissed with leave to amend." (Doc. # 77, p. 14). Despite being afforded leave to amend, The Second Amended Complaint did not assert an unjust enrichment claim on behalf of a United States class – it specifically limited that claim to the California Class. (Doc. # 87 at page 3 (Table of contents noting that "Seventh Cause of Action <u>Unjust Enrichment under California Common Law (on behalf of the California Class)</u>.

11. The Settlement Administrator did <u>not</u> explain that the unjust enrichment claim was limited to the California Class – which is a crucial detail for a nationwide settlement. I ad to scour the complaint and read all of the Court's Orders to figure it out.

12. There is no declaratory judgment claim remaining <u>for the ECPA class</u> because it was dismissed. As the Court has twice held, "Plaintiffs' declaratory judgment claim will rise and fall with its other claims: if Plaintiffs fail to allege facts sufficient to state a claim under any other cause of action, the claim for declaratory judgment will be dismissed. As not all of Plaintiffs' claims have been dismissed, the declaratory judgment claim survives to that extent." (Doc. # 49, p. 22; Doc. # 77, p. 15). )

13. The injunctive relief claim is moot since Oracle has stopped the allegedly unlawful practices voluntarily.

## E. IT IS PREMATURE TO APPROVE THE SETTLEMENT WITHOUT KNOWING HOW MANY CLASS MEMBERS WERE PROPERLY NOTIFIED.

1. The Settlement Administrator's supporting declaration states that it will – at some unknown date and time – but after the deadline for filing objections provide a report as to who many class members will be notified:

   "At the completion of the email campaign, Angeion will report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. This will provide the Court with a detailed, verified account of the success rate of the entire direct email notice campaign." (Doc. # 132-5, ¶ 27).

2. Without knowing how many class members are notified (and again, Leif does not even who comprises the class), it is premature to approve the settlement and the $4.8 million compensation being paid to the settlement administrator.

3. And given that there actually is no "hard cap" on the Settlement Administrator's compensation notwithstanding Class Counsel's representation to the contrary, it is premature to approve the settlement without knowing precisely how much compensation will be paid to the Settlement Administrator.

## **CONCLUSION**

I have spent about 40-45 hours (inclusive of the time spent in preparing my initial objection) now reviewing documents and probably $50-75 (maybe more) on PACER to obtain filings, court transcripts, etc. to try and obtain some idea of what is going on in this case.[8]

I think I have done a pretty good job, but there are many problems with this proposed Settlement and I know someone smarter than me (and with the time and resources to undertake an in-depth review) could probably identify countless other problems. Maybe this is why "professional objector" attorneys exist. I still don't condone the practice of "professional objector" attorneys, but perhaps they are trying to reduce or eliminate the type of shenanigans that Class Counsel have employed here. I still think there is a real benefit to Rule 23 class actions, but the Proposed Settlement here is beyond absurd.

I respectfully submit that the Court should deny the Motion for Settlement Approval in its entirety for all of the reasons set forth herein and in my initial objection.

---

[8] Again, the Settlement Administrator and Leif have refused to post all of the publicly-available documents available on PACER despite that they collectively are seeking at least $33.5 million in compensation and fees. So I have spent 3-4 times the amount of money that I would get from this settlement if I were to accept it (which I will not) just to learn enough about to speak about it in a somewhat intelligible manner.

The undersigned reserves the right to supplement this objection as more information comes to light.

*Christopher Williams*
8027BDFB21334FD...

Christopher L. Williams
1006 West Confederate Avenue,
Columbia, SC, 29201
chris@williamslitigation.com

Dated: October 16, 2024