1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   CHRISTIN HILL (CA SBN 247522)
    CHill@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     415.268.7000
5   Facsimile:     415.268.7522

6   PURVI G. PATEL (CA SBN 270702)
    PPatel@mofo.com
7   WHITNEY O'BYRNE (CA SBN 325698)
    WOByrne@mofo.com
8   ERIK MANUKYAN (CA SBN 340307)
    EManukyan@mofo.com
9   EMMA BURGOON (CA SBN 348097)
    EBurgoon@mofo.com
10  MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
11  Los Angeles, California  90017-3543
    Telephone:     213.892.5200
12  Facsimile:     213.892.5454

13  Attorneys for Defendant
    ORACLE AMERICA, INC.
14
    *Additional counsel on next page*

15

## UNITED STATES DISTRICT COURT

16

## NORTHERN DISTRICT OF CALIFORNIA

17

## SAN FRANCISCO DIVISION

18

19

| | |
|---|---|
| MICHAEL KATZ-LACABE, ET AL., | Case No. 3-22-cv-04792-RS |
| Plaintiffs, | **DEFENDANT ORACLE AMERICA, INC.'S RESPONSE TO OBJECTIONS TO THE SETTLEMENT** |
| v. | |
| ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware, | Judge:  Hon. Richard Seeborg |
| | Date:   November 14, 2024 |
| Defendant. | Time:  1:30 p.m. |
| | Courtroom: 3 |
| | Date Action Filed:  August 19, 2022 |
| | Trial Date: Not Set |

20

21

22

23

24

25

26

27

28

ZACHARY S. NEWMAN (NY SBN 5651518)
(Admitted *pro hac vice*)
ZNewman@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone:    212.468.8000
Facsimile:    212.468.7900

KYLE ZIPES (CA SBN 251814)
Kyle.Zipes@oracle.com
NARGUES M. EDER (CA SBN 260289)
Nargues.M.Eder@oracle.com
ORACLE AMERICA, INC.
500 Oracle Parkway
Redwood Shores, California 94065
Telephone:    650.506.7000

Attorneys for Defendant
ORACLE AMERICA, INC.

1    **I.    INTRODUCTION**

2         Oracle submits this response to certain objections to the Settlement[1] filed by proposed

3    Settlement Class Members. Specifically, this response addresses (i) certain objectors' failure to

4    consider litigation risks in their objections to the scope of monetary relief provided in the

5    Settlement, (ii) others' misunderstanding of the advertising technology (AdTech) industry and

6    Oracle's business practices, and (iii) another's misguided objection to the Claim Form's

7    attestation under penalty of perjury requirement.

8    **II.    ARGUMENT**

9         **A.    The Settlement is Fair Given the Litigation Risks**

10        Objectors challenging the reasonableness of the monetary relief provided in the Settlement

11   ignore the risks of continued litigation.  Certain objectors argue that the per-claimant value of the

12   Settlement is too small based on their assumption that the ***entire class*** will file a valid claim.  (*See*

13   Loeb Objection, ECF No. 146 at 1 ("[if] . . . the class contains 220 million U.S. persons . . . what

14   remains is less than $.35 per class member"); Henry Objection, ECF No. 157 at 1 ("the net

15   settlement amount . . . [d]ivid[ed by] the number of plaintiffs . . . equals to $0.39 cents per Class

16   Member"); Trupia Objection, ECF No. 164 at 2 (similar); Stanek Objection, ECF No. 163 at 1

17   (similar).)  Others argue that monetary relief provided in the Settlement does not reflect their

18   subjective assessments of the value of their own personal information. (*See* Zaffarkhan Objection,

19   ECF No. 141 at 1 ("As a physician and high net worth individual, my personal information has

20   far greater value than the class action intimates."); *see also* Epelbaum Objection, ECF No. 156 at

21   1 (claiming that Oracle "earn[ed] billions of dollars from [its data collection] practices"); Kelley

22   Objection, ECF No. 172 at 1 ("the penalties . . . amount to a mere slap on the wrist").)  Finally,

23   others claim that monetary relief is unreasonable in relation to the maximum possible damage

24   award associated with the at-issue causes of action.  (*See* Williams Objection, ECF No. 148 at 3

25   ("Using the $10,000 maximum [ECPA damage award], the . . . class members who submit a

26   claim form will be receiving **0.25%** of their maximum damages."); Feldman Objection, ECF No.

