**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Michael Katz-Lacabe and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>Honorable Richard Seeborg<br><br>**[AMENDED PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFF SERVICE AWARDS** |

This matter is before the Court on Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards. Dkt. 136. The Court held a fairness hearing on November 14, 2024. Having considered the moving papers, information provided at the hearing, the relevant objections, and the record in this matter, the Court **GRANTS** the motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards.

## I.    BACKGROUND

Plaintiffs in this action assert that Oracle's data brokering business violates internet users' right to privacy under the California Constitution as well as various state and federal privacy statutes. Plaintiffs allege Oracle's covert collection and aggregation of Plaintiffs' personal data

3122986.2
-1-

effected comprehensive surveillance of Plaintiffs' personal lives, abrogating their privacy and autonomy.

This suit was the product of extensive pre-litigation investigation. Prior to bringing suit, Class Counsel worked for two years, investigating Oracle's practices and potential legal claims to protect the Class's privacy rights. *See* Dkt. 136 at 10–11. As part of this investigation, Class Counsel consulted privacy and forensic experts and worked with the prospective Plaintiffs to retrieve and analyze their "Offline Access Request Response Reports" ("OARRRs"), among other efforts. *Id.*

On August 19, 2022, Plaintiffs filed suit against Oracle asserting that its business violates internet users' right to privacy under the California Constitution as well as various state and federal privacy statutes. Dkt. 1. Oracle initiated three rounds of motions to dismiss that raised potentially dispositive issues including Plaintiffs' standing, the reasonable expectation of privacy, choice of law, and applicability of state and federal wiretapping statutes to Oracle's interception of Plaintiffs' data. *See* Dkts. 23, 63, 88. Plaintiffs opposed, and in response to the Court's rulings, amended the complaint twice. Dkts. 72, 87. Following the Court's dismissal with prejudice of their Electronic Communications Privacy Act ("ECPA") claim, Plaintiffs filed a motion under 28 U.S.C § 1292(b), which Oracle opposed. Dkts. 120, 122

Meanwhile, the Parties conducted extensive discovery. Oracle ultimately produced over 160,000 pages of documents and ESI, in addition to over 283 video files, spanning approximately 173 hours, of internal discussions regarding the technical operation of Oracle's collection and use of data. Dkt. 136 at 11–12. Plaintiffs retained consulting experts to help conduct an accurate analysis of highly technical information and lines of computer code. *Id.* at 12. Through this discovery, Plaintiffs obtained information about Oracle's business practices and policies, strategic decisions, agreements, clients, the extent of data Oracle had received, and the inferred data resulting from its data processing. *Id.*

Drawing from their significant experience, skill, and commitment to this action, Class Counsel prevailed on numerous issues. Plaintiffs overcame Oracle's challenge to standing, establishing that Plaintiffs had adequately pled harm, causation, and redressability. Dkt. 49 at 10.

Plaintiffs also defended numerous causes of action that preserved avenues to redress, including claims under the California Invasion of Privacy Act (CIPA) and the Florida Security of Communications Act (FSCA), as well as claims for unjust enrichment under both California and Florida law, and claims for declaratory and injunctive relief, in addition to Plaintiffs' core claims of intrusion upon seclusion and invasion of privacy under California law. Dkt. 77.

On April 24, 2024, the Parties engaged in an extended day of in-person mediation overseen by Professor Eric D. Green and Fouad Kurdi of Resolutions, LLC. Dkt. 136 at 5–6. By the close of the mediation session, the Parties had exchanged only draft term sheets. *Id.* During the next two weeks, the Parties continued negotiations through emails and phone calls with the mediators. *Id.* On May 8, 2024, they executed a binding settlement term sheet outlining the basic terms of a settlement. *Id.* Over the next ten weeks, the Parties negotiated a long-form settlement agreement, including the precise terms and implementation of non-monetary relief. *Id.* These arm's length negotiations resulted in the Settlement Agreement, which was executed on July 8, 2024. *Id.*; Dkt. 132-1.

The Parties reached a Settlement that provides valuable monetary and non-monetary relief to the Class. Under the Settlement Agreement, Oracle will pay $115 million to create a non-reversionary cash Settlement Fund for the benefit of Settlement Class Members. Dkt. 132-2, Settlement Agreement ("SA") ¶¶ H, O, W, 3.2.5, 3.2.15. No portion of the Settlement Fund will revert to Oracle. *Id.* ¶¶ T, 3.2.1.

