# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Katz-Lacabe and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>Honorable Richard Seeborg<br><br>**[AMENDED PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT** |

Plaintiffs Michael Katz-Lacabe and Jennifer Golbeck (together, "Settlement Class Representatives"), and Defendant Oracle America, Inc. (collectively the "Parties"), entered into a Class Action Settlement Agreement and Release (the "Settlement Agreement") on July 8, 2024 (Dkt. 132-2), which, together with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this Action and for its dismissal with prejudice.

By Order dated August 9, 2024, the Court granted preliminary approval of the Settlement between the Parties in the Action, ordering notice to Settlement Class Members through a comprehensive media plan in conjunction with direct email notice, and providing Settlement Class Members with an opportunity either to exclude themselves from the Settlement Class or to object to the Settlement (Dkt. No. 135).

By Order dated August 9, 2024, the Court also provisionally certified the Settlement Class for settlement purposes only, finding that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that the Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class (*id.*).

On November 14, 2024, the Court held a Fairness Hearing, to consider approval of this Settlement.

The Court has reviewed and considered Plaintiffs' Motion For Final Approval of Class Action Settlement and its supporting memorandum of points and authorities, the Declaration of David T. Rudolph in Support of Final Settlement Approval and the exhibits attached thereto; the Declaration of Steven Weisbrot of Angeion Group, LLC and the exhibits attached thereto regarding the settlement notice; the argument of counsel; and the relevant papers and records on file in this matter.

The Court has considered the objections submitted to the Settlement (Dkts. 137/148, Dkt. 139, Dkt. 140, Dkt. 141, Dkt. 143, Dkt. 146/173, Dkt. 147, Dkt. 150, Dkt. 152, Dkts. 154–168, and Dkts. 171–173, 177), and the Parties' and objectors' arguments related thereto.

The Court has further considered the Settlement Agreement, the record in this Action, and the Parties' arguments and authorities.

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:

1.      All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise.

2.      The Court has jurisdiction over this Action and the Parties.

**Notice**

3.      The Court finds that the Notice Plan constituted the best notice practicable under the circumstances to all Settlement Class Members and was successfully implemented by the Settlement Administrator, effecting Class Notice that fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.      The Objection regarding the reach of the Notice Plan is overruled. *See* Dkt. 137. The Court finds sufficient that as of October 28, 2024, approximately 83.33 percent of the target audience of 220 million Americans had received notice, each with an average frequency of more than 3.18 times. Declaration of Steven Weisbrot of Angeion Group, LLC ("Weisbrot Decl.") ¶ 7. Within the 49-day Notice Period, the Settlement administrator emailed reasonably identifiable potential Class Members Notice as well as a Reminder Email, and published two national press

releases and a media campaign delivering over 679 million impressions via social media and paid search. *Id.*

5.     The two Objections arguing email is an improper method for providing notice are overruled. *See* Dkts. 161, 163. "Courts routinely approve email notice campaigns and, inevitably, some email messages will end up in a spam folder—just as some postal mail will never reach its intended recipient." *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 WL 12640497, at *9 (N.D. Cal. May 8, 2014) (collecting cases). Moreover, per the Court's preliminary approval order (Dkt. 135), Email Notice was disseminated to supplement Media Notice.

6.     The three Objections arguing that the Notice Period was too short are likewise overruled. Dkt. Nos. 137, 160,[1] 172. The 49-day Notice Period comfortably exceeded the 35-day period specified in the Northern District of California's Procedural Guidance for Class Action Settlements.

**Class Certification and Class Representation**

7.     The Court confirms the findings in its Preliminary Approval Order and finds that, for purposes of the Settlement only, all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied: there are common questions of law and fact sufficient to satisfy Rule 23(a)(2); the claims of the proposed Settlement Class Representatives are typical of the claims of the Settlement Class and therefore satisfy Rule 23(a)(3); Class Counsel and the Settlement Class Representatives have fairly and adequately represented the interests of the Class and satisfied Rule 23(a)(4); and that common questions predominate over individual questions and that a class action is superior to other methods for adjudicating the case, and therefore the Settlement Class satisfies Rule 23(b)(3). It therefore certifies the following Settlement Class:

> All natural persons residing in the United States whose personal information, or data derived from their personal information, was acquired, captured, or otherwise collected by Oracle Advertising technologies or made available for use or sale by or through ID Graph, Data Marketplace, or any other Oracle Advertising product

---

[1] The author of this letter excluded herself from the Class, and therefore recognizes that she "do[es] not have the right to represent [her] objections in court." Dkt. 160 at 1.

