# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Katz-Lacabe and Dr. Jennifer Golbeck, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE AMERICA, INC., a corporation organized under the laws of the State of Delaware,<br><br>Defendant. | Case No. 3:22-cv-04792-RS<br><br>**FINAL APPROVAL ORDER AND JUDGMENT** |

Plaintiffs Michael Katz-Lacabe and Jennifer Golbeck (together, "Settlement Class Representatives"), and Defendant Oracle America, Inc. (collectively the "Parties"), entered into a Class Action Settlement Agreement and Release (the "Settlement Agreement") on July 8, 2024 (Dkt. 132-2), which, together with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this Action and for its dismissal with prejudice.

Parties were granted preliminary approval of the Settlement between the Parties in the Action, by Order dated August 9, 2024, ordering notice to Settlement Class Members through a comprehensive media plan in conjunction with direct email notice, and providing Settlement Class Members with an opportunity either to exclude themselves from the Settlement Class or to object to the Settlement (Dkt. No. 135).

The Settlement Class was provisionally certified for settlement purposes only, by Order dated August 9, 2024, finding that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that the Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class (*id.*).

1    On November 14, 2024, the Court held a Fairness Hearing, to consider approval of this
2    Settlement.
3    Plaintiffs' Motion For Final Approval of Class Action Settlement and its supporting
4    memorandum of points and authorities, the Declaration of David T. Rudolph in Support of Final
5    Settlement Approval and the exhibits attached thereto; the Declaration of Steven Weisbrot of
6    Angeion Group, LLC and the exhibits attached thereto regarding the settlement notice; the
7    argument of counsel; and the relevant papers and records on file in this matter have been
8    reviewed and considered.
9    Objections submitted to the settlement (Dkts. 137/148, Dkt. 139, Dkt. 140, Dkt. 141, Dkt.
10   143, Dkt. 146/173, Dkt. 147, Dkt. 150, Dkt. 152, Dkts. 154–168, and Dkts. 171–173, 177), and
11   the Parties' and objectors' arguments related thereto have also been considered.
12   Finally on the record are the Settlement Agreement, the record in this Action, and the
13   Parties' arguments and authorities.
14   GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:
15   1.   All terms and definitions used herein have the same meanings as set forth in the
16   Settlement Agreement unless stated otherwise.
17   2.   The Court has jurisdiction over this Action and the Parties.

**Notice**

19   3.   The Notice Plan constituted sufficient notice practicable under the circumstances
20   to all Settlement Class Members and was successfully implemented by the Settlement
21   Administrator, effecting Class Notice that fully complied with the requirements of Federal Rule
22   of Civil Procedure 23 and due process.
23   4.   The Objection regarding the reach of the Notice Plan is overruled. *See* Dkt. 137. It
24   is sufficient that as of October 28, 2024, approximately 83.33 percent of the target audience of
25   220 million Americans had received notice, each with an average frequency of more than 3.18
26   times. Declaration of Steven Weisbrot of Angeion Group, LLC ("Weisbrot Decl.") ¶ 7. Within
27   the 49-day Notice Period, the Settlement administrator emailed reasonably identifiable potential
28   Class Members Notice as well as a Reminder Email, and published two national press releases

and a media campaign delivering over 679 million impressions via social media and paid search. *Id.*

5. The two Objections arguing email is an improper method for providing notice are overruled. *See* Dkts. 161, 163. "Courts routinely approve email notice campaigns and, inevitably, some email messages will end up in a spam folder—just as some postal mail will never reach its intended recipient." *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 WL 12640497, at *9 (N.D. Cal. May 8, 2014) (collecting cases). Moreover, per the preliminary approval order (Dkt. 135), Email Notice was disseminated to supplement Media Notice.

6. The three Objections arguing that the Notice Period was too short are likewise overruled. Dkt. Nos. 137, 160,[1] 172. The 49-day Notice Period exceeded the 35-day period specified in the Northern District of California's Procedural Guidance for Class Action Settlements.