27

28   ---
     [1] Unless otherwise defined, capitalized terms are as defined in the Settlement Agreement and
     Release.  (*See* ECF No. 132-2 ("Settlement").)

1  150 at 7 (urging the Court to compare the proposed settlement value to the "*maximum amount*

2  *that would not violate due process*").)

3      But "[s]ettlement is the offspring of compromise," and courts must determine "not

4  whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

5  and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In

6  determining what constitutes a fair settlement, courts consider "the risk of losing at trial, the

7  expense of litigating the case, and the expected delay in recovery (often measured in years)."

8  *Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499072, at *12

9  (C.D. Cal. July 29, 2010).  Accordingly, "[t]he fact that a proposed settlement may only amount

10  to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement

11  is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d

12  1234, 1242 (9th Cir. 1998) (citation omitted).

13      Here, the Agreement constitutes a fair settlement in light of the significant challenges

14  Plaintiffs would face in attempting to prove their claims.  As to Plaintiffs' wiretapping claims,

15  Plaintiffs would struggle to demonstrate that Oracle's alleged data collection took place while

16  individuals' data was "in transit." *See, e.g.*, Cal. Pen. Code § 631(a).[2]  Courts have routinely held

17  that data that is transmitted from electronic storage does not constitute an interception "in transit."

18  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (concluding an

19  interception in transit must "stop, seize, or interrupt in progress or course before arrival" and

20  before it is in "electronic storage") (citation omitted); *see also Bunnell v. Motion Picture Ass'n of*

21  *Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007) (no interception in transit "[e]ven if the storage

22  phase is transitory and lasts only a few seconds").  And as to Katz-Lacabe's privacy claims under

23  California law, Oracle intended to seek summary judgment on the grounds that its lawful

24

25      [2] The California Invasion of Privacy Act's "in transit" requirement is construed coextensively
with the federal Electronic Communications Privacy Act's "contemporaneous with transmission"

26  requirement, and by extension, the Florida Security of Communications Act (FSCA).  *See In re
Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 n.9 (C.D. Cal. 2017); *see*

27  *also Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *6 (Fla. Cir.
Ct. June 17, 2021) (same "contemporaneously with transmission" requirement under the FSCA as

28  under ECPA).

1    practices cannot constitute a "highly offensive" intrusion.  *In re Facebook, Inc. Internet Tracking*

2    *Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).  Indeed, courts agree that engaging in

3    the "routine commercial behavior" of a data broker does not satisfy the "highly offensive"

4    inquiry.  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022); *see also In*

5    *re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Google's collection

6    and disclosure of users' browsing histories was not highly offensive).

7            In addition, Plaintiffs would have faced further obstacles in attempting to certify a class

8    for litigation purposes.  *See Fraley v. Facebook*, Inc., 966 F. Supp. 2d 939, 942-43 (N.D. Cal.

9    2013) (Seeborg, J.) (granting final approval of class settlement and finding "significant risk . . .

10   that class certification would prove unwarranted" were litigation to proceed), *aff'd*, *Fraley v.*

11   *Batman*, 638 F. App'x 594 (9th Cir. 2016); *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK,

12   2016 WL 613255, at *5 (N.D. Cal. Feb. 16, 2016) (settlement amount fair given that "[p]laintiffs

13   may have had difficulty in certifying a class").  At class certification, Oracle would have argued

14   that a litigation class is improper due to a myriad of individualized issues, including as to each

15   class member's consent to Oracle's alleged data collection practices through the "diversity of

16   disclosures" made in cookie banners and cookie policy statements across Oracle's customers'

17   websites.  *See In re Google Inc. Gmail Litig*. ("*In re Gmail*"), No. 13-MD-02430-LHK, 2014 WL

18   1102660, at *15 (N.D. Cal. Mar. 18, 2014) (denying certification of wiretapping claims given

19   "diversity of disclosures" to end users); *Sherman v. Yahoo! Inc.*, No. 13cv0041-GPC-WVG, 2015

20   WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) ("individualized inquir[ies]" necessary to

21   "determine the consent profile of each putative class member" given "various methods of

22   expressing consent"); *Hart v. TWC Prod. & Tech. LLC*, No. 20-CV-03842-JST, 2023 WL

23   3568078, at *11 (N.D. Cal. Mar. 30, 2023) ("factual questions of whether users viewed any of

24   these materials . . . necessitate individualized factual inquiries that necessarily predominate"); *In*

25   *Re Gmail*, 2014 WL 1102660, at *18 (implied consent inquiry requires evaluating "whether each

26   individual 'knew about and consented to the interception' based on the sources to which [they]

27   were] exposed") (quoting *Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998).