Additionally, Oracle must implement meaningful business practices designed to address the alleged privacy violations and protect Plaintiffs' privacy moving forward. There are two aspects of this non-monetary relief. One, Oracle has agreed that it will not capture (a) user-generated electronic information within referrer URLs (*i.e.*, the URL of the previously-visited page) associated with a website user or (b) any text entered by a user in an online web form other than through Oracle's own websites. As such, Oracle has agreed it will not engage in the alleged conduct which is central to Plaintiffs' wiretap claims. *Id.* ¶ 3.5. Oracle has agreed to comply with these provisions for as long as it offers the products and services described in the SAC. *Id.*

Soon after reaching this Settlement, Oracle announced it would shut down its ad tech

business unit, ceasing virtually all of the conduct that is at issue in this case, and will automatically delete its customers' data. Dkt. 136 at 7.

On July 18, 2024, Plaintiffs sought preliminary approval of the Settlement, which the Court granted. Dkts. 132, 135. Specifically, the Court (1) preliminarily approved the Settlement Agreement, (2) provisionally certified the Settlement Class, (3) approved the Notice Plan, and (4) appointed Settlement Class Counsel, Settlement Class Representatives, and Angeion as the Settlement Administrator. Dkt. 135. Since then, Class Counsel worked closely with Angeion to supervise its implementation of the Settlement's notice program and claims administration, which is now complete. Declaration of David T. Rudolph in Support of Final Approval ("Rudolph Decl.") ¶ 3.

Plaintiffs now move for an order approving the requested attorneys' fees, reimbursement of expenses, and plaintiff service awards. Dkt. 136.

## II.   ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Plaintiffs move for (1) $28.75 million in attorneys' fees, representing 25 percent of the Settlement Fund; (2) reimbursement of $211,350.52 in litigation costs incurred by Class Counsel; and (3) service awards of $15,000 to each Class Representative. *See* Dkt. 136 at 1–2. The Court addresses each request in turn.

### A.   Attorneys' Fees

#### 1.   Legal Standard

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. The court "must carefully assess" the reasonableness of the fee award. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45. The Court will analyze Class Counsel's fee request under both theories, starting with the percentage-of-the-common-fund theory, and then conducting a lodestar-cross-check.

**2.** **Discussion**

Under the percentage method, courts "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Prods.,* 654 F.3d at 942 (citations omitted). Here, Class Counsel requests that the court approve a fee award of $28.75 million, or 25 percent of the gross Settlement amount. Dkt. 136 at 1. The Court will evaluate this request in light of the factors set forth in *Vizcaino*, and will cross-check the reasonableness of the award using the lodestar method. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).

**a.** **Percentage-of-the-Common Fund Method**

The selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. When assessing the reasonableness of a fee award under the common fund theory, courts consider factors such as (1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1048–50.

**1.** **Results Achieved**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046. On monetary relief, Class Counsel secured the third largest common fund of any non-data breach privacy settlement, and the highest common fund amount of any privacy case where no direct relationship exists between defendant and the class. *See* Dkt. 132-1 (surveying fifteen comparable non-data breach privacy class action settlements); Dkt 132 at 19 (Plaintiffs are aware of only two non-data breach privacy class action settlements larger than this one, both of which involved Facebook). The $115 million Settlement Fund will enable the distribution of a meaningful approximately $25 in compensation to every valid claimant. This is significant compensatory relief, particularly given that Class Members had no out-of-pocket damages.

The Settlement also achieves significant non-monetary relief. *See* SA ¶ 3.5. Additionally, shortly after the Parties reached an agreement in principle for this non-monetary relief, Oracle

publicly announced the imminent shutdown of its ad tech business at issue in this litigation. Oracle's ad tech closure will dispose of the business units responsible for virtually all of the conduct at issue in this case. The Settlement ensures that if Oracle returns to this area of commerce, its practices will be subject to the injunctive relief standards. Class Counsel asserts that the Settlement was likely a contributing factor to this development. *See* Dkt. 136 at 7. Class Counsel did not attempt to quantify the value of the non-monetary relief that it obtained or contributed to; however, these meaningful non-monetary achievements factor into the Court's fee analysis calculus and underscore the reasonableness of the fee request. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at \*11 (N.D. Cal. Aug. 17, 2018).

## 2. Risk of Litigation

"Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel." *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)). The novelty and scope of Plaintiffs' privacy allegations made this a particularly ambitious and risky case to litigate. Unlike many class actions, this case did not evolve from revelations in the press about mishandling of data, investigations and fines by regulators, or a groundswell of public opinion against clearly offensive and illegal practices. Rather, Class Counsel independently investigated, documented, and innovatively challenged the underlying business model of one of the largest corporations in the world.

This factor weighs in favor of Class Counsel's requested 25 percent fee, given the substantial risks borne by Class Counsel in pursuing this novel class action.