[AMENDED PROPOSED] FINAL
APPROVAL ORDER & JUDGMENT
CASE NO. 3:22-CV-04792-RS

or service from August 19, 2018 to the date of final judgment in the Action.
Excluded from the Settlement Class are (i) Oracle; (ii) Oracle's parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Oracle has a controlling interest; (iv) any individual who would otherwise be included in the Settlement Class, but has agreed, in another proceeding, to release claims covered by this Settlement prior to the Claim Form deadline identified in Section 3.6 of the Settlement Agreement; and (v) any judge presiding over this Action, their staff, and the members of the judge's immediate family.

8.      The Court overrules the objections to the Settlement Class definition. *See* Dkt. Nos. 137, 171. The ultimate fate of the ECPA claim is not yet determined as Plaintiffs have sought an interlocutory appeal of the Court's dismissal of that claim. *See* Dkts. 120, 122. In such circumstances, Ninth Circuit precedent supports certifying the proposed nationwide Settlement Class. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420, 2020 WL 7264559, at *13 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (prior orders did not foreclose the participation of class members from non-repealer states in the settlement because those orders were "subject to further litigation and appeal had the case not settled"); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015), *aff'd*, 701 F. App'x 554 (9th Cir. 2017); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (approving nationwide settlement class involving state claims where federal statutory claim was "important enough [to] bind the class together"). One objector residing internationally requests that the Class definition be broadened beyond 2018 and beyond residency in the United States. Dkt. 171. This objector is not a Class Member, but in any event, the Court made clear that the pleaded claims would not extend internationally. *See* Dkt. 49 at 18–22.

9.      The Court confirms its previous appointment of Michael Katz-Lacabe and Jennifer Golbeck as Settlement Class Representatives. The Court finds that these Settlement Class Representatives have fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class. The Court overrules the objection arguing that they have not adequately represented the Class. Dkt. 137.

10.    The Court confirms its previous appointment of Class Counsel as counsel representing the Settlement Class under Federal Rule of Civil Procedure 23(g). The Court finds that Class Counsel have fairly and adequately represented, and will fairly and adequately represent, the interests of the Settlement Class. The Court overrules the objections arguing that they have not adequately and vigorously represented the Class. Dkt. Nos. 137, 164.

11.    The Court confirms its earlier appointment of Angeion Group, LLC to serve as the Settlement Administrator and finds that it thus far has fulfilled its duties under the Settlement. The Court finds the Settlement Administrator's expenses are reasonable and orders that the Settlement Administrator be paid in accordance with the Settlement Agreement. The Settlement Administrator agreed to provide notice, administration, and distribution services for a total amount not to exceed $4.8 million. *See* Weisbrot Decl. ¶ 45. As explained by the Settlement Administrator, if circumstances change, it may apply for reimbursement of associated expenses. *Id.* The Court overrules the objection to the reasonableness of the Settlement Administrator's expenses on those grounds. Dkt. Nos. 148 at 4–7.

12.    One objector does "not trust this Settlement Administrator and would like them to be replaced" because he "received 4 non-answer responses." Dkt. 167. This distrust is unwarranted based on the representations of the Settlement Administrator (*see* Weisbrot Decl. ¶ 61), and therefore the objection is overruled.

**Approval of the Settlement under Rule 23(e)**

13.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members. The Court grants final approval based on the following factors, which demonstrate that the Settlement meets the "higher standard of fairness" applicable to settlements reached before class certification. *Lane*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted):

a.    Class Counsel and the Settlement Class Representatives ably protected and furthered the best interests of the Class in this action.

b.    There is no indicia of fraud or collusion underlying this Settlement, and it was reached as a result of an informed arm's length mediation session and subsequent negotiations with two respected mediators. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is a factor weighing in favor of a finding of noncollusiveness). In addition to the involvement of these mediators, the Court has performed its own, independent analysis of the Settlement's fairness, reasonableness, and adequacy pursuant to Federal Rule of Civil Procedure 23(e)(2).

c.    The Settlement provides meaningful relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would likely be complex, expensive, lengthy, and risky.