**Class Certification and Class Representation**

7. The findings of the Preliminary Approval Order are confirmed and, for purposes of the Settlement only, all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied: there are common questions of law and fact sufficient to satisfy Rule 23(a)(2); the claims of the proposed Settlement Class Representatives are typical of the claims of the Settlement Class and therefore satisfy Rule 23(a)(3); Class Counsel and the Settlement Class Representatives have fairly and adequately represented the interests of the Class and satisfied Rule 23(a)(4); and that common questions predominate over individual questions and that a class action is superior to other methods for adjudicating the case, and therefore the Settlement Class satisfies Rule 23(b)(3). The following Settlement Class is therefore certified:

> All natural persons residing in the United States whose personal information, or data derived from their personal information, was acquired, captured, or otherwise collected by Oracle Advertising technologies or made available for use or sale by or through ID Graph, Data Marketplace, or any other Oracle Advertising product or service from August 19, 2018 to the date of final judgment in the Action.

---

[1] The author of this letter excluded herself from the Class, and therefore recognizes that she "do[es] not have the right to represent [her] objections in court." Dkt. 160 at 1.

1  Excluded from the Settlement Class are (i) Oracle; (ii) Oracle's parents, subsidiaries, affiliates,
2  officers, directors, investors, and employees; (iii) any entity in which Oracle has a controlling
3  interest; (iv) any individual who would otherwise be included in the Settlement Class, but has
4  agreed, in another proceeding, to release claims covered by this Settlement prior to the Claim
5  Form deadline identified in Section 3.6 of the Settlement Agreement; and (v) any judge presiding
6  over this Action, their staff, and the members of the judge's immediate family.

7        8. The objections to the Settlement Class definition are overruled. *See* Dkt. Nos. 137,
8  171. The ultimate fate of the ECPA claim is not yet determined as Plaintiffs have sought an
9  interlocutory appeal of the Court's dismissal of that claim. *See* Dkts. 120, 122. In such
10 circumstances, Ninth Circuit precedent supports certifying the proposed nationwide Settlement
11 Class. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420, 2020 WL 7264559, at *13
12 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022)
13 (prior orders did not foreclose the participation of class members from non-repealer states in the
14 settlement because those orders were "subject to further litigation and appeal had the case not
15 settled"); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB,
16 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015), *aff'd,* 701 F. App'x 554 (9th Cir. 2017); *see
17 also Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (approving nationwide settlement
18 class involving state claims where federal statutory claim was "important enough [to] bind the
19 class together"). One objector residing internationally requests that the Class definition be
20 broadened beyond 2018 and beyond residency in the United States. Dkt. 171. This objector is not
21 a Class Member, but in any event, previous orders have made clear pleaded claims would not
22 extend internationally. *See* Dkt. 49 at 18–22.

23       9. Michael Katz-Lacabe and Jennifer Golbeck are appointed as Settlement Class
24 Representatives. These Settlement Class Representatives have fairly and adequately represented,
25 and will fairly and adequately represent, the interests of the Settlement Class. The objection
26 arguing that they have not adequately represented the Class is overruled. Dkt. 137.

27       10. Class Counsel is appointed as counsel representing the Settlement Class under
28 Federal Rule of Civil Procedure 23(g). Class Counsel have fairly and adequately represented, and

1    will fairly and adequately represent, the interests of the Settlement Class. The objections arguing

2    that they have not adequately and vigorously represented the Class are overruled. Dkt. Nos. 137,

3    164.

4      11. Angeion Group, LLC is appointed to serve as the Settlement Administrator, and it

5    thus far has fulfilled its duties under the Settlement. The Settlement Administrator's expenses are

6    reasonable and the Settlement Administrator shall be paid in accordance with the Settlement

7    Agreement. The Settlement Administrator agreed to provide notice, administration, and

8    distribution services for a total amount not to exceed $4.8 million. *See* Weisbrot Decl. ¶ 45. As

9    explained by the Settlement Administrator, if circumstances change, it may apply for

10   reimbursement of associated expenses. *Id.* The objection to the reasonableness of the Settlement

11   Administrator's expenses on those grounds is overruled. Dkt. Nos. 148 at 4–7.

12     12. One objector does "not trust this Settlement Administrator and would like them to

13   be replaced" because he "received 4 non-answer responses." Dkt. 167. This distrust is

14   unwarranted based on the representations of the Settlement Administrator (*see* Weisbrot Decl. ¶

15   61), and therefore the objection is overruled.

### Approval of the Settlement under Rule 23(e)

17     13. Pursuant to Federal Rule of Civil Procedure 23(e), final approval of the Settlement

18   is granted because the Settlement is fair, reasonable, and adequate and in the best interests of the

19   Settlement Class Members. Final approval is based on the following factors, which demonstrate

20   that the Settlement meets the "higher standard of fairness" applicable to settlements reached

21   before class certification. *Lane*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted):

22     a. Class Counsel and the Settlement Class Representatives ably protected and

23   furthered the best interests of the Class in this action.