28           Faced with "significant risk" of summary judgment against their claims and "that class

1  certification would prove unwarranted," Plaintiffs' agreed-upon Settlement Fund is fair and

2  should be approved.  *Fraley*, 966 F. Supp. 2d at 942-43.

3  **B.    Objectors' Misunderstanding of Oracle's Business Practices Does Not Implicate the Settlement**

4

5       Certain other objectors attack the fairness of the settlement based on a misconception of

6  Oracle's advertising business and the focus of this litigation.  Based on Plaintiffs' baseless

7  allegations that Oracle compiled and sold "digital dossiers" containing individuals' sensitive

8  personal information, several objectors argue that additional information is necessary on Oracle's

9  supposed "compilation of shielded medical files" and its purported plans to provide "extensive

10 surveillance" for government actors through allegedly "criminal" means. (Myers Objection, ECF

11 No. 139; Loeb Objection, ECF No. 146 at 1-2 (alleging Oracle's data collection violates the

12 Computer Fraud and Abuse Act); *see also* Rothfeder Objection, ECF No. 166 at 1 (claiming to be

13 affected "mentally, emotionally, and financially" by alleged conduct).  Others object based on

14 their misunderstanding that this litigation involves a data breach of their sensitive information,

15 claiming that relief should include credit monitoring or otherwise account for "long-term security

16 risks" and "increased vulnerability to fraud." (Burdick Objection, ECF No. 140 at 1; *see also*

17 Casler Objection, ECF No. 160 at 3 (requesting "lifetime identity theft protection service");

18 Ubiles Objection, ECF No. 158 at 1 ("seeking lifetime data protections and credit monitoring

19 services").)

20      These objectors fundamentally misunderstand the AdTech industry in which Oracle

21 operated and do not suggest that the Settlement is unfair.  *See Californians for Disability Rts.,*

22 *Inc. v. Cal. Dep't of Transp.*, No. C 06-5125 SBA, 2010 WL 2228531, at *2 (N.D. Cal. June 2,

23 2010) ("If objections are filed, the district court is to evaluate whether they suggest serious

24 reasons why the settlement proposal might be unfair.").  As Plaintiffs admit, Oracle creates

25 advertising segments that may convey general consumer preferences (*e.g.*, "in-market for cars")

26 associated with an ***anonymous*** device identifier.  (*See* ECF No. 88-1, Ex. B at 8; *see also* ECF

27 No. 87 ("SAC") ¶¶ 74-76.) Plaintiffs also admit these business practices are commonplace and

28 are expressly contemplated and permitted by statute. (*See* SAC ¶¶ 21, 26, 39, 89, 105 (citing Cal.

Civ. Code § 1798.99.80, which defines data brokers like Oracle as entities permitted to collect and sell to third parties the personal information of consumers with whom they have no direct relationship).)[3]

The reports that Plaintiffs reference in multiple versions of the Complaint, Offline Access Request Response Reports (OARRRs), do not suggest otherwise or imply that Settlement Class members' sensitive personal data has been sold or otherwise made public. These reports are generated solely for purposes of complying with the California Privacy Rights Act in response to a consumer request. *See* Cal. Civ. Code § 1798.110. Given the generally anonymous nature of the data retained by Oracle, the reports merely provide the advertising segments associated with identifiers that ***may be*** associated with the individual requesting the report. Contrary to concerns raised in certain objections, Oracle does not sell or disclose the OARRRs (or any other purported personally identifying "profiles") to third parties. Further, the reports do not reflect online interest segments reflecting "precise mental or physical health, biometric, or genetic information, such as a certain sensitive medical condition." Oracle does not create such segments, as disclosed in its Privacy Policy.[4]

Misconstruing Oracle's business practices, these objectors do not "suggest serious reasons why the [Settlement] might be unfair" and their objections should be denied. *Californians for Disability Rts.*, 2010 WL 2228531, at *2.