## 3. Complexity of the Case and Skill Required

The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. During the past two years, the Court witnessed the high level of skill, experience, commitment, and ingenuity, which Class Counsel demonstrated throughout its prosecution of this complex

case. Class Counsel's work on behalf of the Class involved, among other things: (a) discovering the alleged misconduct and investigating Oracle's collection and aggregation of data for two-years prior to filing; (b) developing novel legal theories and identifying viable claims to support them; (c) conducting legal research in opposition to Oracle's three motions to dismiss and successfully preserving numerous important causes of action; (d) successfully sealing portions of Plaintiffs' "Offline Access Request Response Reports" ("OARRRs") (the report Oracle provides concerning aspects of the personal data it stores) after three rounds of motions; (e) persistently pressing and obtaining valuable discovery from Oracle; (f) securing a favorable settlement following months of arm's length negotiations; and (g) fulfilling Class Counsel's responsibilities under the Settlement Agreement, including seeking preliminary approval of the Settlement and overseeing Notice administration. Class Counsel brought decades of experience in complex class action litigation and extensive subject matter knowledge to identify the privacy invasions at issue, litigate novel and untested legal theories, and negotiate a settlement that provides appropriate redress and protects the Settlement Class's privacy rights moving forward.

The Court agrees that the skill displayed by Class Counsel in prosecuting this case and obtaining a favorable settlement supports the requested award.

### 4.    Contingent Nature of the Litigation

The risk of non-payment assumed by Class Counsel is a factor in determining counsel's appropriate fee award. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *3 (N.D. Cal. Feb. 6, 2013) (finding higher fee award justified where the "case was conducted on an entirely contingent fee basis against a well-represented Defendant"). Class Counsel assumed substantial risk by prosecuting this case on a purely contingent basis and advancing all necessary expenses, to the exclusion of other fee-generating work, knowing that it would receive a fee and be reimbursed for expenses only if it obtained meaningful relief on a class-wide basis. Here, the risk of nonpayment was magnified because Class Counsel assumed the unusual risk of litigating without co-counsel. The fact that no "copycat" suits were filed indicates that other firms viewed this case as too risky to prosecute.

Given the substantial risks borne by Class Counsel in pursuing this class action, this factor

weighs in favor of the requested fee.

### 5.    Awards Made in Similar Cases

A court should also consider fee awards from similar cases. *Vizcaino*, 290 F.3d at 1049–50. The requested 25 percent fee award is in line with the range of awards in this Circuit. *See In re Anthem, Inc. Data Breach* Litigation, 2018 WL 3960068, at *2, *5, *11 (awarding 27% of $115 million settlement, which included non-monetary relief "aimed at combatting the precise harm" at issue, after three years of litigation); *In re Apple Device*, 2023 WL 2090981, at *13–14 (awarding 26% of $310 million settlement after three years of litigation at the pleading stages, resulting in estimated payments to claimants of roughly $25 per device); *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389, at *11 (N.D. Cal. Apr. 21, 2022), *appeal dismissed sub nom. Brice v. Rodgers*, No. 22-15764, 2023 WL 3568176 (9th Cir. Jan. 5, 2023) and *Brice v. Gonzalez*, No. 23-15103, 2023 WL 3090669 (9th Cir. Mar. 31, 2023) (awarding 25% of $85 million settlement, resulting in a 3.28 multiplier, where, after two years of litigation, counsel obtained "excellent benefits for the class, both monetary and injunctive (in an area of law in which purely injunctive relief is common), and there were significant risks involved with the litigation"); *In re Lidoderm*, 2018 WL 4620695, at *1 (awarding 33% of $105 million after four years of risky litigation); *In re TikTok*, 617 F. Supp. 3d at 942 (awarding 33% of $92 million settlement after three years of litigation, recognizing that "[t]he need to provide financial incentives for zealous and effective representation of consumers in legally and technologically complex data privacy cases such as this—especially in the age of pervasive social media—weighs in favor of granting the request"). The Court also notes that the Ninth Circuit has been careful not to adopt a sliding-scale rule regarding the size of a settlement fund in relation to the percentage of attorneys' fees that may be awarded. *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d at 933.

Accordingly, awards in similar cases support the requested 25 percent fee.

### b.    Lodestar Cross-Check

"[A] [lodestar] cross-check is not required so long as the court achieves a reasonable result using the method it selects." *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608

JCS, 2023 WL 2699972, at *18 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) (citations omitted). Nonetheless, a lodestar crosscheck here further supports Class Counsel's fee request. Class Counsel's billing summary complies with this District's guidelines for class action attorneys' fee requests and contains sufficient detail for the Court to conduct a lodestar-based assessment. The summary shows that Class Counsel's lodestar for work on this case through August 8, 2024 (the day before the Court preliminarily approved the Settlement) is $9,866,699.50, representing 13,100.30 hours of attorney and law firm staff time. By staffing this case entirely in-house, Class Counsel was incentivized to expend its resources as efficiently as possible. The Court finds that the time Class Counsel dedicated to prosecuting this action is reasonable. The Court also finds Class Counsel's hourly rates are reasonable, and in line with those prevailing in this District for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Grey Fox, LLC v. Plains All-Am. Pipeline, L.P.*, No. CV 16-03157 PSG (JEMx), 2024 WL 4267431, at *5 (C.D. Cal. Sept. 17, 2024) (approving Class Counsel's 2024 rates).