d.    The $115 million Settlement provides substantial benefits to the Class in light of the strengths and weaknesses of the claims asserted. Class Counsel and the Court have carefully evaluated those strengths and weaknesses. Dkt. Nos. 135 ¶ 3, 132 § I.B. The Settlement is informed by extensive discovery and expert analysis that allowed Plaintiffs to make a thorough evaluation of the strengths and weaknesses of their claims, as well as the fairness, reasonableness, and adequacy of the Settlement. Dkt. 132 at 20–21.

e.    The Settlement's methods of processing claims and distributing funds to Class Members are fair and adequate.

f.    Distributing the Settlement Fund on a *pro rata* basis treats Class Members equitably.

14.    Most objections (seventeen of twenty-eight) express that the $115 million monetary relief is too low: Dkt Nos. 137 and 148 (submitted by the same person), 139, 140, 141, 146, 147, 150, 152, 156–159, 163, 164, 166, and 172. These objections do not adequately account for the risks and delays involved in further litigation, making "no effort to tie [their comments] to the disputes that would actually go to trial." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 627 (N.D. Cal. 2021), *aff'd,* No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Moreover, these objections make no effort to assess the risks of class certification,

summary judgment, or trial for CIPA claims that this Court found "barely" survived dismissal. Dkt. 49 at 23. These objections are therefore overruled.

15.     Many of these objections mistakenly evaluate this Settlement on terms applicable to a different type of privacy case, *i.e.*, a data breach. *See, e.g.*, Dkt. Nos. 140, 141, 156, 158. Unlike data breach cases, here, damages are not measured in terms of security risks. *See Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *5 (N.D. Cal. Feb. 16, 2016) (rejecting objection because the "lawsuit did not raise concerns about the sale of data or possible data breaches"). These objections are overruled.

16.     Several objectors call for additional non-monetary relief seeking further data privacy protections from Oracle, including, *inter alia*, requests for lifetime credit monitoring (Dkt. 158), removing personal data from the dark web and disclosing all data it has ever sold to third parties (Dkt. 160), and disclosing all revenue Oracle made from the practices at issue and shutting down its other business unrelated to this case (Dkt. Nos. 156, 163). However, these requests go well beyond the scope of remedies realistically attainable and may be unnecessary given Oracle's cessation of the practices at issue and its related deletion of relevant data. These objections are overruled. Dkt. Nos. 156, 158, 160, 163.

### Settlement Allocation and Claims Process

17.     The Court finds that the Settlement Administrator effectively administered the Claims program pursuant to the Settlement Agreement and the Order Granting Preliminary Approval and that the Claims process was fair, reasonable and adequate.

18.     The Court adopts the Parties' proposal for allocating the Net Settlement Fund. The proposal provides payments to be distributed to Valid Claimants, who will receive a *pro rata* share, as determined by dividing the Net Settlement Fund by the number of Valid Claims. If any funds remain in the Settlement Fund after all Valid Claims are paid, the Parties anticipate a redistribution of the remaining funds to Settlement Class Members unless it is economically infeasible to do so. Subject to Court approval, any final balance will be directed in *cy pres*.

19.     The Court finds this proposal fair, reasonable, and adequate and overrules the objection to allocation of the Net Settlement Fund. *See* Dkt. 150. This objection argues that the

1    allocation is inadequate because it fails to accord increased value to California class members

2    with potential claims under CIPA. *Id.* at 8–9. The Ninth Circuit has rejected this notion. *See Lane*

3    *v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012). Thus, the objection to the allocation of the

4    Net Settlement is overruled as meritless.

5           20.     While there may have been individual frustrations, the Settlement Administrator

6    confirmed that the claims processing functionality properly operated throughout the duration of

7    the claims period without any systemic issues that would have impeded the submission of claims

8    or opt-outs. The Court overrules the objections to the claims process. Dkt. Nos. 162, 172.

9           21.     While some Objections claim that they did not learn of the Settlement until days

10    before the deadline, the Settlement Administrator confirmed that each of these objectors received

11    initial emails weeks prior to the reminder emails they ultimately responded to that they claim

12    came late. Thus, these Objections are overruled. Dkt. Nos. 163, 172.