24     b. There is no indicia of fraud or collusion underlying this Settlement, and it

25   was reached as a result of an informed arm's length mediation session and subsequent

26   negotiations with two respected mediators. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*,

27   654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is a factor weighing in favor of

28   a finding of noncollusiveness). In addition to the involvement of these mediators, the Court has

performed its own, independent analysis of the Settlement's fairness, reasonableness, and adequacy pursuant to Federal Rule of Civil Procedure 23(e)(2).

c. The Settlement provides meaningful relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would likely be complex, expensive, lengthy, and risky.

d. The $115 million Settlement provides substantial benefits to the Class in light of the strengths and weaknesses of the claims asserted. Class Counsel and the Court have carefully evaluated those strengths and weaknesses. Dkt. Nos. 135 ¶ 3, 132 § I.B. The Settlement is informed by extensive discovery and expert analysis that allowed Plaintiffs to make a thorough evaluation of the strengths and weaknesses of their claims, as well as the fairness, reasonableness, and adequacy of the Settlement. Dkt. 132 at 20–21.

e. The Settlement's methods of processing claims and distributing funds to Class Members are fair and adequate.

f. Distributing the Settlement Fund on a *pro rata* basis treats Class Members equitably.

14. Most objections (seventeen of twenty-eight) express that the $115 million monetary relief is too low: Dkt Nos. 137 and 148 (submitted by the same person), 139, 140, 141, 146, 147, 150, 152, 156–159, 163, 164, 166, and 172. These objections do not adequately account for the risks and delays involved in further litigation, making "no effort to tie [their comments] to the disputes that would actually go to trial." *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 627 (N.D. Cal. 2021), *aff'd,* No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022). Moreover, these objections make no effort to assess the risks of class certification, summary judgment, or trial for CIPA claims that this Court found "barely" survived dismissal. Dkt. 49 at 23. These objections are therefore overruled.

15. Many of these objections mistakenly evaluate this Settlement on terms applicable to a different type of privacy case, *i.e.*, a data breach. *See, e.g.*, Dkt. Nos. 140, 141, 156, 158. Unlike data breach cases, here, damages are not measured in terms of security risks. *See Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *5 (N.D. Cal. Feb. 16, 2016)

1  (rejecting objection because the "lawsuit did not raise concerns about the sale of data or possible
2  data breaches"). These objections are overruled.

3      16.    Several objectors call for additional non-monetary relief seeking further data
4  privacy protections from Oracle, including, *inter alia*, requests for lifetime credit monitoring
5  (Dkt. 158), removing personal data from the dark web and disclosing all data it has ever sold to
6  third parties (Dkt. 160), and disclosing all revenue Oracle made from the practices at issue and
7  shutting down its other business unrelated to this case (Dkt. Nos. 156, 163). However, these
8  requests go well beyond the scope of remedies realistically attainable and may be unnecessary
9  given Oracle's cessation of the practices at issue and its related deletion of relevant data. These
10 objections are overruled. Dkt. Nos. 156, 158, 160, 163.

## Settlement Allocation and Claims Process

12     17.    The Settlement Administrator effectively administered the Claims program
13 pursuant to the Settlement Agreement and the Order Granting Preliminary Approval and that the
14 Claims process was fair, reasonable and adequate.

15     18.    The Parties' proposal for allocating the Net Settlement Fund is adopted. The
16 proposal provides payments to be distributed to Valid Claimants, who will receive a *pro rata*
17 share, as determined by dividing the Net Settlement Fund by the number of Valid Claims. If any
18 funds remain in the Settlement Fund after all Valid Claims are paid, the Parties anticipate a
19 redistribution of the remaining funds to Settlement Class Members unless it is economically
20 infeasible to do so. Subject to Court approval, any final balance will be directed in *cy pres*.

21     19.    This proposal is fair, reasonable, and adequate and the objection to allocation of
22 the Net Settlement Fund is overruled. *See* Dkt. 150. This objection argues that the allocation is
23 inadequate because it fails to accord increased value to California class members with potential
24 claims under CIPA. *Id.* at 8–9. The Ninth Circuit has rejected this notion. *See Lane v. Facebook,*
25 *Inc.*, 696 F.3d 811, 824 (9th Cir. 2012).