**C.    The Claim Form's Attestation Requirement Is Reasonable**

Another objector, Erwin Rosenberg, suggests that the Claim Form's attestation under penalty of perjury requirement deterred Settlement Class Members from submitting claims. (*See* Rosenberg ECF No. 143 at 1.) The Claim Form requests an attestation that, to "the best of

---

[3] Neither are Oracle's lawful business practices in violation of the CFAA. The statute was "enacted to prevent intentional intrusion onto someone else's computer"—*i.e.*, "computer hacking"—and not the sale of anonymized advertising segments. *HiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022). Indeed, courts routinely dismiss CFAA claims where plaintiffs cannot allege "harm to computers or networks" but instead claim damages based on the alleged "economic harm due to the commercial value of the data itself." *See, e.g.*, *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2023 WL 6466211, at *11 (N.D. Cal. Oct. 3, 2023) (citation omitted); *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) (collecting cases).

[4] Oracle Advertising Privacy Policy, https://www.oracle.com/legal/privacy/advertising-previous-privacy-policy-041024/ (last accessed Oct. 31, 2024).

1  [Claimant's] knowledge . . . [a]ny acquisition, capture, or collection" of the Claimant's "personal

2  information by Oracle" was "without [their] consent."  (ECF No. 132-2, Ex. A.)  He argues this

3  language is "improper" for two reasons (i) "consent is not necessary to make a claim in this case,"

4  and (ii) one "may not know whether he consented" when "clicking on a pop-up about tracking

5  and/or cookies." (ECF No. 143 at 1.) Neither objection is persuasive.

6      ***First***, the attestation that Claimant did not consent to any data collection by Oracle is

7  appropriate because consent is a complete bar to the claims asserted in this lawsuit.[5]  Rosenberg

8  erroneously argues that claims under the FSCA can survive even if a plaintiff consents to Oracle's

9  collection.  (*See* ECF No. 143 at 1 (citing the Court's October 3, 2023 motion to dismiss Order

10  (ECF No. 77 at 10 n.10) which concludes noting the "FSCA does not require a reasonable

11  expectation of privacy in electronic communications").)  But Rosenberg confuses a reasonable

12  expectation of privacy with consent, which is an explicit statutory defense.  *See* Fla. Stat. Ann. §

13  934.03(3)(d) ("It is lawful under this section . . . for a person to intercept a wire, oral, or

14  electronic communication when all of the parties to the communication have given prior consent

15  to such interception.").

16      ***Second***, Claim Forms may appropriately require Claimants to attest to relevant and known

17  facts under penalty of perjury to the best of their knowledge.  *See California v. IntelliGender,*

18  *LLC*, 771 F.3d 1169, 1175 (9th Cir. 2014) (noting district court granted final approval to

19  settlement, where claim form required attestation under penalty of perjury); *Tarlecki v. bebe*

20  *Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *2 (N.D. Cal. Nov. 3, 2009) (granting

21  final approval to settlement, when claim form required attestation under penalty of perjury).  Web

22  users may consent to Oracle's data collection practices through their acceptance of cookie banner

23  and pop-up terms on Oracle customers' websites.  Although this information should be within the

24  knowledge of each Settlement Class Member, in the case of any uncertainty, the attestation here

25  is made to "the best of [one's] knowledge" and does not require evidentiary proof.  Such an

26  

27  ─────────────
[5] *See Hart*, 2023 WL 3568078, at *9 (no reasonable expectation of privacy under California law
where plaintiffs manifest through their actions "a voluntary consent to the invasive actions of

28  defendant") (citation omitted); Cal. Pen. Code § 631(a) (prohibiting eavesdropping "without the
consent of all parties to the communication"); Fla. Stat. Ann. § 934.03(2)(d) (same).

attestation is appropriate to verify eligibility for a monetary benefit under the Settlement.

**III.    CONCLUSION**

      For the foregoing reasons, Oracle respectfully requests that the Court overrule the objections to the Settlement.

Dated: October 31, 2024                      MORRISON & FOERSTER LLP

                                     By:   */s/ Tiffany Cheung*
                                            Tiffany Cheung

                                          ***Attorneys for Defendant***
                                          ***Oracle America, Inc.***