The Court finds that Class Counsel's fee request results is an acceptable multiplier of Class Counsel's lodestar. The benchmark 25 percent fee requested by Class Counsel reflects a multiplier of 2.91 of Class Counsel's lodestar, which "falls within the Ninth Circuit's presumptively acceptable range" of multipliers routinely approved in the Ninth Circuit and elsewhere, and will only decrease as Class Counsel continues to fulfill its responsibilities to the Class. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1051 & n.6). Thus, application of the lodestar multiplier cross-check confirms the reasonableness of Class Counsel's requested fee.

### c.     Objections to Fees

Four Objectors objected to Class Counsel's fee request. *See* Dkt. Nos. 137 and 148 (same objector), 140, 152, 157, and 172. Oracle filed a comment to the Fee Motion, but expressed no position. Dkt. 138. None of these responses warrants denial or modification of counsel's requested fees. The Objections lack appreciation for the jurisprudence that governs the economics of representative actions, which allow for the vindication of aggregated interests that would

otherwise go unaddressed. The Court finds that the fee request is supported by well-established Ninth Circuit principles.

Accordingly, the Court finds that the requested fee award is reasonable and GRANTS Class Counsel $28,750,000 in attorneys' fees.

**B.    Litigation Expenses**

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048.

Here, Class Counsel is entitled to reimbursement of reasonable out-of-pocket costs advanced for the Class. *See* Fed. R. Civ. P. 23(h); 18 U.S.C. § 2520(b)(3); *Paul, Johnson*, 886 F.2d at 271. The Court finds that the expenses Class Counsel incurred in this litigation were reasonable and necessary to competently represent the Class.

To the extent that Dkt. 172 objects to the reimbursement of Class Counsel's litigation expenses, the Objection omits any sound reasoning for doing so. Therefore, it is overruled for lack of merit.

Accordingly, the Court GRANTS Plaintiffs' request for reimbursement of $211,350.52 in litigation expenses.

**C.    Service Awards for Plaintiffs**

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (cleaned up). Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The Court finds that the requested service awards for the two Settlement Class Representatives are reasonable and appropriate. Both Class Representatives expended considerable time and effort to assist in the investigation and litigation of this case. They each (a) obtained their OARRRs from Oracle and, despite privacy concerns, agreed to attach them to the

complaint; (b) met with Class Counsel to discuss the facts surrounding Oracle's collection and aggregation of their personal data; (c) reviewed and approved the allegations in complaints and participated in extensive discovery; (d) turned over the contents of their personal devices to a neutral forensic expert to be searched, imaged, and produced to Oracle; (e) submitted highly personal declarations in support of sealing portions of their OARRRs; (f) kept in close contact with counsel to actively monitor the progress of the litigation; and (g) reviewed and approved the Settlement Agreement. Absent the Class Representatives' willingness to undertake the burdens and risks associated with filing and prosecuting this lawsuit, no recovery would have been possible. Because of their efforts, Oracle has committed to pay a total of $115,000,000 and agreed to implement meaningful non-monetary relief. The Court finds that the amount requested for service awards compares favorably to the size of the settlement fund.

One Objection argues that the two Settlement Class Representatives should not be awarded Service Awards in the amount of $10,000 "when the amount they recovered for the Class is less than 50 cents per Class Member." Dkt. 150 at 9–10. This objector does not cite a single case in support of her objection. Service Awards are generally awarded based on the Class Representatives' time and efforts in furtherance of the litigation and are found reasonable when they amount to a low percentage of the common fund, as these do. *See* Dkt. 136 § III (total requested Service Awards amount to 0.17 percent of the Settlement Fund). Accordingly, this Objection is overruled.

Therefore, the Court concludes that the requested service awards are reasonable and **GRANTS** $10,000 to each of the two Class Representatives, for a total of $20,000.

III.    CONCLUSION

For the reasons stated above, Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards is GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1.    Class Counsel is awarded 25 percent of the total Settlement Fund, or $28.75 million, in attorneys' fees and $211,350.52 in expenses.

2.    Each of the two Settlement Class Representatives is awarded $10,000 in service awards.

3.    The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court, at the Fairness Hearing, and the reasons stated in this Order.

IT IS SO ORDERED.

Dated: _____, 2024                    _____

Hon. Richard Seeborg
United States District Judge