13           22.     The Court overrules the Objections that they should have been provided "a copy"

14    of any information Oracle collected on Class Members. Dkt. 139; *see also* Dkt. Nos. 152, 154,

15    164, 173. The Class Notice and available litigation documents sufficiently described the nature of

16    the data the Plaintiffs allege Oracle has complied on all Class Members, and it would be

17    infeasible to provide any tailored information to 220 million people as part of a notice plan.

18           23.     The Court overrules the Objection to the Claim and Exclusion Forms' requirement

19    to confirm that the "acquisition, capture, or collection of [his] personal information by Oracle was

20    without [his] consent." *See* Dkt. 143. Consent is a primary defense asserted by Oracle, and the

21    forms merely require affirmation that an individual did not affirmatively consent to the conduct

22    at-issue, which is consistent with Plaintiffs' theory of the case. *See Perkins v. Linkedin Corp.*, No.

23    13-CV-04303-LHK, 2016 WL 613255, at *9 (N.D. Cal. Feb. 16, 2016) ("Claim forms may

24    require the claimant to attest to some fact under penalty of perjury.") (citing *California v.*

25    *IntelliGender, LLC*, 771 F.3d 1169, 1175 (9th Cir. 2014)).

26           24.     Finally, one objector was concerned that information provided on the Claim Form

27    would "permit Angeion Group, LLC to sell their data," but the Settlement Administrator

28

[AMENDED PROPOSED] FINAL
APPROVAL ORDER & JUDGMENT
CASE NO. 3:22-CV-04792-RS

1    confirmed this is not the case. *See* Weisbrot Decl. ¶ 61. Thus, this objection is overruled. Dkt.

2    167.

3                                        **Releases**

4        25.    Upon the Effective Date the Releasing Parties shall have, fully and irrevocably

5    released and forever discharged Released Parties from any and all Released Claims. Dkt. No.

6    132-2 ¶¶ 10.2–10.3; *see also id.* § 11. Accordingly, the Settlement shall terminate the Action. *See*

7    *id.* ¶ 10.4, § 11. However, the release shall not include any claims related to the enforcement of

8    the Settlement or Protective Order (Dkt. 28).

9                              **Objections and Opt-Outs**

10       26.    Given the Court's findings in this Order, the Court overrules the objections to the

11   Settlement. *See* Dkts. 137/148/177, Dkt. 139, Dkt. 140, Dkt. 141, Dkt. 143, Dkt. 146/173, Dkt. 147,

12   Dkt. 150, Dkt. 152, Dkts. 154–168, and Dkts. 171–172.

13       27.    The Court has reviewed the lists of individuals who have timely and untimely

14   opted out of the Settlement attached to the Supplemental Declaration of Steven Weisbrot in

15   Support of Final Approval (Exhibits A and B). Dkt. No. 176.  The Court has reviewed both lists

16   and orders that only the individuals on Exhibit A to the Supplemental Weisbrot Declaration have

17   properly opted out of the Settlement.

18                                    **Other Matters**

19       28.    The Action, and all Released Claims asserted against the Released Parties are

20   settled and dismissed with prejudice.

21       29.    Execution of the Settlement shall proceed as set forth in the Settlement Agreement.

22   The estimated date of commencement of distribution is 90 days after the Effective Date. The

23   estimated date of substantial completion of distribution is 165 days after the Effective Date.

24       30.    The Parties shall file a post-distribution accounting in accordance with the

25   Northern District's Procedural Guidance for Class Action Settlements within 21 days after the

26   substantial completion of the Net Settlement Fund's distribution ("Post-Distribution

27   Accounting"). The Parties may request a continuance of the deadline for the Post-Distribution

28   Accounting if the information required as part of the accounting is not yet available.

1         31.    The Court reserves jurisdiction over the subject matter and each Party to the

2    Settlement with respect to the interpretation and implementation of the Settlement for all

3    purposes, including enforcement of any of the terms thereof at the request of any Party and

4    resolution of any disputes that may arise relating to the implementation of the Settlement or this

5    Order.

6    **<u>CONCLUSION</u>**

7         32.    The Motion for Final Approval is hereby granted, and Judgment is entered in

8    accordance with the terms of this Order as of the date of this Order.

9

10    **IT IS SO ORDERED.**

11

12    Dated: _____, 2024

13                                                      _____

14                                                      Hon. Richard Seeborg

15                                                      United States Chief District Judge