26     20.    While there may have been individual frustrations, the Settlement Administrator
27 confirmed that the claims processing functionality properly operated throughout the duration of

1  the claims period without any systemic issues that would have impeded the submission of claims
2  or opt-outs. The Objections to the claims process are overruled. Dkt. Nos. 162, 172.

3       21.    While some Objections claim that they did not learn of the Settlement until days
4  before the deadline, the Settlement Administrator confirmed that each of these objectors received
5  initial emails weeks prior to the reminder emails they ultimately responded to that they claim
6  came late. Thus, these Objections are overruled. Dkt. Nos. 163, 172.

7       22.    The Objections that individuals should have been provided "a copy" of any
8  information Oracle collected on Class Members are overruled. Dkt. 139; *see also* Dkt. Nos. 152,
9  154, 164, 173. The Class Notice and available litigation documents sufficiently described the
10 nature of the data the Plaintiffs allege Oracle has compiled on all Class Members, and it would be
11 infeasible to provide any tailored information to 220 million people as part of a notice plan.

12      23.    The Objection to the Claim and Exclusion Forms' requirement to confirm that the
13 "acquisition, capture, or collection of [his] personal information by Oracle was without [his]
14 consent" is overruled. *See* Dkt. 143. Consent is a primary defense asserted by Oracle, and the
15 forms merely require affirmation that an individual did not affirmatively consent to the conduct
16 at-issue, which is consistent with Plaintiffs' theory of the case. *See Perkins v. Linkedin Corp.*, No.
17 13-CV-04303-LHK, 2016 WL 613255, at *9 (N.D. Cal. Feb. 16, 2016) ("Claim forms may
18 require the claimant to attest to some fact under penalty of perjury.") (citing *California v.*
19 *IntelliGender, LLC*, 771 F.3d 1169, 1175 (9th Cir. 2014)).

20      24.    Finally, one objector was concerned that information provided on the Claim Form
21 would "permit Angeion Group, LLC to sell their data," but the Settlement Administrator
22 confirmed this is not the case. *See* Weisbrot Decl. ¶ 61. Thus, this objection is overruled. Dkt.
23 167.

**Releases**

25      25.    Upon the Effective Date the Releasing Parties shall have, fully and irrevocably
26 released and forever discharged Released Parties from any and all Released Claims. Dkt. No.
27 132-2 ¶¶ 10.2–10.3; *see also id.* § 11. Accordingly, the Settlement shall terminate the Action. *See*
28

*id.* ¶ 10.4, § 11. However, the release shall not include any claims related to the enforcement of the Settlement or Protective Order (Dkt. 28).

### Objections and Opt-Outs

26.   Given the Court's findings in this Order, the objections to the Settlement are overruled. *See* Dkts. 137/148/177, Dkt. 139, Dkt. 140, Dkt. 141, Dkt. 143, Dkt. 146/173, Dkt. 147, Dkt. 150, Dkt. 152, Dkts. 154–168, and Dkts. 171–172.

27.   The Court has reviewed the lists of individuals who have timely and untimely opted out of the Settlement attached to the Supplemental Declaration of Steven Weisbrot in Support of Final Approval (Exhibits A and B). Dkt. No. 176. The Court has reviewed both lists and orders that only the individuals on Exhibit A to the Supplemental Weisbrot Declaration have properly opted out of the Settlement.

### Other Matters

28.   The Action, and all Released Claims asserted against the Released Parties are settled and dismissed with prejudice.

29.   Execution of the Settlement shall proceed as set forth in the Settlement Agreement. The estimated date of commencement of distribution is 90 days after the Effective Date. The estimated date of substantial completion of distribution is 165 days after the Effective Date.

30.   The Parties shall file a post-distribution accounting in accordance with the Northern District's Procedural Guidance for Class Action Settlements within 21 days after the substantial completion of the Net Settlement Fund's distribution ("Post-Distribution Accounting"). The Parties may request a continuance of the deadline for the Post-Distribution Accounting if the information required as part of the accounting is not yet available.

31.   The Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the request of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

## **CONCLUSION**

32. The Motion for Final Approval is hereby granted, and Judgment is entered in accordance with the terms of this Order as of the date of this Order.

**IT IS SO ORDERED.**

Dated: November 15, 2024

_____
Hon. Richard Seeborg
Chief United States District Judge